UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOCELYN BENSON in her official capacity as Secretary of the State of MICHIGAN and the STATE OF MICHIGAN.

    Defendants.

_____/

Case No.

## COMPLAINT

The United States of America, through the Attorney General states the following as its Complaint against the Defendants, the State of Michigan and Jocelyn Benson, in her capacity as Michigan Secretary of State;

### I.    INTRODUCTION

Federal law authorizes the Attorney General to seek declaratory and injunctive relief to enforce the statutory requirement that all states maintain "accurate and current voter registration rolls for elections for Federal office" and remove "ineligible voters from the official lists of eligible voters[.]" 52 U.S.C. §§ 20510(a), 20507(b), 20507(a)(4). Maintaining accurate voter registration roll is a crucial tool is combating voter fraud, which "drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006). The Civil Rights Division of the Department of Justice is tasked by

1

Congress with carrying out the Attorney General's duties to ensure States conduct voter registration list maintenance to prevent the inclusion of ineligible voters of any type on any state's voter registration list. In accordance with those duties, Plaintiff United States of America ("United States") brings this action against the State of Michigan and Jocelyn Benson in her official capacity as the Secretary of State for the State of Michigan, and alleges as follows:

1. The United States brings this action to enforce provisions of Title III of the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq.*; the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*; and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq.*

2. Defendants have failed to comply with the important mandates of the CRA, NVRA and HAVA by refusing to provide records regarding their list maintenance programs necessary to enable the United States to assess its compliance.

3. Title III of the Civil Rights Act of 1960 ("CRA"), is codified at 52 U.S.C. § 20701, *et seq.* Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

4. Section 303 of the CRA provides, in pertinent part, "Any record or paper required by section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the

2

person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…" 52 U.S.C. § 20703.

5. One purpose of the NVRA is to "protect the integrity of the electoral process" and "ensure that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(3)-(4). Consistent with these purposes, the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of "the death of a registrant or a change in residence of the registrant." *Id.* § 20507(a)(4)(A)-(B).

6. Similarly, HAVA requires the appropriate state or local election official to perform list maintenance with respect to the centralized, computerized statewide voter registration list required under HAVA "on a regular basis[.]" 52 U.S.C. § 21083(a)(1)-(2). HAVA also requires that states have "[a] system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters[,]" with "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* § 21083(a)(4)(A)-(B).

7. The United States brings this action pursuant to its authority under the CRA, NVRA, and HAVA to compel the State of Michigan and its chief state election official, Secretary of State Jocelyn Benson, to provide all fields of Michigan's SVRL, including the HAVA-required identifiers — each registrant's Driver's license number

3

or the last four of their Social Security number. *See* 52 U.S.C. § 21083(a)(5)(A)(i). This requested information will allow the Attorney General to fulfill its duties of effectively assessing Defendants' compliance with the requirements of the NVRA and HAVA.

## II.   JURISDICTION AND VENUE

8.   This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1345, and 2201(a); 52 U.S.C. §§ 20510(a) and 21111; and 52 U.S.C. § 20705.

9.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the United States' claims occurred in this District, and the Defendants are located in and conduct election administration activities in this District.

## III.   PARTIES

10.   Plaintiff United States, through the Attorney General, has authority to enforce the CRA, NVRA, and HAVA.  Pursuant to the CRA, 52 U.S.C. § 20705, the Attorney General may compel states to produce certain records and papers relating to the administration of federal elections.  Both the NVRA and HAVA authorize the Attorney General to bring a civil action in an appropriate district court for such declaratory and injunctive relief as are necessary to carry out the relevant requirements under the statute. 52 U.S.C. §§ 20510(a) and 21111.

11.   Defendant State of Michigan is a state of the United States of America and therefore is subject to the requirements of the CRA, NVRA, and HAVA. 52 U.S.C. §§ 20701, 20502(4), 20503, and 21141.

