## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL ACTION |
| Plaintiff, | |
| v. | Case No. 1:25-cv-1148-HYJ-PJG |
| JOCELYN BENSON, in her official capacity as Michigan Secretary of State; and the STATE OF MICHIGAN, | Hon. Hala Y. Jarbou |
| Defendants. | ORAL ARGUMENT REQUESTED |

## MICHIGAN ALLIANCE FOR RETIRED AMERICANS, DONALD DUQUETTE, AND KEELY CRIMANDO'S MOTION TO INTERVENE AS DEFENDANTS

Proposed Intervenor-Defendants Michigan Alliance for Retired Americans, Donald Duquette, and Keely Crimando (collectively, "Proposed Intervenors") seek to intervene as defendants in the above-captioned lawsuit to safeguard their and their members' substantial and distinct legal interests, which will otherwise be inadequately represented. For the reasons discussed in the memorandum in support, filed herewith, Proposed Intervenors are entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenors request permissive intervention under Rule 24(b).

Proposed Intervenors respectfully request that the Court set a schedule regarding this motion to intervene that allows for their participation in any future briefings or hearings. Otherwise, Proposed Intervenors' interests are at risk of being severely and irreparably harmed, as described more fully in the memorandum in support of this motion.

Pursuant to Local Rule 7.1(d), counsel for Proposed Intervenors conferred with counsel for Plaintiff about its position on this motion. On September 29, 2025, counsel for Plaintiff stated that

Plaintiff would review the motion before taking a final position, but that Plaintiff likely would oppose the motion. On September 30, 2025, an attorney at the Michigan Attorney General's office informed counsel for Proposed Intervenors that the State Defendants do not concur in the motion, however, they will not oppose it.

WHEREFORE, Proposed Intervenors request that the Court grant them leave to intervene in the above-captioned matter.

Dated: September 30, 2025                    Respectfully submitted,

                                             /s/ Sarah S. Prescott
                                             Sarah S. Prescott
                                             **SALVATORE PRESCOTT PORTER & PORTER**
                                             105 E. Main St.
                                             Northville, MI 48167
                                             Telephone: 248-679-8711
                                             prescott@spplawyers.com

                                             Aria Branch
                                             Joshua Abbuhl*
                                             Branden Lewiston*
                                             Derek A. Zeigler*
                                             **ELIAS LAW GROUP**
                                             250 Massachusetts Ave NW, Suite 400
                                             Washington, DC 20001
                                             Telephone: (202) 968-4490
                                             Facsimile: (202) 968-4498
                                             abranch@elias.law
                                             jabbuhl@elias.law
                                             blewiston@elias.law
                                             dzeigler@elias.law
                                             *Applications Forthcoming
                                             *Attorneys for Proposed Intervenors*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

   v.

JOCELYN BENSON, in her official capacity as
Michigan Secretary of State; and the STATE OF
MICHIGAN,

                Defendants.

CIVIL ACTION

Case No. 1:25-cv-1148-HYJ-PJG

Hon. Hala Y. Jarbou

ORAL ARGUMENT REQUESTED

**MICHIGAN ALLIANCE FOR RETIRED AMERICANS, DONALD DUQUETTE, AND
KEELY CRIMANDO'S MEMORANDUM IN SUPPORT OF MOTION TO INTERVENE
AS DEFENDANTS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

I.      Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ..................................... 2

II.     DOJ has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states. ............................................. 3

III.    DOJ sues Michigan to obtain its complete voter registration list. ...................... 4

IV.     Intervenors' sensitive personal information is jeopardized by DOJ's demands. ................ 5

LEGAL STANDARD ......................................................................................................... 8

ARGUMENT ..................................................................................................................... 9

I.      Proposed Intervenors are entitled to intervene as of right. ................................. 9

        A.      This motion is timely. ............................................................................... 9

        B.      Proposed Intervenors have an interest in protecting their sensitive and personal information from improper disclosure to DOJ. ........................ 9

        C.      The existing parties do not adequately represent Proposed Intervenors. ............ 11

II.     Alternatively, Proposed Intervenors should be granted permissive intervention. ............ 13

CONCLUSION ................................................................................................................. 14

