**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

Case No. 1:25−cv−01148−HYJ−PJG

JOCELYN BENSON in her official capacity as Secretary of the State of MICHIGAN and the STATE OF MICHIGAN.

*Defendants*.

---

<u>**LEAGUE OF WOMEN VOTERS OF MICHIGAN'S MOTION TO INTERVENE AS DEFENDANT**</u>

Proposed Intervenor-Defendant League of Women Voters of Michigan moves to intervene as a defendant in the above-captioned lawsuit to safeguard the substantial and distinct legal interests of itself and its members, which will otherwise be inadequately represented. For the reasons discussed in the accompanying memorandum, Proposed Intervenor-Defendant is entitled to intervene in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2). In the alternative, Proposed Intervenor-Defendant requests permissive intervention under Rule 24(b). Proposed Intervenor-Defendant respectfully requests that the Court set a schedule regarding this motion to intervene that allows for Proposed Intervenor-Defendant's participation in any future briefings or hearings. Otherwise, Proposed Intervenor-Defendant's interests are at risk of being severely harmed, as described more fully in the memorandum in support of this motion.

Per Local Rule 7.1(d), counsel for Proposed Intervenor-Defendant conferred with counsel for the existing parties about their positions on this motion. On October 30, 2025, counsel for Plaintiff stated that "[w]ith the caveat that [Plaintiff] will of course review any motion filed and

1

make a final decision after review, in all likelihood [Plaintiff] would oppose." On October 30, an

attorney at the Michigan Attorney General's office informed counsel for Proposed Intervenor-

Defendant that the State Defendants do not concur in this motion, but will not oppose.

WHEREFORE, Proposed Intervenor-Defendant League of Women Voters of Michigan

requests that the Court grants the League leave to intervene in the above-captioned matter.

October 30, 2025                               Respectfully submitted,

                                              /s/ Mark Brewer
                                              Mark Brewer (P35661)
                                              Goodman Acker P.C.
                                              Two Towne Square, Suite 444
                                              Southfield, Michigan 48076
                                              MBrewer@goodmanacker.com

                                              Brent Ferguson*
                                              Daniel S. Lenz*
                                              Sejal Jhaveri*
                                              Renata O'Donnell*
                                              Heather Szilagyi*
                                              Alexis Grady*
                                              Kate Hamilton*
                                              Campaign Legal Center
                                              1101 14th St. NW, Suite 400
                                              Washington, DC 20005
                                              Tel: (202) 736-2200
                                              Fax: (202) 736-2222
                                              bferguson@campaignlegalcenter.org
                                              dlenz@campaignlegalcenter.org
                                              sjhaveri@campaignlegalcenter.org
                                              rodonnell@campaignlegalcenter.org
                                              hszilagyi@campaignlegalcenter.org
                                              agrady@campaignlegalcenter.org
                                              khamilton@campaignlegalcenter.org

                                              Maura Eileen O'Connor*
                                              Brennan Center for Justice
                                              at NYU School of Law
                                              777 6th St., NW, Ste. 1100
                                              Washington, DC 20002
                                              Tel: (202) 249-7190
                                              oconnore@brennan.law.nyu.edu

Andrew B. Garber
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

*Applications for Western District of Michigan
Admission Forthcoming*

Counsel for Proposed Intervenor-Defendant
League of Women Voters of Michigan

**<u>LEAGUE OF WOMEN VOTERS OF MICHIGAN'S MEMORANDUM IN SUPPORT OF
MOTION TO INTERVENE AS DEFENDANT</u>**

# TABLE OF CONTENTS

CONCISE STATEMENT ................................................................................................1

INTRODUCTION .........................................................................................................2

BACKGROUND ...........................................................................................................3

    I.      Procedural Posture .........................................................................................3

    II.     Factual Background .......................................................................................4

    III.    The League of Women Voters of Michigan ...................................................6

LEGAL STANDARD ...................................................................................................7

ARGUMENT ...............................................................................................................8

    I.      LWVMI is entitled to intervene as of right under Rule 24(a)(2) .................8

          A.  The motion is timely. .......................................................................8

          B.  LWVMI has significantly protectable interests related to this litigation ................9

          C.  The litigation will impact LWVMI's interests .......................................................10

          D.  LWVMI's interests are not adequately represented by the current parties ............10

    II.     In the alternative, LWVMI should be permitted to intervene under Rule 24(b)..........14

CONCLUSION...............................................................................................................15

**CONCISE STATEMENT**

Pursuant to Local Civil Rule 7.1(a), the League of Women Voters of Michigan states that intervention should be granted as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b).

