UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO: 1:25-cv-1148-HYJ-PJG |
| Plaintiff, | HON. HALA Y. JABOU |
| v. | |
| JOCELYN BENSON, in her official capacity as Secretary of State of the State of Michigan, and the State of Michigan, | **OPPOSITION TO MOTIONS TO INTERVENE** |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE BY MICHIGAN ALLIANCE FOR RETIRED AMERICANS (DOC. 5) AND THE MOTION TO INTERVENE BY THE LEAGUE OF WOMEN VOTERS OF MICHIGAN (DOC. 17)**

## **TABLE OF CONTENTS**

BACKGROUND...................................................................................6

LEGAL STANDARDS......................................................................12

ARGUMENT....................................................................................13

I.      PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT....................................................................13

A.      Proposed Intervenors Have No Interest in This Action…………....................13

1.      HAVA and the CRA Confer No Private Right of Action and Limit Defendants to Responsible Government Officials.............................................…………...................14

2.      Voter Information is not at Risk of Improper Disclosure in this Action………..................................................................…….................................16

3.      Proposed Intervenors' Fail to Show a Particularized Harm in Protecting Their Information and Privacy and That of Michigan Voters ……………….……..18

B.      Proposed Intervenors Cannot Show an Interest That May Be Impaired by the Disposition of this Action…………………....................................................19

C.      Proposed Intervenors Cannot Show Inadequate Representation ……...........20

II.     PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION....................................................................21

CONCLUSION................................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Ams. United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303 (6th Cir. 1990) ................................................................................12

*Berger v. N. Carolina State Conf. of NAACP*, 597 U.S. 179 (2022).........................12

*Bradley v. Milliken*, 828 F.2d 1186 (6th Cir. 1987)......................................20-22

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008).....................................14

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989).....................................19

*Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775 (6th Cir. 2007).................................................................................................12

*Diamond v. Charles*, 476 U.S. 54 (1986)...................................................13

*Donaldson v. United States*, 400 U.S. 517 (1971).........................................13

*League of Women Voters of Va. v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 460 (W.D. Va. 2020)........................................................................13

*Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775 (E.D. Va. 1989)...........................................................17

*Purnell v. City of Akron*, 925 F.2d 941 (6th Cir. 1991).....................................12

*Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 5:24-cv-00547-M, 2024 WL 4349904 (E.D.N.C. Sept. 30, 2024)...................................13, 19, 21

*Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013).............................................22

*Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991)..........................................13

*United States v. Alabama*, No. 2:06-CV-392-WKW, 2006 WL 2290726 (M.D. Ala. Aug. 8, 2006)...........................................................................16, 19

*United States v. New York State Bd. of Elections*, 312 Fed. App'x 353 (2d Cir. 2008)..................................................................................16

*United States v. N. Carolina Bd. of Elections*, No. 5:25-cv-00283-M-RJ, Consent Order and Judgment (E.D.N.C. Sept. 8, 2025)........................................17


**Statutes**

52 U.S.C. § 20501(b)(4)...............................................................................6

52 U.S.C. § 20507(a)(4)...............................................................................6

52 U.S.C. § 20507(i)................................................................................6, 8

52 U.S.C. §§ 20701-20706..........................................................................6

52 U.S.C. § 20701.....................................................................................15

52 U.S.C. § 20703.....................................................................................15

52 U.S.C. § 20705.....................................................................................15

52 U.S.C. § 20706.....................................................................................15

52 U.S.C. § 21083(a)..........................................................................passim

52 U.S.C. § 21111.....................................................................................14

Pub. L. No. 107-252, 116 Stat. 1666.........................................................14


**Rules**

Fed. R. Civ. P. 24................................................................................passim


**Legislative Materials**

H.R. Rep. No. 107-329(I)...............................................................................7

**Secondary Materials**

Maryland Gen. Assembly, Dep't of Legislative Servs., Office of Legislative Audits,

    Audit Report: State Bd. of Elections (Oct. 2023)..........................................9

