# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

JOCELYN BENSON in her official capacity as
Secretary of the State of MICHIGAN and the
STATE OF MICHIGAN.

Defendants.

Case No. 1:25-cv-01148-HYJ-PJG

**LEAGUE OF WOMEN VOTERS OF MICHIGAN'S PROPOSED REPLY IN SUPPORT**
**OF MOTION TO INTERVENE**

## TABLE OF CONTENTS

CONCISE STATEMENT ...................................................................................................1

INTRODUCTION .............................................................................................................2

ARGUMENT .....................................................................................................................2

    I.    LWVMI has met Rule 24(a)'s intervention standard. ....................................2

        a.    LWVMI need only establish a significantly protectable interest that is impacted by the litigation to intervene, not Article III standing....................................................3

        b.    HAVA and the CRA do not prevent LWVMI from intervening as a Defendant. .....4

        c.    Whether there is a private right of action has no bearing on the intervention standard. ...........................................................................................................6

    II.    The League has established a protectable interest. ........................................7

        a.    LWVMI has protectable interests in the confidentiality of its members' personal information and in civic participation.....................................................................7

        b.    USDOJ fails to rebut LWVMI's interests in this litigation.....................................8

    III.    LWVMI's interests are distinct from the State of Michigan's. .....................11

    IV.    LWVMI is entitled to permissive intervention. ...........................................12

CONCLUSION.................................................................................................................13

## <u>CONCISE STATEMENT</u>

Pursuant to Local Civil Rule 7.1(a), the League of Women Voters of Michigan states that intervention should be granted as of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, permissively under Federal Rule of Civil Procedure 24(b).

## INTRODUCTION

The League of Women Voters of Michigan (LWVMI) satisfies the requirements for intervention as of right under Rule 24(a) because LWVMI and its 3,000 members have significant stakes in this case: protecting voters' data, including that of LWVMI's members, and ensuring that Michiganders do not fear registering to vote or participating in other political activities. In the alternative, permissive intervention is appropriate under Rule 24(b) because LWVMI's motion is timely and shares common questions of law and fact with the litigation.

The United States Department of Justice (USDOJ) does not meaningfully dispute LWVMI's interests. Instead, USDOJ simply mischaracterizes the standard. Given that it is based on an incorrect standard, USDOJ's position is entirely unpersuasive and does not refute LWVMI's interest in this litigation.

USDOJ also glosses over the important interests that LWVMI and its members have in this litigation by claiming that this dispute is only between the Attorney General and Michigan, and by promising to protect individual voters' data. None of USDOJ's arguments obscure the plain truth that LWVMI and its members have significantly protectable interests in safeguarding their data and ensuring civic participation.

## ARGUMENT

### I.  LWVMI has met Rule 24(a)'s intervention standard.

LWVMI has a right to intervene in this matter as a Defendant under Rule 24(a) of the Federal Rules of Civil Procedure because LWVMI filed a timely motion to intervene, LWVMI and its members have significant interests in the case, those interests will be impacted by the outcome, and no existing party adequately represents those interests. *See infra* Parts II & III; *see also* ECF No. 17 ("Mot. to Intervene"). USDOJ's arguments in opposition are premised on three

legally inaccurate claims. *First*, USDOJ confuses the proper inquiry—whether LWVMI demonstrates the significantly protectable interest necessary for intervention as of right—with Article III standing. LWVMI does not need to establish standing to intervene as a Defendant. *Second*, USDOJ argues that LWVMI is not a "valid defendant" in this matter because actions filed under HAVA and the CRA must be filed against a state defendant, but the fact that USDOJ necessarily filed this action against State Defendants does not bar LWVMI's intervention. *Third*, USDOJ argues that because HAVA and the CRA lack a private right of action, LWVMI cannot intervene, but the lack of a private right of action is plainly not a barrier to LWVMI's intervention as a Defendant. When the proper standard is applied, there is no question that LWVMI has a right to intervene in this litigation under Rule 24(a).

### a. LWVMI need only establish a significantly protectable interest that is impacted by the litigation to intervene, not Article III standing.

LWVMI has a right to intervene in this litigation under Rule 24(a) because it has demonstrated that its 3,000 individual members' interests and its own organizational interests relating to civic participation are significantly impacted by this litigation. *See infra* Part II; *see also* Mot. to Intervene at 9–11. USDOJ confuses the standard for intervention with that of Article III standing when it argues that LWVMI must establish a legal right to defend the claim. Opposition to Motions to Intervene, ECF No. 26, at 13 (citing *Diamond v. Charles*, 476 U.S. 54 (1986)) ("Opp. Br.").

