**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    *Plaintiff*,

    v.

JOCELYN BENSON in her official capacity as
Secretary of the State of MICHIGAN and the
STATE OF MICHIGAN.

    *Defendants*.

Case No. 1:25-cv-01148-HYJ-PJG

**PROPOSED INTERVENOR-DEFENDANT LEAGUE OF WOMEN VOTERS OF
MICHIGAN'S PROPOSED MOTION TO DISMISS**

Proposed Intervenor-Defendant League of Women Voters of Michigan ("LWVMI") respectfully moves this Court to dismiss Counts I, II, and III of Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

As explained further in the accompanying brief, the Civil Rights Act of 1960 (CRA), the National Voter Registration Act (NVRA), and Help America Vote Act (HAVA) do not entitle Plaintiff to an unredacted version of Michigan's voter registration list in this litigation. Plaintiff's only stated basis and purpose for the unredacted list is to ensure compliance with the NVRA and HAVA, but the public version of the list is sufficient to ensure that Michigan is complying with these federal statutes. As such, Plaintiff has failed to state a claim under the CRA, NVRA, and HAVA, and the Court should dismiss its Complaint.

WHEREFORE, Proposed Intervenor-Defendant League of Women Voters of Michigan requests that the Court grants the League's Motion to Dismiss Plaintiff's Complaint in the above-captioned matter.

1

Dated: November 25, 2025                    Respectfully submitted,


/s/ Renata O'Donnell

Brent Ferguson (NY4890620)
Daniel S. Lenz (WI1082058)
Sejal Jhaveri (NY5396304)
Renata O'Donnell (NY5767561)
Heather Szilagyi (DC90006787)
Alexis Grady (DC90017620)
Kate Hamilton (DC90006168)
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Mark Brewer (P35661)
Goodman Acker P.C.
Two Towne Square, Suite 444
Southfield, Michigan 48076
MBrewer@goodmanacker.com

Maura Eileen O'Connor*
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber (NY5684147)
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308

garbera@brennan.law.nyu.edu

*Application for Western District of Michigan Admission Forthcoming*

*Counsel for Proposed Intervenor-Defendant League of Women Voters of Michigan*

**PROPOSED INTERVENOR-DEFENDANT LEAGUE OF WOMEN VOTERS OF MICHIGAN'S MEMORANDUM IN SUPPORT OF PROPOSED MOTION TO DISMISS**

# TABLE OF CONTENTS

CONCISE STATEMENT ........................................................................................................1

INTRODUCTION ...............................................................................................................2

BACKGROUND AND PROCEDURAL HISTORY ......................................................................3

    I.    Procedural History ..............................................................................................3

        A.  July 2025: USDOJ invokes the NVRA and HAVA to get data .................................3

        B.  August 2025: USDOJ invokes the CRA, maintaining that the NVRA and HAVA justify its hunt for sensitive voter data ....................................................................4

        C.  September 2025: Michigan provides its public voter list, but USDOJ remains unsatisfied ...................................................................................................5

        D.  Proceedings in this Court ...............................................................................6

    II.    Statutory Background ..........................................................................................7

        A.  CRA .............................................................................................................7

        B.  NVRA ..........................................................................................................8

        C.  HAVA ........................................................................................................10

LEGAL STANDARD ..........................................................................................................10

ARGUMENT ...................................................................................................................11

    I.    Summary of Argument .......................................................................................11

    II.    Count I should be dismissed because the request for Michigan's unredacted voter registration list exceeds the Attorney General's authority under the Civil Rights Act ...................................................................................................11

    III.    Count II should be dismissed because the request for Michigan's unredacted voter list exceeds the Attorney General's authority to investigate under the NVRA ................15

        A.  Defendants have already satisfied their duty under the NVRA ............................15

            1.   Defendants complied with the NVRA's public-inspection provision .............15

            2.   Michigan law prohibits Defendants from disclosing the requested records ....18

            3.   The NVRA's enforcement provision does not include power to demand records ...........................................................................................20

B.  Michigan's unredacted statewide voter registration list is not necessary to determine Michigan's compliance with the NVRA's list maintenance requirements ....................................................................21

IV.  Count III should be dismissed because the request for Michigan's full voter list exceeds USDOJ's authority to investigate under HAVA ............................................22

CONCLUSION...........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                        **Pages**

*Allen v. Milligan*, 599 U.S. 1 (2023) ...........................................................................7

*Association of Community Organizations for Reform Now (ACORN) v. Miller*, 129 F.3d 833 (6th Cir. 1997) ...........................................................................................................20

*Atlas Data Privacy Corporation v. We Inform, LLC*, No. 24-cv-4037, 2025 WL 2444153 (D.N.J. Aug. 25, 2025)..................................................................................................19

*Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007).........................................10

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019)....................................................10, 24

*Consumer Financial Protection Bureau v. Accrediting Council for Independent Colleges & Schools*, 854 F.3d 683 (D.C. Cir. 2017) ....................................................................20

*Doe v. United States*, 253 F.3d 256 (6th Cir. 2001) ......................................................13

*Gavitt v. Born*, 835 F.3d 623 (6th Cir. 2016) ............................................................4, 11

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)........................................................19

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012) ...........................10, 11, 12

*Herald Company, Inc. v. Kent County Sheriff's Department*, 261 Mich. App. 32, 680 N.W. 2d 529 (2004)...................................................................................................................18

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ..................................................12, 15

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)...........................................................13

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)............................................................12

*Mullin v. Detroit Police Department*, 133 Mich. App. 46, 348 N.W. 2d 708 (1984)....................18

*Pennsylvania State Conference of NAACP Branches v. Secretary Commonwealth of Pennsylvania*, 97 F.4th 120 (3d Cir. 2024) ...................................................................7

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016)..............................17

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) ..........16, 19

*Public Interest Legal Foundation v. Benson*, 136 F.4th 613 (6th Cir. 2025) ...................13, 14, 21

*Public Interest Legal Foundation, Inc. v. Bellows*, 92 F.4th 36 (1st Cir. 2024)............................17

*Public Interest Legal Foundation, Inc. v. North Carolina State Board of Elections*, 996 F.3d 257 (4th Cir. 2021).....................................................................................16, 17, 19

*State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General of the United States*, 285 F.2d 430 (5th Cir. 1961) ...................12

