## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

     Plaintiff,

v.

JOCELYN BENSON, in her official capacity as
Michigan Secretary of State; and the STATE OF
MICHIGAN,

     Defendants.

Case No. 1:25-cv-1148-HYJ-PJG

Hon. Hala Y. Jarbou

ORAL ARGUMENT REQUESTED

## PROPOSED DEFENDANT-INTERVENORS MICHIGAN ALLIANCE FOR RETIRED AMERICANS, DONALD DUQUETTE, AND KEELY CRIMANDO'S REPLY IN SUPPORT OF THEIR MOTION TO INTERVENE

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.   Proposed Intervenors are entitled to intervene as a matter of right. ........................................ 2

   A.  Proposed Intervenors' interests are threatened by this lawsuit. ......................................... 2

      1.  Proposed Intervenors do not require—but still have—a right of action. ......................... 3

      2.  The threat to Proposed Intervenors' privacy interests is concrete, not speculative. ......... 6

      3.  Threats to privacy and voting rights are necessarily particularized. ............................... 8

   B.  The State Defendants do not adequately represent Proposed Intervenors. ....................... 10

II.  Proposed Intervenors should, alternatively, be granted permissive intervention. .................. 13

CONCLUSION ....................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases:**

*1789 Found. Inc. v. Fontes*,
  No. 24-cv-02987, 2025 WL 834919 (D. Ariz. Mar. 17, 2025)............................................ 12

*Associated Builders & Contractors v. Perry*,
  16 F.3d 688 (6th Cir. 1994) ........................................................................................ 9

*Batts v. Gannett Co.*,
  No. 22-10685, 2023 WL 3143695 (E.D. Mich. Mar. 30, 2023) ............................................ 9

*Bautista v. United States*,
  No. CV 2021-18, 2023 WL 4706822 (D.V.I. July 24, 2023) ................................................ 4

*Bd. of Educ. v. U.S. Dep't of Educ.*,
  No. 2:16-cv-524, 2016 WL 4269080 (S.D. Ohio Aug. 15, 2016) ......................................... 3

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) .................................................................................. 12

*Berger v. N.C. State Conf. of the NAACP*,
  597 U.S. 179 (2022)........................................................................................ 2, 10, 11

*Bradley v. Milliken*,
  828 F.2d 1186 (6th Cir. 1987) ..................................................................................... 5

*Brunner v. Ohio Republican Party*,
  555 U.S. 5 (2008)..................................................................................................... 4

*City of Chicago v. FEMA*,
  660 F.3d 980, 986 (7th Cir. 2011) .............................................................................. 13

*Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*,
  No. 3:22-CV-337, 2023 WL 348272 (S.D. Ohio Jan. 20, 2023)........................................ 11

*FEC v. Akins*,
  524 U.S. 11 (1998).................................................................................................... 9

*Grutter v. Bollinger*,
  188 F.3d 394 (6th Cir. 1999) ................................................................................. 5, 10

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ...................................................................................... 9

*Jones v. Prince George's County*,
    348 F.3d 1014 (D.C. Cir. 2003) ............................................................. 3

*Judicial Watch, Inc. v. Ill. State Bd. of Elections*,
    No. 24-cv-1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024) ........................................... 12

*Kalbers v. U.S. Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ............................................................. 5

*Lochridge v. Quality Temporary Servs., Inc.*,
    No. 22-cv-12086, 2023 WL 4303577 (E.D. Mich. June 30, 2023) ..................................... 6

*Mich. State AFL-CIO v. Miller*,
    103 F.3d 1240 (6th Cir. 1997) ............................................................. 5, 6

*Moeller v. Am. Media, Inc.*,
    235 F. Supp. 3d 868 (E.D. Mich. 2017) ............................................................. 6

*Pratt v. KSE Sportsman Media, Inc.*,
    586 F. Supp. 3d 666 (E.D. Mich. 2022) ............................................................. 9

*Providence Baptist Church v. Hillandale Comm., Ltd.*,
    425 F.3d 309 (6th Cir. 2005) ............................................................. 8, 9

