UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v

JOCELYN BENSON, in her official capacity
as Secretary of State of Michigan and the
STATE OF MICHIGAN,

      Defendants.

_____

No. 1:25-cv-01148

HON. HALA Y. JARBOU

MAGISTRATE JUDGE PHILLIP J. GREEN

**DEFENDANTS MICHIGAN SECRETARY OF STATE JOCELYN BENSON'S AND STATE OF MICHIGAN'S BRIEF IN SUPPORT OF MOTION TO DISMISS**

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
P55439

Dated:  November 26, 2025

# TABLE OF CONTENTS

Page

Table of Contents..................................................................................................... i

Index of Authorities............................................................................................... iii

Concise Statement of Issue Presented.................................................................. ix

Controlling or Most Appropriate Authority........................................................ ix

Introduction ............................................................................................................ 1

Statement of Facts .................................................................................................. 2

    A.    Michigan's voter registration requirements........................................... 2

    B.    NVRA's voter list maintenance requirements. ...................................... 3

    C.    HAVA's voter list maintenance requirements. ...................................... 5

    D.    Michigan's list maintenance program. ................................................... 6

        1.    Removing deceased voters............................................................ 7

        2.    Removing voters who change addresses....................................... 8

        3.    Michigan's removal program is effective. ................................. 11

    E.    DOJ's records demand............................................................................ 11

Standard of Review ............................................................................................... 14

Argument ............................................................................................................... 15

I.    The United States' complaint should be dismissed where it fails to state plausible claims that Michigan must provide the DOJ with sensitive personal information of Michigan voters......................................... 15

    A.    DOJ fails to state a claim under the CRA............................................ 15

        1.    DOJ stated no valid "basis" and "purpose" supporting its demand.......................................................................................... 15

        2.    CRA does not require the disclosure of sensitive information. ................................................................................... 19

B.  DOJ fails to state a claim under NVRA. ................................. 22

    1.  NVRA does not require disclosure of sensitive information. .................................................. 23

        a.  Social Security Numbers ................................. 24

        b.  Dates of birth ................................. 25

        c.  Driver's license numbers ................................. 27

        d.  Michigan discloses only encrypted information to ERIC. ................................. 28

    2.  DOJ has not shown it requires sensitive information to assess Michigan's list maintenance program. ........................... 29

C.  DOJ fails to state a claim under HAVA. ................................. 33

    1.  HAVA has no disclosure provision. ................................. 33

    2.  DOJ fails to sufficiently allege any other violation of HAVA. ................................. 34

D.  DOJ must comply with federal privacy laws to collect and maintain a system of records. ................................. 35

    1.  DOJ's request violates the Privacy Act ................................. 35

    2.  DOJ's request violates the E-Government Act ........................... 38

    3.  DOJ's demand violates the DPPA ................................. 39

Conclusion and Relief Requested ................................. 40

# INDEX OF AUTHORITIES

Page

**Cases**

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685 (D. Md. 2025) ...................................................................... 38

*Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) .............................. 19, 22

*Artis v. District of Columbia*, 583 U.S. 71 (2018) ...................................................... 16

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 14

*Atlas Data Priv. Corp. v. We Inform, LLC*, 2025 WL 2444153 (D.N.J. Aug. 25, 2025) ...................................................................................................................... 33

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 14

*Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182 (1999) ...................................... 37

*Bufkin v. Collins,* 604 U.S. 369 (2025) ....................................................................... 17

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963 .................................................... 16

*Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961) ..................................... 15

*Donovan v. FirstCredit, Inc.*, 983 F.3d 246 (6th Cir. 2020)........................................ 34

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017) ...................................................................... 39

*Food Marketing Inst. v. Argus Leader Media*, 588 U.S. 427 (2019).......................... 16

*Greater Birmingham Ministries v. Merrill*, Case No. 2022 WL 5027189 (M.D. Ala. 2022)............................................................................................................... 25

*Husted v. A. Philip Randolph*, 138 S. Ct. 1833 (2018) ..................................... 4, 19, 22

*In re Coleman*, 208 F. Supp. 199 (S.D. Miss. 1962)................................................... 16

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962) ....................................................... 18

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .................................................... 16, 17

*Lamie v. U.S. Trustee,* 540 U.S. 526 (2004) ............................................................... 34

*McKay v. Thompson*, 226 F.3d 752 (6th Cir. 2000) .................................................. 25

*New Prime, Inc. v. Oliveira*, 586 U.S. 105 (2019) ...................................................... 16

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) ...................................................... 34

*Peterson v. City of Detroit*, 76 Fed. Appx. 601 (6th Cir. 2003) ................................... 25

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016)...................... 24, 27

*Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012)........... 25

*Project Vote/Voting for America, Inc. v. Long*, 752 F. Supp. 697 (E.D. Va.
    2010) ................................................................................................................ 24

*Public Interest Legal Found. v. North Carolina State Bd. of Elections,* 996
    F.3d 257 (4th Cir. 2021) ................................................................................. 24

*Public Interest Legal Found. v. Benson*, __ F. Supp. 3d __ (W.D. Mich., 2024)........... 8

*Public Interest Legal Found. v. Bellows*, 92 F.4th 36 (4th Cir. 2024)................ 22, 27

*Public Interest Legal Found. v. Knapp*, 749 F. Supp. 3d 563 (D. S.C., 2024)........... 23

*Pulsifer v. United States*, 601 U.S. 124 (2024)........................................................... 16

*Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673 (6th Cir. 2011)........................... 12

*Smiley v. Holm*, 285 U.S. 355 (1932) ........................................................................ 19

*State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) .......... 15, 17

*Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986).................................... 19

*Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552
    F.3d 430 (6th Cir. 2008) ................................................................................. 14

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014).......... 23, 26, 28, 33

*United States v. Lynd*, 301 F.2d 818 (5th Cir. 1962)................................................. 17

*Voting Rights; Mechanism for Social* Change, 76 Ala. L. Rev. 603 (2025)............... 18

**Statutes**

5 U.S.C. § 552a........................................................................................ 13, 36, 37, 38

18 U.S.C. § 2721(a)(1) .............................................................................................. 27

18 U.S.C. § 2721(b)(1) ................................................................ 13, 40

18 U.S.C. § 2721(b)(1) ........................................................................ 39

52 U.S.C. § 552a(a)(5) ......................................................................... 37

52 U.S.C. § 20507(1) ............................................................................ 22

52 U.S.C. § 20507(a) .................................................................... *passim*

52 U.S.C. § 20507(a)(3) .......................................................................... 3

52 U.S.C. § 20507(b)(1) .......................................................................... 4

52 U.S.C. § 20507(b)(2) .......................................................................... 4

52 U.S.C. § 20507(c)(1) ........................................................................... 4

52 U.S.C. § 20507(d)(1) .......................................................................... 5

52 U.S.C. § 20507(d)(3) .......................................................................... 5

52 U.S.C. § 20507(i) ..................................................... 12, 17, 22, 30

52 U.S.C. § 20507(i)(1) ................................................................ 12, 22

52 U.S.C. § 20507(i)(2) ........................................................................ 23

52 U.S.C. § 20510 ................................................................................. 17

52 U.S.C. § 20701 ............................................................... 12, 15, 21

52 U.S.C. § 20703 ............................................................... 13, 15, 17

52 U.S.C. § 20704 ................................................................................ 21

52 U.S.C. § 21082(2)(B)(iii) ................................................................ 34

52 U.S.C. § 21083(a)(1)(A) ......................................................... 20, 33

52 U.S.C. § 21083(a)(2)(B)(ii) ............................................................... 6

52 U.S.C. § 21083(a)(5)(A)(i) ..................................................... 20, 25

52 U.S.C. § 21085 ................................................................................ 33

52 U.S.C. § 21111 ................................................................................ 34

Mich. Comp. Laws § 168.1 ................................................................................... 6

Mich. Comp. Laws § 168.10 ................................................................................. 2

Mich. Comp. Laws § 168.491 ............................................................................. 19

Mich. Comp. Laws § 168.492 ............................................................................... 2

Mich. Comp. Laws § 168.492a ............................................................................. 3

Mich. Comp. Laws § 168.493 ............................................................................... 2

Mich. Comp. Laws § 168.493b ........................................................................... 20

Mich. Comp. Laws § 168.495 ............................................................................... 2

Mich. Comp. Laws § 168.497(1) ........................................................................... 2

Mich. Comp. Laws § 168.509 ............................................................................... 6