12. Defendant Secretary of State Jocelyn Benson is sued in her official capacity as chief state election official responsible for coordinating Michigan's responsibilities under federal law. *See* 52 U.S.C. § 20509; Mich. C.L.A. § 168.31.

## IV.   STATUTORY BACKGROUND

### A.   The Civil Rights Act of 1960

13. Congress empowered the Attorney General to request records pursuant to Title III of the CRA, codified at 52 U.S.C. § 20701 *et seq.*

14. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special or primary election. *See* 52 U.S.C. § 20701.

15. Section 303 of the CRA provides, in pertinent part, "Any record or paper required by Section 20701 of this title to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative…." 52 U.S.C. § 20703.

### B.   The National Voter Registration Act

16. The NVRA was enacted "to establish procedures that will increase the number of eligible citizens who register to vote in Federal elections "while "ensur[ing] that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b)(1), (4).

17. Section 8 of the NVRA establishes requirements for the administration of voter registration for elections for federal office in covered states, including Michigan. Section 8(a)(4) requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" the death of the registrant, or "a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)[.]" 52 U.S.C. §§ 20507(a)(4)(A)-(B).

18. Subsections (b), (c), and (d) set forth procedures for the removal of ineligible voters from official lists of voters as part of a state's "program or activity to protect the integrity of the electoral process by ensuring the maintenance of an accurate and current voter registration roll for elections for Federal office[.]" *Id.* § 20507(b).

19. State voter list maintenance programs must be "uniform, nondiscriminatory, and in compliance with the Voting Rights Act of 1965 (42 U.S.C. 1973, *et seq*.)[.]" 52 U.S.C. § 20507(b)(1); see also S. Rep. No. 103-6 at 31 (Feb. 25, 1993) ("The term 'uniform' is intended to mean that any purge program or activity must be applied to an entire jurisdiction."); accord H.R. Rep. No. 103-9 at 15 (Feb. 2, 1993) (same).

20. Section 8(d) of the NVRA provides that a "[s]tate shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence," unless the registrant:

>    A. confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered; or
>
>    B. has failed to respond to a [Confirmation Notice] and has not voted or appeared to vote . . . in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice. 52 U.S.C. § 20507(d)(1).

21.     Section 8(d)(2) sets forth specific requirements for the Confirmation Notice to be sent to registrants, and Section 8(d)(3) provides that a "voting registrar shall correct an official list of eligible voters in elections for Federal office in accordance with change of residence information obtained in conformance with [subsection 8(d)]." *Id.* §§ 20507(d)(2)-(3).

22.     Section 8 of the NVRA also provides an example of a list maintenance program that constitutes a reasonable effort to remove registrants who have become ineligible due to a change of residence. 52 U.S.C. § 20507(c)(1). Under this program, a state uses information from the United States Postal Service National Change of Address ("NCOA") program to identify registrants who may have changed residence. *Id.* § 20507(c)(1)(A). Where it appears from the NCOA information that a registrant has moved to a new address in the same jurisdiction, the registration record is updated to show the new address and the registrant is sent a notice of the change by forwardable mail that includes a postage-prepaid, pre-addressed return form by which the registrant may verify or correct the address information. *Id.*

§ 20507(c)(1)(B)(i). Where it appears from the NCOA information that a registrant has moved to a new address in a different jurisdiction, the procedure set out in Section 8(d), described above, is used to confirm the address change. *Id.* § 20507(c)(1)(B)(ii).

23. Section 8(i) of the NVRA provides that:

"Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1).

Section 8(i)(2) further specifies:

"The records maintained pursuant to paragraph (1) include lists of the names and addresses of all persons to whom notices described in subsection (d)(2) are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." 52 U.S.C. § 20507(i)(2).

24. Section 10 of the NVRA requires each state to "designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA. 52 U.S.C. § 20509.