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1789 Found. Inc. v. Fontes*,
    No. CV-24-02987-PHX-SPL, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) ....................... 14

*Alabama ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ...................................................................... 5

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ............................................................................................. 2

*Bellitto v. Snipes*,
    935 F.3d 1192 (11th Cir. 2019) ......................................................................... 13

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022) ..................................................................................... 2, 12

*Blount-Hill v. Zelman*,
    636 F.3d 278 (6th Cir. 2011) ............................................................................. 8

*Bradley v. Milliken*,
    828 F.2d 1186 (6th Cir. 1987) ........................................................................... 9

*Buck v. Gordon*,
    959 F.3d 219 (6th Cir. 2020) ........................................................................... 13

*Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
    647 F.3d 893 (9th Cir. 2011) ........................................................................... 12

*Compuware Corp. v. Moody's Invs. Servs., Inc.*,
    No. CIV. 03-70247, 2004 WL 1092285 (E.D. Mich. May 11, 2004) ................................ 11

*Foster v. Love*,
    522 U.S. 67 (1997) ........................................................................................... 2

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ......................................................................... 12

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018) ..................................................................................... 2, 3

*Kalbers v. U.S. Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ....................................................................... 10, 11

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) ................................................................... 5

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998) ................................................................... 12

*League of Women Voters of N.C. v. North Carolina*,
    No. 1:13CV660, 2014 WL 12770081 (M.D.N.C. Jan 27, 2014) ...................... 14

*Mich. State AFL-CIO v. Miller*,
    103 F.3d 1240 (6th Cir. 1997) ......................................................... 9, 11, 13

*Priorities USA v. Benson*,
    448 F. Supp. 3d 755 (E.D. Mich. 2020) ............................................. 9, 13, 14

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) .................................................................. 4, 5

*Pub. Int. Legal Found., Inc., v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020) ................................................... 14

*Purnell v. City of Akron*,
    925 F.2d 941 (6th Cir. 1991) ................................................................ 10

*Republican Nat'l Comm. v. N.C. State Bd. of Elections*,
    120 F.4th 390 (4th Cir. 2024) ................................................................ 3

*In re Sealed Case*,
    237 F.3d 657 (D.C. Cir. 2001) .............................................................. 11

*Stupak-Thrall v. Glickman*,
    226 F.3d 467 (6th Cir. 2000) ................................................................. 8

*Tarazi v. Oshry*,
    No. 2:10-CV-793, 2011 WL 1326271 (S.D. Ohio Apr. 4, 2011) ..................... 11

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972) .......................................................................... 12

*Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*,
    41 F.4th 767 (6th Cir. 2022) ............................................................. 9, 13

**Constitutional Provisions, Statutes, and Rules**

U.S. Const. art. I, §4, cl. 1 .................................................................................... 2

52 U.S.C. §20501 ................................................................................................... 2

52 U.S.C. §20507 ............................................................................................... 2, 4

52 U.S.C. §21083 ................................................................................................... 3

52 U.S.C. §21111 ................................................................................................... 5

Fed. R. Civ. P. 24(a) .............................................................................................. 1

Fed. R. Civ. P. 24(b) ......................................................................................... 8, 13

Mich. Comp. Laws §168.509gg ......................................................................... 1, 6

**Other Authorities**

7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. §1909 (3d ed. 2024) .............. 11

Caroline Vakil, *Sherrill Campaign Slams Release of Military Records to Opponent's Ally*, The Hill (Sept. 25, 2025), https://perma.cc/8WZB-994P ............................................ 6

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD ............................. 3

Jonathan Shorman, *Some Republican States Resist DOJ Demand for Private Voter Data*, Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some- ........................................ 4

Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*, N.Y. Times (Aug. 26, 2025), https://perma.cc/ZB7V-R645 ................................................ 6

## INTRODUCTION

The U.S. Department of Justice ("DOJ") recently initiated an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. To advance this effort, DOJ sued Michigan last week, seeking to compel the state to turn over all the sensitive information it has on all its voters. This legal assault intrudes not only upon Michigan's constitutional prerogative to maintain and protect its own voter registration list—it directly intrudes upon the privacy rights of individual Michiganders who have good reason to fear their personal information being handed over to the federal government.