## INTRODUCTION

Despite its limited role of enforcing federal election laws, the U.S. Department of Justice ("USDOJ") has undertaken an unprecedented data collection expedition, demanding voter information to which it has no legal right from 40 states.[1] USDOJ now seeks to use the federal courts to force compliance with those unlawful demands. In addition to this case, where the federal government seeks access to data beyond what the National Voter Registration Act ("NVRA"), Help America Vote Act ("HAVA"), Civil Rights Act ("CRA"), or state law permits, the United States has sued seven other states and one county.[2] But USDOJ is not investigating potential violations of the law. Rather, these efforts are an extraordinary expansion of federal collection of state voter data, without adhering to protections for voters' data or respecting the state's primacy in election administration.

Proposed Intervenor-Defendant the League of Women Voters of Michigan ("LWVMI") is one of Michigan's oldest and most well-established voter registration and education organizations. LWVMI represents thousands of members across Michigan whose personal information may be unlawfully shared depending on the outcome of this litigation. Because LWVMI's interests are directly impacted by this litigation, LWVMI has a right to intervene under Federal Rule of Civil Procedure 24(a)(2). In the alternative, LWVMI seeks permissive intervention under Rule 24(b)(1).

---

[1] Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. (Aug. 28, 2025), https://perma.cc/GXA2-HVZ6.

[2] *See United States v. Bellows*, No. 1:25-CV-468 (D. Me. filed Sep. 16, 2025); *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. filed Sep. 16, 2025); *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. filed Sep. 25, 2025); *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. filed Sep. 25, 2025); *United States v. Scanlan*, No. 1:25-cv-00371 (D.N.H. filed Sep. 25, 2025); *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. filed Sep. 25, 2025); *United States v. Page*, No. 8:25-cv-01370-DOC-ADS (C.D. Cal. filed June 25, 2025); *United States v. Bd. of Elections of the State of New York*, No. 1:25-cv-01338 (N.D.N.Y. filed Sep. 25, 2025).

**BACKGROUND**

**I.      Procedural Posture**

In the summer of 2025, USDOJ began sending letters to election officials in dozens of states, including Michigan, demanding production of nonpublic statewide voter registration lists. USDOJ wrote to Michigan on July 21, 2025, requesting information related to the State's voter registration processes, including an electronic copy of its statewide voter registration list. ECF No. 1 ¶ 35. On August 4, Secretary Benson requested more time to respond to USDOJ's request. *Id.* ¶ 41. USDOJ responded that this request was "unacceptable" and demanded the information by August 18. *Id.* On August 14, USDOJ demanded access to Michigan's unredacted voter registration list, invoking the CRA, the NVRA, and the HAVA. *Id.* ¶¶ 42-43. On September 2, Secretary Benson objected to USDOJ's request for access to the unredacted voter registration list. *Id.* ¶ 45. On September 9, Secretary Benson provided USDOJ with the public voter registration list but refused to provide access to the unredacted list. *Id.* ¶ 46.

USDOJ filed suit on September 25, 2025, alleging claims under the CRA, NVRA, and HAVA. ECF No. 1. Proposed Intervenor-Defendants Michigan Alliance for Retired Americans, Donald Duquette, and Keely Crimando moved to intervene on September 30. ECF No. 5. On October 1, USDOJ moved to stay this matter due to the lapse in appropriations. ECF No. 8. The Court issued an order denying the motion to stay the entire case and set a November 13 deadline to respond to the Intervenor Parties. ECF No. 9. On October 27, this Court granted Defendants' unopposed motion to extend their deadline to file a responsive pleading to November 12. ECF Nos. 11, 15.