U.S. Dep't of Just., Letter to Michigan Secretary of State Jocelyn Benson dated July

    21, 2025 ("July 21 Letter")................................................................8-9

U.S. Election Assistance Comm'n, Election Administration and Voting Survey

    (June 2025) ("2024 EAVS Report")...............................................passim

U.S. Election Assistance Comm'n, About the EAC, https://www.eac.gov...................8

## **BACKGROUND**

This is a straightforward case brought by the Attorney General of the United States to enforce the requirements of three complimentary Federal statutes governing voter registration and voting records pertaining to Federal elections. The Civil Rights Act of 1960 ("CRA") requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any Federal office for a period of twenty-two months after any Federal election, and to produce those records to the Attorney General upon request. *See* 52 U.S.C. §§ 20701-20706.

The National Voter Registration Act of 1993 ("NVRA") mandates that responsible election officials "ensure that accurate and current voter registration rolls are maintained" for Federal elections. 52 U.S.C. § 20501(b)(4). To that end, Section 8 of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of… the death of the registrant," or "a change in the residence of the registrant…" 52 U.S.C. § 20507(a)(4). Section 8(i) of the NVRA provides that states shall make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," with certain exceptions. 52 U.S.C. § 20507(i).

The purpose of the Help America Vote Act of 2002 ("HAVA") "is to improve our country's election system" by recognizing "the federal government can play a

6

valuable [role] by assisting state and local government in modernizing their election systems." H.R. Rep. No. 107-329(I) at 31-32 (2001). HAVA imposes "minimum requirements" for the conduct of Federal elections. *Id.* at 35.  Specifically, all states are required to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and administered at the State level" that contains "the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State…" 52 U.S.C. § 21083(a)(1)(A).  Section 303 of HAVA provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," among other requirements. 52 U.S.C. § 21083(a)(4).

The United States, acting through the Attorney General, routinely investigates state compliance with the list maintenance requirements for Federal elections.[1]  Identification of noncompliant states is accomplished, in part, by reviewing the biennial Election Administration and Voting Survey ("EAVS") report prepared by the U.S. Election Assistance Commission ("EAC"), "an independent, bipartisan commission whose mission is to help election officials improve the

---

[1] A list of HAVA and NVRA enforcement actions brought by the U.S. Department of Justice's Voting Section is available at https://www.justice.gov/crt/voting-section-litigation.

administration of elections and help Americans participate in the voting process."[2] Michigan, like other states, provided the EAC with the voter registration and list maintenance data included in the EAVS report.

Michigan's data and answers as reflected in the 2024 EAVS Report, published on June 30, 2025, indicated several potential issues inconsistent with reasonable list maintenance efforts. Based on its review of the EAVS data, the Department of Justice (the "Department") sent detailed inquiries regarding Michigan's list maintenance procedures to the Michigan Secretary of State in a letter dated July 21, 2025 ("July 21 Letter"). Compl. ¶¶ 35, 38-40, Doc. 1; *see also* July 21 Letter, attached hereto as "Exhibit 1." The Department's July 21 Letter also requested, pursuant to Section 8(i) of the NVRA, 52 U.S.C. § 20507(i), the current electronic copy of Michigan's computerized, statewide voter registration list ("SVRL") required by Section 303(a) of HAVA, 52 U.S.C. § 21083(a). Compl. ¶ 35, Doc. 1.