As a Proposed Intervenor-Defendant, LWVMI does not seek to invoke this Court's jurisdiction and therefore does not need to establish standing to intervene.[1] *See Mid-Am. Milling*

---

[1] Although LWVMI need not establish Article III standing to intervene in this matter, and a standing analysis is irrelevant as to LWVMI's intervention, LWVMI does not concede that it lacks Article III standing.

*Co. v. United States Dep't of Transp.*, No. 3:23-cv-00072-GFVT-EBA, 2025 WL 1461818, at *4 (E.D. Ky. May 21, 2025) ("But where the putative intervenor seeks to intervene as a defendant, it need not independently demonstrate Article III standing." (citing *Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019))); *see also Cherry Hill Vineyards, LLC v. Lilly*, 553 F.3d 423, 428 (6th Cir. 2008) ("[A]n intervenor need not have the same standing necessary to initiate a lawsuit in order to intervene in an existing district court suit where the plaintiff has standing."). In collapsing the intervention standard into Article III standing, USDOJ cites inapt caselaw that applies only to appellate litigation. Courts have held that where an original party declines to appeal, an intervenor-appellant must have Article III standing. *See Diamond*, 476 U.S. at 68 ("Although intervenors are considered parties entitled, among other things, to seek review by this Court, an intervenor's right to continue a suit in the absence of the party on whose side intervention was permitted is contingent upon a showing by the intervenor that he fulfills the requirements of Art. III" (citation omitted)). But this case is not an appeal, and LWVMI has no obligation to establish Article III standing to succeed in its motion to intervene under Rule 24(a). Because LWVMI has established that it has a significantly protectable interest that is impacted by the litigation, it has established a sufficient interest to intervene as of right.

> **b. HAVA and the CRA do not prevent LWVMI from intervening as a Defendant.**

USDOJ argues that HAVA and the CRA limit the parties that can be defendants, and therefore prevent LWVMI's intervention, because the statutes' duties expressly apply to election officials and the Attorney General. But USDOJ does not point to a legal authority to support this proposition. Indeed, there is no such authority, and USDOJ's argument is contrary to well-established law.

Cases involving voting rights or elections practices are necessarily brought against government actors, but courts in this Circuit have nonetheless permitted intervention by interested,

private parties in such cases. *See Sandusky Cnty. Dem. Party v. Blackwell*, 387 F.3d 565, 570 n.2 (6th Cir. 2004) (noting that individual voters had intervened on the side of the Ohio Secretary of State in a case brought under HAVA); *see also Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219 (6th Cir. 2011) (candidate intervened as defendant in challenge to county's review and counting of provisional ballots); *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (municipal judges intervened as defendants in challenge under CRA, Voting Rights Act, and Constitution, to county's at-large election scheme). Under USDOJ's logic, however, private litigants would not be able to intervene in these cases or any case in which the claim required the involvement of a government entity. But such a bar to intervention clearly does not exist. *See, e.g.*, *New Ga. Proj. v. Raffensperger*, No. 1:21-cv-1229, 2021 WL 2450647, at *2 (N.D. Ga. June 4, 2021) (granting Republican National Committee, National Republican Senatorial Committee, Georgia Republican Party, and National Republican Congressional Committee's motion to intervene in voting rights case brought under 42 U.S.C. § 1983, even though § 1983 applies only to state actors); *Dumont v. Lyon*, 341 F. Supp. 3d 706, 713–14 (E.D. Mich. 2018) (considering motions to dismiss of state defendants and private intervenor defendants defending § 1983 case concerning state statute prohibiting state-funded child placing agencies from using religious criteria to screen parents).

USDOJ notably omits the National Voter Registration Act (NVRA) from its argument that private parties may not intervene as defendants in litigation brought under statutes that apply only to government actors, likely because caselaw plainly establishes that private parties may intervene in such cases brought under the NVRA. *See Pub. Int. L. Found. v. Winfrey*, 463 F. Supp. 3d 795, 797 (E.D. Mich. 2020) (permitting League of Women Voters Detroit and League of Women Voters Michigan to intervene as defendants in NVRA litigation brought against officials); *League of Women Voters of Ohio v. LaRose*, No. 2:20-cv-1638, 2020 WL 6115006, at *3 (S.D. Ohio April

3, 2020) (permitting intervention of private parties in NVRA litigation). This omission underscores the illogical nature of USDOJ's argument. Like HAVA and the CRA, the NVRA does not create any mandates for private parties—it applies to states and state election officials. *See, e.g.*, 52 U.S.C. § 20503(a) ("[E]ach State shall establish procedures to register to vote in elections for Federal office"). Because the NVRA's application to state actors is not a bar to private party intervention, HAVA's and the CRA's application to state actors cannot be a bar to private party intervention. Moreover, it would be absurd if USDOJ could prevent LWVMI from intervening in this case concerning the NVRA simply by adding HAVA and CRA claims.