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014) .................................17

*United States v. Gurley*, 235 F. Supp. 2d 797 (W.D. Tenn. 2002)..................................20

*United States v. West Peachtree Tenth Corporation*, 437 F.2d 221 (5th Cir. 1971)......................13

*United States v. Xcel Energy, Inc.*, 759 F. Supp. 2d 1106 (D. Minn. 2010) ........................20

**Statutes, Codes, and Rules**

5 U.S.C. § 552a ............................................................................................................3

5 U.S.C. § 552a(b) .......................................................................................................9

44 U.S.C. § 3506(c) ....................................................................................................3

44 U.S.C. § 3507(a) ....................................................................................................3

52 U.S.C. § 20501(b) ..................................................................................................8

52 U.S.C. § 20503 .......................................................................................................8

52 U.S.C. § 20507(a)(4)..........................................................................................9, 21

52 U.S.C. § 20507(b) ..................................................................................................9

52 U.S.C. § 20507(d) ..................................................................................................4

52 U.S.C. § 20507(i) ...................................................................................................9

52 U.S.C. § 20507(i)(1) ..........................................................................................9, 16

52 U.S.C. § 20510(a)..........................................................................................9, 20, 21

52 U.S.C. § 20510(b) .............................................................................................9, 20

52 U.S.C. § 20701 ..................................................................................................8, 23

52 U.S.C. § 20703 .............................................................................................8, 12, 23

52 U.S.C. § 21083(a)(1)(A) ........................................................................................10

52 U.S.C. § 21083(a)(2)(A)(i) ...............................................................................10, 24

52 U.S.C. § 21083(a)(2)(A)(ii) ...................................................................................10

52 U.S.C. § 21083(a)(2)(B)(iii) ..................................................................................10

52 U.S.C. § 21083(a)(5)(A).........................................................................................10

52 U.S.C. § 21083(a)(5)(A)(i) .................................................................................24

52 U.S.C. § 21111 ....................................................................................................23

Fed. R. Civ. P. 12(b)(6) ...........................................................................................10

Mich. Comp. Laws § 15.243(1)(d) .....................................................................16, 18

Mich. Comp. Laws § 15.243(1)(w) ...........................................................................18

Mich. Comp. Laws § 15.243(1)(z) ......................................................................16, 18

Mich. Comp. Laws § 168.509gg............................................................................16, 18

**Other Authorities**

Brief for the United States as Amicus Curiae, *Public Interest Legal Foundation, Inc. v. Bellows*,
No. 23-1361, 2023 WL 4882397 (1st Cir. July 25, 2023) ................................17, 19

Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation*
(2d ed. 1966) ......................................................................................................8

Emily Bazelon & Rachel Poser, The Unraveling of the Justice Department, N.Y. Times Mag.
(Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-
department-staff-attorneys.html................................................................................1

Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*,
Brennan Ctr. (Aug. 28, 2025), https://perma.cc/GXA2-HVZ6................................14

Letter from Harmeet K. Dhillon to the Hon. Chuck Gray (Aug. 14, 2025),
https://www.brennancenter.org/media/14549/download/wyoming_08.14.2025_doj-
letter_0.pdf?inline=1 ...........................................................................................15

*Michigan Voter Registration Application and Change of Address Form*,
https://www.michigan.gov/sos/-/media/Project/Websites/sos/Elections/Election-Forms/Voter-
Registration-Form-English.pdf (last visited Nov. 12, 2025)....................................24

Pub. L. No. 93-579, § 2 (1974).................................................................................9

Pub. L. No. 107-252 (2002).....................................................................................10

Report of U.S. Commission on Civil Rights 1963........................................................8

*The National Voter Registration Act of 1993 (NVRA)*, U.S. Department of Justice, Civil Rights
Division (updated Nov. 1, 2024),
https://www.justice.gov/crt/national-voter-registration-act-1993-nvra ...................15

## CONCISE STATEMENT

Pursuant to Local Civil Rule 7.1(a), the League of Women Voters of Michigan states that Plaintiff's Counts I, II, and III should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

The Attorney General has taken the unprecedented step of pressing the State of Michigan for its unredacted voter file, which contains driver's license numbers, months and days of birth, and the last four digits of voters' social security numbers. In support of these efforts, the Attorney General initially invoked only the National Voter Registration Act (NVRA) and the Help America Vote Act (HAVA), claiming—without substantial explanation—that she needed an unredacted voter registration list to ensure that Michigan is complying with these statutes. The Attorney General later cited the Civil Rights Act of 1960 (CRA) in support of her push for this data. The Attorney General provided no additional basis or purpose to justify her request for this data under the CRA, instead relying entirely on a purported desire to ensure Michigan's compliance with the NVRA and HAVA. Michigan provided the entire voter registration list to the Attorney General, with voters' most sensitive and private information redacted. But even with the voter registration list in hand, the Attorney General pressed for the private data and ultimately filed this lawsuit to get it.

The United States Department of Justice's (USDOJ) plans for this data, reflected nowhere in the Complaint, apparently have nothing to do with the statutes relied upon in the Complaint. According to one USDOJ lawyer, Civil Rights Division leadership demanded that USDOJ obtain "states' voter rolls, by suing them if necessary" to "go through all the data and compare it to the Department of Homeland Security data and Social Security data" and search for "immigrants that have registered to vote" even though "[t]here was no pre-existing evidence" that unlawful

2

immigrant voting is a problem.[1] Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times Mag. (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html.

The NVRA, HAVA, and the CRA do not entitle the Attorney General to an unredacted version of Michigan's voter registration list in this litigation. And regardless of her actual goals, the Attorney General's only stated purpose for seeking the unredacted list is to ensure compliance with the NVRA and HAVA—but driver's license number, exact date of birth, and partial social security number are not necessary to ensure compliance with these statutes. As such, Plaintiff has failed to state a claim under the CRA, NVRA, or HAVA, and the Court must dismiss the Complaint.

## BACKGROUND AND PROCEDURAL HISTORY

### I.     Procedural History

During the summer of 2025, USDOJ sent a series of letters to Michigan, demanding various types of data about Michigan voters and elections. Michigan responded to each letter, ultimately providing a copy of the entire state voter file, redacting only a few fields of sensitive information, and answering USDOJ's questions.