*Providence Journal Co. v. FBI*,
    460 F. Supp. 762 (D.R.I. 1978) ............................................................. 12

*Pub. Int. Legal Found., Inc. v. Winfrey*,
    463 F. Supp. 3d 795 (E.D. Mich. 2020) ............................................................. 12

*Purnell v. City of Akron*,
    925 F.2d 941 (6th Cir. 1991) ............................................................. 6

*RNC v. Aguilar*,
    No. 2:24-cv-00518, 2024 WL 3409860 (D. Nev. July 12, 2024) ..................................... 12

*Savidge v. Pharm-Save, Inc.*,
    727 F. Supp. 3d 661 (E.D. Ky. 2024) ............................................................. 6, 7

*Sessions v. Dimaya*,
    584 U.S. 148 (2018) ............................................................. 14

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) ............................................................. 6

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) ........................................................................... 3, 10

*United States ex rel. Eisenstein v. City of New York*,
    556 U.S. 928 (2009) ................................................................................ 3

*United States v. Alabama*,
    No. 2:06-cv-392, 2006 WL 2290726 (M.D. Ala. Aug. 8, 2006) ........................... 4

*United States v. Hallinan*,
    75 F.4th 148 (3d Cir. 2023) .................................................................... 3

*United States v. N.Y. State Board of Elections*,
    312 Fed. Appx. 353 (2d Cir. 2008) ........................................................... 4

*Willis v. Firestone Bldg. Prods. Co.*,
    231 F.R.D. 447 (D. Conn. 2005) .............................................................. 4

*Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*,
    41 F.4th 767 (6th Cir. 2022) .............................................................. 10, 11

**Statutes:**

31 U.S.C. § 3730 ....................................................................................... 4

52 U.S.C. § 20510 ..................................................................................... 5

**Rules:**

Fed. R. Civ. P. 24 ............................................................................... 3, 5, 13

**Other Authorities:**

Abby Vesoulis & Ari Berman, *New Docs Show DHS Gathering Driver's License Data in Voter Fraud Crusade*, Mother Jones (Nov. 14, 2025),
    https://www.motherjones.com/politics/2025/11/dhs-gathering-drivers-license-save-voter-fraud-crusade/ ............................................................................. 7

Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html ........................................................... 7

Exec. Order No. 14,248, 90 Fed. Reg. 14005, §§ 5(b), 7(b) (Mar. 25, 2025) ............... 13

Jen Fifield, *Details of DHS Agreement Reveal Risks of Trump Administration's Use of Social Security Data for Voter Citizenship Checks*, ProPublica (Oct. 30, 2025, 5:30 ET), https://www.propublica.org/article/dhs-social-security-data-voter-citizenship-trump .......... 7

Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html ......................................................................................................... 7

## INTRODUCTION

Proposed Defendant-Intervenors Michigan Alliance for Retired Americans, Donald Duquette, and Keely Crimando (collectively, "Proposed Intervenors"), are entitled to intervene as of right. As an organization, the Alliance has substantial interests in the privacy of its members' data and its ability to engage and mobilize voters in support of its mission. As individuals, Duquette and Crimando have substantial interests in protecting their own privacy. No existing party shares these interests, which will be directly impaired if DOJ succeeds in obtaining an unredacted copy of Michigan's statewide voter file. Nothing in DOJ's opposition brief—which largely ignores the interests of the individual Proposed Intervenors—justifies finding otherwise. Instead, DOJ's arguments miss the point entirely, run contrary to binding precedent, or both.

For example, DOJ argues that two of the three statutes under which it sues do not confer a private right of action, but that would only be relevant if Proposed Intervenors were attempting to *initiate* suit as a *plaintiff*. Here, Proposed Intervenors seek to *intervene* as *defendants*—just as Rule 24 contemplates—and DOJ's arguments about private rights of action are simply irrelevant. DOJ also argues that the harms that Proposed Intervenors fear are hypothetical, but does not dispute that its requested relief would require the disclosure of the confidential information of Duquette and Crimando and of the Alliance's members, which is more than sufficient to meet the minimal burden to show impairment under Rule 24. DOJ also argues that Proposed Intervenors' interests are not particularized, but here again DOJ applies the wrong law. The particularized injury requirement comes from Article III, which concerns what plaintiffs must demonstrate before a federal court may exercise jurisdiction over a matter; it does not apply to Rule 24 motions to intervene. Nevertheless, the threatened disclosure of Proposed Intervenors' own private

1

information is highly personal and more than sufficient to satisfy even the stricter requirements of Article III.