Mich. Comp. Laws § 168.509aa ........................................................................... 9

Mich. Comp. Laws § 168.509aa(1) ....................................................................... 9

Mich. Comp. Laws § 168.509aa(4) ....................................................................... 9

Mich. Comp. Laws § 168.509aa(5) ..................................................................... 10

Mich. Comp. Laws § 168.509dd(1) ..................................................................... 11

Mich. Comp. Laws § 168.509ff ..................................................................... 20, 23

Mich. Comp. Laws § 168.509gg ................................................................... *passim*

Mich. Comp. Laws § 168.509ii ...................................................................... 2, 20

Mich. Comp. Laws § 168.509n ............................................................................. 6

Mich. Comp. Laws §168.509o ........................................................................... 6, 7

Mich. Comp. Laws § 168.509o(5) ......................................................................... 9

Mich. Comp. Laws § 168.509p ....................................................................... 6, 19

Mich. Comp. Laws § 168.509q ............................................................................. 6

Mich. Comp. Laws § 168.509q(1)(f) ................................................................... 20

Mich. Comp. Laws § 168.509r ........................................................................ 6

Mich. Comp. Laws § 168.509r(2)(a) ............................................................ 39

Mich. Comp. Laws § 168.509r(4) ................................................................ 20

Mich. Comp. Laws § 168.509r(5) ................................................................ 10

Mich. Comp. Laws § 168.509r(6) ................................................................ 10

Mich. Comp. Laws § 168.509r(7) ................................................................ 10

Mich. Comp. Laws § 168.509r(8) ................................................................ 11

Mich. Comp. Laws § 168.509v ...................................................................... 2

Mich. Comp. Laws § 168.509z(a) .................................................................. 8

Mich. Comp. Laws § 168.509z(b) .................................................................. 8

Mich. Comp. Laws § 168.510 .......................................................................... 7

Mich. Comp. Laws § 168.759 ........................................................................ 20

Mich. Comp. Laws § 257.315 ........................................................................ 31

Mich. Comp. Laws § 257.40b ........................................................................ 27

Mich. Comp. Laws § 333.2815 ........................................................................ 7

Mich. Comp. Laws § 333.2833 ........................................................................ 7

Mich. Comp. Laws § 333.2804(4) .................................................................... 7

## Other Authorities

*America's Data Crisis: How Public Voter Registration Data Has Exposed the American Public to Previously Unforeseen Dangers and How to Fix it*, 105 Iowa L. Rev. 1363 (March, 2020) .......................................................... 26

*The Effects of the Voting Rights Act: A Case Study*, 72 Wash. U. L.Q. 725 (1994) .......................................................................................................... 18

## Constitutional Provisions

Mich. Const. 1963, art 2, § 1 .......................................................................... 2

Mich. Const. 1963, art. 2, § 2 ......................................................................... 3

Mich. Const. 1963, art. 2, § 4(2) .................................................................. 19

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Should Defendants' motion to dismiss be granted where the United States fails to state plausible claims that the State of Michigan must provide the Department of Justice with sensitive personal information of Michigan voters?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

<u>*Authority*</u>:

52 U.S.C. § 20507(a)

52 U.S.C. § 20703

52 U.S.C. § 21111

Mich. Comp. Laws § 168.509gg

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

## INTRODUCTION

Michigan has over 7 million registered voters.  The Department of Justice (DOJ) demanded the State turn over its voter list with the full names, residential addresses, birthdates, driver's license numbers, or the last four digits of social security numbers for *every* voter.  Michigan refused to do so because state law prohibits disclosing the day and month of birth, driver's license numbers, and social security numbers.  Other states have done the same.

DOJ purports to need this trove of personal information to assess Michigan's compliance with federal law requiring the maintenance of accurate voter lists.  Instead, Michigan provided DOJ with its publicly available voter registration list.  And it endeavored to provide information to DOJ in a series of letters regarding Michigan's voter list practices.  All to no avail as DOJ maintains it is entitled to this personal information and now asks this Court for an order directing its release.  But the laws DOJ cites do not support its sweeping demand.

First, the Civil Rights Act of 1960 permits DOJ to demand election records as part of an investigation into racially discriminatory voting practices, there are no such allegations here.  Even so, the act does not require disclosure of this sensitive information.  Second, the National Voter Registration Act permits DOJ to request records relating to Michigan's voter list maintenance, but it likewise does not require the disclosure of sensitive information.  And third, the Help America Vote Act contains no disclosure provision at all and provides no basis for DOJ's demand.

DOJ's demand further fails because the personal information it seeks is protected by federal privacy laws—the Privacy Act of 1974, the E-Government Act

and the Driver's Privacy Protection Act—but DOJ fails to allege compliance with these laws.  It certainly has not explained what it intends to do with the collected personal information of millions of Michigan voters.

Where DOJ has alleged no valid basis for demanding Michigan's unredacted voter list, the complaint must be dismissed.

## STATEMENT OF FACTS

Because DOJ's complaint is based upon voter list maintenance practices, a brief overview of Michigan's law and procedures is helpful.

### A.    Michigan's voter registration requirements.

To be registered to vote in Michigan, a person must (1) be 17 ½ years of age, (2) be a U.S. citizen, and (3) have resided in the city or township in which they are offering to vote for at least 30 days.  Mich. Const. 1963, art. 2, § 1; Mich. Comp. Laws §§ 168.10, 168.492.  People may register to vote in person, by mail, or online. Mich. Comp. Laws §§ 168.497(1), 168.509v.[1]  People may also be automatically registered through various transactions with the Michigan Department of State, such as a driver license transaction.  *See* Mich. Comp. Laws § 168.493.  But regardless of how a person registers, they are required to certify that they meet the requirements for registration.  *See, e.g.,* Mich. Comp. Laws § 168.495 (describing contents of voter registration application).[2]

---

[1] There are specific requirements for online registration. *See* Mich. Comp. Laws § 168.509ii.

[2] *See also* ED-121: Michigan Voter Registration Application and Change of Address Form (accessed November 26, 2025.)

**B.      NVRA's voter list maintenance requirements.**

The National Voter Registration Act (NVRA) was enacted "to establish procedures that will increase the number of eligible citizens who register to vote in elections for Federal office," "to make it possible for Federal, State and local governments to implement this Act in a manner that enhances the participation of eligible citizens as voters for Federal office," "to protect the integrity of the electoral process," and "to ensure that accurate and current voter registration rolls are maintained."  52 U.S.C. § 20501(b).  Section 8 of NVRA, 52 U.S.C. § 20507, provides several procedures or other requirements for voter registration to be carried out by participating states.  This includes efforts aimed at insuring "each eligible applicant" is registered to vote in an election and taking precautions against hasty removals of registrants from voter rolls.

Section 8 of NVRA prohibits the removal of a name of a registrant except in narrow circumstances, i.e., at the registrant's request, "by reason of criminal conviction or mental incapacity,"[3] or through a "general program that makes reasonable efforts to remove" the names of voters rendered ineligible by death or upon a change of address.  52 U.S.C. § 20507(a)(3), (4).

NVRA does not require states to comply with any particular program or to immediately remove every voter who may have become ineligible.  Rather, a state

---

[3] Michigan law prohibits both registering to vote and voting by persons while serving sentences of imprisonment, Mich. Const. 1963, art. 2, § 2, Mich. Comp. Laws §§ 168.492a, 168.758b, but does not require that previously existing registrations be canceled upon incarceration.  Michigan law does not address mental capacity in the context of voter registration.  Mich. Const. 1963, art. 2, § 2.

must "conduct a general program that makes a *reasonable effort* to remove the names of ineligible voters from the official lists of eligible voters by reason of: (A) the death of the registrant; or (B) a change in the residence of the registrant, in accordance with subsections (b), (c), and (d)[.]"  52 U.S.C. § 20507(a)(4)(A)-(B) (emphasis added).

Subsection (b) requires that any removal program implemented under subsection (a)(4) be "nondiscriminatory," 52 U.S.C. § 20507(b)(1), and "not result in the removal of the name of any person from the official list of voters registered to vote in an election for Federal office by reason of the person's failure to vote" except:

> (2) . . . that nothing in this paragraph may be construed to prohibit a State from using the procedures described in subsections (c) and (d) to remove an individual from the official list of eligible voters if the individual) has not either notified the applicable registrar . . . or responded during the period described in subparagraph (B) to the notice sent by the applicable registrar; and then
>
> (B) has not voted . . . in 2 or more consecutive general elections for Federal office. [52 U.S.C. § 20507(b)(2).]