C. **The Help America Vote Act**

25. The purpose of HAVA "can be stated very simply—it is to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). "Historically, elections in this country have been administered at the state and local level[,]" but Congress found that "the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." *Id.* at 31-32.

26. HAVA imposes "minimum requirements" for the conduct of federal elections, which "allow the states to develop their own laws and procedures to fulfill the requirements" to the extent that they are consistent with the standards set by HAVA. *Id.* at 35.

27. HAVA required all states to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level," that contains "the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State." 52 U.S.C. § 21083(a)(1)(A).

28. The computerized list required by HAVA "shall be coordinated with other agency databases within the State." 52 U.S.C. § 21083(a)(1)(A)(iv).

29. HAVA further establishes "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. § 21083(a)(4). Section 303 provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "safeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.*

30. HAVA mandates that a state may not process a voter-registration application without the applicant's driver's license number, where an applicant has

a current and valid driver's license, or, for other applicants, the last four digits of the applicant's Social Security number. *Id.* § 21083(a)(5)(A). For applicants who have neither a driver's license nor a social security number, a state must assign a unique identifying number for voter registration purposes. *Id.* § 21083(a)(5)(A)(ii). A state must then determine the validity of the information provided by the applicant. *Id.* § 21083(a)(5)(A)(iii).

31. HAVA applies to all fifty states, including Michigan. *Id.* § 21141.

32. Section 303 of HAVA incorporates by reference certain provisions of the NVRA. *See* 52 U.S.C. § 21083(a)(4)(A). These provisions, unless explicitly noted otherwise, apply to all states covered under HAVA. *Id.*

33. HAVA vests the Attorney General of the United States with sole authority to "bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief . . . as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under "Sections 21081-83, and 21083a of [HAVA]." 52 U.S.C. § 21111.

34. HAVA contains no private right of action. *See* 52 U.S.C. §§ 20901 to 21145.

## V.  FACTUAL ALLEGATIONS

35. On July 21, 2025, the United States sent a letter to Secretary Benson seeking information regarding Michigan's compliance with the NVRA. ("the July 21 Letter"). The July 21 Letter requested, among other information and documents, a

10

list of the election officials who are responsible for implementing Michigan's general program of voter registration list maintenance from November 2022 through receipt of the letter, a description of the steps that Michigan has taken in furtherance of VRLM, and an accounting of when those steps were taken. The July 21 Letter also requested – pursuant to Section 8(i) of the NVRA – that Michigan provide a current electronic copy of its computerized SVRL, required under Section 303 of HAVA.

36. The United States Election Assistance Commission (EAC) was established by HAVA to serve as "a national clearinghouse and resource for the compilation of information and review of procedures with respect to the administration of Federal elections."  EAC website, "Help America Vote Act," https://www.eac.gov/about/help_america_vote_act.aspx. The EAC "is an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process." EAC website, "About the EAC," (Sept. 15, 2025) https://www.eac.gov/about.

37. The EAC conducts a biennial Election Administration and Voting Survey ("EAVS"), "an analysis of state-by-state data that covers various topics related to the administration of federal elections[,]" including voter registration and list maintenance. *Id.* The EAC's most recent report, "Election Administration and Voting Survey 2024 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 119th Congress" ("2024 EAVS Report"), explains that as part of the 2024 EAVS, the states "reported data on their efforts to keep voter registration lists current and accurate, known as list maintenance[,]" such as the

11

number of confirmation notices states sent "to verify continued eligibility from registered voters[,]" and the number of voter registration records that state removed from their voter lists. EAC (Sept. 15, 2025), 2024 EAVS Report, https://www.eac.gov/sites/default/files/2025-07/2024_EAVS_Report_508.pdf, at 7.

38. The July 21 Letter asked questions regarding Michigan's compliance with the NVRA, based on the Justice Department's review of the EAVS Report. The period for the inquiries was the close of registration for the November 2022 general election through the close of registration for the November 2024 general election.