Accordingly, the Michigan Alliance for Retired Americans ("Alliance"), Donald Duquette, and Keely Crimando (together, "Proposed Intervenors"), move to intervene in this suit to prevent the improper disclosure of their—and in the case of the Alliance, its members'—sensitive and personal information to DOJ. Michigan law guarantees voters that the state "shall not release" their sensitive and personal information—such as driver's license numbers, partial social security numbers, and full dates of birth. Mich. Comp. Laws §168.509gg. DOJ's requested relief would run roughshod over these privacy protections, which Proposed Intervenors seek to preserve.

Proposed Intervenors are entitled to intervention as of right because they have significant interests that are at severe risk of impairment by this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). Most significantly, they unquestionably have an interest in ensuring their own sensitive and personal information—and in the Alliance's case, the personal information of its members—is not improperly disclosed to DOJ, particularly since Michigan law explicitly protects such information. While Michigan and its Secretary of State have thus far resisted disclosure, they do not adequately represent Proposed Intervenors; as governmental defendants, they must consider the "broader public-policy

1

implications" of the issues presented in this suit, unlike Proposed Intervenors, who are solely concerned with protecting their privacy, "full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972)).

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b), the requirements of which are readily satisfied. Doing so will ensure that Michigan voters have a voice in this litigation concerning the disclosure of their sensitive and personal information.

## BACKGROUND

**I.    Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, §4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are the custodians of voter registration data. In 1993 Congress enacted the National Voter Registration Act ("the NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government— with the "administration of voter registration for elections for Federal office," 52 U.S.C. §20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* §20507(c)–(g). It similarly makes *states* the custodians of voter lists, *see Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *Republican Nat'l Comm. v. N.C. State Bd. of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain voter registration lists, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. §21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* §21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* §21083(a)(1)(A) (emphasis added).

Consistent with that principle, neither the NVRA nor HAVA tasks the *federal government* with compiling a federal national voter registration list or micromanaging the states in their maintenance of such lists. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in federal elections," *Husted*, 584 U.S. at 761, subject only to the *specific* requirements of the NVRA and HAVA, which purposefully operate through the states themselves—not DOJ and the federal government.

## II.   DOJ has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states.

This spring, DOJ launched a campaign to demand broad and unprecedented access to state voter files, including personal information about each registered voter. To date, there have been reports that DOJ has sent demands to over thirty-five states, with plans to make similar demands on all fifty states.[1] It seeks to use the data to create a national voter database that will, in turn, be used to seek to substantiate President Trump's unfounded accusations that millions of non-citizens have voted illegally in recent elections. *See* Barrett & Corasaniti, *supra* n.1. The vast majority of states that have received such demands—including those led by Republican officeholders—have

---

[1] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD.

refused to comply, declining to turn over sensitive personal information that is typically protected by state law.[2]

DOJ sent Michigan a letter on July 21, 2025, demanding, among other things, Michigan's statewide voter registration list. Compl. ¶35, ECF No. 1. DOJ later reiterated its requests, demanding that Michigan produce its unredacted statewide voter registration list, including "the registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their social security number." *Id.* ¶¶42, 66.

Michigan Secretary of State Jocelyn Benson responded on September 9 by offering DOJ Michigan's public voter records, but that offer did not extend to data exempt from disclosure under Michigan law, including driver's license numbers, partial social security numbers, and full dates of birth. *Id.* ¶¶46–47.

## III.    DOJ sues Michigan to obtain its complete voter registration list.

DOJ filed this suit on September 25, seeking to compel Michigan to provide its full statewide voter registration list. ECF No. 1, at PageID.19. DOJ cited three federal statutes to justify its claims: the NVRA, HAVA, and the Civil Rights Act of 1960. *Id.* at PageID.16–18. None supports DOJ's sweeping demand.

*First*, though the NVRA requires states to permit public inspection of certain records, 52 U.S.C. §20507(i)(1), courts have consistently held that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in" those records, such as driver's license numbers and partial social security numbers. *Pub. Int. Legal Found., Inc.*

---

[2] *See* Jonathan Shorman, *Some Republican States Resist DOJ Demand for Private Voter Data*, Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-dem and-for-private-voter-data/ (reporting only one state—Indiana—has so far given DOJ everything it sought).