3

## II.    Factual Background

USDOJ purports to rely on the CRA, HAVA, and NVRA to justify its demand for access to Michigan's nonpublic voter file. The CRA permits the Attorney General to demand access to voter records only in writing with "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. USDOJ claims that it requires access to the nonpublic voter file "to fulfill its duties of effectively assessing Defendants' compliance with . . . NVRA and HAVA." ECF No. 1 ¶ 7. But the NVRA and HAVA charge states, not USDOJ, with maintaining voter registration lists and removing ineligible voters from the rolls. *See* 52 U.S.C. § 20507(a); 52 U.S.C. § 21083(a)(1)-(2); H.R. Rep. No. 107-329, pt. 1, at 31-32 (2001) (emphasizing importance of administering elections at state and local level); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). Neither the NVRA nor HAVA tasks USDOJ with compiling a national voter registration list or performing list maintenance. *Id.* As such, USDOJ's invocation of the NVRA and HAVA fall short of the CRA's requirements for seeking sensitive voter data. 52 U.S.C. § 20703. Moreover, a snapshot of a registration list would not offer enough information to assess Michigan's list-maintenance practices, nor to determine whether Michigan requested sufficient identifying information at the time of registration.

Public reporting suggests that USDOJ seeks to create a national voter registration database, a concern heightened by its inability to identify a legitimate statutory purpose. According to this reporting, employees at USDOJ "have been clear that they are interested in a central, federal database of voter information," and asked to "discuss a potential information-sharing agreement" with other states to "help the department investigate election fraud" in coordination with the

Department of Homeland Security ("DHS").[3] As reported, these efforts are being conducted with "election integrity" advocates seeking to use a national voter registration database to substantiate debunked claims that millions of noncitizens voted in previous elections.[4] Some of these advocates have spread false claims of voter fraud and noncitizen voting in the 2020 election, despite studies and state audits that prove otherwise.[5]

      This data-collection effort coincides with an overhaul of the Systematic Alien Verification for Entitlements ("SAVE") database to add the ability to search for all Americans by social security number and the capacity for officials to run "bulk" searches of millions of records in a single query.[6] DHS has radically altered SAVE despite known issues with the underlying data, particularly unreliable citizenship data from the Social Security Administration.[7] Taken together, this reporting and USDOJ's barebones invocation of the NVRA and HAVA strongly suggest that the purpose of this data gathering relates to efforts to centralize a vast amount of data about American citizens. *See* Compl. ¶¶ 2, 16, 157, *League of Women Voters v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-03501 (D.D.C. Sep. 30, 2025), ECF No. 1.

---

[3] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, (Sep. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html; *see also, e.g.*, Jonathan Shorman, *DOJ is sharing state voter roll lists with Homeland Security*, Stateline (Sep. 12, 2025), https://perma.cc/ZU9N-GHTC.

[4] Jude Joffe-Block & Miles Parks, *The Trump administration is building a national citizenship data system*, NPR (June 29, 2025), https://perma.cc/4QRG-6RC3.

[5] Barrett & Corasaniti, *supra* note 3.

[6] Press Release, USCIS Deploys Common Sense Tools to Verify Voters, USCIS (May 22, 2025), https://perma.cc/HBZ5-RW2E; *see also* Jonathan Shorman, *Trump wants states to feed voter info into powerful citizenship data program*, Stateline (Aug. 15, 2025), https://perma.cc/A9ZU-SEKH.

[7] Letter from SSA Off. of Gen. Couns. to Fair Elections Ctr. 2 (July 13, 2023), https://perma.cc/KS2N-U2US; SSA Off. of the Inspector Gen., Cong. Resp. Rep., Accuracy of the Social Security Administration's Numident File No. A-08-06-26100, 13 (Dec. 18, 2006), https://perma.cc/5G2J-FF4V.

### III.    The League of Women Voters of Michigan

LWVMI is a nonpartisan, nonprofit, membership-based organization that encourages participation in government and works to increase Michiganders' understanding of public policy issues. Exhibit B, Declaration of LWVMI Co-President Lynne Kochmanski ("Kochmanski Decl."), ¶ 3. LWVMI is the Michigan affiliate of the League of Women Voters ("LWV"), which was founded in 1920 as an outgrowth of the struggle for voting rights for women. Kochmanski Decl., ¶ 4. LWV has more than one million members and supporters and is organized in more than 750 communities, every state, and the District of Columbia. Kochmanski Decl., ¶ 4. In Michigan, LWVMI and its members pursue their goal of expanding political participation by conducting nonpartisan voter registration drives, providing educational materials for voters, holding candidate forums, running voter workshops, and conducting get out the vote ("GOTV") efforts. Exhibit C, Declaration of Aedin Clements ("Clements Decl."), ¶¶ 9-10; Exhibit D, Declaration of Lynda "Jo" Foley ("Foley Decl."), ¶¶ 8-9. In 2024, LWVMI registered 11,441 voters, distributed about 700,000 pieces of GOTV material, conducted 237 candidate forums, and held 2,535 in-person voter education or registration events. Kochmanski Decl., ¶¶ 8-10.