As an example, the Department's July 21 Letter noted that there are nearly as many registered voters listed as active as the citizen voting age population in Michigan, with a registration rate in 2024 of 95 percent of the citizen voting age population. July 21 Letter at 2. The national average registration rate in 2024 was 86.6 percent of the citizen voting age population. 2024 EAVS Report at 160. The low

---

[2] EAC website, "About the EAC," https://www.eac.gov/about.

removal rate suggests unreasonable list maintenance efforts.[3]

The EAVS report indicated that the ratio of active registered voters to citizen voting age population has been unusually high for several years, with Michigan reporting a registration rate of 95.5 percent of citizen voting age population in 2022 and 95.3 percent in 2020. 2024 EAVS Report at 157. As another example, the Department's July 21 Letter noted that in the EAVS data for Question A12a, Michigan removed just 4.2 percent of registered voters, from the list of eligible voters, which was well below the national average of 9.1 percent. Compl. ¶ 39, Doc. 1. Again, Michigan's low percentage of removals of registered voters suggests that the state's list maintenance efforts are not reasonable.

Michigan also sent confirmation notices to just 4.5 percent of its voting population, versus a national average of 19.5 percent. Compl. ¶ 39, Doc. 1. Michigan failed to provide an explanation for its reported EAVS data in response to the Department's July 21 Letter. Compl. ¶ 49, Doc. 1.

On August 14, 2025, the Department sent an updated letter to Jocelyn Benson, the Secretary of State of Michigan ("Secretary Benson"), which provided clarifications regarding its previous request for information and records related to Michigan's statewide voter list maintenance activities. Compl. ¶ 42, Doc. 1. The letter explained that the Department's request for Michigan's SVRL, including the

---

[3] *See* Maryland Gen. Assembly, Dep't of Legislative Servs., Office of Legislative Audits, Audit Report: State Bd. of Elections 10-12 (Oct. 2023) (describing deficiencies in the state board's failure to identify and remove duplicate registrations and deceased voters), *available at*
https://dls.maryland.gov/pubs/prod/NoPblTabPDF/SBE23.pdf.

registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number ("SSN4"), was pursuant to its authority under the NVRA, HAVA, and CRA and the purpose of the request was to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA. *Id.* ¶¶ 42-44. The letter cited provisions of Federal law indicating that all data received from Michigan would be "kept and treated consistently with the Privacy Act" and other applicable law, including the CRA. *Id.* ¶¶ 43-44.

In letters dated September 2, 2025, and September 9, 2025, Secretary Benson declined to provide the Department with data beyond what was included in "the public version of our statewide voter registration list." *Id.* ¶ 46. The public version does not include the identifying information required by Section 303 of HAVA, including the driver's license and SSN4, thereby preventing the Department from enforcing HAVA and assessing compliance with the NVRA. *Id.* ¶¶ 46-47.

Michigan is a member of the Electronic Registration Information Center ("ERIC"), a private organization that has indicated its mission includes, among other things, the means "to assist states in improving the accuracy of America's voter rolls…" *Id.* ¶ 52 (citation omitted). According to ERIC's website, "Members submit dates of birth, driver's license/ID card numbers, and Social Security numbers to ERIC…" *Id.* "At least every 60 days, each member submits their voter registration data and licensing and identification data from their MVD to ERIC. ERIC refers to these data as Member Data. Data fields related to name, address,

driver's license or state ID number, last four digits of social security number, date of birth, and activity date are required, if present. Members also submit information on current record status (e.g., is the record "active" or "cancelled"), phone number, and email address when available. These fields improve the quality of the data matching process." *Id.*

Michigan voluntarily provides the identical information that the Department has requested to ERIC, which unlike the Department lacks any enforcement authority over HAVA (which is reserved exclusively to the Attorney General) and other federal registration laws such as the NVRA. *Id.* ¶ 53.

On September 25, 2025, the Department filed this action to enforce the requirements of the CRA, HAVA, and the NVRA. Compl., Doc. 1. On September 30, 2025, the Michigan Alliance for Retired Americans filed their Motion to Intervene, Doc. 5. On October 30, 2025, the League of Women Voters of Michigan filed their Motion to Intervene, Doc. 17. The United States files this consolidated opposition to both Motions, which make similar arguments. The two groups of movants are collectively referred to as "Proposed Intervenors."