### c. Whether there is a private right of action has no bearing on the intervention standard.

USDOJ's argument that LWVMI may not intervene as a Defendant in the absence of a private right of action contravenes legal authority. Private parties have successfully intervened in recent federal actions brought against states or the federal government under statutes without a private right of action. *See, e.g.*, *Priorities USA v. Nessel*, No. 19-13341, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020) (granting Republican National Committee's motion to intervene to defend Michigan's absentee voter law); Mem. Op. and Order, *League of United Latin Am. Citizens v. Executive Office of the President*, No. 25-cv-0946 (D.D.C. June 12, 2025), ECF No. 135 (partially granting Republican National Committee's motion to intervene to defend Executive Order 14,248, entitled "Preserving and Protecting the Integrity of American Elections").

USDOJ cites one unpublished case from the Middle District of Alabama that is nearly two decades old in support of its assertion. *See* Opp. Br. at 16 (citing *United States v. Alabama*, No. 2:06-cv-392-WKW, 2006 WL 2290726, at *1 (M.D. Ala. Aug. 8, 2006)). But in that case, the district court denied intervention because the intervenor met none of Rule 24's intervention criteria. *See Alabama*, No. 2:06-cv-392-WKW, 2006 WL 2290726, at *1–8 (finding motion was

not timely, interest was speculative, and intervenors were already adequately represented). As such, LWVMI is entitled to intervene in this action, regardless of whether HAVA and the CRA contain a private right of action.[2]

## II.    The League has established a protectable interest.

Both LWVMI and its members have particularized and protectable interests at stake in this case. While USDOJ attempts to dismiss them as "speculative" and "alarmist," these interests are concrete, and the harms are immediate.

### a.    LWVMI has protectable interests in the confidentiality of its members' personal information and in civic participation.

Preventing the improper disclosure of sensitive personal data, including social security numbers, is a clear, protectable interest. Congress recognized that intra-government sharing of personal data creates risks for individuals, which is why Congress passed the Privacy Act to bar such sharing except in certain circumstances. Pub. L. No. 93-579, § 2 (1974) ("The Congress finds that . . . the privacy of an individual is directly affected by the collection, maintenance, use, and dissemination of personal information by Federal agencies;" "the right to privacy is a personal and fundamental right protected by the Constitution of the United States"). LWVMI's members provided their data when registering to vote with the expectation that it would be safely stored and accessed only by state elections employees. Kochmanski Decl. ¶¶ 17–18, ECF No. 17-2. USDOJ's promise that "it will protect voter information," Opp. Br. at 17, is irrelevant because it should not have access to that sensitive data in the first place. LWVMI has an interest in ensuring that its members' information remains only in the hands of those authorized to have it.

---

[2] Although it is not relevant to the intervention inquiry, the NVRA includes a private right of action. *See* 52 U.S.C § 20510(b).

LWVMI also has an organizational interest in civic participation and therefore an interest in the appropriate and lawful handling of election information. As part of its core work, LWVMI expends significant resources on the development and distribution of voter registration and education materials and encourages eligible Michigan residents to register to vote and participate in elections. Kochmanski Decl. ¶¶ 9–11. LWVMI's mission will be frustrated if its members' sensitive information is disclosed to USDOJ, particularly if it is to be used for improper purposes. Kochmanski Decl. ¶ 1.

USDOJ cannot wish away these clear protectable interests by asserting that there is no risk of improper disclosure in this action. To do so assumes that USDOJ will win its merits argument that it is entitled to the information it seeks. But that is not the question at the intervention stage.[3] Rather, the question is whether LWVMI has an interest in whether Michiganders' confidential data, including that of its members, must be given to the federal government. LWVMI has clearly demonstrated that it has such an interest.

### b. USDOJ fails to rebut LWVMI's interests in this litigation.

USDOJ's assertions that LWVMI has not shown an interest sufficient for Rule 24(a) intervention are unavailing. *First*, USDOJ argues that federal agencies "routinely are provided and maintain the same data being sought in this action," including in tax filings, social security benefits applications, and the Medicaid and Medicare programs. Opp. Br. at 18. But just because other federal agencies may sometimes obtain sensitive data about some Americans does not mean that USDOJ is entitled to Michigan voters' confidential information. Indeed, the Privacy Act imposes strict limitations on the agencies that store such data, recognizing that sharing personal information

---

[3] Moreover, recent reporting on USDOJ's purposes in acquiring this data suggest there is a severe risk of improper disclosure. *See* Part II(b), *infra*.

within the government presents a danger to affected individuals. *See* 5 U.S.C. § 552 *et seq.*; *League of Women Voters v. Dep't of Homeland Sec.*, No. 1:25-cv-03501-SLS at *2, --WL--, (D.D.C. Nov. 17, 2025) (citing 5 U.S.C. § 552a(b)) ("The [Privacy] Act prohibits both inter-agency and extra-agency disclosure of government records except in limited circumstances.")