#### A.  July 2025: USDOJ invokes the NVRA and HAVA to get data.

USDOJ's demands for access to Michiganders' sensitive voter data began on July 21, 2025, when USDOJ wrote to Michigan to request information related to Michigan's compliance with the

---

[1] To the extent that USDOJ is not engaging in an investigation, as it purports to be doing to ensure compliance with the NVRA and HAVA, and is instead engaging in data collection for any other purpose, USDOJ must comply with the Paperwork Reduction Act, *see* 44 U.S.C. §§ 3506(c), 3507(a), and the Privacy Act, *see* 5 U.S.C. § 552a.

NVRA and HAVA. *See* Ex. A, July 21, 2025 Letter; Compl. ¶¶ 35–40.[2] USDOJ cited Section 20507(i) of the NVRA to request "the current electronic copy of Michigan's computerized statewide voter registration list," including "all fields contained within the list." Ex. A, July 21, 2025 Letter at 1. USDOJ also referenced Michigan's responses to the Election Assistance Commission's Election Administration and Voting Survey (EAVS). Based on USDOJ's characterization of those responses, USDOJ requested that Michigan explain what actions the State is taking to remove voters from its voter registration list, Michigan's process for determining when to send a confirmation notice to an active voter,[3] how Michigan uses the confirmation notice process in list maintenance, and Michigan's processes concerning duplicate registrations. Ex. A, July 21, 2025 Letter at 2–3.

### B. August 2025: USDOJ invokes the CRA, maintaining that the NVRA and HAVA justify its hunt for sensitive voter data.

On August 4, Michigan replied to USDOJ by email, requesting additional time to comply with USDOJ's request. *See* Compl. ¶ 41. On August 8, 2025, USDOJ sent another letter to Michigan to explain that the request for time to comply was "not acceptable" and demanded responses to the requests for the statewide voter registration list and an explanation of Michigan's process for determining when to send a confirmation notice to an active registered voter by August 18, 2025. *See* Ex. B, Aug. 8, 2025 Letter at 1. USDOJ demanded that Michigan comply with all

---

[2] The Court can consider these letters in evaluating the Proposed Motion to Dismiss because USDOJ references the letters in its Complaint. "[A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion [to dismiss] to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

[3] Under Section 8(d) of the NVRA, election officials may remove a voter from the rolls for a change in residence only if (1) the voter confirms in writing they have moved or (2) after sending the voter a confirmation notice and waiting for two federal general elections to pass during which time the voter neither responds to the confirmation notice nor votes at their registered address. 52 U.S.C. § 20507(d).

other requests by September 8, 2025. Ex. B, Aug. 8, 2025 Letter at 1. Before that deadline expired, on August 14, 2025, USDOJ sent another letter to Michigan,

> clarify[ing] that the Justice Department's request to provide an electronic copy of the statewide [voter registration list] should contain *all fields*, which means, your state's VRL must include the registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number[.]

*See* Ex. C, Aug. 14, 2025 Letter at 1 (emphasis in original). As in the initial July letter, USDOJ explained that USDOJ requested the voter registration list to assess compliance with the NVRA and HAVA. However, for the first time, the August 14 letter referred to the CRA, stating that "Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of 22 months after any federal general, special or primary election" and that Section 303 provides that any paper retained "shall, upon demand in writing by the Attorney General or his representative . . . be made available for inspection, reproduction, and copying[.]" USDOJ maintained "[t]he purpose of the [CRA] request is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA." Ex. C, Aug. 14, 2025 Letter at 2. USDOJ further explained that it believed that the disclosure of the last four digits of social security numbers would not violate the Privacy Act and that the disclosure of driver's license numbers would not violate the Driver's License Protection Act or the Privacy Act. Ex. C, Aug. 14, 2025 Letter at 2–3.

### C. September 2025: Michigan provides its public voter list, but USDOJ remains unsatisfied.

On September 2, Michigan sent a letter to USDOJ explaining that "Michigan's computerized statewide voter registration list, called the Qualified Voter File (QVF), can typically be obtained under the Michigan Freedom of Information Act (FOIA) by submitting a Qualified Voter File Data Request Form." Ex. D, Sep. 2, 2025 Letter (citing Michigan Dep't of State,

*Qualified Voter File Data Request Form and Instructions* (Oct. 2023), https://www.michigan.gov/-/media/Project/Websites/sos/02lehman/FOIA_FORM.pdf?rev=a5b56f6719104f9ebebb78488833 5a2d). Michigan explained that it would "provide QVF voter data" but "some specific data" that USDOJ requested "is exempt from disclosure under Michigan Election Law," subject to FOIA exemptions, and cannot be released under the Privacy Act. Ex. D, Sep. 2, 2025 Letter at 1–2. The letter further explained that "Federal Courts have also held that confidential personally identifiable information is exempt from disclosure." Ex. D, Sep. 2, 2025 Letter at 2.

On September 9, Michigan submitted another letter that provided responses to each question concerning EAVS data that USDOJ had posed in its July 21 letter. Michigan also provided a "public version of [its] statewide voter registration list." Ex. E, Sep. 9, 2025 Letter at 2. The public voter registration list included full names, residential addresses, and years of birth. *See* Mich. Comp. Law § 168.509gg. Michigan explained that "Secretary Benson and the Michigan Department of State are grateful that federal courts have repeatedly recognized our strong work in maintaining an accurate, up-to-date voter list and our list maintenance program." Ex. E, Sep. 9, 2025 Letter at 6.

### D.  Proceedings in this Court

Despite Michigan's responses and disclosures, the Attorney General filed suit on September 25, 2025, alleging violations of the CRA, NVRA, and HAVA. ECF No. 1. The Attorney General's Complaint demands a voter registration list that includes "all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number, or the last four digits of their Social Security number." Compl. at 19. As Michigan has already provided a voter registration list that includes full names, residential addresses, and birth years, the only data that the Attorney General seeks through this litigation are Michiganders' driver's license numbers, months and days of birth, and partial social security numbers.