DOJ is also wrong when it argues that the State Defendants adequately represent Proposed Intervenors' interests. The State Defendants will not be the victims of any privacy violation if DOJ prevails, and they are not charged with achieving the mission of the Alliance. Though the State Defendants may oppose DOJ's suit at the outset, they have competing interests in list maintenance and avoiding an escalating confrontation with the federal government that are adverse to Proposed Intervenors' unmitigated interests in protecting their privacy. Because the State Defendants' interests are far from *identical* to Proposed Intervenors' interests, *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022), Proposed Intervenors satisfy this prong of Rule 24(a). Finally, there is no basis to deny Proposed Intervenors' alternative request that they be granted permissive intervention. Indeed, just yesterday, a federal court granted permissive intervention to civic organizations challenging DOJ's identical request for California's statewide voter registration list. *See* Proposed Order at 1 n.1, *United States v. Weber*, No. 25-cv-9149 (C.D. Cal. Nov. 19, 2025), ECF No. 65. This Court should likewise grant intervention.

## ARGUMENT

## I.    Proposed Intervenors are entitled to intervene as a matter of right.

### A.    Proposed Intervenors' interests are threatened by this lawsuit.

DOJ presses three arguments that Proposed Intervenors lack the requisite interest in this case to be entitled to intervene as of right, *see* ECF No. 26 at PageID.242-248, but none have merit. Proposed Intervenors easily satisfy this requirement under Rule 24(a).

1.    *Proposed Intervenors do not require—but still have—a right of action.*

DOJ's lead theory is that the absence of an express statutory cause of action for private parties under the Help America Vote Act ("HAVA") or the Civil Rights Act of 1960 precludes Proposed Intervenors' intervention. This argument is flatly wrong for several reasons. Most fundamentally, whether an entity has a cause of action—which allows an injured party to *initiate* a lawsuit as a *plaintiff*, *see United States v. Hallinan*, 75 F.4th 148, 151 (3d Cir. 2023)—has nothing to do with whether it can *intervene* in an already pending lawsuit. *See United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009). The test for intervention is governed by Rule 24, which states that a court "must permit" (upon timely motion) "anyone" to intervene as a matter of right, so long as they have an "interest" that "may" be impaired and they are not adequately represented. Fed. R. Civ. P. 24(a)(2). Whether a prospective intervenor has a right to bring (or defend) a claim in the first instance is not an element of that test.

Courts have confirmed that straightforward reading of Rule 24 and rejected DOJ's theory that an entity must have a cause of action to intervene as of right: as Rule 24's "plain text indicates, intervenors of right need only an 'interest' in the litigation—not a 'cause of action' or 'permission to sue.'" *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003). The Supreme Court has long read Rule 24 to permit intervention by parties that would not have been able to initiate a suit in the first instance, *see Trbovich v. United Mine Workers*, 404 U.S. 528, 531 (1972) (finding intervention proper by union member even when the relevant statute prohibited union members from "initiating a private suit," because in intervening, they sought "only to participate in a pending suit"), as have other courts in this circuit and across the country, *e.g.*, *Bd. of Educ. v. U.S. Dep't of Educ.*, No. 2:16-cv-524, 2016 WL 4269080, at *3 (S.D. Ohio Aug. 15, 2016) ("In ruling on Rule 24(a) motions, courts generally analyze the *interests* of the

proposed intervenor, not the proposed intervenor's causes of action." (emphasis in original));

*Bautista v. United States*, No. CV 2021-18, 2023 WL 4706822, at *5 n.12 (D.V.I. July 24, 2023)

(rejecting argument that intervenor need have cause of action); *Willis v. Firestone Bldg. Prods.*

*Co.*, 231 F.R.D. 447, 449 (D. Conn. 2005) ("A party seeking to intervene, however, need not

have an independent cause of action to be considered to have an interest within the scope of Rule

24(a).").  And, in any event, Proposed Intervenors seek to intervene as *defendants*—and

defendants never need a cause of action.