Subsection (c)(1) sets forth an example of a program for the removal of ineligible voters from the registry that is based on using "change-of-address information supplied by the Postal Service[.]" 52 U.S.C. § 20507(c)(1).  A state *may* comply by utilizing change-of-address information from the United States Postal Service; however, this is not the only way by which a state can achieve compliance. *Husted v. A. Philip Randolph*, 584 U.S. 756, 777 (2018).  Thus, under subsection (c), a state may implement a program described in subsection (c)(1), or a state may craft

its own voter removal program in order to comply with subsection (a)(4).  Michigan has crafted its own program.

Subsection (d) addresses the removal of names from the official registration list. Subsection (d)(1) prohibits a state from removing the name of a registrant on the grounds of a change of residence, with two exceptions: First, where the registrant confirms in writing that the registrant has moved out of the registrar's jurisdiction. Second, where the registrant fails to respond to a specific type of notice sent by the registrar in conformity with subsection (d)(2), and the registrant has not voted in the previous two general elections following the transmission of the notice to the registrant.  52 U.S.C. § 20507(d)(1)-(2).  If a registrar receives change of residence information under (d)(1) and (2), the registrar "shall correct" the voter registration list.  52 U.S.C. § 20507(d)(3).

### C.    HAVA's voter list maintenance requirements.

In addition to NVRA, the Help America Vote Act (HAVA) of 2002 provides that "each State . . . shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, . . . computerized statewide voter registration list . . . that contains the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State."  52 U.S.C. § 21083(a)(1)(A).[4]  Further, § 21083(a)(1)(A)(viii) states that "the

---

[4] HAVA requires applicants provide their driver's license number or the last four digits of their social security number when registering for a federal election.  52 U.S.C. § 21083(a)(5)(A)(i).  Michigan's registration application, applicable to all elections, reflects this requirement.  *See* ED-121: Michigan Voter Registration Application and Change of Address Form (accessed November 26, 2025.)  If a voter has neither a valid license nor social security number, a state must assign that

computerized list shall serve as the official voter registration list for the conduct of all elections for Federal office in the State."  Michigan complied with these requirements by creating the qualified voter file (QVF) as the State's electronic statewide voter registration list.  Mich. Comp. Laws §§ 168.509m(1)(a), 168.509o, 168.509p, 168.509q, 168.509r.  HAVA further requires that "the list maintenance performed . . . shall be conducted in a manner that ensures that . . . only voters who are not registered or who are not eligible to vote are removed from the computerized list."  52 U.S.C. § 21083(a)(2)(B)(ii).  Additionally, § 21083(a)(4)(B) of HAVA provides that "the State election system shall include provisions to ensure that voter registration records are accurate and are updated regularly, including . . . safeguards to ensure that eligible voters are not removed in error from the official list of eligible voters."  HAVA's provisions parallel or incorporate NVRA.

### D.    Michigan's list maintenance program.

Michigan's list-maintenance program makes more than a reasonable effort to remove ineligible voters.  After NVRA's enactment, Michigan amended the Michigan Election Law, Mich. Comp. Laws § 168.1 *et seq.*, to incorporate or comply with its requirements.  Section 509n makes the Secretary of State responsible for coordinating the requirements under NVRA.  Mich. Comp. Laws § 168.509n.  The

---

voter a unique identifier, however, the identifier may be the same as that required under § 21083(a)(1)(A).  52 U.S.C. § 21083(a)(5)(A)(ii).  Michigan uses one identifier for purposes of HAVA.

Department of State's website includes a comprehensive description of Michigan's list-maintenance activities.[5]

### 1.    Removing deceased voters

Section 509o requires the Secretary to "develop and utilize a process by which information obtained through the United States Social Security Administration's death master file that is used to cancel an operator's or chauffeur's license . . . or an official state personal identification card . . . of a deceased resident of this state is also used at least once a month to update the qualified voter file to cancel the voter registration of any elector determined to be deceased."  Mich. Comp. Laws § 168.509o(4).  The Secretary must also "make the canceled voter registration information . . . available to the clerk of each city or township to assist with the clerk's obligations under section 510."  (*Id.*)  Under section 510, "[a]t least once a month, the county clerk shall forward a list of the last known address and birth date of all persons over 18 years of age who have died within the county to the clerk of each city or township within the county.  The city or township clerk shall compare this list with the registration records and cancel the registration of all deceased electors."  Mich. Comp. Laws § 168.510.  County clerks act as the local registrar for purposes of maintaining vital records and statistics, such as deaths.  Mich. Comp. Laws §§ 333.2804(4), 333.2815, 333.2833.  Based on these laws, each week the Michigan Department of State uses information from the Social Security Death

---

[5] *See* Michigan Department of State, Voter registration cancellation procedures, available at Voter registration cancellation procedures (michigan.gov) (accessed November 26, 2025).

index to cancel the records of individuals in the QVF who have died.[6]  The State also uses death information received from the Electronic Registration Information Center (ERIC), a bipartisan group of states and Washington, D.C., who share voter registration data with each other for the purpose of keeping voter rolls complete, up to date, and accurate.[7]

The Sixth Circuit Court of Appeals recently confirmed that Michigan's program for removing deceased voters from its voter list is a "reasonable" program under NVRA.  *See Public Interest Legal Found. v. Benson*, 721 F. Supp. 3d 580 (W.D. Mich., 2024), affirmed 136 F.4th 613 (6th Cir. 2025), petition for certiorari filed October 7, 2025.

### 2.    Removing voters who change addresses.

Section 509z requires the Secretary to "notify each clerk of the following information regarding residents or former residents of the clerk's city or township . . . [d]river license or state personal identification card changes of address received by the secretary of state, and whether the person submitted an application for the new address."  Mich. Comp. Laws § 168.509z(a).  The Secretary must also provide the "names and addresses in this state of persons who have been issued a driver license in another state."  Mich. Comp. Laws § 168.509z(b).  These sections are consistent with section 509o(5), which requires the Secretary to "participate with other states in 1 or more recognized multistate programs or services . . . to assist in the

---

[6] *See* Michigan Department of State, Bureau of Elections, Voter registration cancellation procedures (michigan.gov) (accessed November 26, 2025.)
[7] *Id.*

verification of the current residence and voter registration status of electors."  Mich. Comp. Laws § 168.509o(5).  The Secretary must then "follow the procedures under section 509aa(5) with regard to any electors affected by information obtained through any multistate program or service."  (*Id.*)  Like deceased voters, the Secretary receives information from ERIC that a voter has registered in another state, which information is used to commence the cancellation process for that voter.[8]

Under section 509aa, a "clerk may use change of address information supplied by the United States postal service or other reliable information received by the clerk that identifies registered voters whose addresses may have changed as provided in this section."  Mich. Comp. Laws § 168.509aa(1).  Section 509aa goes on to provide for how a clerk must proceed if the clerk receives "reliable information" that a voter has "moved his or her residence" either "within the city or township," § 509aa(2)(a)-(c), or "to another city or township," § 509aa(3)(a)-(c). In both cases, the voter must be sent a notice that requests the voter to verify or correct the address information within 30 days before the next election.  If notices are returned as undeliverable to the issuing clerk under either § 509aa(2) or (3), "the clerk shall identify the registration record of a voter as challenged[.]"  Mich. Comp. Laws § 168.509aa(4).  Similarly, subsection 509aa(5) provides that "[i]f the department of state receives notice that a registered voter has moved out of state by receiving a

---

[8] *See* Michigan Department of State, Bureau of Elections, Voter registration cancellation procedures (michigan.gov) (accessed November 26, 2025.)

surrendered Michigan driver license of that registered voter, the secretary of state shall send" to the voter notice that requests the voter to verify or correct the address information within 30 days before the next election.  Mich. Comp. Laws § 168.509aa(5).  For voters who receive notices under § 509aa(3) (in-state move to another jurisdiction) or § 509aa(5) (out-of-state move), the voters must receive information that their registrations will be cancelled after the second November general election after which the notice was sent.[9]  The sending of these notices to these voters starts the cancellation countdown clock running.[10]

Section 509r(5) further provides that the Secretary must create and maintain "an inactive voter file."  Mich. Comp. Laws § 168.509r(5).  Section 509r provides that voters who fail to vote for 6 years or confirm residency information must be placed in the inactive file until the voter takes a specified action.  Mich. Comp. Laws § 168.509r(6).  However, "[w]hile the registration record of an elector is in the inactive voter file, the elector remains eligible to vote and his or her name must appear on the precinct voter registration list."  Mich. Comp. Laws § 168.509r(7).  But if an inactive voter "votes at an election by absent voter ballot, that absent

---

[9] A list of voters who have received notices under section 509aa must be made available for inspection by the Secretary and/or local clerks.  Mich. Comp. Laws § 168.509ff(1)-(2).