39. The July 21 Letter included direct questions of Secretary Benson regarding EAVS data that is out of step with national averages. Specifically, Michigan sent confirmation notices to 4.5 percent of its voting population, versus a national average of 19.5 percent. Michigan also removed only 4.2 percent of registered voters, versus a national average of 9.1 percent.

40. The July 21 Letter asked Michigan to produce the requested information and records by encrypted email or via the Department's secure file-sharing system, Justice Enterprise File Sharing (JEFS).

41. In response, on August 4, 2025, Secretary Benson replied via email requesting approximately three months to comply with the request. On August 8, 2025, the United States sent a reply email, stating that this timeline was "unacceptable." The United States demanded that readily available information be provided by August 18, 2025. The United States further demanded that items that may take more time be sent by September 8, 2025.

42. On August 14, 2025, the United States sent an additional letter to Secretary Benson. ("August 14 Letter") This letter further informed the Secretary of the Department's authority under both the NVRA and HAVA to request the unredacted SVRL.

43. The August 14 letter also made a demand pursuant to the Civil Rights Act for the unredacted SVRL, informing the Secretary that the purpose of the demand under the CRA was to determine Michigan's compliance with both the NVRA's and HAVA's voter list maintenance requirements.

44. The August 14 letter also advised the Secretary that HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c). In addition, any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency in carrying out the government agency's function to accomplish its enforcement authority as the Justice Department is now doing. That said, all data received from the State of Michigan will be kept securely and treated consistently with the Privacy Act.

45. On September 2, 2025, Secretary Benson submitted an initial reply letter, stating various formal objections to the United States' demand.

46. On September 9, 2025, Secretary Benson submitted her office's formal and final reply to the demand. In that letter, Secretary Benson stated that she is

13

"only providing the public version of our statewide voter registration list." The public version (i.e., the list without crucial identifying information) does not include information that is necessary for the Attorney General to determine Michigan's compliance with the voter list maintenance requirements of both the NVRA and HAVA, thereby preventing the Attorney General's from exercising its statutory enforcement authority.

47. The necessary information for enforcing these statutes includes full date of birth, as well as driver's license number and/or last four digits of social security numbers.

48. Secretary Benson, in her letter, claimed various nonapplicable exemptions as reasons for not providing this information. Her letter cites state election laws, public disclosure laws, and the Privacy Act of 1974, all of which are inapplicable to this statutorily authorized request pursuant to federal law. *Id.* 1-2.

49. Secretary Benson, in her letter, also provided insufficient responses to questions regarding her state's EAVS responses. Rather than provide an explanation as to why Michigan has numbers that are out of step with national averages, the letter cited the process Michigan applies, and the absolute numbers of voter cancellations since 2019. September 9 Letter, 3-4.

50. As a federal law enforcement agency, the Department of Justice is required to comply with all applicable privacy laws and has practices and procedures to ensure compliance.

51. The information that the Justice Department collects pursuant to its request to Michigan will be maintained consistent with privacy protections as explained on the Justice Department's website at https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction. The full list of routine uses for this collection of information can be found in the System of Records Notice ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records", 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include the CRA, NVRA, and HAVA. The records in the SORN are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

52. Interestingly, Michigan is a member of the Electronic Registration Information Center ("ERIC"), an organization comprised of states whose stated mission "is to assist states in improving the accuracy of America's voter rolls and increasing access to voter registration for all eligible citizens."[1] ERIC is funded by its members, who pay a one-time membership fee and annual dues. *Id.* ERIC's website explains that "[a]t least every 60 days, each member submits their voter registration data and licensing and identification data from motor vehicle departments (MVD) to ERIC." *Id.* ERIC's website states: **"Members submit dates of birth, driver's**

---

[1] *FAQ's*, ERIC, (Sept. 15, 2025) https://ericstates.org/faq/; *see id.*, "Which States Are Members of ERIC?" https://ericstates.org/about/.