*v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (collecting cases).

*Second*, unlike the NVRA, HAVA has no disclosure provisions at all, and DOJ's complaint and available letters cite no case law or other authority for the proposition that the mere existence of DOJ's authority to enforce HAVA entitles it to unfettered access to state voter registration lists upon demand. 52 U.S.C. §21111.

*Third*, as a last-ditch effort, DOJ invokes Section 303 of the Civil Rights Act of 1960, a long dormant Civil Rights era law that permits DOJ to review certain voting records to investigate "question[s] concerning infringement or denial of . . . constitutional voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962); *see also Alabama ex rel. Gallion v. Rogers,* 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("[Section 303] is designed to secure a more effective protection of the right to vote."). But DOJ admits that is not its purpose here; rather, it claims to be evaluating Michigan's list maintenance efforts under NVRA and HAVA—statutes with their own separate disclosure rules (under the NVRA specifically) and enforcement mechanisms. ECF No. 1, ¶7. Thus, the Civil Rights Act is inapplicable here.[3]

## IV.    Intervenors' sensitive personal information is jeopardized by DOJ's demands.

Proposed Intervenors include a statewide organization, the Alliance, whose members include retired union members, *see* Ex. B, Declaration of James R. Pedersen ("Pedersen Decl."), as well as civically-engaged, registered Michigan voters, Mr. Duquette and Ms. Crimando, whose sensitive and personal information will be disclosed to DOJ if its efforts prevail, *see generally* Ex. C, Declaration of Donald N. Duquette ("Duquette Decl."); Ex. D, Declaration of Keely Crimando ("Crimando Decl."). Under Michigan law, the State "shall not release" these voters' driver's

---

[3] Even if Section 303 did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as they may under the NVRA. *See Pub. Int. Legal Found.*, 92 F.4th at 56.

license numbers, partial social security numbers, and full dates of birth. Mich. Comp. Laws §168.509gg.

In addition to defending their privacy interests, Proposed Intervenors have well-founded concerns about DOJ's intended use of their sensitive and personal voter information, particularly given that they engage in civic activities that could expose them to retaliation by the current presidential administration, which has repeatedly disregarded privacy protections over sensitive personal data.[4] *See* Crimando Decl., ¶¶7–9; Duquette Decl., ¶¶11–15.

***The Alliance.*** The Alliance is a nonprofit, nonpartisan organization whose membership includes more than 200,000 retired union workers that live in every county in Michigan. Pedersen Decl. ¶¶4, 7. Its mission is to ensure the social and economic justice and full civil rights of retirees, including by working to safeguard the right to vote. *Id.* ¶5. To that end, the Alliance encourages its members to register to vote, engages in registration drives, and educates voters. *Id.* ¶18. Members of the Alliance are politically active and are registered to vote at high rates. *Id.* ¶8. A long-term concern of the Alliance is protecting the privacy rights of its members, and to that end the Alliance regularly discusses with its members the risks of identity-fraud scams and how its members need to protect their confidential, personally identifying information to avoid such scams, which are disproportionately targeted at older Americans. *See id.* ¶¶12–13.

***Donald Duquette.*** Born and raised in the Upper Peninsula, Mr. Duquette has been

---

[4] For example, public reports have indicated that the Department of Government Efficiency ("DOGE") placed the security of millions of Social Security numbers at risk through improper maintenance. *See* Nicholas Nehamas, *DOGE Put Critical Social Security Data at Risk, Whistle-Blower Says*, N.Y. Times (Aug. 26, 2025), https://perma.cc/ZB7V-R645. Just this past week, the National Archives allegedly released the military records of a New Jersey gubernatorial candidate in violation of the Privacy Act, with the apparent aim of seeking to help her opponent. *See* Caroline Vakil, *Sherrill Campaign Slams Release of Military Records to Opponent's Ally*, The Hill (Sept. 25, 2025), https://perma.cc/8WZB-994P.