LWVMI works to protect and expand the voting rights of its members and all eligible Michigan voters, including opposing proposals to require documentary proof of citizenship to register in Michigan and supporting efforts to increase access to voter registration and ensure transparent and accurate state voter rolls. Kochmanski Decl., ¶ 13. LWVMI works to advance voting reform legislation in Michigan including, but not limited to, Proposal 2 of 2022, which amended the Michigan Constitution to allow for early voting, a right to join a permanent absentee ballot list, expanded drop box access, and other voter protections. Kochmanski Decl., ¶ 11. LWVMI has opposed rollbacks of voter protections and supported the successful 2018 ballot

initiative that created an independent redistricting commission for Michigan, including by participating in litigation. Kochmanski Decl., ¶¶ 11-13.

LWVMI has over 3,000 members, with 33 local leagues throughout the state. Kochmanski Decl., ¶ 5. LWVMI relies on members and volunteers to conduct its work, including voter registration drives and outreach programs. Kochmanski Decl., ¶ 5. The vast majority of LWVMI's members and volunteers are registered voters whose personal information is at stake in this litigation, including their full names, dates of birth, residential addresses, and state driver's license numbers, non-driver photo ID numbers, or last four digits of their Social Security numbers. Kochmanski Decl., ¶¶ 17-18. Michigan law guarantees that state officials "shall not release a copy of that portion of a registration record that contains" a voter's "driver license or state personal identification card number[,]" or the "month and day of birth of a registered [voter]." Mich. Comp. Laws § 168.509gg; *see also* Mich. Comp. Laws §§ 15.243(1)(d), (1)(y)-(z); 168.509ii(1)(d). LWVMI members fear the unlawful disclosure of this information. For example, Aedin Clements and Jo Foley, LWVMI members, object to USDOJ's collection of their sensitive data and are concerned about the effects of that data collection. Clements Decl., ¶¶ 12-15; Foley Decl., ¶¶ 11-14.

## LEGAL STANDARD

A nonparty is entitled to intervene in an action as a matter of right when: (1) the motion to intervene is timely filed; (2) the proposed intervenors have "an interest relating to" the subject matter of the action; (3) the proposed intervenors are "so situated that disposing of the action may as a practical matter impair or impede [their] ability to protect [that] interest"; and (4) the proposed intervenors' interests are inadequately represented by the existing parties to the suit. Fed. R. Civ. P. 24(a)(2); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 190 (2022).

"Rule 24(a) is construed broadly, in favor of the applicants for intervention." *Scotts Valley Band of Pomo Indians of the Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990). "[T]he court must permit anyone to intervene who" meets Rule 24(a)'s criteria. *Blount-Hill v. Zelman*, 636 F.3d 278, 283 (6th Cir. 2011) (internal quotation marks omitted). "In evaluating the motion to intervene, the district court must accept as true the non-conclusory allegations of the motion[.]" *Timber View Props., Inc. v. M&T Prop. Invs. Ltd.*, Case No. 2:15-cv-2855, 2016 WL 3355455, at *6 (S.D. Ohio June 17, 2016).

Even if a nonparty cannot intervene as a matter of right, this Court may grant permissive intervention when the movant has "a claim or defense that shares with the main action a common question of law or fact," and intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). "The Court enjoys broad discretion in its decision to grant permissive intervention." *Usery v. Brandel*, 87 F.R.D. 670, 677 (W.D. Mich. 1980). Rule 24(b) "is to be construed liberally" to allow intervention. *Ohio Democratic Party v. Blackwell*, Case No. 2:04-cv-1055, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005).

## ARGUMENT

### I.    LWVMI is entitled to intervene as of right under Rule 24(a)(2).

LWVMI is entitled to intervene in this litigation because the motion is timely, the organization and its members have significant interests in the case, those interests will be impacted by the outcome, and no existing party adequately represents those interests.