Proposed Intervenors have failed to establish that they meet the standards for intervention as of right, as set forth in Federal Rule of Civil Procedure 24(a), or for permissive intervention, as set forth in Federal Rule of Civil Procedure 24(b). Each lack standing.  Each has failed to show inadequate representation by the Defendants. Each present only a generalized interest in preventing the United States from obtaining relief from Defendants' violations of Federal law.  And each

offers only a speculative basis for intervention that fails to articulate any concrete grievance or interest that has been or may be violated. For the reasons specified below, both Proposed Intervenors' motions should be denied.

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 24 provides the standards for intervention of right and permissive intervention. Intervention of right is appropriate if the proposed intervenor: (1) files in a timely manner; (2) demonstrates an interest in the action; (3) shows that the interest may be impaired by the disposition of the action; and (4) has an interest not otherwise adequately protected. Fed. R. Civ. P. 24(a)(2); *see also Berger v. N. Carolina State Conf. of NAACP*, 597 U.S. 179, 190 (2022) (same); *Ams. United for Separation of Church & State v. City of Grand Rapids*, 922 F.2d 303, 305 (6th Cir. 1990) (same). The Proposed Intervenors must show that they have a substantial interest in the subject matter of this litigation. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007). "[E]stablishing a substantial legal interest is necessarily fact-specific." *Id.* (citations omitted).

Permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2) may be appropriate if the proposed intervenor shows the motion is timely and if the applicant's claim or defense and the main action have a question of law or fact in common. *Purnell v. City of Akron*, 925 F.2d 941, 950-51 (6th Cir. 1991). "[T]he district court, in exercising its discretion, must consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

*Id.* at 951.

## <u>ARGUMENT</u>

I.   **PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT.**

### A.   **Proposed Intervenors Have No Interest in This Action.**

To support intervention, the intervenor's interest must be a particularized and legally protected interest rather than a general grievance. *See* Fed. R. Civ. P. 24(a)(2). That necessitates "a significantly protectable interest," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), requiring that the intervenor establish the legal right to bring or defend the claim before the district court as a plaintiff or defendant. *See Diamond v. Charles*, 476 U.S. 54, 66–67 (1986). The intervenor must show that they "stand to gain or lose by the direct legal operation of the district court's judgment" on the complaint. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991). "An 'interest' shared by all members of an electorate is not 'sufficient[ly particularized] to meet the requirements of Rule 24(a).'" *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, No. 5:24-cv-00547-M, 2024 WL 4349904, at *2 (E.D.N.C. Sept. 30, 2024) (denying motion to intervene by the North Carolina Conference of the NAACP) (quoting *League of Women Voters of Va. v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 460, 466 (W.D. Va. 2020)). Proposed Intervenors cannot meet their burden.

1.   <u>HAVA and the CRA Confer No Private Right of Action and Limit Defendants to Responsible Government Officials.</u>

Neither HAVA nor the CRA create a private right of action. Turning first to

HAVA, the only enforcement provision in the Act authorizing a cause of action in Federal court is found at Section 401, which provides that:

> The *Attorney General* may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083, and 21083a of this title [Sections 301, 302, 303, and 303a of HAVA].

52 U.S.C. § 21111 (emphasis added).

Aside from that right of action, granted exclusively to the Attorney General of the United States, no other explicit right of action in Federal court exists to enforce the provisions of HAVA. Consequently, private parties may not bring Section 303 claims or make requests for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curiam).

HAVA's text likewise limits who may be a defendant. As HAVA's preamble makes clear, the provisions of Title III of the Act "establish minimum election administration standards for States and units of local government … responsibl[e] for the administration of Federal elections." Pub. L. No. 107-252, 116 Stat. 1666. Proper party defendants in a Section 303 enforcement action therefore are limited to "any State or jurisdiction." 52 U.S.C. § 21111. Under Section 303(a), "State or jurisdiction" includes their election officials who are responsible for implementing the statutory mandates. *See*, *e.g.*, 52 U.S.C. §§ 21083(a)(1)(A), 21083(a)(1)(A)(vi), 21083(a)(5)(A)(i), 21083(a)(5)(A)(ii), 21083(a)(5)(A)(iii). To summarize, Section 303 of HAVA regulates election administrators responsible for

14

timely updating Michigan's computerized statewide voter registration list for Federal offices; the State and those officials are the only valid defendants.