*Second*, USDOJ claims that LWVMI has no interest in this case unique from other eligible voters in Michigan, but that argument ignores unrebutted evidence that fear of federal-voter data collection is likely to impede LWVMI's mission of registering, educating, and turning out voters. Mot. to Intervene at 6–7, 9–11. The lone case that USDOJ cites is inapposite. *See* Opp. Br. at 19 (citing *League of Women Voters of Va. v. Va. State Bd. of Elections*, 458 F. Supp. 3d 460, 465 (W.D. Va. 2020)). There, the court rejected intervention where proposed intervenors argued that relaxing a witness requirement for mail ballots would "dilute" their vote by opening the election up to hypothetical voter fraud. *League of Women Voters of Va.*, 458 F. Supp. 3d at 465–66. LWVMI offers no such generalized theories in this case.

*Third*, USDOJ asserts that this case is limited only to the Attorney General and Michigan, and therefore does not concern private parties, Opp. Br. at 19–20, but if such a this-does-not-concern-you defense were enough to defeat a valid intervention claim, intervention would be impossible in all circumstances. USDOJ also asserts that the federal government "is not seeking, and will not be seeking, any information from a single member of the groups represented by the Proposed Intervenors, nor will it be seeking more information than those members have already voluntarily submitted to the State of Michigan." Opp. Br. at 20. But the federal government is affirmatively seeking information from *every* member of LWVMI who is registered to vote in Michigan. The fact that those members will not be required to produce the information themselves has no bearing on whether they have an interest in keeping their data private.

There is nothing "speculative" or "alarmist" about LWVMI's desire to protect confidential voter data from unlawful acquisition by the federal government, especially given recent issues the government has had with data security.[4] For example, a whistleblower report claimed that the Department of Government Efficiency (DOGE) staffers uploaded an entire Social Security Administration dataset—including individuals' SSNs, birth dates, and addresses—to an unsecure online storage system that did not meet agency requirements.[5] The whistleblower accused DOGE of ignoring its "independent security monitoring" obligations.[6] And, just this week, a lawyer in USDOJ's Civil Rights Division reported that USDOJ personnel received orders to obtain "states' voter rolls, by suing them if necessary" to "go through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was no pre-existing evidence" that unlawful immigrant voting is a problem. Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y.          Times          Mag.          (Nov.          16,          2025),

---

[4] USDOJ relies on a recent consent decree in *United States v. North Carolina State Board of Elections*, for proof that "similar alarmist arguments" of proposed intervenors "objectively proved to be unfounded." Opp. Br. at 17. This is untrue. First, that case was about whether the State had to undertake a plan to collect information required under federal law from registered voters. Compl., *United States v. North Carolina State Bd. of Elections*, 5:25-cv-00283-M-RJ (E.D.N.C. May 27, 2025), ECF No. 1. Second, the parties proposed a consent order that contained only one reference to the proposed intervenors: "the court finds that all interests are adequately represented by the parties in this enforcement action, and the matters raised in the action are fully and finally settled. Therefore, the motions to intervene [DE 7, 34, and 39] are DENIED AS MOOT." Consent Order and Judgment at 12, *United States v. North Carolina State Bd. of Elections*, 5:25-cv-00283-M-RJ (E.D.N.C. Sep, 8, 2025), ECF No. 72. The court signed this order but made no independent finding about whether proposed intervenors would have succeeded. In any event, there is no proof that the interests they claimed "objectively proved to be unfounded." Opp. Br. at 17.

[5] Nicholas Nehamas, *Republican Senator Asks Social Security Agency About Whistle-Blower's Claims*, N.Y. Times (Sep. 10, 2025), https://www.nytimes.com/2025/09/10/us/politics/doge-social-security-republicans.html.