Proposed Intervenor-Defendants Michigan Alliance for Retired Americans, Donald Duquette, and Keely Crimando moved to intervene in this litigation on September 30. ECF No. 5. On October 1, the Attorney General moved to stay this matter due to the lapse in appropriations. ECF No. 8. The Court issued an order denying the motion to stay the entire case and set a November 13 deadline to respond to the pending motion to intervene. ECF No. 9. On October 27, this Court granted Defendants' unopposed motion to extend their deadline to file a responsive pleading to November 12. ECF Nos. 11, 15. On October 30, Proposed Intervenor-Defendant the League of Women Voters of Michigan (LWVMI) moved to intervene. ECF No. 17. LWVMI explained in its motion that it will participate in this litigation on any timeline set by the Court. ECF No. 17 at 14–15. On November 10, Defendants filed an unopposed motion to extend the deadline to file their responsive pleading to November 26, which the Court granted. ECF Nos. 19–22, 25. On November 12, the Court granted Defendants' unopposed motion to extend that deadline to November 26. ECF No. 25.

## II.    Statutory Background

### A.  CRA

The Civil Rights Act of 1960 was "designed to protect access to the ballot in jurisdictions with patterns or practices of denying [voting] access based on race[.]" *Allen v. Milligan*, 599 U.S. 1, 47 (2023) (citation modified). Prior to the CRA, some states engaged in a variety of techniques to prevent eligible Black voters from voting. "One of the many techniques used to keep Black voters from the polls was to reject would-be registrants for insignificant, hyper-technical errors in filling out application forms." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 126 (3d Cir. 2024). These efforts included rejecting "applicants for failing to calculate [their] age to the day" and "underlining Mr. when it should have been circled[.]" *Id.* (citation

modified). During this time "some southern officials, in order to hamper investigations by the Department of Justice and the Civil Rights Commission, had been destroying or impounding voting and registration records." Daniel M. Berman, *A Bill Becomes a Law: Congress Enacts Civil Rights Legislation* 9 (2d ed. 1966); *see also* Report of U.S. Comm'n on Civil Rights 1963, at 16.

In response to these types of widespread voter suppression methods, Congress enacted the CRA. Section 301 of the CRA requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any federal office for a period of twenty-two months after any federal general, special, or primary election. 52 U.S.C. § 20701. Section 303 requires that a state must make any of these retained records available for inspection by the Attorney General "upon [a] demand in writing by the Attorney General" that contains "a statement of the basis and purpose therefor." 52 U.S.C. § 20703.

### B.  NVRA

Congress passed the NVRA in 1993 to establish "procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," making "it possible for Federal, State, and local governments to implement this [Act] in a manner that enhances the participation of eligible citizens as voters in elections for Federal office," protecting "the integrity of the electoral process," and ensuring "that accurate and current voter registration rolls are maintained." 52 U.S.C. § 20501(b).

Each section of the NVRA works to balance these objectives. For instance, the NVRA requires states to allow eligible voters to register to vote through at least three methods: when applying for or renewing a driver's license, by mail, or in person at designated locations. 52 U.S.C. § 20503. The NVRA also empowers the United States Attorney General to bring civil actions to

enforce the Act, 52 U.S.C. § 20510(a), and empowers individuals aggrieved by violations of the Act to sue, subject to certain procedural requirements, *id.* § 20510(b).

Section 8 of the NVRA regulates the way that states update and maintain their voter registration lists and provides a disclosure mechanism by which any party may seek information regarding those lists. 52 U.S.C. § 20507(b). Section 8 requires States to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of . . . a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). Section 8 also requires "[p]ublic disclosure of voter registration activities." 52 U.S.C. § 20507(i). Specifically, each state must maintain "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" for at least two years. *Id.* § 20507(i)(1).

Congress enacted the NVRA's public-disclosure provision after the Privacy Act of 1974, which prevents intra-governmental data sharing, with a limited number of exceptions. 5 U.S.C. § 552a(b) ("No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless a limited number of exceptions apply.). Congress implemented this limitation on data sharing in recognition that "the right to privacy is a personal and fundamental right protected by the Constitution of the United States" and "the privacy of an individual is directly affected by the collection, maintenance, use, and dissemination of personal information by Federal agencies." Pub. L. No. 93-579, § 2 (1974).

## C.  HAVA

Against the backdrop of the NVRA and the Privacy Act, and following the 2000 general election, Congress enacted HAVA in 2002. Pub. L. No. 107-252, 116 Stat. 1666 (2002) (52 U.S.C. § 20901–21145). HAVA requires that each state maintains "a single, uniform, official, centralized, interactive computerized statewide voter registration list," which "shall serve as the single system for storing and managing the official list of registered voters throughout the State." 52 U.S.C. § 21083(a)(1)(A), (a)(1)(A)(i). HAVA charges states with "conducting a general program of list maintenance that makes a reasonable effort to remove voters who become ineligible because of a change of address [or death]." *Bellitto v. Snipes*, 935 F.3d 1192, 1203 (11th Cir. 2019) (citation modified); *see also* 52 U.S.C. § 21083(a)(2)(A)(ii). HAVA also requires states to ensure that "duplicate names are eliminated from the computerized list" and requires states to collect certain information from registrants such as a driver's license number or the last four digits of a social security number. 52 U.S.C. § 21083(a)(2)(B)(iii) and (a)(5)(A). While the statute repeatedly refers to other provisions of the NVRA, *see, e.g.*, 52 U.S.C. § 21083(a)(2)(A)(i), it neither contains nor incorporates a disclosure provision of any kind.

## LEGAL STANDARD

A court may dismiss a claim for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of the Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007). "Merely pleading facts that are consistent with a defendant's liability or that permit the court to infer misconduct is insufficient to constitute a plausible claim." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). And the court "need not accept as true legal conclusions or

unwarranted factual inferences." *Id.*

Although the court can consider only facts alleged in the complaint in considering a motion to dismiss, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion [to dismiss] to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

## ARGUMENT

### I.    Summary of Argument

Plaintiff's Complaint fails to state any claim because it fails to include the requisite law or facts to establish that the Attorney General is entitled to Michigan voters' sensitive private data. In Count I, the Attorney General fails to allege the requisite basis and purpose to invoke the CRA, and the allegations do not explain how an unredacted voter list containing driver's license numbers, months and days of birth, and social security numbers are needed to evaluate compliance with the list-maintenance provisions of the NVRA or HAVA. Counts II and III fail to state a claim because the plain language of the NVRA and HAVA do not entitle USDOJ to Michiganders' protected voter registration data. Moreover, privacy statutes prevent such disclosure.