Nothing in the cases offered by DOJ supports its theory that intervenors must have a cause

of action. It first cites *Brunner v. Ohio Republican Party*, but that case does not concern

intervention. *See* 555 U.S. 5, 6 (2008) (discussing private right to bring an action as a *plaintiff*).

DOJ's reliance on *United States v. Alabama* is also misplaced: it held only that unsubstantiated

concerns about a "perception" of partisan taint in Alabama's implementation of HAVA, without

more, did not qualify as a legally protectable interest. *See* No. 2:06-cv-392, 2006 WL 2290726,

at *4 (M.D. Ala. Aug. 8, 2006). In *dicta*, the court opined that HAVA does not imply a private

right of action, but it in no way suggested that a party is *required* to have a cause of action before

being allowed to intervene as of right. *See id.* at *4 & n.6. As for DOJ's unexplained citation to

*United States v. N.Y. State Board of Elections*, 312 Fed. App'x 353 (2d Cir. 2008), that opinion

does not address Rule 24's impairment-of-interests inquiry.

DOJ's argument that HAVA and the Civil Rights Act do not contemplate private parties

as defendants similarly fails. While Congress has in some cases limited the types of entities that

may intervene in particular actions, *see, e.g.*, 31 U.S.C. § 3730(b)(5) ("When a person brings an

action under this subsection [concerning civil actions for false claims], *no person other than the*

*Government may intervene*[.]" (emphasis added)), neither HAVA nor the Civil Rights Act

contains such a provision. Consequently, Rule 24(a) governs, and it explicitly states that courts must "permit *anyone* to intervene" who meets its listed requirements.[1] Fed. R. Civ. P. 24(a)(2) (emphasis added).

Finally, even if DOJ's theory that an express statutory authorization is required to allow participation as intervenors were correct, it would not matter: DOJ conspicuously fails to even acknowledge that the statute they rely upon for their lead claim, the National Voter Registration Act, provides an express private right of action for private litigants. 52 U.S.C. § 20510(b).

At bottom, DOJ's argument fundamentally misunderstands the requirements of Rule 24. The purpose of the Rule is to allow entities who may be affected by a pending litigation to join the case to protect their interests. The Sixth Circuit "subscribe[s] to a rather expansive notion of the interest sufficient to invoke intervention [as] of right" that does not even "require[] a specific legal or equitable interest" on behalf of the party seeking intervention. *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (quotation marks omitted) (quoting *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). That interest "is to be construed liberally," *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987), and requires only a "minimal" showing, less than that required to establish Article III standing, *Miller*, 103 F.3d at 1247. Proposed Intervenors surmount this low bar to intervene as of right: Proposed Intervenors have extensively described their privacy and other interests at stake were DOJ to succeed in its quest for their sensitive information. ECF No. 5 at PageID.43-44.

---

[1] Moreover, it is commonplace for courts to allow private parties to intervene to protect their interests in cases in which the government is the only party that could be directly sued. *See, e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 828 (9th Cir. 2021) (allowing private party to intervene in Freedom of Information Act case to support government's decision to withhold documents).

2.    *The threat to Proposed Intervenors' privacy interests is concrete, not speculative.*