[10] *See* Election Officials' Manual, Chapter 2, Voter Registration, pp 15-22, available at  https://www.michigan.gov/documents/sos/II_Voter_Registration_265983_7.pdf, (accessed November 26, 2025).

voter ballot must be marked" as a "challenged ballot[.]"  Mich. Comp. Laws § 168.509r(8).[11]

### 3.    Michigan's removal program is effective.

Since 2019 the Michigan Bureau of Elections, in conjunction with local clerks, has engaged in rigorous list maintenance practices under Secretary Benson's supervision.[12]  By March of this year, the Bureau and local clerks had canceled more than 1.4 million voter registrations since 2019.[13]  "This included 635,052 voter registrations of people who had died, 588,247 registrations belonging to those who had received a cancellation notice based on a change of residency and did not respond to the notice or engage in voter activity in the two-federal-cycle period, and 18,489 registrations for people who requested to have their own records canceled."[14] And as of April 2025, there are more than 266,905 voter registrations slated for cancellation in 2027 or 2029.[15]

### E.    DOJ's records demand.

On July 21, 2025, DOJ demanded the Secretary provide, among other things, a description of the state's list maintenance activities and answers to six questions

---

[11] In addition, local clerks are authorized to conduct programs to remove names from the QVF.  *See* Mich. Comp. Laws § 168.509dd.

[12] *See* Department of State, Voter registration cancellation procedures (michigan.gov) (accessed November 26, 2025).

[13] *Id.*

[14] *Id.*

[14] *Id.*

[15] *Id.*

regarding results of the Election Assistance Commission's Election Administration and Voting Survey (EAVS) for Michigan.  (Ex. A, 7/21/25 DOJ letter.)[16]  DOJ also demanded "[t]he current electronic copy of Michigan's computerized statewide voter registration list" and "all fields in the list."  (*Id*.)  DOJ cited NVRA's provision requiring states to "maintain for at least 2 years" and to "make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters[.]"  52 U.S.C. § 20507(i)(1).

DOJ later granted the Secretary extensions to respond to the July 21 letter but confirmed it wanted "an unredacted statewide voter registration list by August 18, 2025."  (Ex. B, 8/8/25 DOJ letter.)

DOJ wrote again on August 14, 2025, to confirm it wanted "all fields" of Michigan's voter registration list, including "full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number[.]"  (Ex. C, 8/14/25 DOJ letter.)  DOJ now cited HAVA in support of its demand for Michigan's list along with the Civil Rights Act of 1960 (CRA), 52 U.S.C. § 20701 *et seq*.  (*Id*.)  The CRA provides that any election "record or paper" required to be kept under 52 U.S.C. § 20701, "shall, upon demand in writing by the Attorney General . . . be made available for inspection,

---

[16] A court may consider "exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's [12(b)(6)] motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein," without converting the motion to one for summary judgment. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011).

reproduction, and copying[.]" 52 U.S.C. § 20703.  (Ex. C.)  The letter sought to preemptively allay privacy concerns by stating that the produced list "is subject to federal privacy protections" under CRA, HAVA, and the Driver's Privacy Protection Act (DPPA), 18 U.S.C. § 2721(b)(1).  (*Id*.)

The Secretary responded on September 2, 2025.  (Ex. D, 9/2/25 MDOS letter.)  With respect to the voter list demand, the letter pointed to state election law exempting from public disclosure the full dates of birth, driver's license numbers (DLNs), and the last four digits of social security numbers (SSNs).  (*Id*., p. 1) (citing Mich. Comp. Laws § 168.509gg.)  The letter also disagreed that the Privacy Act, 5 U.S.C. § 552a, or the DPPA apply to protect or permit the disclosure of the requested sensitive information.  (*Id*., pp 1-2.)  The response further noted that courts have permitted the redaction of sensitive information in voter registration records under NVRA.  (*Id*., p 2.)  The response confirmed Michigan would produce the public version of its statewide voter registration list.  (*Id*., p 2.)[17]  The Secretary further responded on September 9, 2025, reiterating concerns in connection with the list demand, and answering questions posed in DOJ's July 21 letter concerning Michigan's EAVS data.  (Ex. E, 9/9/25 MDOS letter.)

The Secretary provided DOJ a copy of Michigan's public version of its electronic voter file, the QVF, including the unique identifiers assigned Michigan

---

[17] In response to a previous request from DOJ in 2017, former Michigan Secretary of State Ruth Johnson also only provided the public information contained in the QVF. *See* MI SOS has "no authority" to spurn Trump's voter fraud commission request for voter data (accessed November 26, 2025.)

13

voters, along with the inactive voter file, on September 15, 2025.  Because the QVF is a live database, the production is a snapshot of Michigan's list on that date.  DOJ filed the instant action on September 25, 2025.[18]

## STANDARD OF REVIEW

When considering a 12(b)(6) motion to dismiss, although the court should presume that all well-pleaded material allegations of the complaint are true, *see Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008), "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted).  Moreover, the court need not accept as true legal conclusions or unwarranted factual inferences.  *Total Benefits*, 552 F.3d at 434.  To survive dismissal, the plaintiff's claim must be plausible.  *Bell Atl. Corp.,* 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

[18] This case is one of eight DOJ has filed against states, all of whom have declined to provide sensitive voter information, seeking unredacted election records.  *See* US Justice Department sues 6 more states over voter registration lists | AP News (accessed November 26, 2025.)

## ARGUMENT

**I.   The United States' complaint should be dismissed where it fails to state plausible claims that Michigan must provide the DOJ with sensitive personal information of Michigan voters.**

DOJ's demand for the personal information of Michigan's 7 million registered voters is as unprecedented as it is unsupported.  Its claims under the CRA, NVRA, and HAVA all fail where the acts neither support DOJ's sweeping demand for these records nor require Michigan to produce unredacted personal information.

### A.   DOJ fails to state a claim under the CRA.

DOJ's demand for election records under the CRA is fatally flawed where it failed to satisfy mandatory statutory elements.  Further, even if DOJ made a cognizable demand, the CRA does not require the disclosure of sensitive information.  Count I should be dismissed.

#### 1.   DOJ stated no valid "basis" and "purpose" supporting its demand.

Title III of the CRA was "designed to secure a more effective protection of the right to vote."  *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960), aff'd sub nom, *Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). To support this purpose, the CRA requires election officers, like the Secretary, to "retain and preserve, for a period of twenty-two months from the date of any [federal] . . . election . . . all records and papers which come into [the officer's] possession relating to any application, registration, . . . or other act requisite to voting in such election[.]"  52 U.S.C. § 20701.  Under § 20703, any record required to be retained under § 20701, "shall, upon demand in writing by the Attorney General

. . . be made available for inspection, reproduction, and copying . . . . This demand shall contain *a statement of the basis and the purpose therefor*."  52 U.S.C. § 20703 (emphasis added).

DOJ first mentioned the CRA in its August 14, 2025, letter.  (Ex. C.)  But all it did was recite its provisions, leaving out the "basis" and "purpose" language, and assert that "[p]ursuant to the foregoing authorities [NVRA and HAVA], including the CRA, the Attorney General is demanding an [unredacted] electronic copy of Michigan's complete and current" voter registration list.  (*Id*.)  DOJ now recasts its communication as "informing the Secretary that the purpose of the demand under the CRA was to determine Michigan's compliance with both the NVRA's and HAVA's voter list maintenance requirements."  (PageID.13, ¶ 43.)

But DOJ's demand for records failed to state a proper "basis *and* [ ] purpose" as required by § 20703.  (Emphasis added.)  *See also Pulsifer v. United States*, 601 U.S. 124, 133 (2024) ("[I]n grammatical terms," the term "and" "is of course a conjunction—a word whose function is to connect specified items.")  DOJ has treated "basis" and "purpose" separately under the CRA.  *See Kennedy v. Lynd*, 306 F.2d 222, 231 n.6 (5th Cir. 1962) (showing a demand by the Attorney General where it stated a basis *and* a purpose); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

These words must be given their ordinary meaning at the time of enactment, which may be determined by consulting contemporaneous dictionaries.  *Artis v.*

*District of Columbia*, 583 U.S. 71, 83 (2018); *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 113 (2019); *Food Marketing Inst. v. Argus Leader Media*, 588 U.S. 427, 433-34 (2019).  The word "basis" means the "foundation" or "cause."  The Grosset Webster Dictionary 46 (1966).  And the word "purpose" means the "aim" or "objective."  *Id.*, p 390.