**license/ID card numbers, and Social Security numbers to ERIC** after applying a cryptographic one-way hash to these data points." *Id.*

53. Michigan provides the identical information that the Department has requested to ERIC, a private organization which lacks any enforcement authority, yet refuses to adhere to federal law and provide that same information to the Attorney General of the United States.

## VI.    CAUSE OF ACTION

**COUNT I: CRA, 52 U.S.C. § 20703**

54. Plaintiff restates and incorporates herein the allegations in the foregoing paragraphs of the Complaint.

55. On July 21, 2025, the Attorney General sent a written demand to Secretary Benson for the production of specific election records, as authorized by 52 U.S.C. § 20703.

56. Secretary Benson' September 11, 2025, did not provide the requested statewide voter registration information, including the requisite HAVA unique identifiers to the Attorney General.

57. Defendant's refusal to provide the information demanded by the Attorney General is a violation of the Civil Rights Act.

**COUNT II: NRVA, 52 U.S.C. § 20507(i)**

58. Plaintiff restates and incorporates herein the allegations in the foregoing paragraphs of the Complaint.

16

59. The Justice Department's July 21 and August 15 Letters requested the information that Michigan is required to disclose pursuant to 52 U.S.C. § 20507(i).

60. Michigan has failed to provide sufficient responses to the Justice Department's specific inquiries regarding its maintenance procedures, despite the Attorney General's enforcement authority of these requirements under both the NVRA and HAVA. This information is necessary for the Attorney General to determine if Michigan is conducting "a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters" as required by 52 U.S.C. § 20507(a)(4).

61. The requested statewide VRL is a record regarding Michigan's list maintenance programs and is required to be disclosed to the United States.

**COUNT III: HAVA, 52 U.S.C. § 21083**

62. Plaintiff restates and incorporates herein the allegations in the foregoing paragraphs of the Complaint.

63. Defendants have failed to take the actions necessary for the State of Michigan to comply with Section 303 of HAVA.

64. Defendants' failure to provide sufficient information in response to requests made by the Justice Department's Civil Rights Division in its July 21 and August 15 demand prevent the Attorney General from evaluating Michigan's compliance with HAVA, pursuant to the Attorney General's statutory enforcement authority under 52 U.S.C. § 21111.

65. Defendants' refusal to provide sufficient information prevents the Attorney General from evaluating Michigan's procedures that "ensure[] . . . duplicate names are eliminated from the computerized list" pursuant to 52 U.S.C. § 21083(a)(2)(B).

66. Defendants' refusal to provide to the United States the current electronic copy of Michigan's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number prevents the Attorney General from determining Michigan's compliance with the list maintenance requirements of HAVA. 52 U.S.C. § 21083(a)(5)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, the United States demands judgment in its favor and against Defendants as follows:

    A.    Declare that Defendants' refusal to provide registration records upon a demand by the Attorney General violates Title III of the CRA. 52 U.S.C. § 20703;

    B.    Declare that Defendants have failed to make available and provide to the United States "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," in violation of the NVRA. 52 U.S.C. § 20507(i)(1);

    C.    Declare that the Defendants' refusal to provide the requested records concerning the voter registration and list maintenance records prevents the Attorney General from enforcing HAVA's list maintenance requirements;

D.  Order Defendants to provide to the United States the current electronic copy of Michigan's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number, or the last four digits of their Social Security number as required by 52 U.S.C. § 20703;

E.  Order such additional relief as the interests of justice may require.

Dated: September 25, 2025                    Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division


/s/ Michael E. Gates
MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division

MAUREEN S. RIORDAN
Acting Chief, Voting Section
Civil Rights Division
TIMOTHY F. MELLETT
ERIC V. NEFF
Attorneys, Voting Section
Civil Rights Division
150 M St. NE, Ste 8-139
Washington, DC 20009
Maureen.Riordan2@usdoj.gov
Timothy.F.Mellett@usdoj.gov
Eric.Neff@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States