registered to vote in Michigan since 1968 and is currently registered in Washtenaw County. *See* Duquette Decl. ¶¶2–3. He dedicated his career to advancing child advocacy and child welfare, including as a clinical law professor at the University of Michigan, where he founded the law school's Child Advocacy Law Clinic. *Id.* ¶4. Believing that political participation is necessary to make the world a better place, he has been active in politics, advocacy, and activism. *Id.* ¶5. Mr. Duquette was an elected County Commissioner in Washtenaw County for nearly a decade, and has participated in numerous political rallies and local activist initiatives, even after he left elected office. *See id.* ¶¶5–6. He also served on the board of Voters Not Politicians—an organization dedicated to effecting systemic democratic reform through engaging citizens in Michigan. *Id.* ¶7. Throughout his lifetime of political activism, he always felt free to speak freely and unabashedly in support of his positions, without fear of retaliation or retribution. *See id.* ¶11. He is deeply concerned about the disclosure of Michigan voters' sensitive information, including his own, to DOJ because he credibly fears that such disclosure, in combination with DOJ's recent efforts to retaliate against the current administration's enemies, will chill the unvarnished political expression and activity that he engaged in throughout his career—and continues to engage in today. *See id.* ¶¶11–15.

**Keely Crimando.** Ms. Crimando has lived in Oakland County, Michigan for nearly all her life, and is currently registered to vote there. Crimando Decl. ¶2. A highly informed voter and a member of her local parent-teacher association, Ms. Crimando is also a small-scale influencer in her local area. *Id.* ¶¶3–4. Drawing on her college studies in public policy and her previous work on political campaigns, Ms. Crimando frequently posts on social media about issues of public concern, in which she highlights to her approximately 3,100 followers events of public concern that might not be noticed or that may be opaque to many citizens. *Id.* Individuals have come up to

Ms. Crimando in public and thanked her for her commentary, noting that it has helped them make decisions on how to vote. *Id.* ¶4. Ms. Crimando does not wish for her personal information to be disclosed to DOJ, fearing that if someone in the current administration disapproved of her political commentary, DOJ could investigate her sensitive voter information to retaliate against her. *See id.* ¶¶7–8. If the information were disclosed to DOJ, she would warily observe whether it appears that the government appeared to use the information in an inappropriate manner, and if so, she would reevaluate whether she could continue her public commentary, a practice that is very meaningful to her. *See id.* ¶¶4, 8.

## LEGAL STANDARD

To intervene as of right under Rule 24(a), the proposed intervenor must show that "1) the application was timely filed; 2) the applicant possesses a substantial legal interest in the case; 3) the applicant's ability to protect its interest will be impaired without intervention; and 4) the existing parties will not adequately represent the applicant's interest." *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)).

Alternatively, on a timely motion, a nonparty may be permitted to intervene if it "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to grant permissive intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Rule 24's requirements "should be 'broadly construed in favor of potential intervenors.'" *Stupak-Thrall v. Glickman*, 226 F.3d 467, 472 (6th Cir. 2000) (quoting *Purnell v. City of Akron*,

925 F.2d 941, 950 (6th Cir. 1991)).[5]

## ARGUMENT

**I.    Proposed Intervenors are entitled to intervene as of right.**

**A.    This motion is timely.**

Proposed Intervenors' motion is indisputably timely. DOJ filed suit on September 25, and this motion follows only 5 days later—before any case schedule has been set, before any Defendants have appeared or answered, and while this case remains at the preliminary stage. *See Priorities USA v. Benson*, 448 F. Supp. 3d 755, 763 (E.D. Mich. 2020) (stating it was "difficult to imagine a more timely intervention" when motion filed twenty days after lawsuit's initiation). And though Proposed Intervenors' "prompt" motion makes analyzing potential prejudice to existing parties "unnecessary," *id.*, there would be no prejudice here in any event because allowing intervention would not require altering any existing deadlines.