### A.  The motion is timely.

LWVMI's motion is timely because it was filed within one month of the Complaint, when "this litigation is still in its formative phases without a scheduling order, [or] ongoing discovery[.]" *Nat'l Trust Ins. Co. v. Heaven Hill Distilleries, Inc.*, Case No. 3:14-cv-394, 2018 WL 1542148, at

8

*13 (W.D. Ky. Mar. 29, 2018). Defendants have not yet filed a responsive pleading, and no party has filed a substantive motion. Moreover, Plaintiffs' deadline to respond to the motion to intervene filed by the Michigan Alliance for Retired Americans, Donald Duquette, and Keely Crimando is November 13, two weeks from the filing of this motion. As such, no prejudice or delay will result if LWVMI's motion is granted, because there are no deadlines that will be disrupted.

**B. LWVMI has significantly protectable interests related to this litigation.**

This litigation is tied to LWVMI's organizational interests and the interests of its 3,000 members. In evaluating whether an interest meets the standard under Rule 24(a)(2), courts examine whether the proposed intervenor's interests are "direct, substantial interest[s]" and are "significantly protectable." *Purnell v. City of Akron*, 925 F.2d 941, 947 (6th Cir. 1991).

LWVMI also has organizational interests that are directly related to this litigation, substantial, and legally protectable. LWVMI has a longstanding interest in civic participation, as demonstrated by its engagement in communities across Michigan to register and educate voters. Kochmanski Decl., ¶ 7. LWVMI has an interest in the appropriate and lawful handling of election information. As part of its core work, LWVMI expends significant resources on the development and distribution of voter registration and education materials. LWVMI encourages eligible Michigan residents to register to vote and participate in elections. Kochmanski Decl., ¶¶ 9-11. LWVMI is concerned that civic participation will be frustrated if its members' sensitive information is disclosed to USDOJ, particularly to be used for improper purposes. Kochmanski Decl., ¶ 19. LWVMI is concerned that Michigan residents will be more hesitant to engage in the political process, including voting, advocating for or against legislation, and publishing candidate and ballot initiative assessments, for fear that their data will be misused for retaliation or harassment by the federal government. Kochmanski Decl., ¶¶ 17-19. LWVMI fears that it will

then have to spend more time and money on convincing voters to engage in these activities. USDOJ's aggressive demands for this data and lack of legitimate explanations for its proposed use amplify LWVMI's members' fears and frustrate LWVMI's core mission. Kochmanski Decl., ¶ 19.

LWVMI's members have interests that are directly related to the litigation, substantial, and legally protectable. LWVMI members are registered Michigan voters who risk having sensitive personal data disclosed to USDOJ without clarity about how it will be used. Clements Decl., ¶¶ 1, 4; Foley Decl., ¶¶ 1, 3. Members were required to submit their data to Michigan to exercise their right to vote and, at the time that the data was submitted, they understood that it would be kept confidential to the extent of the law. *See, e.g.*, Clements Decl., ¶ 4; Foley Decl., ¶ 3. LWVMI's members have a significant privacy interest in preventing the disclosure or unauthorized aggregation of their sensitive personal data, which is protected by Michigan law. *See* Mich. Comp. Laws §168.509gg (prohibiting most voter registration information from being released for public inspection). Further, LWVMI members are deeply committed to civic engagement. Like LWVMI, they fear that Michiganders will be less likely to register to vote because of possible disclosure of their data. *See* Clements Decl., ¶ 14; Foley Decl., ¶ 13. Members worry that fear of registration will frustrate LWVMI's mission to work towards a democracy where every person has the desire, right, knowledge, and confidence to participate. *See* Clements Decl., ¶ 14; Foley Decl., ¶ 13. As such, LWVMI's members' interests are directly related to this litigation because it implicates the proper use of their data and how they carry out LWVMI's work.

### C.  The litigation will impact LWVMI's interests.

This litigation directly impacts LWVMI's organizational interests and the interests of its members. Intervenors demonstrate that litigation impacts interests by showing that "the disposition of the action may . . . impair [their] ability to protect [their] interest [in the litigation]." *Purnell*,

925 F.2d at 945 n.4. "The applicants, however, need not show that substantial impairment of their interest will result" nor "that impairment will inevitably ensue from an unfavorable disposition[.]" *Id.* at 948. "Keeping with the general theme of Rule 24(a)," the burden of showing that the litigation will impact intervenors' interests "is minimal." *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula*, 41 F.4th 767, 774 (6th Cir. 2022). "The rule is satisfied whenever disposition of the present action would put the movant at a practical disadvantage in protecting its interest." *Id.*