The CRA has limitations on parties that parallel those included in HAVA. Title III of the CRA provides that only the Attorney General of the United States may bring an action in Federal court to enforce the Act's provisions for retaining and producing election records upon request. *See* 52 U.S.C. §§ 20703 & 20705.

Like HAVA, the CRA limits defendants to certain election officials. Section 301 of the CRA applies to "*[e]very officer of election*" who must "retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for Federal office "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (emphasis added). Section 306 of the CRA makes this explicit, defining the term "officer of election" as "any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting" in any Federal election. 52 U.S.C. § 20706.

Proposed Intervenors do not contend, and cannot establish, that they have any responsibilities for voter list maintenance under Section 303 of HAVA or that they are required to maintain and produce voter registration records under Sections 301 or 306 of the CRA. Rather, they assert only that they are organizations that perform voter engagement and education for some voters and seek to maintain the

privacy of voters they claim to represent.  *See* Doc. 5 at 10; Doc. 17 at 9-11. These fall well outside the clear language of the parties covered under the provisions of HAVA and the CRA that the Attorney General is enforcing in this action.

Federal courts have not permitted intervention by private parties and even for some election boards in previous Section 303 enforcement actions brought by the Attorney General. In *United States v. Alabama*, the Chairs of the Alabama Democratic Executive Committee and the Alabama Democratic Conference moved to intervene for the purpose of suggesting special masters to remedy the Section 303 violation. No. 2:06-CV-392-WKW, 2006 WL 2290726, at *1 (M.D. Ala. Aug. 8, 2006). The court denied their motions, concluding that "HAVA does not confer a private right of action. Congress granted explicitly to the Attorney General of the United States the right of enforcement of Sections 301, 302, and 303 of HAVA." *Id.* at *4. Therefore, the court found that the proposed intervenors did not have a "legally protectable" interest under HAVA and denied their motion. *Id. See*, *also United States v. New York State Board of Elections*, 312 Fed. App'x 353 (2d Cir. 2008).

        2.   <u>Voter Information is at not at Risk of Improper Disclosure in This Action.</u>

Proposed Intervenors' speculative concerns about the privacy of data that voters have already submitted to state election officials are completely unfounded. The United States' requests in this matter are authorized by Congress. The Complaint requests, *inter alia*, that the Court "order Defendants to provide to the United States the current electronic copy of Michigan's computerized statewide voter registration list, with all fields, including each registrant's full name, date of

birth, residential address, and either their state driver's license number, or the last four digits of their Social Security number …" Compl. at 19, Doc. 1. The requested relief encompasses the requirements pursuant to each relevant statute, and goes no further, to ensure and enforce compliance.

The speculative injuries alleged here "[do] not rise to the level required for intervention as a matter of right." *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989). One of the law firms representing some of the Proposed Intervenors in this case made similar alarmist arguments about the Attorney General's enforcement of Section 303 of HAVA in North Carolina. There, the Federal court denied the motions to intervene when those arguments objectively proved to be unfounded.[4] *See* Consent Judgment and Order, *United States v. N. Carolina Bd. of Elections*, No. 5:25-cv-00283-M-RJ, at 12 (E.D.N.C. Sept. 8, 2025), attached hereto as Exhibit 2. Notably, the consent order there made clear that: "All records and data received by the United States from the State Board Defendants will be kept securely and treated consistently with the Privacy Act, 5 U.S.C. § 552a, *et seq*. To the extent confidential records or data is requested, the State Board Defendants reserve the right to seek a protective order from the court." *Id.* Therefore, in that case, as in this one, the United States has made clear it will protect voter information provided by the state consistent with the requirements of the Privacy Act, the CRA, and other applicable Federal law.