[6] *Id.*

https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

### III.    LWVMI's interests are distinct from the State of Michigan's.

LWVMI and the State do not have the same interests in this case. LWVMI's members, not the State of Michigan, have their information at risk. Even if LWVMI and the State share the "ultimate objective" of ensuring these voters' confidential data remains protected, they still have "interests adverse" to each other. *Estate of Lewis by and through Duran v. City of Columbus, Ohio*, --- F.4th ---, 2025 WL 3120050, at *9 (6th Cir. Nov. 7, 2025). Indeed, less than two weeks ago the Sixth Circuit reaffirmed that an intervenor overcomes the "presumption of adequate representation" triggered by a shared ultimate objective with a "minimal" showing that the existing defendant's representation "'may be' inadequate." *Id.* (quoting *Wineries of the Old Mission Peninsula Ass'n v. Twp. of Peninsula, Mich.*, 41 F.4th 767, 774 (6th Cir. 2022)). In *Estate of Lewis*, the Court reversed a district court ruling denying intervention because the proposed intervenor "established that the [defendant] may pursue a different trial strategy" and there was a possibility the existing parties would reach a settlement that would include concessions that harmed the proposed intervenor. *Id.*

Here, the same risks apply. In seeking to resolve this case, the other interests held by the State may outweigh the need to protect voters' confidential information. On the other hand, LWVMI is focused entirely on maintaining its members' information security and ensuring that Michiganders are not dissuaded from civic participation due to fears about the privacy of their personal information. Although USDOJ characterizes this discrepancy as a "mere disagreement over litigation strategy or individual aspects" of the case, Opp. Br. at 21, this significant difference

in motivation means LWVMI's and the State's "litigation strateg[ies] may meaningfully diverge," justifying intervention. *Estate of Lewis*, 2025 WL 3120050, at *9.

**IV.    LWVMI is entitled to permissive intervention.**

USDOJ does not contest that LWVMI's motion was timely and that there is at least one common question of law or fact. *See* Fed. R. Civ. P. 24(b). USDOJ provides only one reason why the Court should deny permissive intervention: undue delay. Opp. Br. at 21–22. However, there is no cause to believe LWVMI's participation in this case would cause such delay; USDOJ relies fully on conjecture. If the mere possibility of an additional brief or conflict of litigation strategy warranted denying intervention, Rule 24(b)'s exception would swallow it whole.

The cases USDOJ cites to oppose permissive intervention do not support its argument. The relevant language in *Stuart v. Huff*—that granting intervention can slow down a case's progression—is part of the analysis of whether to grant intervention as of right under Rule 24(a). 706 F.3d 354, 353–54 (4th Cir. 2013). In *Bradley v. Milliken*, the Sixth Circuit upheld denial of permissive intervention when the petitioner filed *16 years* into a case's lifespan and indicated it would ask the district court to reconsider prior decisions. 828 F.2d 1186, 1190, 1194 (6th Cir. 1987). None of this caselaw suggests that permissive intervention is inappropriate here.[7] LWVMI's rationales for permissive intervention outweigh the hypothetical scenario in which LWVMI's presence in the case could slow down litigation.

---

[7] USDOJ cites one line from *Republican National Committee v. North Carolina State Board of Elections* to assert that intervention is "likely only to result in duplicative briefing." 2024 WL 4349904, at *4 (E.D.N.C. Sep. 30, 2024) (citation omitted). It provides no analysis of why that line is applicable to LWVMI.

## CONCLUSION

For the reasons stated, this Court should grant the League of Women Voters of Michigan's motion to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) or, in the alternative, should grant permissive intervention under Rule 24(b).

Dated: November 18, 2025                    Respectfully submitted,

/s/ *Renata O'Donnell*
Brent Ferguson (NY4890620)
Daniel S. Lenz (WI1082058)
Sejal Jhaveri (NY5396304)
Renata O'Donnell (NY5767561)
Heather Szilagyi (DC90006787)
Alexis Grady (DC90017620)
Kate Hamilton (DC90006168)
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222

bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Mark Brewer (P35661)
Goodman Acker P.C.
Two Towne Square, Suite 444
Southfield, Michigan 48076
MBrewer@goodmanacker.com

Maura Eileen O'Connor*
Brennan Center for Justice
at NYU School of Law
777 6th St., NW, Ste. 1100
Washington, DC 20002
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber (NY5684147)
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750

Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

\* Application for Western District of Michigan Admission Forthcoming

Counsel for Proposed Intervenor-Defendant League of Women Voters of Michigan

## **CERTIFICATE OF SERVICE**

I certify that on this 18th day of November 2025, I caused to be served a copy of the above document on all counsel of record and parties via the ECF system.

/s/ *Renata O'Donnell*
Renata O'Donnell

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief contains 3,601 words. The current version of Word for Microsoft

Office 365 was used to generate this word count.

<u>/s/ *Renata O'Donnell*</u>
Renata O'Donnell