### II.   Count I should be dismissed because the request for Michigan's unredacted voter registration list exceeds the Attorney General's authority under the Civil Rights Act.

This Court should dismiss Count I of the Complaint because Plaintiff fails to state a claim for records under the CRA. The Complaint is devoid of factual allegations that explain how driver's license numbers, months and days of birth, and social security numbers will help serve the Attorney General's purported goal: to determine Michigan's compliance with the list-maintenance

11

processes outlined in the NVRA and HAVA. *See HDC, LLC*, 675 F.3d at 611; *see also infra* Argument III(B).

Section 303 of the CRA requires the Attorney General to provide "a statement of the basis and the purpose" for records she demands. 52 U.S.C. § 20703. In *Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962), for example, the court concluded that the Attorney General's demand "adequately stated the basis and the purpose therefor" when the demand explained that information "tend[ed] to show that distinctions on the basis of race or color ha[d] been made with respect to registration and voting," and the purpose was "to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred " *Id.* at 229 n.6 (citation modified). While the statute does not provide a definition of basis, the caselaw suggests that "basis" is the statement supporting the United States's belief that there is a violation of federal civil rights law, and the statement of "purpose" must explain how the requested records would help determine if there is a violation of the law. *Id.*

The basis and purpose requirements of the CRA are safeguards, so that the statute cannot be used as a fishing expedition to obtain records for unrelated reasons, or for no reason at all. For example, the United States could not use the CRA to obtain voting records because it wanted to verify taxpayer addresses. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("Title III provides—if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles."), *aff'd sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d 430 (5th Cir. 1961); *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960."). The basis

and purpose safeguards are necessary to prevent prosecutorial overreach. These safeguards also accord with those applied in analogous situations. In the related context of administrative subpoenas, courts have found that the test of judicial enforcement of an administrative subpoena includes an evaluation of whether the investigation is "conducted pursuant to a legitimate purpose." *Doe v. United States*, 253 F.3d 256, 263 (6th Cir. 2001).

Here, Plaintiff's Complaint fails to plausibly establish that the Attorney General has provided an adequate statement of the basis and purpose for her demand. The Complaint contains a single barebones paragraph to address the statutory requirements necessary to obtain certain records under the CRA. That paragraph alleges that USDOJ's "August 14 letter also made a demand pursuant to the Civil Rights Act for the unredacted [statewide voter registration list], informing the Secretary that the purpose of the demand under the CRA was to determine Michigan's compliance with both the NVRA's and HAVA's voter list maintenance requirements." *See* Compl. ¶ 43. The Complaint fails to provide any basis for why the Attorney General believes that Michigan has not complied with the list-maintenance requirements of the NVRA and HAVA. Providing that basis is especially important here, where most voter registration data is already publicly available to the Attorney General, and Michigan's list-maintenance practices are documented and have recently been examined and approved by the Sixth Circuit. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 626–27 (6th Cir. 2025).[4] The fact that just last year the Sixth Circuit upheld Michigan's list-maintenance practices as "reasonable" under the NVRA

---

[4] The CRA was passed in response to—and Section 303 was widely used during—a period of broad scale racial discrimination, including in voter registration. *See Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) ("Of the 6085 Negro citizens of voting age not a single one is registered to vote."); *see also United States v. W. Peachtree Tenth Corp.*, 437 F.2d 221, 227 (5th Cir. 1971) (noting the "significant probative value" of "pattern or practice of discrimination" (citing *Lynd*, 306 F.2d at 228)). No such pattern gives context to the United States's statement of basis here.

suggests an even greater need for a clear basis for Plaintiff's demands to avoid wasteful re-investigation and re-litigation of a recently settled issue. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th at 626–27.

Further, nowhere in the Complaint does the Attorney General explain the "purpose" of seeking the unredacted information here—*i.e.*, why driver's license numbers, months and days of birth, and partial social security numbers are necessary for the Attorney General to determine compliance with the NVRA and HAVA's list-maintenance requirements. In fact, as explained, *see infra* Background II(C) & Argument III and IV, driver's license numbers, months and days of birth, and partial social security numbers are *not* necessary for that analysis. Plaintiff's allegation thus falls short of the standard set in *Lynd*. *See* 306 F.2d at 228.[5]

Plaintiff's failure to provide an adequate basis and purpose is unsurprising, because its purpose is plainly not to evaluate compliance with the list-maintenance provisions of the NVRA or HAVA, but to sweep up sensitive data of tens of millions of voters that can be used for any number of undisclosed and opaque purposes. In stark contrast to previous, targeted demands under the CRA, USDOJ has made the same request for sensitive voter data to at least 40 states, and thus far sued eight states and one county that have failed to immediately comply with its full demands.[6] It has even demanded Wyoming's unredacted file under the NVRA, even though Wyoming is

---

[5] While *Lynd* is not binding on this Court, it properly recognizes that a statement of basis and purpose is required under the CRA.

[6] Kaylie Martinez-Ochoa et al., *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr. (Aug. 28, 2025), https://perma.cc/GXA2-HVZ6; *United States v. Bellows*, No. 1:25-CV-468 (D. Me. filed Sep. 16, 2025); *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. filed Sep. 16, 2025); *United States v. Weber*, No. 2:25-cv-09149 (C.D. Cal. filed Sep. 25, 2025); *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. filed Sep. 25, 2025); *United States v. Scanlan*, No. 1:25-cv-00371 (D.N.H. filed Sep. 25, 2025); *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. filed Sep. 25, 2025); *United States v. Page*, No. 8:25-cv-01370-DOC-ADS (C.D. Cal. filed June 25, 2025); *United States v. Bd. of Elections of the State of New York*, No. 1:25-cv-01338 (N.D.N.Y. filed Sep. 25, 2025).

exempt from the NVRA.[7] Nor has USDOJ attempted to show that it believes all 40 states are violating the NVRA's and HAVA's list-maintenance provisions, demonstrating that USDOJ improperly seeks to use the CRA as an unlimited tool to compile and consolidate voter data, rather than to protect the right to vote. *See In re Gordon*, 218 F. Supp. at 827 ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960.").

## III.    Count II should be dismissed because the request for Michigan's unredacted voter list exceeds the Attorney General's authority to investigate under the NVRA.