DOJ's next argument—that the harm to Proposed Intervenors' interests is "speculative"—misunderstands both the law and the nature of Proposed Intervenors' threatened harm. *See* ECF No. 26 at PageID.245-246. Under binding precedent, Proposed Intervenors need only show that impairment of their interests is "possible"—a "minimal" burden. *Miller*, 103 F.3d at 1247. And here, if DOJ prevails in this matter, the privacy rights of Proposed Intervenors would *necessarily* be harmed since DOJ would obtain their highly sensitive information that is protected from disclosure under Michigan law. *See* Mich. Comp. Laws §168.509gg. Nor does DOJ dispute that it will share this information with other federal agencies that have recently exposed individuals' confidential information. *See* ECF No. 5 at PageID.39 n.4. An unlawful disclosure of confidential information to another party is itself a sufficiently concrete and particularized harm to satisfy even Article III standing, a higher burden than required under Rule 24. *See Savidge v. Pharm-Save, Inc.*, 727 F. Supp. 3d 661, 690-91 (E.D. Ky. 2024) ("[A]n intangible harm (like the risk of future harm) can be concrete, particularly if the injury has 'a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts,' such as 'reputation harms, disclosure of private information, and intrusion upon seclusion.'" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021)), *amended by* 2025 WL 964446 (Mar. 31, 2025); *Lochridge v. Quality Temporary Servs., Inc.*, No. 22-cv-12086, 2023 WL 4303577, at *3 (E.D. Mich. June 30, 2023) (same); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) (holding that, where Michigan law recognizes individuals' privacy rights, an "invasion of [the individuals'] privacy" in violation of that law is "sufficiently concrete" to satisfy Article III standing); *see also Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991) (holding "a party seeking to intervene need not possess the standing necessary to

initiate a lawsuit"). Accordingly, the prospect of DOJ obtaining the confidential information of Proposed Intervenors (or their members) itself establishes a sufficient interest under Rule 24(a)(2). *See* ECF No. 5 at PageID.43-44.

Furthermore, DOJ fails to rebut declarations establishing that Proposed Intervenors have particularized interests in protecting their private information, including in their continued ability to speak freely without fear of retaliation or retribution, ECF No. 5-4 at PageID.75-76, ¶¶ 11-14; ECF No. 5-5 at PageID.80-81, ¶¶ 5-9, and, as to the Alliance, its ability to advance its voter-engagement mission and also to protect its members from the unique risks they face as older Americans, such as identity theft and financial scams, if their private information were disclosed, *see* ECF No. 5-3 at PageID.69-71, ¶¶ 12-20; *see also Savidge*, 727 F. Supp. 3d at 694 (finding that the "future harm" of "identity theft or fraud" is sufficient to "satisfy the imminence" and "concrete" requirements for Article III standing). These concerns are validated by widespread public reporting indicating DOJ does not intend to keep voter data it receives from states confidential or secure within the Department, nor to use it for its stated purposes. *See* Nick Corasaniti, *Election Officials Press Trump Administration Over Voter Data*, N.Y. Times (Nov. 18, 2025), https://www.nytimes.com/2025/11/18/us/politics/election-officials-trump-voter-data.html (discussing letter from ten secretaries of state expressing concern that DOJ and DHS may have "actively misled election officials regarding the uses of voter data").[2]

---

[2] *See also, e.g.*, Emily Bazelon & Rachel Poser, *The Unraveling of the Justice Department*, N.Y. Times (Nov. 16, 2025), https://www.nytimes.com/interactive/2025/11/16/magazine/trump-justice-department-staff-attorneys.html (quoting an attorney tasked to work on DOJ's requests for state voter data that DOJ intends to share the data with "DOGE" and DHS, and that DOJ's stated purposes for seeking the voter data is "dishonest"); Abby Vesoulis & Ari Berman, *New Docs Show DHS Gathering Driver's License Data in Voter Fraud Crusade*, Mother Jones (Nov. 14, 2025), https://www.motherjones.com/politics/2025/11/dhs-gathering-drivers-license-save-voter-fraud-crusade/ (reporting on DHS's efforts to compile sensitive data on all voters to support allegations

DOJ offers nothing to rebut the existence of Proposed Intervenors' concrete interests except for conclusory assertions that Proposed Intervenors will face no cognizable privacy harms and a claim that a North Carolina court recently found similar privacy concerns were "objectively unfounded." ECF No. 26 at PageID.246; *see also* Consent Judgment, ECF No. 26-2. That claim is inaccurate: the *consent judgment* between DOJ and the North Carolina State Board of Elections is neither a court finding nor evidence that voters do not have privacy interests in their sensitive personal information. ECF No. 26-2 at PageID.263 (noting parties "waive[d] a hearing and the entry of findings of fact and conclusions of law"). In entering the consent judgment, the court denied pending motions to intervene *as moot* in light of the settlement, without any analysis of the intervenors' privacy concerns. *Id.* at PageID.272.[3] In any event, the consent judgment expressly reserved the State's right to seek a protective order "if" DOJ seeks "confidential . . . data." *Id.* at PageID.272.