DOJ asserts the "purpose" or "objective" of its demand is to determine Michigan's compliance with the list maintenance provisions of NVRA and HAVA.  It failed to articulate any "basis" or "cause" for its demand.  52 U.S.C. § 20703 ("demand *shall* contain a statement of the *basis and the purpose* therefor.")  *See also Bufkin v. Collins,* 604 U.S. 369, 379 (2025) ("the word 'shall' imposes a mandatory command").  But the DOJ cannot bootstrap these acts.  The CRA preexisted NVRA and HAVA, and thus Congress could not have meant that a valid "basis" or "purpose" for demanding records under the CRA was to examine compliance with those acts.  *See*, *e.g, Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) (explaining that the Attorney General "is entitled to inspect and copy all of the voter papers and records as defined" "in fulfillment of the duties imposed upon him by the Civil Rights Act of 1957 and 1960").  Moreover, as explained later, NVRA has its own records disclosure provision, 52 U.S.C. § 20507(i), and both NVRA and HAVA include their own enforcement provisions.  52 U.S.C. §§ 20510, 21111.  DOJ cannot seek to enforce these acts through demands under the CRA.

Further, Congress's purpose in conferring the authority to demand records was to enable the federal government to investigate and remediate racially

discriminatory voting practices, namely, efforts to prevent eligible minority voters from voting or registering to vote.  *Rogers*, 187 F. Supp. at 853-54; *United States v. Lynd*, 301 F.2d 818, 819 (5th Cir. 1962) ("The basis of the government's appeal . . . is its contention that it has been completely frustrated in an effort to obtain an order . . . putting an end to alleged racially discriminatory acts and practices[.]"); *Lynd*, 301 F.2d at 822 (observing that Fifth Circuit had "laid down the rule that the government is entitled to have an order . . . authorizing it to inspect the voting records" based on the Attorney General's  "reasonable grounds for belief that certain voters are being discriminatorily denied their voting rights in a given county").  *See also Voting Rights; Mechanism for Social* Change, 76 Ala. L. Rev. 603, 608-611 (2025) (discussing development of voting rights legislation to remedy racial discrimination, including the Civil Rights Act of 1960); *The Effects of the Voting Rights Act: A Case Study*, 72 Wash. U. L.Q. 725, 727-28 (1994) (same).

DOJ's demand for Michigan's records does not even purport to serve that purpose.  Again, DOJ's alleged purpose is to assess Michigan's compliance with federal requirements to remove ineligible voters from its rolls due to death or a change in address.  52 U.S.C. § 20507(a)(4).  But the mere failure to purge a voter roll of such voters does not automatically fall within the ambit of Title III.  *See Kennedy v. Bruce*, 298 F.2d 860, 863 & n.2 (5th Cir. 1962) (observing that statistical evidence in a Title III proceeding indicating a failure to remove voters who moved away or died was "a matter which does not bear any particular importance to the present inquiry").  Rather, DOJ must state a "basis" and "purpose" that relates to

18

an investigation into civil rights, specifically, discrimination in voting.  It has not done so.  DOJ has failed to allege any basis for its demand whatsoever, and it has not explained how any assessment of Michigan's list maintenance practices relates to an investigation into discriminatory voting in Michigan.

### 2.    CRA does not require the disclosure of sensitive information.

Even if DOJ had made a proper demand, the CRA does not require the disclosure of sensitive information of Michigan voters.

"[T]he Constitution grants to the States a broad power to prescribe the 'Times, Places and Manner of holding Elections for Senators and Representatives,' Art. I, § 4, cl. 1, which power is matched by state control over the election process for state offices." *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 217 (1986). This authority includes providing procedures for voter registration, maintaining voter rolls, and protecting voter data. *Husted*, 584 U.S. at 774; *Ariz. v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8-9 (2013); *Smiley v. Holm*, 285 U.S. 355, 366 (1932).

Michigan has established a system for voter registration, Mich. Const. 1963, art. 2, § 4(2), Mich. Comp. Laws § 168.491 *et seq.*, including the creation of an electronic voter registration list, the QVF, as required by HAVA.  *See* Mich. Comp. Laws § 168.509o–168.509r.  The QVF is a distributed database that ties Michigan's city and township clerks to a fully automated, interactive statewide voter registration file. *See* Mich. Comp. Laws § 168.509p.  The QVF is Michigan's sole voter registration system and is used to conduct every election.

The content of the QVF is provided by law, and includes full names, residential address, full dates of birth, DLNs or personal identification numbers (if the voter has one), and the digitized signatures of voters.  Mich. Comp. Laws § 168.509q(1)(a)-(b), (g).  The QVF may also contain the last four digits of a voter's SSN.  *See* Mich. Comp. Laws §§ 168.493b, 168.509ii, 168.759; 52 U.S.C. § 21083(a)(5)(A)(i).  It also includes voting history for a period of five years.  Mich. Comp. Laws § 168.509q(1)(f).  Under HAVA, the QVF includes a unique identification number assigned to each voter.  52 U.S.C. § 21083(a)(1)(A).  The QVF also includes a file of inactive voters.  Mich. Comp. Laws § 168.509r(4).

While a substantial amount of information contained in the QVF is publicly available, *see*, *e.g.*, Mich. Comp. Laws §§ 168.509ff, 168.509gg, Michigan determined certain information should be protected from disclosure.[19]  Relevant here, § 509gg of the Michigan Election law exempts a voter's DLN, the month and day of a voter's birth, and the last four digits of a voter's SSN from public disclosure.  Mich. Comp. Laws § 168.509gg(1), (2).[20]

DOJ confirmed in its August 14 letter that it was demanding "a registrant's full name, date of birth, residential address, his or her state [DLN] or the last four digits of the registrant's [SSN] [.]"  (Ex. C, 8/14/25 DOJ letter.)  In its September 15

---

[19] *See* [Qualified Voter File Data Request Form](#) (accessed November 26, 2025.)

[20] The Michigan Election law also protects from disclosure information regarding persons registered under the State's address confidentiality program.  *See* Mich. Comp. Laws §§ 168.499b, 168.509q, 168.759.

production, Michigan declined to provide the month and date of birth, the DLNs, and the last four digits of SSNs.

Looking at the plain language of the CRA and specifically 52 U.S.C. §§ 20701 and 20703, no text prohibits the redaction of sensitive voter information.  *See*, *e.g.*, *Steelcase, Inc. v. United States*, 165 F.3d 28 (6th Cir. 1998) ("[I]t would [ ] be inappropriate for this Court to read into the statute phantom requirements that the plain language does not begin to support.")  Further, as stated above, Title III's purpose is to authorize civil rights investigations into discrimination in voting. DOJ has not explained the connection or relevance of the sensitive information to any investigation into discriminatory voting practices in Michigan.

Moreover, requiring Michigan to hand over to DOJ the personal information of millions of voters, including voters of color, runs counter to the act's purpose of advancing minority voting, by potentially deterring people from registering.[21]  That the CRA prohibits DOJ from disclosing any record produced under the act except to "Congress and any committee," and "governmental agencies," does nothing to assuage concern.  *See* 52 U.S.C. § 20704.  Indeed, this is a vast array of people and agencies who may obtain the voters' sensitive information.  But again, where DOJ has not articulated a proper basis and purpose for obtaining any information, let

---

[21] A survey by The Pew Charitable Trusts revealed that 11% of respondents indicated they had not registered to vote out of privacy or security concerns. *See Why Are Millions of Citizens Not Registered to Vote,* The Pew Charitable Trusts, June 2017, Figure 2, available at
ei_why_are_millions_of_citizens_not_registered_to_vote.pdf (accessed November 26, 2025.)

alone sensitive voter information, and the plain language of the CRA does not preclude redacting sensitive information, DOJ has failed to state a plausible claim under the CRA.

### B.    DOJ fails to state a claim under NVRA.

NVRA requires Michigan to make records relating to list maintenance activities available for public inspection, and Michigan does so.  But NVRA does not require Michigan to turn over sensitive voter information.  Count II should be dismissed.