**B.    Proposed Intervenors have an interest in protecting their sensitive and personal information from improper disclosure to DOJ.**

Proposed Intervenors have significant cognizable interests in protecting their sensitive and personal information. The Sixth Circuit takes a "rather expansive" view as to what constitutes a protectable interest, *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997), and what counts as such an interest "is to be construed liberally." *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). The interest need only be "significantly protectable." *Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*, 41 F.4th 767, 772 (6th Cir. 2022). The burden of establishing an impairment of a protectable interest is "minimal," *Mich. State AFL-CIO*, 103 F.3d

---

[5] Proposed Intervenors file a Proposed Answer as required under Rule 24, *see* Ex. A, but also reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

at 1247, and the alleged impairment need only be possible, not certain, *see Purnell*, 925 F.2d at 948.

Proposed Intervenors satisfy that standard. Most obviously, the individual intervenors and the members of the Alliance all share the risk of having their sensitive information being disclosed to DOJ. Pedersen Decl. ¶¶15-16; Duquette Decl. ¶¶11–15; Crimando Decl. ¶6. The Alliance has long worked to protect the privacy interests of its members, who, as retired Americans, are disproportionately at risk of identity theft. Pedersen Decl. ¶¶12–13. The Alliance has long worked to protect the privacy rights of its members and in meetings with its members it regularly discusses the risks of identity theft and how to avoid identity-theft scams. *See id.* The threatened disclosure also threatens the Alliance's voter registration activities and programs, as it fears that the possibility of disclosure to DOJ will discourage prospective voters from registering. *Id.* ¶17.

Mr. Duquette and Ms. Crimando's interests in protecting their sensitive information are grounded in reasonable fears that the release of this information to DOJ could chill speech. For example, Ms. Crimando's social media dialogue with her many followers is deeply meaningful to her, but she fears that release of her confidential information could lead to retaliation if a member of the administration learned of her posts and disagreed with their content. Crimando Decl. ¶¶4, 8. Mr. Duquette has long engaged in political advocacy without fear of retribution, but he is deeply concerned that if DOJ gains access to voters' sensitive personal information, future generations will not feel secure in engaging in the same unabashed activism that he has long enjoyed. *See* Duquette Decl. ¶¶11, 13–14.

Courts regularly find Proposed Intervenors' concerns about the confidentiality and privacy of their sensitive information support intervention. *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in

confidentiality of non-public documents); *In re Sealed Case*, 237 F.3d 657, 663–64 (D.C. Cir. 2001) (holding intervenors had "legally cognizable interest in maintaining the confidentiality" of records); *Tarazi v. Oshry*, No. 2:10-CV-793, 2011 WL 1326271, at *4 (S.D. Ohio Apr. 4, 2011) (finding interest sufficient to support intervention "in resisting the disclosure of [intervenors'] identities"); *Compuware Corp. v. Moody's Invs. Servs., Inc.*, No. CIV. 03-70247, 2004 WL 1092285, at *1 (E.D. Mich. May 11, 2004) (finding interest sufficient to support intervention in "preventing disclosure" of confidential information).

The disclosure of Proposed Intervenors' confidential information as a result of this litigation would plainly impair Proposed Intervenors' interest in maintaining the confidentiality of that information. Once Proposed Intervenors' sensitive information is disclosed to DOJ, "the cat is out of the bag." *In re Sealed Case*, 237 F.3d at 664 (finding impairment when intervenor's confidential information was at risk of disclosure); *Kalbers*, 22 F.4th at 828 (holding intervenor's "interest in keeping its documents confidential would obviously be impaired by an order to disclose" those documents). Proposed Intervenors thus more than meet the "minimal" burden of showing impairment is "possible." *Mich. State AFL-CIO*, 103 F.3d at 1247.

### C.    The existing parties do not adequately represent Proposed Intervenors.

Proposed Intervenors cannot be assured adequate representation in this matter if they are denied intervention. The burden to show inadequate representation is "minimal," and Proposed Intervenors need only show that "representation *may* be inadequate.'" *Id.* at 1247 (emphasis added) (quotation omitted). Accordingly, courts are "liberal in finding" this requirement is met. 7C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. §1909 (3d ed. 2024) (noting that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests").