LWVMI's interest in civic participation will be impaired if USDOJ can use this Court to compel Michigan to produce protected, sensitive voter data. Michigan citizens may be more hesitant to register to vote for fear that their data will be released or used inappropriately. Kochmanski Decl., ¶¶ 17, 19; *see also* Mich. Comp. Laws §168.509gg. LWVMI's interest in appropriate and lawful handling of election information will also be impaired because voters will suffer the disclosure of their personal information to the federal government for reasons that could extend beyond USDOJ's legal authority. Kochmanski Decl., ¶¶ 17-19. Moreover, LWVMI will have to minimize other core activities to focus on educating voters about how data is being used and responding to concerns.

The disposition of this litigation will also impact LWVMI's members' ability to protect their interests. USDOJ seeks virtually unlimited access to personal information that members provided with the expectation that it would be protected. Kochmanski Decl., ¶¶ 16, 19. If USDOJ receives such access, members fear disclosure of their information for unknown or pretextual purposes. Clements Decl., ¶ 13; Foley Decl., ¶ 12. Further, LWVMI members are committed to civic engagement, and, like LWVMI, they fear that eligible residents will be less likely to register to vote because of disclosure of their data. Clements Decl., ¶ 14; Foley Decl., ¶13.

**D.  LWVMI's interests are not adequately represented by the current parties.**

LWVMI's interests are not adequately represented by any existing party. The burden of showing that an intervenor's interests are not adequately represented is "treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). That burden remains minimal even if "a presumption of adequate representation arises," because the intervenor and existing parties "share 'the same ultimate objective[.]'" *Wineries of the Old Mission Peninsula Ass'n*, 41 F.4th at 774. Any such "presumption may be overcome by showing . . . that representation of [an intervenor's] interest *may be* inadequate[.]" *Id.* (emphasis in original).

Defendants do not adequately represent LWVMI's interests. Even assuming that Defendants and LWVMI share the ultimate objective of protecting voters' data from disclosure, Defendants do not have the same incentive to raise arguments necessary for LWVMI's adequate representation for two reasons.

*First*, LWVMI is comprised of individual members whose sensitive data could be disclosed to USDOJ. As such, LWVMI and its members have a personal stake in the litigation that Defendants do not. Defendants' interest diverges from LWVMI's and its members because Defendants' interest concerns enforcing privacy laws and maintaining Michigan's sovereignty. But LWVMI is comprised of individuals who personally fear USDOJ accessing their data unlawfully. In this way, LWVMI is similar to the organization of homeowners that successfully intervened in *Wineries of the Old Mission Peninsula Association*. In that case, a group of homeowners in a township sought to intervene as a defendant in an organization's First Amendment challenge to the township's rules restricting wineries. The township had the "ability to represent the citizenry at large and its interests on a macro level" but was "limited in how much it could do to represent the interest of individual citizens implicated by this lawsuit[.]" *Id.* at 775.

12

Only individual citizens, such as the group of homeowners, could represent that interest. The court found that "although there may be *some* overlapping interests between [the intervenor] and the Township, the Township is not necessarily able to represent the specific interest of [the intervenor] in this lawsuit and intervention by right is appropriate." *Id.* (emphasis in original). Here, LWVMI has an interest in this litigation on its own behalf and on behalf of its members that differs in kind and degree from the interests of the State Defendants and necessitates intervention as of right.

*Second*, Defendants have statutorily imposed obligations that diverge from those of LWVMI and its members. *See Berger*, 597 U.S. at 195. Defendants have an obligation to enforce the NVRA, HAVA, and state laws governing list maintenance. The NVRA instructs that Defendants must "balance competing objectives," including maintaining accurate voter rolls by removing ineligible voters, subject to procedural safeguards. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019). Defendants, therefore, face different constraints from LWVMI that renders Defendants' representation of LWVMI's interests inadequate. *See supra* Part I(B). Given these constraints, the "Sixth Circuit has recognized that the interests of election officials in voting roll maintenance are sufficiently distinct from those of . . . their constituents to warrant intervention by those who could be impacted by the results of the maintenance process." *See PILF, Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799 (E.D. Mich. 2020) (citing *League of Women Voters of Mich. v. Johnson*, 902 F.3d 572, 579 (6th Cir. 2018)). As such, LWVMI should be permitted to intervene as of right so that it can protect the interests of itself and its members, who are impacted by the results of the maintenance process that Defendants must implement.[8]