---

[4] Two of the groups of proposed intervenors in that case have filed motions for reconsideration,

**3.    Proposed Intervenors' Fail to Show a Particularized Harm in Protecting Their Information and Privacy and That of Michigan Voters.**

Proposed Intervenors argue that their memberships strongly oppose surrendering their personal information to the federal government. In support, Proposed Intervenors rely on speculative declarations claiming fear of misuse and contentions unrelated to this litigation that the current administration "will misuse that information and target perceived political enemies […]." Crimando Decl., Doc. 1, Exh. D, ¶ 7. Proposed Intervenors' alarmist assertions, which as explained above already have proven to be without merit, distract from the straightforward records claims brought by the Attorney General pursuant to enforcement powers conferred by Congress.

Furthermore, Proposed Intervenors' argument ignores that Federal agencies routinely are provided and maintain the same data being sought in this action. Individuals, including those Proposed Intervenors say they represent, routinely share sensitive personal information—such as Social Security numbers, dates of birth, income, education, immigration status, and addresses—with Federal agencies like the IRS (for tax filing and refunds), SSA (for Social Security benefits), HHS (for Medicaid and Medicare), Department of Education (for Federal student aid), State Department (for passports), Selective Service (for draft registration), and the Census Bureau (for Federally mandated surveys used for representation and funding allocation).

---

which were pending when the case was stayed due to the Federal government shutdown.

Nor does it matter that voting registration is implicated in this matter. "[C]ourts that have addressed intervention motions from similarly situated prospective intervenors… have regularly denied intervention as of right under Rule 24(a)." *League of Women Voters*, 458 F. Supp. 3d at 465 (collecting citations). Here, "[t]here is nothing that distinguishes the Prospective Intervenors' interest in this case from that of any other eligible voter" in Michigan. *Id*. Proposed Intervenors have interests that are completely indistinguishable from millions of other Michigan citizens of voting age.

### B.   Proposed Intervenors Cannot Show an Interest That May Be Impaired by the Disposition of this Action.

Next, Proposed Intervenors must establish that their purported interest that may be impaired by the disposition of the action. *See* Fed. R. Civ. P. 24(a)(2); *Ams. United*, 922 F.2d at 305. In this factor, "'[t]he focus ... is on whether the proposed intervenor would suffer a 'practical disadvantage or impediment' if not permitted to intervene.'" *Republican Nat'l Comm*., 2024 WL 4349904, at *2. "This requirement is 'intimately related' to the alleged interest sought to be protected" by the Proposed Intervenors. *United States v. Alabama*, 2006 WL 2290726, at *5 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)). Proposed Intervenors cannot make their required showing.

For the reasons explained in the previous section, Proposed Intervenors have no interest because neither the CRA nor HAVA allows private individuals the right to be a party in this action. Furthermore, Proposed Intervenors have failed to show an interest distinguishable from that of other Michiganders.  This is a dispute

between the Attorney General of the United States who requested voter registration records, and the State of Michigan that maintains those records. The United States is not seeking, and will not be seeking, any information from a single member of the groups represented by the Proposed Intervenors, nor will it be seeking more information than those members have already voluntarily submitted to the State of Michigan to be eligible to participate in Federal elections. Nor will the Attorney General be seeking more information than has already been provided by the State to a non-governmental organization (ERIC), for which the United States is aware of no objection from any of these Proposed Intervenors. Consequently, none of the Proposed Intervenors or their members can be harmed by the outcome of this litigation. Without an interest, Proposed Intervenors' claims of impairment of that interest must fail.