The Complaint fails to state a claim under the NVRA because Defendants have already satisfied their statutory obligations and because the requested information is not necessary to enforce the NVRA's list-maintenance provision. As such, Count II should be dismissed.

### A.  Defendants have already satisfied their duty under the NVRA.

By providing the public voter registration list, Defendants have already fulfilled their obligation under the NVRA's public-inspection provision. The NVRA does not require the disclosure of driver's license numbers, months and days of birth, and social security numbers. Moreover, Michigan's voter protection laws prevent disclosure of the personally identifying information at issue, and the NVRA does not preempt those laws.

*1.   Defendants complied with the NVRA's public-inspection provision.*

Plaintiff has failed to assert a cognizable claim for relief under the NVRA's public-inspection provision. The NVRA requires states to allow public inspection of "all records

---

[7] Letter from Harmeet K. Dhillon to the Hon. Chuck Gray (Aug. 14, 2025), https://www.brennancenter.org/media/14549/download/wyoming_08.14.2025_doj-letter_0.pdf?inline=1 ("We have requested Wyoming's VRL to assess your state's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act ('NVRA'), 52 U.S.C. § 20501, *et seq*."); *but see The National Voter Registration Act of 1993 (NVRA)*, U.S. Dep't of Justice, Civil Rights Division (updated Nov. 1, 2024), https://www.justice.gov/crt/national-voter-registration-act-1993-nvra.

concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]" 52 U.S.C. § 20507(i)(1). Courts have interpreted the public-inspection provision to include voter registration lists and underlying materials about how lists are created, updated, and maintained. *See Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 335 (4th Cir. 2012) (ordering disclosure of voter registration applications with voters' social security numbers redacted ); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266 (4th Cir. 2021) (finding that efforts to identify noncitizen registrants qualified as a program subject to disclosure).

Defendants complied with the public-inspection provision when they provided Michigan's statewide voter registration list that excluded voters' driver's license numbers, months and days of birth, and social security numbers, consistent with Michigan law. *See* Mich. Comp. Laws § 168.509gg (exempting from disclosure certain personally identifying information contained in voter records); *id.* § 15.243(1)(d) (permitting a public body to refuse to disclose "[r]ecords or information specifically described and exempted from disclosure by statute"); *id.* § 15.243(1)(z) (permitting a public body to refuse to disclose "[i]nformation that would identify or provide a means of identifying a person that may, as a result of disclosure of the information, become a victim of a cybersecurity incident"); *see also infra* Argument III(A)(2).

Courts have consistently recognized that the NVRA's public-inspection provision is satisfied when responsive records are disclosed with sensitive identifiers redacted, including driver's license numbers, birth dates, or social security numbers. *See, e.g.*, *Project Vote*, 682 F.3d at 339–40 (finding disclosure of voter-registration applications with social security numbers and driver's license numbers redacted was permissible because redaction prevented the "danger that . . . uniquely sensitive information will be compromised by Section 8(i)(1)'s public disclosure

requirement."); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736 (S.D. Miss. 2014) (finding that the public-disclosure provision "does not, as a general proposition, prohibit a State from protecting voter registrants' SSNs and birthdates as highly personal and sensitive information" because forced disclosure of sensitive identifiers would make citizens hesitant to register to vote); *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d at 265–66 (recognizing the NVRA's broad disclosure mandate while permitting limited redaction of sensitive identifiers); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns."). These holdings harmonize the NVRA with the Privacy Act, which was already in effect when Congress enacted the NVRA. *See supra* Background II(B). Plaintiff itself argued in an amicus brief that "the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records . . . [n]or does it prohibit redacting an even broader set of personal information in certain sensitive circumstances." Brief for the United States as Amicus Curiae at 27, *Pub. Int. Legal Found., Inc. v. Bellows*, No. 23-1361, 2023 WL 4882397 (1st Cir. July 25, 2023); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024). The First Circuit agreed, noting that "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File" and finding that "the proper redaction of certain personal information in the Voter File can further assuage the potential privacy risks implicated by the public release of the Voter File." *Bellows*, 92 F.4th at 47, 56.

Defendants satisfied their obligations by providing Michigan's statewide voter registration list with voters' driver's license numbers, months and days of birth, and social security numbers

redacted. As such, this Court should find that Plaintiff has failed to state a cognizable claim under the NVRA's public-inspection provision.

### 2. *Michigan law prohibits Defendants from disclosing the requested records.*

Moreover, state law prohibits Defendants from disclosing the requested records. Plaintiff is incorrect when it claims that "full date of birth, as well as driver's license number and/or last four digits of social security numbers" are necessary to enforce the NVRA and that Michigan law prohibiting disclosure of the requested records is "inapplicable" because it is preempted by federal law. Compl. ¶¶ 47–48. Michigan law is not preempted by the NVRA because the NVRA does not reach the records that the Attorney General seeks. *See supra* Argument III(A)(1). Michigan law prohibits the public disclosure of voters' driver's license numbers, months and days of birth, and social security numbers. *See* Mich. Comp. Laws § 168.509gg (exempting from disclosure certain personally identifying information contained in voter records); *id.* § 15.243(1)(d) (permitting a public body to refuse to disclose "[r]ecords or information specifically described and exempted from disclosure by statute"); *id.* § 15.243(1)(w) (permitting refusal to disclose "[i]nformation or records that would disclose the Social Security number of an individual"); *id.* § 15.243(1)(z) (permitting a public body to refuse to disclose "[i]nformation that would identify or provide a means of identifying a person that may, as a result of disclosure of the information, become a victim of a cybersecurity incident"); *see also Herald Co., Inc. v. Kent Cnty. Sheriff's Dep't*, 261 Mich. App. 32, 680 N.W. 2d 529 (2004) (upholding redaction of Social Security number and date of birth in public records produced pursuant to a request under Michigan's Freedom of Information Act); *Mullin v. Detroit Police Dep't*, 133 Mich. App. 46, 348 N.W. 2d 708 (1984) (exempting disclosure of driver's license numbers in response to a Michigan FOIA request). These privacy laws apply to Defendants in this case, regardless of whether Plaintiff invokes the NVRA.