3.    *Threats to privacy and voting rights are necessarily particularized.*

DOJ again gets the law wrong in asserting that Proposed Intervenors' interests are not sufficiently "particularized" because their interests are purportedly shared by all Michigan voters. ECF No. 26 at PageID.247. The "particularized" injury requirement comes from Article III standing jurisprudence, and the Sixth Circuit has been clear that Article III's "'injury in fact' requirement is *stricter* than the 'substantial interest' inquiry" under Rule 24. *Providence Baptist*

---

of widespread voter fraud and DOJ's suits against states for voter data as part of that effort); Jen Fifield, *Details of DHS Agreement Reveal Risks of Trump Administration's Use of Social Security Data for Voter Citizenship Checks*, ProPublica (Oct. 30, 2025, 5:30 ET), https://www.propublica.org/article/dhs-social-security-data-voter-citizenship-trump (reporting on growing claims that DOJ, DHS, and SSA's attempts to compile state voter data violate privacy laws and risk unlawful disclosures, and that audits confirm that DHS's tactics to identify purported non-citizens are unreliable).

[3] As DOJ concedes, that ruling is subject to multiple motions for reconsideration. ECF No. 26 at PageID.246 n.4.

*Church v. Hillandale Comm., Ltd.*, 425 F.3d 309, 318 (6th Cir. 2005) (emphasis added).

Accordingly, "[i]t is possible to have standing to intervene in a lawsuit, but not have Article III

standing." *Id.*; *see also Associated Builders & Contractors v. Perry*, 16 F.3d 688, 690 (6th Cir.

1994) ("An intervenor need not have the same standing necessary to initiate a lawsuit in order to

intervene in an existing district court suit where the plaintiff has standing.").

In any event, Proposed Intervenors could satisfy even the stricter Article III inquiry, so

they necessarily also meet Rule 24's "substantial injury" test. A violation of one's privacy is

inherently "particularized"—disclosure of private information affects each person in a "personal

and individual way," even if many people are similarly affected. *In re Facebook, Inc. Internet

Tracking Litig.*, 956 F.3d 589, 598-99 (9th Cir. 2020) (finding standing based on "historically

recognized right to privacy"); *see also Batts v. Gannett Co.*, No. 22-10685, 2023 WL 3143695,

at *3 (E.D. Mich. Mar. 30, 2023) (noting "the nonconsensual dissemination of information" in

violation of "a statutorily protected right to privacy" "inflicts harm in a concrete and

particularized way" (quoting *Pratt v. KSE Sportsman Media, Inc.*, 586 F. Supp. 3d 666, 676-77

(E.D. Mich. 2022))). Consequently, the fact that *many* voters will be harmed by DOJ's actions

does not make the threatened injuries any less concrete: each voter still stands to have their own,

personal information unlawfully disclosed. *See FEC v. Akins*, 524 U.S. 11, 24 (1998) (Article III

standing requirements are met when "large numbers of voters" suffer a "widely shared" injury).

Further, the Alliance's interest in advancing its own mission to promote voter engagement is

plainly not shared by all others. *See* ECF No. 5 at PageID.39.

\*\*\*

In sum, Proposed Intervenors have protectable interests in preserving their (or their

members') privacy and voting rights. Nor does DOJ dispute that the relief it seeks would "impair"

those interests, ECF No. 26 at PageID.19-20 (contesting only whether Proposed Intervenors have
identified a protectable interest)—which would undisputedly result from Michigan exposing
Proposed Intervenors' confidential information to DOJ and other federal agencies.