NVRA "erect[s] a complex superstructure of federal regulation atop state voter-registration systems." *Arizona,* 570 U.S. at 5. "The Act has two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted*, 584 U.S. at 761 (2018) (citing 52 U.S.C. § 20501(b)).  Relevant here, NVRA requires covered states to implement a reasonable, nondiscriminatory program for removing ineligible voters from their registration lists.  52 U.S.C. § 20507(a)(4), (b).  Michigan has done so.  *See*, *supra*, pp 6-11.  To support this requirement, NVRA requires states to retain election records related to implementing their "programs and activities," and to make "all records" concerning these activities "available for public inspection[.]"  52 U.S.C. § 20507(i)(1) (emphasis added.)  *See also Public Interest Legal Found. v. Bellows*, 92 F.4th 36, 54 (4th Cir. 2024) (disclosure provision "evinces Congress's belief that public inspection, and thus public release, of [records] is necessary to accomplish the objectives behind the NVRA").  The records retained must include "lists of the names and addresses of all persons to whom [address confirmation] notices described in [52 U.S.C. §

20507(d)(2)] are sent, and information concerning whether or not each such person has responded to the notice as of the date that inspection of the records is made." 52 U.S.C. § 20507(i)(2).  Michigan complies with these retention and list requirements.  Mich. Comp. Laws § 168.509ff.

"[T]o be subject to disclosure under the NVRA, a record must ultimately concern activities geared towards ensuring that a State's official list of voters is errorless and up-to-date."  *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 720 (S.D. Miss. 2014).  Michigan's electronic voter registration list, the QVF, contains "records" concerning Michigan's list maintenance activities required to be retained and made available for inspection under § 20701(i)(1).  *See, e.g.*, *Bellows*, 92 F.4th at 46-49 (holding Maine's voter registration list was record subject to disclosure under NVRA); *Public Interest Legal Found. v. Knapp*, 749 F. Supp. 3d 563, 568-70 (D. S.C., 2024) (holding South Carolina's voter registration list was a record subject to disclosure under NVRA).

But while the QVF contains records subject to disclosure, NVRA does not require Michigan to disclose sensitive voter information.

### 1.    NVRA does not require disclosure of sensitive information.

The Sixth Circuit has not addressed the disclosure of sensitive information, but there is no reason this Court should not follow the lead of the many decisions upholding the redaction of sensitive information under NVRA.

While NVRA provides that "all records" regarding list maintenance activities must be available for inspection, courts have recognized that "nothing in the text of

23

NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information" of voters.  *Bellows*, 92 F.4th at 56.  *See also Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns.")  As the Fourth Circuit recognized, while NVRA "does not contain an explicit exemption from disclosure for sensitive information subject to potential abuse . . . the term 'all records' in the disclosure provision does not encompass any relevant record from any source whatsoever . . . ."  *Public Interest Legal Found. v. North Carolina State Bd. of Elections,* 996 F.3d 257, 264 (4th Cir. 2021).

### a.      Social Security Numbers

Courts have held that SSNs are highly sensitive personal information that may be redacted from records produced under NVRA.  In *Project Vote/Voting for America, Inc. v. Long*, the court found that a "person's SSN is precluded from disclosure, as disclosure of that information would undermine the purposes of the statute."  752 F. Supp. 2d 697, 711 (E.D. Va. 2010).  The court concluded that disclosure may deter people from registering:

> [T]he court . . . concludes that it would likely undermine the purposes of the statute for the NVRA to require that voters disclose their SSNs to the public. As the Fourth Circuit [has] recognized, SSNs are uniquely sensitive and vulnerable to abuse, such that a potential voter would understandably be hesitant to make such information available for public disclosure. For that reason, a SSN disclosure requirement potentially undermines the voter registration goals of the NVRA.

*Long,* 752 F. Supp. 2d at 711-12.  The Fourth Circuit later affirmed the court's determination that SSNs should be redacted.  *Project Vote/Voting for America, Inc.*

24

*v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). *See also North Carolina State Board of Elections*, 996 F.3d at 265-68 & n.9 (authorizing redaction of "sensitive information," including "personal information," which included SSNs.) *See also Greater Birmingham Ministries v. Merrill*, Case No. 2022 WL 5027189 at * 4 (M.D. Ala. 2022) ("If Secretary [of State] wishes to disclose the entire database . . . he should still redact certain 'uniquely sensitive information' like voters' social security numbers."), reversed on other grounds, 105 F.4th 1324 (11th Cir. 2024).

DOJ seemingly suggests that the last four digits of SSNs are disclosable because HAVA "specifies that the 'last four digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974.' " (PageID.13, ¶ 44). Section 7(a)(1), an uncodified provision of the Privacy Act, prohibits denying individuals "any right, benefit, or privilege" due to their refusal to disclose a SSN. *See McKay v. Thompson*, 226 F.3d 752, 755 (6th Cir. 2000). HAVA creates an exception to the act's application by requiring the provision of the last four digits of a person's SSN to register to vote, if the person has an SSN. 52 U.S.C. § 21083(a)(5)(A)(i). *See also Peterson v. City of Detroit*, 76 Fed. Appx. 601, 602 (6th Cir. 2003) (noting Social Security Act permits disclosure of SSNs in certain circumstances, "superced[ing]" the Privacy Act). But § 7 has no bearing on whether Michigan must publicly disclose a voter's SSN, or, as discussed later, whether the DOJ can collect the information.

### b.    Dates of birth

Courts have likewise held that dates of birth are sensitive information that need not be disclosed under NVRA. In *True the Vote v. Hosemann,* the court

concluded disclosing birthdates posed the same risks as disclosing SSNs

"particularly when the birthdate disclosures are in conjunction with the disclosure

of individuals' full names and current addresses."  43 F. Supp. 3d 693, 736 (S.D.

Miss. 2014).  The court described the concerns with disclosing "combined" personal

information:

> Birthdates, when combined with other identifying information
> available in voter registration records, can be used to obtain—both
> legally and improperly—a host of other highly personal information
> about an individual, particularly in this day of computers with vast
> searching powers.

*Id.*  The court also noted the risk of identity theft, which is fueled by the disclosure

of personal information such as birthdates.  *Id.* at 737-38.  If "the NVRA Public

Disclosure Provision means automatic disclosure of voter registrants' birthdates—

[it] would enable any person or organization, regardless of residency, citizenship, or

purpose, to obtain almost all personal information, including birthdates, of millions

of people through simple written requests."  *Id.* at 738.  *See also America's Data*

*Crisis: How Public Voter Registration Data Has Exposed the American Public to*

*Previously Unforeseen Dangers and How to Fix it*, 105 Iowa L. Rev. 1363 (March,

2020).

The court was also persuaded that releasing birthdates, like SSNs, could

depress voter registration, contrary to the purpose of NVRA.  *Id.* at 738.  "Existing

voter registrants and potential registrants who knew that their birthdates, along

with their names, addresses, and potentially other identifying information, could be

disclosed to any requester without restriction on further dissemination of the

personal information 'would understandably be hesitant to make such information

available for public disclosure.' " *Id.* (quoting *Long,* 752 F.Supp.2d at 712.)  The court thus concluded that NVRA's disclosure provision "does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates." *Id.* at 739.  *See also Kemp*, 208 F. Supp. 3d at 1345 (determining that birthdate should be redacted from NVRA records disclosure).[22]

### c.    Driver's license numbers

Driver's license numbers constitute sensitive personal information.  Federal and state laws recognize as much.  The Driver's Privacy Protection Act prohibits Michigan's Department of State from disclosing "personal information" that is obtained in connection with a "motor vehicle record," which includes a driver "identification number," except for specified uses.  18 U.S.C. §§ 2721(a)(1), 2725(1), (3), 2721(b), *Reno v. Condon*, 528 U.S. 141, 143 (2000).[23]  Similarly, Michigan's Motor Vehicle Code defines DLNs as "personal information" that Michigan's Department of State may only disclose for specified reasons.  *See* Mich. Comp. Laws § 257.40b, 25.208c.  And, of course, Michigan Election law prohibits the Secretary from publicly disclosing DLNs.  Mich. Comp. Laws § 168.509gg.

Producing DLNs "combined" with the disclosable information demanded by DOJ raises the same concerns articulated by the court in *True the Vote*. 43 F. Supp. 3d at 736-39.  With a full name, residential address, year of birth, and the person's

---

[22] DOJ itself previously maintained that NVRA does not prohibit states from redacting sensitive information like SSNs before disclosing records.  *See Brief of the United States as Amicus Curiae, Public Legal Found. v. Bellows*, No. 23-1361 (1st Cir. July 25, 2024), 2023 WL 4882397 *Interest* at *27-28.