The existing parties—all government actors—do not adequately represent Proposed Intervenors' interests. DOJ naturally does not represent Proposed Intervenors' interests, as it seeks to forcibly compel production of Michigan's unredacted state voter registration list. While Michigan and its Secretary of State have, to date, resisted that demand, they too do not adequately represent Proposed Intervenors' specific interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003); *accord Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 899 (9th Cir. 2011) ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009))). This is because a government defendant's interests are "necessarily colored by [its] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998).

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (citing *Trbovich*, 404 U.S. at 538–39). The Supreme Court thus cautioned courts not to conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196.

Here, the existing Defendants and Proposed Intervenors do not share "identical" interests. For one, the existing Defendants are obliged to enforce the requirements of the NVRA and HAVA,

in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, they have an obligation to weigh and carry out public duties that Proposed Intervenors do not share. Indeed, the NVRA specifically requires State Defendants to "balance competing objectives"—maintaining accurate and current voter rolls while promoting access to the ballot box—that do not pertain to the Proposed Intervenors or their interests. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). Proposed Intervenors do not share these competing interests—they are focused entirely on maintaining the privacy of their sensitive personal information—whereas the State Defendants' competing interests may push them to acquiesce to DOJ's demands. *See Wineries*, 41 F.4th at 777 (finding governmental entity did not adequately represent interests of intervenors because the governmental entity had competing interests that "could diverge" from intervenors' interests, even though its interests also "overlapp[ed]" with intervenors).

## II.    Alternatively, Proposed Intervenors should be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. "Permissive intervention has a less exacting standard than mandatory intervention and courts are given greater discretion to decide motions for permissive intervention." *Priorities USA*, 448 F. Supp. 3d at 759–60 (citing *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989)).

Rule 24(b) is readily satisfied: Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors have moved promptly, so there will be no delay or prejudice. *See Buck v. Gordon*, 959 F.3d 219, 225 (6th Cir. 2020) (reversing denial of permissive intervention when court "discern[ed] no danger of undue delay or prejudice to the existing parties"); *Mich. State AFL-CIO*, 103 F.3d at 1248 (finding district court should have granted permissive intervention when "it [was] difficult to see how

granting intervention would have materially increased either delay or prejudice"). Proposed Intervenors' defense requires resolution of the same factual and legal issues raised in the underlying lawsuit.

Furthermore, under Rule 24(b), courts consider whether a proposed intervenor will "provide analysis that (the court hopes) will be well-reasoned and of assistance to the court's work." *Priorities USA*, 448 F. Supp. 3d at 766. Proposed Intervenors will provide the Court with a distinct viewpoint—that of Michigan voters—unencumbered by Defendants' obligations under the NVRA to balance competing policy objectives. *See id.* (granting permissive intervention when it was "important for the court to hear" the intervenor's "voice"). For this reason, courts routinely grant permissive intervention to civic organizations and individual voters to ensure their voices are heard when litigation implicates the rights of all voters. *E.g.*, *1789 Found. Inc. v. Fontes*, No. CV-24-02987-PHX-SPL, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc., v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *League of Women Voters of N.C. v. North Carolina*, No. 1:13CV660, 2014 WL 12770081, at *3 (M.D.N.C. Jan 27, 2014) (permitting individual voters to intervene).

## CONCLUSION

Proposed Intervenors respectfully request that the Court grant the motion to intervene.


September 30, 2025                                  Respectfully submitted,

                                                   */s/ Sarah S. Prescott*
                                                   Sarah Prescott
                                                   **SALVATORE PRESCOTT PORTER & PORTER**
                                                   105 E. Main St.
                                                   Northville, MI 48167
                                                   Telephone: 248-679-8711
                                                   prescott@spplawyers.com

Aria Branch
Joshua Abbuhl*
Branden Lewiston*
Derek A. Zeigler*
**ELIAS LAW GROUP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
Facsimile: (202) 968-4498
abranch@elias.law
jabbuhl@elias.law
blewiston@elias.law
dzeigler@elias.law

*Applications Forthcoming

*Attorneys for Proposed Intervenors*

**CERTIFICATE OF SERVICE**

I certify that on this 30th day of September 2025, I caused to be served a copy of the above

document and Exhibits on all counsel of record and parties via the ECF system.

*/s/ Sarah S. Prescott*
Sarah S. Prescott