_____

[8] As noted, the Michigan Alliance for Retired Americans, Donald Duquette, and Keely Crimando have sought to intervene. ECF No. 7. As the Alliance and these individuals are not yet parties, they

**II.**     **In the alternative, LWVMI should be permitted to intervene under Rule 24(b).**

Even if the Court finds that LWVMI is not entitled to intervene under Rule 24(a), it should

nonetheless permit intervention under Rule 24(b) because LWVMI has "a claim or defense that

shares with the main action a common question of law or fact," and the intervention will not

"unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

In considering whether to permit intervention under Rule 24(b), the Court may consider the Rule

24(a) factors, all of which weigh in favor of LWVMI's intervention. *Bay Mills Indian Cmty. v.

Snyder*, 720 F. App'x 754, 759 (6th Cir. 2018) ("District courts can consider [mandatory

intervention] factors when evaluating permissive intervention motions.").

The permissive-intervention standard is satisfied because LWVMI "state[s] a common

question of law or fact[.]" *Grainger v. Ottawa County*, 90 F.4th 507, 518 (6th Cir. 2024). At issue

here is USDOJ's effort to gain millions of Michiganders' sensitive data, despite laws safeguarding

that information. Determining whether LWVMI's defenses apply will require examining the same

facts as determining whether USDOJ can lawfully have unfettered access to the sensitive voter

data.

LWVMI's participation will not delay or prejudice the adjudication of the existing parties'

rights because the litigation is "in its formative phase[.]" *Nat'l Trust Ins. Co.*, 2018 WL 1542148,

at *13. Further, as a longtime stakeholder in Michigan, LWVMI has participated in litigation and

---

cannot adequately represent LWVMI's interests. *See Moses v. City of Perry*, 90 F.4th 501, 505
(6th Cir. 2024) ("[A] nonparty does not become a party until the district court grants the motion to
intervene."). LWVMI respectfully submits, however, that if the Court finds that intervention is
warranted under either Rule 24(a) or (b) for the Alliance, Duquette, and Crimando, intervention is
likewise appropriate for LWVMI.

understands the importance of abiding by the Court's schedule, which it will follow in this litigation as it has in previous litigation.

Additional factors weigh in favor of intervention. As explained, the nature and extent of LWVMI's interests are significant. *See supra* Part I(B). And existing parties fail to adequately represent those interests. *See supra* Part I(D). Moreover, LWVMI will significantly contribute to development of the lawsuit's factual issues. Through decades of experience advocating for Michigan's democracy and connection to thousands of individual members impacted by this litigation, LWVMI can help develop the factual record in a manner that is unlike any existing party.

## CONCLUSION

For the reasons stated, this Court should grant the League of Women Voters of Michigan's motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, should grant permissive intervention under Rule 24(b).[9]

---

[9] Should this Court deny intervention, LWVMI respectfully requests permission to participate as an *amicus curiae*, including leave to file a brief in opposition to any motion for interim or final relief and the opportunity to argue before the Court in dispositive hearings.

Dated: October 30, 2025                    Respectfully submitted,

*/s/Mark Brewer*
Mark Brewer (P35661)
Goodman Acker P.C.
Two Towne Square, Suite 444
Southfield, Michigan 48076
MBrewer@goodmanacker.com

Brent Ferguson*
Daniel S. Lenz*
Sejal Jhaveri*
Renata O'Donnell*
Heather Szilagyi*
Alexis Grady*
Kate Hamilton*
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Maura Eileen O'Connor*
Brennan Center for Justice
at NYU School of Law
777 6th St., NW, Ste. 1100
Washington, DC 20002
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber
Brennan Center for Justice

at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

\* *Applications for Western District of Michigan Admission Forthcoming*

Counsel   for   Proposed   Intervenor-Defendant League of Women Voters of Michigan

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 30th day of October 2025, I caused to be served a copy of the above

document and Exhibits on all counsel of record and parties via the ECF system.

/s/ *Mark Brewer*
Mark Brewer

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief contains 4,277 words and therefore complies with the requirement that a non-dispositive motion that is produced on a computer shall not exceed four thousand three hundred (4,300) words, to include any headings, footnotes, citations and quotations. The 2024 version of Word for Microsoft Office 365 was used to generate this word count.

/s/ *Mark Brewer*
Mark Brewer