C.    **Proposed Intervenors Cannot Show Inadequate Representation.**

Proposed Intervenors also must establish that their interests are not adequately represented by existing parties. *Ams. United*, 922 F.2d at 305. "This requires 'overcom[ing] the presumption of adequacy of representation that arises when the proposed intervenor and a party to the suit … have the same ultimate objective.'" *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) (citation omitted). To overcome that presumption, a proposed intervenor must show: (1) "no collusion … between the representatives" (here, the State Defendants) "and an opposing party"; (2) the representatives "represent an interest adverse to the proposed intervenor"; and (3) the representatives have failed in their fulfillment of

their duty to the proposed intervenor. *Id.* (citations omitted).

Here, the record demonstrates that the Proposed Intervenors share the same interests in this litigation – to reject efforts by the United States to obtain the SVRL pursuant to its Federal claims because they allege concerns about voter privacy and how the requested data will be used.  While the Proposed Intervenors may suggest, at the margins, that they offer unique perspectives that may not be raised by the Defendants, that is not enough to establish inadequacy. "A mere disagreement over litigation strategy or individual aspects" of a resolution to the litigation are insufficient to establish inadequacy of representation. *Id.* (citations omitted). Such differences of opinion do not "lead to a conclusion that representation has been" or will be "inadequate to protect the interests of the proposed intervenors." *Id.* at 1193.

## II.     PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION.

Rule 24(b)(2) intervention should be denied for the same reasons. Permissive intervention requires more than just a timely motion and raising a "defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2)(1)(B). It must also not cause undue delay. The Proposed Intervenors have no standing to assert any claim or defense in this litigation and therefore could add nothing to the Court's consideration of the United States' claims. At best, "'intervention is likely only to result in duplicative briefing.'" *Republican Nat'l Comm.*, 2024 WL 4349904, at *4. At worst, it will inject into this case "unremarkable divergences of view" about litigation strategy that risks "generating

endless squabbles at every juncture over how best to proceed." *Stuart*, 706 F.3d at 354; *see Bradley*, 828 F.2d at 1194 (describing the possibility of delays and prejudice to the parties over differences of litigation strategy as a reason to deny permissive intervention).

Denying permissive intervention will not leave the Proposed Intervenors without recourse. Nothing would impede their ability to consult with their duly elected State officials, particularly Secretary Benson, about how to proceed. They also would "retain the ability to present their views… by seeking leave to file" an amicus brief. *Stuart*, 706 F.3d at 355. "While a would-be intervenor may prefer party status to that of friend-of-the-court, the fact remains that amici often make useful contributions to litigation. The availability of such alternative avenues of expression reinforces… [the] disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto." *Id.*; *see also Bradley*, 828 F.2d at 1194 (observing that the district court took "steps to protect the proposed intervenors' interests" by inviting their counsel "to appear as amicus curiae in the case") (collecting citations of Sixth Circuit decisions in which participation as amicus curiae was an adequate alternative to intervention).

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the Motions to Intervene by Proposed Intervenors Michigan Alliance for Retired Americans (Doc. 5) and by Proposed Intervenors League of Women Voters of

Michigan (Doc. 17).


DATED: November 13, 2025         Respectfully submitted,

                          HARMEET K. DHILLON
                          Assistant Attorney General
                          Civil Rights Division
                          MAUREEN RIORDAN
                          Senior Counsel, Voting Section

                          */s/ Eric Neff*
                          ERIC NEFF
                          TIMOTHY F. MELLETT
                          Trial Attorneys, Voting Section
                          Civil Rights Division
                          U.S. Department of Justice
                          4 Constitution Square
                          150 M Street NE, Room 8.141
                          Washington, D.C. 20002
                          Telephone: (202) 704-5430
                          Email: eric.neff@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 13, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

<u>/s/ Eric Neff</u>
Eric Neff
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.139
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Eric.Neff@usdoj.gov

## <u>CERTIFICATE OF WORD COUNT</u>

This brief in the text portion, not containing the Front Page, Table of Contents, Table of Authorities, and Signature Pages, contains 4,283 words.  I used Microsoft Word's word count feature to produce this word count.

<u>/s/ Eric Neff</u>
Eric Neff
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.139
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Eric.Neff@usdoj.gov