Courts have recognized that the NVRA and state privacy laws operate together where such state privacy laws require minimal redaction of sensitive personal identifiers, while still requiring disclosure of the underlying records. *See Project Vote*, 682 F.3d at 339–40 (explaining that states may remove social security numbers and driver's license numbers while disclosing voter registration applications); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d at 265–66 (recognizing the NVRA's broad disclosure mandate while permitting limited redaction of sensitive identifiers). Specific to Michigan, the NVRA does not require disclosure of the sensitive identifiers covered by the State's voter protection law. *Id.* As such, Michigan laws preventing disclosure of sensitive information do not frustrate the NVRA's purpose. Instead, those privacy laws reinforce the boundaries of public inspection articulated by the courts and the Attorney General. *See id.*; Brief for the United States as Amicus Curiae at 28, *Pub. Int. Legal Found., Inc.* (arguing that state law limits on voter information are not preempted when they affect uses that "would not further the NVRA's purposes," including "bans on disseminating personal data.").

The NVRA's coexistence with state privacy laws is another way that the NVRA balances its objectives of encouraging participation and protecting the integrity of the electoral system. Instead of displacing state data protections, those laws operate in concert with the NVRA as a "single procedural scheme," ensuring that the Attorney General and private litigants have the data required to enforce the Act, while simultaneously protecting voters' privacy interests. *See Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012). Thus, Michigan's privacy laws are not preempted by the NVRA. *See Atlas Data Priv. Corp. v. We Inform, LLC*, No. 24-cv-4037, 2025 WL 2444153, at *2–3 (D.N.J. Aug. 25, 2025) (finding state law limiting disclosure of personal information is not preempted by the NVRA).

19

### 3.  The NVRA's enforcement provision does not include power to demand records.

Count II cannot survive simply because the Attorney General has the authority to enforce the NVRA, given that the statute does not authorize the Attorney General to seek records beyond the requirements of the public-inspection provision.

Although Count II of the Complaint relies solely on the NVRA's public-inspection provision, *see* Compl. at 16 ("Count II: [NVRA], 52 U.S.C. § 20507(i)"), the Complaint also makes passing reference to "the Attorney General's enforcement authority." *Id.* ¶ 60. But the NVRA's provision granting the Attorney General enforcement authority simply allows the Attorney General to "bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter." *See* 52 U.S.C. § 20510(a). Neither that provision nor any part of the NVRA grants the Attorney General independent subpoena or administrative investigatory powers.[8] *See* 52 U.S.C. § 20510(a). The Attorney General has no special right to access information outside of the procedures that the NVRA prescribes.

Caselaw confirms that a general grant of enforcement authority does not create an implied right to force states to provide data to the federal government. *See Consumer Fin. Prot. Bureau v. Accrediting Council for Indep. Colleges & Schs.*, 854 F.3d 683, 691 (D.C. Cir. 2017) (finding that an agency's ability to define the scope of its investigation broadly "does not afford it unfettered authority to cast about for potential wrongdoing"); *United States v. Xcel Energy, Inc.*, 759 F. Supp. 2d 1106, 1112 (D. Minn. 2010) (noting that even broad discretion to request documents is limited by the text of the authorizing statute); *United States v. Gurley*, 235 F. Supp. 2d 797, 802 (W.D.

---

[8] Instead, Congress authorized parallel enforcement by private plaintiffs and the Attorney General to ensure broad compliance with the NVRA's goals. 52 U.S.C. § 20510(a) & (b); *ACORN v. Miller*, 129 F.3d 833, 836 (6th Cir. 1997) (explaining that when a state fails to comply with the NVRA, either the Attorney General or a private individual may bring suit). As described, this reflects that the NVRA's provisions were designed intentionally to balance transparency and privacy concerns. *See supra* Background II(B).

Tenn. 2002), *aff'd*, 384 F.3d 316 (6th Cir. 2004) (finding that the EPA could proffer information requests where Congress expressly authorized the agency to seek requested information).

The NVRA has a public-inspection provision, and it does not contain any other specific records-collection authority for the Attorney General. If the Attorney General has evidence that Michigan has failed to comply with the NVRA's list-maintenance requirements, the Attorney General may file a civil suit alleging those violations, and she may take discovery in that suit. *See* 52 U.S.C. § 20510(a). The Attorney General did not invoke that enforcement mechanism here. Instead, Plaintiff has demanded that Michigan provide millions of voters' driver's license numbers, months and days of birth, and social security numbers so that it can amass significant amounts of data.

**B.    Michigan's unredacted statewide voter registration list is not necessary to determine Michigan's compliance with the NVRA's list-maintenance requirements.**

Plaintiff's NVRA claim also rests on the incorrect assertion that millions of Michiganders' sensitive personal identifiers are necessary to assess Michigan's compliance with the NVRA's list-maintenance requirements. The NVRA requires states to implement "a *general program* that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters." 52 U.S.C. § 20507(a)(4) (emphasis added). "Congress did not give any further guidance on what a 'reasonable effort' must look like. Congress did not, for example, enumerate what steps a state should take to come into compliance with this standard." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624 (6th Cir. 2025). Only six months ago, the Sixth Circuit addressed Michigan's compliance with the NVRA's list-maintenance requirements by reviewing its procedures rather than by reviewing individual voters' sensitive identifiers. *Id.* at 626–27 (assessing Michigan's program based on its procedures and mechanisms). To evaluate Michigan's NVRA compliance,

the Sixth Circuit relied on the district court's comparison of Michigan's removal program to other state programs, review of state-specific statistics, and analysis of the "mechanics" of Michigan's program. The Court noted "[t]hat [whether] Michigan makes a reasonable effort can also be demonstrated through basic statistical evidence" and found that it was sufficient that the "record demonstrate[d] that deceased voters are removed from Michigan's voter rolls on a regular and ongoing basis." *Id.* at 627–28. Based on its review of these facts—which did not include individual voters' sensitive identifiers—the Court of Appeals concluded that the relevant portion of Michigan's procedure complied with the NVRA and affirmed the district court's assessment. *Id.* at 629, 632.

The Attorney General does not explain why she needs access to driver's license numbers, months and days of birth, and social security numbers to conduct the same evaluation of Michigan's list-maintenance programs. Defendants have already provided USDOJ with access to the publicly available statewide voter registration list and other pertinent information regarding its NVRA compliance. Compl. ¶ 46; Ex. D, Sep. 2, 2025 Letter. Because driver's license numbers, months and days of birth, and social security numbers are irrelevant to determining whether Michigan has satisfied the NVRA's requirements that it conducts a *reasonable*, *general* program of list maintenance, Plaintiff's claim fails and should be dismissed.