### B.    The State Defendants do not adequately represent Proposed Intervenors.

DOJ's argument that the Court should presume that the State Defendants adequately
represent Proposed Intervenors interest because they "share the same interests in this litigation,"
ECF No. 26 at PageID.249-250, is also at odds with precedent. Quite to the contrary, the Supreme
Court has held it is "normally . . . *not enough* to trigger a presumption of adequate representation"
when the intervenors' "interest is *similar to, but not identical with*, that of one the parties."
*Berger*, 597 U.S. at 197 (emphases added). The presumption thus does not apply here, where
Proposed Intervenors have interests in protecting their (or their members') confidential
information and (for the Alliance) its registration and get-out-the-vote efforts, which are not "not
identical with" the State Defendants' interests. But even if the presumption did apply, Proposed
Intervenors need only show that there is a "*potential*" for inadequate representation of its
interests. *Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*, 41 F.4th 767,
774-77 (6th Cir. 2022) (quoting *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999))
(emphasis in original). That is a "minimal challenge," *Berger*, 597 U.S. at 195, which Proposed
Intervenors readily meet.

Courts regularly find that government entities have different *interests* than private parties
even when their ultimate *objectives* appear aligned at first glance. In *Trbovich*, for example, the
Supreme Court reviewed a union member's effort to intervene as plaintiff in a suit that the
Secretary of Labor brought against his union. 404 U.S. at 539. As *Berger* summarized, "[a]t a
high level of abstraction, the union member's interest and the Secretary's might have seemed

closely aligned," but the presumption of adequate representation was not warranted because "the union member sought relief against his union, full stop," while the Secretary also had to "bear in mind broader public-policy implications." 597 U.S. at 196. Similarly, in a case raising a challenge to a zoning ordinance, the Sixth Circuit rejected the argument that the township adequately represented the interests of private landlords merely because the township was already vigorously defending the ordinance, explaining that the "focus of [the] analysis" is not "*what* the Township has done, but *why* it is doing it." *Wineries of the Old Mission Peninsula*, 41 F.4th at 776 (emphasis in original). The township had to balance "*both* . . . [its] desire to defend the zoning ordinances, *and* . . . [its] motive of securing more favorable settlement terms later." *Id.* (emphasis in original). The court concluded that "[i]t is not difficult to see how the two entities' interests could diverge" when the intervenors "own homes" that would be affected by the ordinance while the township "does not." *Id.* at 777. The court thus held that the intervenors overcame the presumption of adequate representation because "*overlapping* interests do not equal *convergent* ones for the purposes of assessing representation." *Id.* (emphasis added).

Proposed Intervenors' interests diverge from Michigan's several times over. For one, Michigan does not share the Alliance's parochial interest in registering and encouraging its members to vote. ECF No. 5-3 at PageID.70. And crucially, the highly sensitive information at stake is *personal data about the voters*—including Duquette and Crimando and the Alliance's members. Just as the governmental defendant in *Wineries of the Old Michigan Peninsula* did not have the same interest in defending a zoning ordinance as the intervenors whose personal homes would be affected, 41 F.4th at 777, the State Defendants here do not share Proposed Intervenors' interest protecting the privacy of their data and avoiding the risk of identity theft and political persecution if the data is mishandled. *See also Doe No. 1 v. Bethel Loc. Sch. Dist. Bd. of Educ.*,

No. 3:22-CV-337, 2023 WL 348272, at *2 (S.D. Ohio Jan. 20, 2023) (holding school board did not adequately represent transgender student's interest in defending inclusive bathroom policy when the board's interest was in "follow[ing] its . . . interpretation of the law" while the student had a "personal interest" in defending the policy). Put simply, "[n]o one can better assert an interest in personal privacy than the person whose privacy is at stake." *Providence Journal Co. v. FBI*, 460 F. Supp. 762, 766 (D.R.I. 1978), *overruled on other grounds*, 602 F.2d 1010 (1st Cir. 1979).

The State Defendants' interests, by contrast, reflect their own unique responsibilities. They must reconcile diffuse interests in election administration, budget management, coordination with federal agencies, and serving the electorate writ large, among others. *See Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (recognizing the NVRA requires state officials to "balance competing objectives"). Given this divergence in interests between state officials, on the one hand, and individual voters and their advocates, on the other, courts regularly grant intervention to civic groups in litigation over voter rolls. *See, e.g.*, *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24-cv-1867, 2024 WL 3454706, at *6 (N.D. Ill. July 18, 2024); *1789 Found. Inc. v. Fontes*, No. 24-cv-02987, 2025 WL 834919, at *3 (D. Ariz. Mar. 17, 2025); *RNC v. Aguilar*, No. 2:24-cv-00518, 2024 WL 3409860, at *3 (D. Nev. July 12, 2024); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799-800 (E.D. Mich. 2020).