[23] As discussed later, *see* pp 39-40, DOJ's demand violates the DPPA.

DLN, a requestor may be able to uncover additional sensitive information of the voter to use for ill purposes. *Id.* And if Michigan citizens were to learn that the state was disclosing sensitive information like their DLNs, people may think twice about registering. Neither outcome is consistent with the purposes of NVRA.

> ### d. Michigan discloses only encrypted information to ERIC.

Michigan partners with the ERIC by receiving information that a voter may be deceased or has registered in another state, which information is used to commence the cancellation process for that voter. DOJ points to ERIC's website, which states that members "'submit dates of birth, driver's license/ID card numbers and Social Security Numbers to ERIC[.]'" (PageID.15-16, ¶ 52.) However, as DOJ further observes, this information is provided "after applying a cryptographic one-way hash to these data points.'" (*Id.*) DOJ complains that "Michigan provides the identical information" it has requested to ERIC, "a private organization which lacks any enforcement authority, yet refuses to adhere to federal law and provide that same information" to DOJ. (PageID.16, ¶ 53.) But Michigan provides only encrypted and hashed information to ERIC, as DOJ acknowledges, meaning that ERIC cannot see or decipher the values of the information given. In other words, ERIC has no ability to see or determine any voter's date of birth, driver's license/ID card number, or full date of birth. DOJ has not requested encrypted and hashed information that it cannot see or decipher; instead, DOJ wants to see every voter's full date of birth, DLN or the last four digits of the voter's SSN.

Because NVRA does not require the unredacted disclosure of sensitive information in Michigan's voter list, and state law prohibits such disclosure, DOJ fails to state a plausible claim that Michigan has violated NVRA.

> **2.    DOJ has not shown it requires sensitive information to assess Michigan's list maintenance program.**

DOJ also fails to show it requires sensitive information to assess Michigan's list maintenance program.

DOJ alleges that Michigan "failed to provide sufficient responses to specific inquiries regarding its maintenance procedures," and "this information is necessary" for DOJ "to determine if Michigan is conducting 'a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters' as required by 52 U.S.C. § 20507(a)(4)."  (PageID.17, ¶ 60.)

DOJ is referencing data in the "2024 EAVS Report,"[24] based on which DOJ alleges Michigan is "out of step with national averages" in that it only sent NVRA address confirmation notices to 4.5 percent of its voting population compared to a national average of 19.5 percent.  (PageID.12, ¶ 39.)  DOJ further alleges Michigan only removed 4.2 percent of registered voters, compared to a national average of 9.1 percent.  (*Id*.)  DOJ raised these points in its July 21, 2025, letter, and asked Michigan to explain its' process for sending voters confirmation notices and removing voters from its voter list.  (Ex. A.)  The Secretary responded to these

---

[24] The Election Assistance Commission's Election Administration and Voting Surbey 2024 Comprehensive Report: A Report from the U.S. Election Assistance Commission to the 119th Congress, available at [Election Administration and Voting Survey (EAVS) 2024 Comprehensive Report](#) (accessed November 26, 2025.)

questions in her September 9, 2025 letter, summarizing Michigan's processes.  (Ex E, pp 3-5.)

It appears DOJ is arguing that because Michigan provided insufficient written responses to its questions, it requires the unredacted voter list to assess Michigan's list maintenance practices regarding confirmation notices.  But that argument goes nowhere.  First, NVRA's disclosure provision requires the disclosure of "records," 52 U.S.C. § 20507(i), it does not require or compel answers to written questions regarding list maintenance.  If DOJ thought Michigan's answers were deficient, it could have asked for more information.  And second, DOJ fails to allege how its questions over these data points and sending confirmation notices can only be addressed if it receives unredacted personal information.  DOJ simply has not shown it requires sensitive voter information to assess any aspect of Michigan's practices with respect to sending confirmation notices, or any other list maintenance program.

To the extent DOJ was dissatisfied with Michigan's written responses, (Ex E, pp 3-5), a fuller explanation is provided.  Regarding the statistics cited by DOJ, a state's total percentage of cancellations and sent confirmation notices in a given election cycle says little about the efficiency of its voter registration list maintenance processes.  This is because states differ widely in how they handle updates to registrations of voters who move within the state.  Some states consider such an update a cancellation for moving out of the jurisdiction, with a new registration created in the new jurisdiction.  Other states (including Michigan) do

not treat these updates as a cancellation but instead a change of address, which lowers those states' percentage of total cancellations compared to states that treat such updates as a cancellation.

Further, some states are more proactive in updating voters' registrations when they move within the state, reducing the need to send confirmation notices and subsequently cancel the registration (because the address has already been updated).  Michigan is highly efficient in updating voter registrations when voters move within the state because of state laws mandating automatic voter registration, Mich. Comp. Laws § 168.493a, and requiring an individual's driver's license and voter registration address be the same, Mich. Comp. Laws § 257.315.  These efficiencies are demonstrated by the fact that only 14.8% of registration transactions in Michigan are new registrations (the rest being almost all updates or already-registered voters), compared to the national average of 25.3%.[25]  Between treating updates as changes of address (not cancellations) and proactively updating so many voter registrations (leaving fewer to cancel), Michigan has a lower instance of voters' registrations being cancelled when they move between jurisdictions in Michigan: these account for only 10.6% of Michigan cancellations, compared to national average of 30.8%.[26]  This explains why Michigan has a lower total cancellation rate than some other states—it is *updating* more registrations, leaving

---

[25] *Id.* at 173-74.

[26] *Id.* at 185-86.

fewer to *cancel*, and treating updates as *changes* to registration, not *cancellations*
and re-registrations (as some states do).

These same factors account for Michigan's having a lower percentage of
confirmation notices—because more registrations are proactively updated, there are
fewer out-of-date registrations at an old address requiring a confirmation notice.
Additionally, Michigan sent a statewide election mailing to all registered voters in
2020, which triggered hundreds of thousands of additional cancellation notices in
2021-2022 and left fewer out-of-date registrations to which to send notices in 2023-
2024.[27]

When put in context, Michigan's numbers are not out-of-step, and do not
suggest any deficiency in its maintenance activities.  Moreover, given this process-
based explanation, it is again entirely unclear why DOJ needs voter birthdates,
DLNs, and SSNs to assess Michigan's compliance.

To the extent DOJ seeks the personal information of Michigan voters to
conduct its own line-by-line review of the accuracy of Michigan's list, which changes
daily, NVRA does not contemplate either that level of scrutiny or accuracy.  *Benson*,
136 F.4th at 625-26, 628 (rejecting argument that the adequacy of Michigan's

---

[27] *See* The Election Assistance Commission's Election Administration and Voting
Surbey 2022 Comprehensive Report: A Report from the U.S. Election Assistance
Commission to the 118th Congress, available at Election Administration and Voting
Survey (EAVS) 2022 Comprehensive Report at 158 (showing 590,172 confirmation
notices sent in 2022, 8.1% of active voters, compared to 4.5% for 2024 cited above),
(accessed November 26, 2025)

program should be judged by statistical indicia).  Moreover, NVRA charges the states with list maintenance—not DOJ.  *See* 52 U.S.C. § 20507(a), (c)-(g).

Because DOJ is not entitled to the sensitive voter information it seeks, it fails to state a plausible claim under NVRA.

### C.    DOJ fails to state a claim under HAVA.

Unlike the CRA or NVRA, HAVA does not include a public disclosure provision and does not otherwise require Michigan to turn over sensitive voter information to DOJ.  Count III should be dismissed.

Again, HAVA requires states to create and maintain an electronic statewide voter registration list.  52 U.S.C. § 21083(a)(1)(A).  And HAVA, like NVRA, also requires that each state must have a "system of file maintenance that makes reasonable effort to remove ineligible registrants" while implementing safeguards to prevent erroneous removals.  *Id.* § 21083(a)(4).

### 1.    HAVA has no disclosure provision.

While DOJ requested Michigan's unredacted voter list under HAVA, (Ex. C), and seeks the same in its complaint, (PageID.17-18, ¶ 63-66), the act contains no express disclosure provision, nor does it incorporate NVRA's disclosure provision.  DOJ's complaint cites no authority for the proposition that the mere existence of DOJ's authority to enforce HAVA's voter list requirements entitles it to complete, unfettered access to Michigan's list.  52 U.S.C. § 21111.  Section 21111 authorizes DOJ to "bring a civil action against any State . . . for such declaratory and injunctive relief . . . as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements." 52 U.S.C.