## IV.    Count III should be dismissed because the request for Michigan's full voter list exceeds the Attorney General's authority to investigate under HAVA.

The Complaint fails to state a claim under Count III because HAVA does not afford the Attorney General access to Michigan's unredacted voter list. Just like the NVRA, HAVA contains an enforcement provision without any reference to disclosure of the voter file, much less the voter file with driver's license numbers, months and days of birth, and social security numbers. And HAVA contains *no* provision that requires states to provide the Attorney General, or anyone else,

22

election data.

Section 21111 of HAVA authorizes the Attorney General to "bring a civil action against any State . . . as may be necessary" for the limited purpose of "carry[ing] out the uniform and nondiscriminatory election technology and administration requirements" set forth in certain sections of HAVA, including the list-maintenance requirements detailed in 52 U.S.C. § 21083(a). 52 U.S.C. § 21111. Plaintiff alleges that it is unable to "determine[] Michigan's compliance with the list maintenance requirements of HAVA" absent "the current electronic copy of Michigan's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number." Compl. ¶ 66. But the Attorney General cannot point to any part of HAVA—or any legal authority—that gives her the power to demand the full, unredacted voter registration file from states outside of a HAVA enforcement suit. That is because no such legal authority exists: a basic enforcement provision does not implicitly include the authority to force production of records, especially those that must be kept private under law. *See supra* Argument III(A)(3); 52 U.S.C. § 20701; 52 U.S.C. § 20703 (empowering Attorney General with specific power to demand records).

Moreover, a static, unredacted copy of the Michigan voter registration list is not necessary—or even useful—to determine whether Michigan is complying with HAVA's list-maintenance requirements because a static list does not explain the procedures by which Michigan maintains the list. The Attorney General claims that, absent Michigan's unredacted voter list, she is unable to evaluate (1) whether "duplicate names are eliminated from the computerized list pursuant to 52 U.S.C. § 21083(a)(2)(B)" and (2) whether the State is in compliance with Section 21083(a)(5)(A). Compl. ¶¶ 65-66 (internal quotations omitted). Neither of these provisions can

23

justify Plaintiff's demand for sensitive voter information. First, Michigan has already explained in detail its processes for determining duplicate registrations and for removing duplicate names from the Qualified Voter File. *See* Ex. D, Sep. 2, 20205 Letter. Even if this detailed information about Michigan's duplicate-removal processes left any question as to its compliance with Section 21083(a)(2)(B), the Attorney General could perform a duplicate check using the voter registration list Michigan has already provided.

Second, Michigan's unredacted voter registration file is unnecessary to determine its compliance with Section 21083(a)(5)(A). Though the Attorney General characterizes Section 21083(a)(5)(A) as containing "list maintenance requirements," Compl. ¶ 66, Section 21083(a)(5)(A) is not a list-maintenance requirement; it requires voter registration applications to request certain identifying information such as a driver's license number or last four digits of a social security number. *See* 52 U.S.C. § 21083(a)(5)(A)(i). Michigan's voter registration application is publicly available, and collects the information required by Section 21083(a)(5)(A). *See Michigan Voter Registration Application and Change of Address Form*, https://www.michigan.gov/sos/-/media/Project/Websites/sos/Elections/Election-Forms/Voter-Registration-Form-English.pdf (last visited Nov. 25, 2025). Since Michigan's voter registration application is compliant with Section 21083(a)(5)(A), that provision cannot form the basis for the Attorney General's demand of Michigan's unredacted voter file.

No other provision of HAVA requires disclosure of Michigan's unredacted voter list. Unlike the NVRA, HAVA does not contain a provision through which the Attorney General or the public may request records. As described, *see supra* Background II(C), the NVRA was already in place when Congress passed HAVA, and HAVA's repeated invocation of the NVRA demonstrates that "Congress knew how to reference the NVRA." *Bellito*, 935 F.3d at 1202. But Congress chose not

24

to incorporate the NVRA's disclosure provision or to craft one specific to HAVA. As a result, no provision of HAVA requires Michigan to produce the detailed voter information that the Attorney General has requested. Therefore, Plaintiff has failed to allege a cognizable claim that Michigan has violated HAVA by withholding its unredacted voter list, and Count III cannot stand.

## CONCLUSION

For the reasons stated above, Proposed-Intervenor Defendant League of Women Voters of Michigan asks that the Court grants this motion to dismiss all counts of the Complaint.


Dated: November 25, 2025                    Respectfully submitted,


*/s/ Renata O'Donnell*

Brent Ferguson (NY4890620)
Daniel S. Lenz (WI1082058)
Sejal Jhaveri (NY5396304)
Renata O'Donnell (NY5767561)
Heather Szilagyi (DC90006787)
Alexis Grady (DC90017620)
Kate Hamilton (DC90006168)
Campaign Legal Center
1101 14th St. NW, Suite 400
Washington, DC 20005
Tel: (202) 736-2200
Fax: (202) 736-2222
bferguson@campaignlegalcenter.org
dlenz@campaignlegalcenter.org
sjhaveri@campaignlegalcenter.org
rodonnell@campaignlegalcenter.org
hszilagyi@campaignlegalcenter.org
agrady@campaignlegalcenter.org
khamilton@campaignlegalcenter.org

Mark Brewer (P35661)
Goodman Acker P.C.
Two Towne Square, Suite 444
Southfield, Michigan 48076

MBrewer@goodmanacker.com

Maura Eileen O'Connor*
Brennan Center for Justice
at NYU School of Law
777 6th St. NW, Ste. 1100
Washington, DC 20001
Tel: (202) 249-7190
oconnore@brennan.law.nyu.edu

Andrew B. Garber (NY5684147)
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
Tel: (646) 292-8310
Fax: (212) 463-7308
garbera@brennan.law.nyu.edu

*  *Application for Western District of Michigan Admission Forthcoming*

*Counsel for Proposed Intervenor-Defendant League of Women Voters of Michigan*

26

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 25th day of November 2025, I caused to be served a copy of the

above document and Exhibits on all counsel of record and parties via the ECF system.

<u>/s/ *Renata O'Donnell*</u>
Renata O'Donnell