In yet another distinction, the State Defendants and Proposed Intervenors face different litigation incentives. States are often inclined to settle costly voter list litigation—indeed, DOJ attaches to its opposition a consent judgment in which state defendants in North Carolina chose to settle with DOJ, over the vociferous objections of the pro-voter groups that sought to intervene there, *see* ECF No. 26-2—while Proposed Intervenors seek a merits victory that resoundingly

confirms their privacy rights. And given that the President has already threatened to withhold election funding from States that resist complying with his policy preferences, *see, e.g.*, Exec. Order No. 14,248, 90 Fed. Reg. 14005, §§ 5(b), 7(b) (Mar. 25, 2025), it is imperative to include private intervenors who face no such competing incentives based on a threat to the State fisc. *See Wineries of the Old Mission Peninsula*, 41 F.4th at 776 (finding inadequate representation when government defendant faced "the stick of damages and the carrot of settlement"); *City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011) (affirming grant of intervention where named defendants "might have been tempted to agree to a settlement").

## II. Proposed Intervenors should, alternatively, be granted permissive intervention.

Because DOJ concedes that Proposed Intervenors' motion is timely and that it raises a defense that shares a common question of law or fact with the main action, *see* ECF No. 26 at PageID.250-251, the only element of permissive intervention in dispute is whether Proposed Intervenors' participation will unduly delay the litigation or prejudice the original parties' rights. Fed. R. Civ. P. 24(b)(3). But DOJ has no basis to argue delay when successful intervention would not require altering any existing deadlines, and Proposed Intervenors agree to abide by any future deadlines set by the Court. Indeed, unlike DOJ, which has sought to delay the proceedings via a motion to stay, *see* ECF No. 8, Proposed Intervenors have worked promptly to move this litigation along: they moved to intervene just five days after DOJ sued and have *already* filed a proposed motion to dismiss, two weeks before the State Defendants' current responsive pleading deadline. *See* ECF No. 23.

DOJ admits that it most fears the prospect of "divergences of view." ECF No. 26 at PageID.250-51. But such divergences are precisely what warrants intervention in the first place—Proposed Intervenors possess interests that diverge from the State Defendants in a manner that

may well result in different arguments. Intervention ensures that the voices of the individuals *with*

*the most directly at stake* in this litigation are heard, and that this Court receives a full airing of

adversarial arguments. *See Sessions v. Dimaya*, 584 U.S. 148, 190 (2018) (Gorsuch, J., concurring

in part) ("[T]he crucible of adversarial testing is crucial to sound judicial decisionmaking.").

## CONCLUSION

Proposed Intervenors request that this Court grant their Motion to Intervene, ECF No. 5.


November 20, 2025                                     Respectfully submitted,

                                                      */s/ Sarah S. Prescott*
                                                      Sarah Prescott
                                                      **SALVATORE PRESCOTT PORTER &**
                                                      **PORTER**
                                                      105 E. Main St.
                                                      Northville, MI 48167
                                                      Telephone: 248-679-8711
                                                      prescott@spplawyers.com

                                                      Aria C. Branch
                                                      Josh Abbuhl
                                                      Branden D. Lewiston
                                                      Derek A. Zeigler
                                                      **ELIAS LAW GROUP LLP**
                                                      250 Massachusetts Ave NW, Suite 400
                                                      Washington, DC 20001
                                                      Telephone: (202) 968-4490
                                                      abranch@elias.law
                                                      jabbuhl@elias.law
                                                      blewiston@elias.law
                                                      dzeigler@elias.law

                                                      *Counsel for Proposed Intervenors the*
                                                      *Michigan Alliance for Retired Americans,*
                                                      *Donald Duquette, and Keely Crimando*