§ 21111.  But this statutory text includes no requirement to produce information about registered voters, sensitive or otherwise, and the statutory text controls.  *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022); *Lamie v. U.S. Trustee,* 540 U.S. 526, 534 (2004); *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 253 (6th Cir. 2020) ("If the language of the statute is clear, the court applies the statute as written.")

DOJ thus fails to state a plausible claim under HAVA for the disclosure of Michigan's voter list.

### 2.     DOJ fails to sufficiently allege any other violation of HAVA.

HAVA also requires that list maintenance performed on electronic voting lists ensure "duplicate names are eliminated."  52 U.S.C. § 21082(2)(B)(iii).  Similar to its NVRA claim, DOJ alleges Michigan's "refusal to provide sufficient information prevents" the DOJ "from evaluating Michigan's procedures that 'ensure[] . . . duplicate names are eliminated" from its registration list.  (PageID.17-18, ¶¶ 54-65).  This prevents DOJ "from determining Michigan's compliance with the list maintenance requirements of HAVA."  (PageID.18, ¶ 66.)

DOJ is referring to its questions regarding duplicate registrations in its July 21, 2025, letter.  (Ex. A, p 2, ¶ 5.)  Citing data in the "2024 EAVS Report," DOJ wrote that Michigan "reported 1,869,580 duplicate registrations, which is 45.7 percent of all the registration transactions received by Michigan."  (*Id*.)  DOJ requested an explanation of the high number of duplicate transactions.  (*Id*.)  The Secretary provided a sufficient explanation in her September 9 letter. (Ex. E, pp 4-5.)

DOJ does not allege that Michigan is in violation of HAVA with respect to its procedures for resolving duplicate registrations.  Rather, like its NVRA claim, DOJ appears to argue that because Michigan provided insufficient written responses to its questions, it requires the unredacted voter list to assess Michigan's list maintenance practices regarding duplicate registrations under HAVA.  But this argument fails for the reason already stated—HAVA does not have a disclosure provision.  Further, like its NVRA claim, DOJ fails to allege how its questions over Michigan's duplicate registration removal process can only be addressed if it receives unredacted personal information.  DOJ has no plausible claim that Michigan violated HAVA by refusing to provide an unredacted voter list.

Because HAVA does not require the disclosure of sensitive voter information, and Michigan law prohibits it, DOJ fails to state a plausible claim under HAVA.

**D.    DOJ must comply with federal privacy laws to collect and maintain a system of records.**

DOJ's failure to cite any statute supporting its demand for unredacted voting records fully warrants dismissal.  Nevertheless, the complaint also fails to allege compliance with important federal privacy laws.

**1.    DOJ's request violates the Privacy Act.**

The Privacy Act, 5 U.S.C. § 552a, bars DOJ's demand for the sensitive information of Michigan voters.  The act "protect[s] the privacy of individuals identified in information systems maintained by Federal agencies." § 2(a)(5), 88 Stat. 1896. Congress recognized "the harm to individual privacy that can occur" from the federal government's mishandling of Americans' sensitive information[.]"

35

§§ 2(a)(2)–(3), *ibid*.  Under the act, federal agencies, like DOJ, are prohibited from collecting or maintaining records related to an individual's First Amendment activities (barring narrow exceptions), and they must comply with specific procedures before they "maintain, collect, use, or disseminate" any group of records searchable by individual. 5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (e)(7), (f).

A covered "record" includes "any item, collection, or grouping of information about an individual that is maintained by an agency." 5 U.S.C. § 552a(a)(4).  Here, the DOJ's demand for voting records, including sensitive information such as birthdates, SSNs, and DLNs, fall within the act.  And if DOJ obtains these records via this lawsuit, it will result in a covered collection of records.  § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate").

But the Privacy Act prohibits collection of this data.

First, the act bars agencies like DOJ from collecting or maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7).  Voter registration information, like that requested by DOJ, falls within the statutory prohibition.  *See, e.g., Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (choice of whether to register to vote "implicates political thought and expression").  No exception applies here, and as shown above, the statutes DOJ cites to support its

request do not authorize it to collect and maintain unredacted registration records, and voters have not authorized the disclosure of their personal information.

Second, regardless of the First Amendment issue, stringent protections apply when an agency creates or alters a "system of records," or "group of records under the control of any agency from which information is retrieved by the name of the individual" or other individual identifier. 52 U.S.C. § 552a(a)(5), (e).  Pertinent here, the Privacy Act requires DOJ to publish a System of Records Notice, or SORN, in the Federal Register before "establish[ing] or revis[ing]" a "system of records." *Id.* § 552a(e)(4).  DOJ alleges that the records would be collected and maintained under the "SORN titled, JUSTICE/CRT – 001, 'Central Civil Rights Division Index File and Associated Records,' 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017)."  (PageID.15, ¶ 51.)

But that SORN states it applies to "case files, matters, memoranda, correspondence, studies, and reports relating to enforcement of civil rights laws and other various duties of the Civil Rights Division." 68 Fed. Reg. at 47611.  The regulation does not cover a voter list complete with names, addresses, and voting history, much less DLNs, SSNs, and full dates of birth. The other regulations cited by DOJ amended certain DOJ SORNs that are likewise inapplicable here.  DOJ

cannot slip collecting records of all Michigan voters under the existing 2023 SORN for maintaining investigatory files.[28]

Because DOJ's demand for unredacted voting records seeks records relating to protected First Amendment activities, and these records are not subject to an existing SORN, DOJ's efforts to collect the personal information of Michigan voters violate the Privacy Act.

## 2.    DOJ's request violates the E-Government Act.

DOJ's request for voter records also violates the E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002). The E-Government Act requires federal agencies, like DOJ, to conduct a "privacy impact assessment" (PIA) before "initiating a new collection of information" that "includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id*. § 208(b). The PIA and its procedural requirements must be completed "before the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) (emphasis in original).

DOJ is seeking information protected by the E-Government Act. The names, addresses, and sensitive voter information contained in the QVF constitute personal

---

[28] Any new SORN must first be subject to public notice and comment regarding the nature, scope, and routine uses of the records before government collection.  5 U.S.C. § 552a(e)(4)(D); *see Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 763 (D. Md. 2025), *appeal docketed*, No. 25-1411 (4th Cir. Apr. 18, 2025).

information protected by the act, triggering the PIA requirement. *See* Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II); OMB Guidance, M-03-22 (Sep. 26, 2003).  DOJ does not allege that it completed a PIA applicable to this data on individual voters.

### 3.    DOJ's demand violates the DPPA.

Last, DOJ's demand violates the DPPA because Michigan's voter list, the QVF, receives sensitive information directly from Michigan's driver file on a regular basis. The Michigan Department of State electronically provides to the Bureau of Elections certain information, like DLNs, associated with each person who applies for, renews, or replaces a driver's license, permit, or identification card and who is qualified to register to vote.  Mich. Comp. Laws §§ 168.509r(2)(a), 257.307(1)(b), 28.291.  As discussed earlier, the DPPA prohibits disclosing "personal information" that is obtained in connection with a "motor vehicle record."  18 U.S.C. § 2721(a), 2721(1), (3) & (4).  This prohibition extends to authorized recipients, like the Bureau of Elections, that receives information from the Department in carrying out its functions related to voter registration. 18 U.S.C. §§ 2721(b)(1), (c).

DOJ alleges in its complaint that its records demand is exempt from the DPPA because the requested disclosure "is *for use* by a government agency in carrying out the government agency's function to accomplish its enforcement authority[.]"  (PageID.13, ¶ 44) (citing 18 U.S.C. § 2721(b)(1) (emphasis added).  But this conclusory allegation is insufficient to plausibly establish an exemption where DOJ has not plausibly alleged that it will "use" the millions of personal voter records to assess Michigan's compliance with NVRA or any other law.

39

Because DOJ has failed to comply with the Privacy Act, the E-Government Act, and the DPPA, the Court should dismiss the Complaint.

## CONCLUSION AND RELIEF REQUESTED

For these reasons, Defendants respectfully request that this Honorable Court enter an Order dismissing the complaint in its entirety, together with any other relief that the Court determines to be appropriate under the circumstances.

Respectfully submitted,

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email:  meingasth@michigan.gov
(P55439)

Dated:    November 26, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on November 26, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)

40