IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

          v.

JOCELYN BENSON, in her official capacity as
Michigan Secretary of State; and the STATE OF
MICHIGAN,

       Defendants.

Civil Action No. 1:25-cv-1148-HYJ-PJG

Amicus Brief

## BRIEF OF *AMICUS CURIAE*

## THE DEMOCRATIC NATIONAL COMMITTEE

SCOTT R. ELDRIDGE (P66452)
WENDOLYN W. RICHARDS (P67776)
ERIKA L. GIROUX (P81998)
MILLER, CANFIELD, PADDOCK
AND STONE, P.L.C.
123 WEST ALLEGAN STREET, SUITE 200
LANSING, MICHIGAN 48933
(517) 487-2070
ELDRIDGE@MILLERCANFIELD.COM
RICHARDS@MILLERCANFIELD.COM
GIROUX@MILLERCANFIELD.COM
*COUNSEL FOR DEMOCRATIC NATIONAL COMMITTEE*

DANIEL J. FREEMAN
DEMOCRATIC NATIONAL COMMITTEE
430 SOUT CAPITOL STREET SE
WASHINGTON, DC 20003
(202) 663-6000
FREEDMAND@DNC.ORG

DECEMBER 1, 2025

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

I.      INTEREST OF AMICUS CURIAE ................................................................................. 1

II.     BACKGROUND ............................................................................................................. 2

III.    LEGAL STANDARD...................................................................................................... 4

IV.     ARGUMENT................................................................................................................... 5

        A.      DOJ Has Obscured the True Basis and Purpose for Its Title III Demand ............. 5

        B.      The NVRA Does Not Require Public Disclosure of Unredacted Voter
                Files...................................................................................................................... 13

        C.      HAVA Does Not Provide DOJ with Subpoena Authority.................................... 14

V.      CONCLUSION.............................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civ. Rights Union v. Phila. City Comm'rs*,
    872 F.3d 175 (3d Cir. 2017)............................................................................................7, 8, 11

*Becker v. United States*,
    451 U.S. 1306 (1981)..............................................................................................................11

*Bellitto v. Snipes*,
    935 F.3d 1192 (11th Cir. 2019) .................................................................................7, 8, 10, 11

*Bobreski v. EPA*,
    284 F. Supp. 2d 67 (D.D.C. 2003)..........................................................................................15

*CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.* (*ACICS*),
    854 F.3d 683 (D.C. Cir. 2017)...............................................................................................5, 6

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971)................................................................................................................12

*Coleman v. Kennedy*,
    313 F.2d 867 (5th Cir. 1963) .................................................................................................12

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962)......................................................................................12

Consent Decree, *United States v. Georgia*,
    No. 1:06-cv-2442 (N.D. Ga. Oct. 30, 2006) .........................................................................10

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
    603 U.S. 799 (2024)..................................................................................................................6

*Cuahy Packing Co. v. Holland*,
    315 U.S. 357 (1942)................................................................................................................15

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019)..................................................................................................................7

*In re Gordon*,
    218 F. Supp. 826 (S.D. Miss. 1963)........................................................................................6

*Kennedy v. Bruce*,
    298 F.2d 860 (5th Cir. 1962) .................................................................................................12

*Kennedy v. Lynd*,
　306 F.2d 222 (5th Cir. 1962) ............................................................................................11, 12

*LULAC v. Exec. Off. of the President*,
　780 F. Supp. 3d 135 (D.D.C. 2025).........................................................................................12

*McCreary Cnty. v. ACLU*,
　545 U.S. 844 (2005).................................................................................................................12

*Niz-Chavez v. Garland*,
　593 U.S. 155 (2021)...................................................................................................................6

*Obduskey v. McCarthy & Holthus LLP*,
　586 U.S. 466 (2019).................................................................................................................15

*Paher v. Cegavske*,
　No. 3:20-cv-243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) .................................................2

*Peters v. United States*,
　853 F.2d 692 (9th Cir. 1988) ..................................................................................................15

*Project Vote/Voting for America, Inc. v. Long*,
　682 F.3d 331 (4th Cir. 2012) ..............................................................................................2, 13

*Project Vote/Voting for America, Inc. v. Long*,
　No. 11-1809 (4th Cir. Oct. 18, 2011).....................................................................................13

*Pub. Int. Legal Found. v. Benson*,
　136 F.4th 613 (6th Cir. 2025), *petition for cert. pending*, No. 25-437 (filed Oct. 7,
　2025) .....................................................................................................................................9, 10

*Pub. Interest Legal Found, Inc. v. N.C. State Bd. of Elections*,
　996 F.3d 257 (4th Cir. 2021) ..................................................................................................13

*Pub. Interest Legal Found. v. Bellows*,
　92 F.4th 36 (1st Cir. 2024)............................................................................................5, 13, 14

*Pub. Interest Legal Found. v. Bellows*,
　No. 23-1361 (1st Cir. July 23, 2023) .....................................................................................13

*Public Interest Legal Found. v. Schmidt*,
　No. 23-1590 (3d Cir. Nov. 6, 2023)........................................................................................13

*Republican Nat'l Comm. v. Benson*,
　No. 24-1985, 2025 WL 2731704 (6th Cir. Sept. 25, 2025) (per curiam) ...............................10

*Shelby Cnty. v. Holder*,
　570 U.S. 529 (2013).................................................................................................................15

*United States v. Bellows*,
No. 1:25-cv-468 (D. Me. Sept. 18, 2025) ................................................................................11

*United States v. Chemical Foundation, Inc.*,
272 U.S. 1 (1926) ....................................................................................................................12

*United States v. Iannone*,
610 F.2d 943 (D.C. Cir. 1979) .............................................................................................5, 15

*United States v. N.C. State Bd. of Elections*,
No. 5:25-cv-283 (E.D.N.C. Sept. 8, 2025) ................................................................................9

*United States v. Powell*,
379 U.S. 48 (1964) ..............................................................................................................11, 12

*United States v. Scanlan*,
1:25-cv-371 (D.N.H. Sept. 30, 2025) ........................................................................................9

*United States v. State of New Jersey*,
No. 06-4889 (D.N.J. Oct. 12, 2006) .........................................................................................10

*United States v. Weber*,
No. 2:25-cv-9149 (C.D. Cal. Nov. 7, 2025) ...............................................................................9

*United States v. Will*,
671 F.2d 963 (6th Cir. 1982) ...................................................................................................11

*Universal Health Servs. v. United States ex. rel. Escobar*,
579 U.S. 176 (2016) ..................................................................................................................6

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
478 U.S. 252 (1977) ..................................................................................................................9

**Constitutions**

U.S. Const., Amend. I ......................................................................................................................13

U.S. Const., Amend. XIV .................................................................................................................13

**Statutes**

5 U.S.C. § 552 ..................................................................................................................................14

6 U.S.C. § 111 ....................................................................................................................................7

42 U.S.C. § 1306c ...............................................................................................................................7

42 U.S.C. § 1974b .............................................................................................................................12

42 U.S.C. § 1974d..........................................................................................................12

52 U.S.C. § 10101 *et seq.*................................................................................................7

52 U.S.C. §§ 20501–20511.............................................................................................4

52 U.S.C. § 20501..........................................................................................................4

52 U.S.C. § 20507................................................................................................*passim*

52 U.S.C. §§ 20510..........................................................................................................7

52 U.S.C. § 20701..........................................................................................................4

52 U.S.C. §§ 20701–20706.........................................................................................3, 4

52 U.S.C. § 20703................................................................................................*passim*

52 U.S.C. § 20705..........................................................................................................12

52 U.S.C. §§ 20901–21145.........................................................................................5, 14

52 U.S.C. § 21003..........................................................................................................14

52 U.S.C. § 21083....................................................................................................7, 8, 10

52 U.S.C. § 21085....................................................................................................10, 15

52 U.S.C. § 21111..................................................................................................5, 7, 15

52 U.S.C. § 21145..........................................................................................................7

52 U.S.C. § 41111..........................................................................................................3

**Court Rules**

Fed. R. Civ. P. 81(a)(5)..................................................................................................11

**Other Authorities**

11 C.F.R. § 9428.7..........................................................................................................14

39 C.F.R. § 122.2(b) .......................................................................................................7

Exec. Order. No. 14,248, § 3(a), 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025) ..............8

Federal law authorizes the Attorney General to demand voter registration records, but she cannot do so based on a misrepresentation.  Rather than disclosing "the basis and the purpose" for its demand for the complete, unredacted Michigan voter file—as Title III of the Civil Rights Act of 1960, 52 U.S.C. § 20703, requires—the Department of Justice suggests it is engaged in routine enforcement of federal civil rights laws.  To the contrary, the Justice Department intends to transfer the personal identifying information and party primary participation of every registered voter in Michigan to the Department of Homeland Security and is reportedly consolidating state databases into a national voter file.  This deception invalidates the Title III demand.  Invocations of a public records law and basic enforcement authority fare no better; neither authorizes demands for unredacted personal information.  A Department of Justice that cannot be forthright with state officials cannot be trusted with the personal information of every registered voter in Michigan, including more than three-quarters of a million voters readily identifiable as having participated in the 2024 Michigan Democratic Presidential Primary.  The Democratic National Committee submits this amicus brief to protect the privacy interests of its members and the interests of its candidates and campaigns in free and fair elections and respectfully requests that this Court grant Defendants' motion to dismiss.

## I.    INTEREST OF AMICUS CURIAE

The Democratic National Committee (DNC) is the oldest continuing party committee in the United States.  Its purposes and functions are to communicate the Democratic Party's position on issues, protect voters' rights, and aid the election of Democratic candidates nationwide, including by organizing citizens to register to vote and to cast ballots in favor of Democratic candidates.  The DNC represents millions of voters, including over 770,000 voters who cast ballots in the 2024 Michigan Democratic Presidential Primary.

The U.S. Department of Justice (DOJ) has demanded a copy of the State of Michigan's complete, unredacted voter registration list, known as the Qualified Voter File. This demand forces Democrats to choose between democratic participation and the privacy and security of their personal information. Conditioning the right to vote on the release of private information "creates an intolerable burden on that right." *Project Vote/Voting for America, Inc. v. Long*, 682 F.3d 331, 339 (4th Cir. 2012). The concerns of ordinary Democrats are amplified by uncertainty as to the intended use of their data. In turn, the DNC has a significant protectable interest in the success for Democratic candidates, and pressure on Democrats to avoid registration or even remove themselves from the voter rolls would impose an intolerable burden on that interest. *See, e.g.*, *Paher v. Cegavske*, No. 3:20-cv-243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020).

## II.    BACKGROUND

In June 2025, DOJ began sending letters to state officials demanding complete, unredacted copies of state voter files, and a senior official eventually acknowledged that DOJ intends to send demands to all 50 states. *See* Jonathan Shorman, *DOJ Plans to Ask All States for Detailed Voting Info*, Stateline, Aug. 1, 2025, https://perma.cc/526V-97C3. Early letters indicated that the files would be used to oversee "HAVA compliance" or "full compliance with the NVRA." *E.g.*, Let. from Maureen Riordan, U.S. Dep't of Justice, to Steve Simon, Minn. Sec'y of State (June 25, 2025), https://perma.cc/NZ9N-FCDC; Let. from Michael E. Gates, U.S. Dep't of Justice, to Deirdre Henderson, Lt. Gov. of Utah (July 15, 2025), https://perma.cc/FV8G-W965. However, DOJ has publicly confirmed that it is sharing lists it receives with the Department of Homeland Security (DHS), and reporting indicates that DOJ is developing a national voter file. *See* Jonathan Shorman, *DOJ Is Sharing State Voter Roll Lists with Homeland Security*, Stateline, Sept. 12, 2025, https://perma.cc/C6RQ-6ATP (quoting DOJ and DHS statements); Devlin Barrett and Nick

Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://perma.cc/9PM4-2A6R.

On July 21, DOJ sent a letter to Michigan Secretary of State Jocelyn Benson demanding an unredacted copy of Michigan's statewide voter registration list, pursuant to Section 8(i) of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20507(*i*).  *See* July 21 Let., ECF No. 39-2; *see also* Aug. 8 Let., ECF No. 39-3 (rejecting Secretary Benson's proposed disclosure timeline).  On August 14, DOJ sent a supplemental letter clarifying that the requested copy of the statewide voter registration list "should contain *all fields*," including "registrant's full name, date of birth, residential address, his or her state driver's license number or the last four digits of the registrant's social security number."  Aug. 14 Let., ECF No. 39-4.  This supplemental letter invoked Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. §§ 20701–20706, as authority for the demand and stated, "[t]he purpose of the request is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA."  *Id.* at 2.  The supplemental letter also asserted that Section 401 of the Help America Vote Act of 2002 (HAVA), 52 U.S.C. § 41111, provides authority to demand unredacted voter files.  *See id.*  On September 2, Counsel for Secretary Benson offered to provide the public version of the Michigan Qualified Voter File (QVF), while withholding data exempt from disclosure under state law.  Sept. 2 Let., ECF No. 39-5; *see also* Sept. 9 Let., ECF No. 39-6 (providing answers to numbered questions from DOJ).

On September 25, the United States filed suit against Secretary Benson and the State of Michigan, demanding production of the unredacted QVF.  *See* Compl., ECF No. 1.  Following a

stay in light of the lapse in federal funding, Order, ECF No. 9, Defendants moved to dismiss on November 26. Mich. Mot., ECF No. 38.[1]

## III.    LEGAL STANDARD

Title III of the Civil Rights Act of 1960 (Title III), 52 U.S.C. §§ 20701–20706, dictates that "every officer of election shall retain and preserve, for a period of twenty-two months from the date of any [federal election], all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election" or transfer such materials to another officer of election or designated custodian. 52 U.S.C. § 20701. In turn, "[a]ny record or paper required by [Title III] to be retained and preserved shall, upon demand in writing by the Attorney General or his representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the Attorney General or his representative." *Id.* § 20703. "This demand shall contain a statement of the basis and the purpose therefor." *Id.* "The United States district court for the district in which a demand is made pursuant to [Title III], or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

The NVRA, 52 U.S.C. §§ 20501–20511, aims to improve both voter registration access and accuracy. *See* 52 U.S.C. § 20501(b)(1)–(4). To facilitate public oversight, Section 8(i) requires each covered state to "maintain for at least 2 years and . . . make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the

---

[1] DOJ has thus far sued Michigan and seven additional states to seek complete, unredacted voter files. *See* Press Release, U.S. Dep't of Justice, *Justice Department Sues Oregon and Maine for Failure to Provide Voter Registration Rolls* (Sept. 16, 2025), https://perma.cc/8URN-US8S; Press Release, U.S. Dep't of Justice, *Justice Department Sues Six States for Failure to Provide Voter Registration Rolls* (Sept. 25, 2025), https://perma.cc/6Q23-2X8Y.

implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," subject to specified exceptions.  *Id.* § 20507(*i*).

HAVA, 52 U.S.C. §§ 20901–21145, imposes additional requirements on the administration of federal elections.  The Attorney General may enforce only "the uniform and nondiscriminatory election technology and administration requirements" in Sections 301 to 304 of the Act.  52 U.S.C. § 21111.  HAVA does not contain express subpoena authority or public disclosure requirements.

## IV.    ARGUMENT

DOJ has no legal basis to obtain the complete, unredacted Michigan QVF.  By refusing to offer an honest statement of "the basis and the purpose" for the demand, the Attorney General loses the cover of Title III authority.  52 U.S.C. § 20703.  The NVRA's public records provision does not authorize disclosure of sensitive personal information.  *See, e.g.*, *Pub. Interest Legal Found. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024).  And HAVA contains no subpoena authority at all.  *See* 52 U.S.C. § 21111; *see also, e.g.*, *United States v. Iannone*, 610 F.2d 943, 945-46 (D.C. Cir. 1979) (rejecting claim of implied subpoena authority).  Because the United States' complaint does not state a claim upon which relief can be granted, this Court should grant Defendants' motion to dismiss.

### A.    DOJ Has Obscured the True Basis and Purpose for Its Title III Demand.

DOJ's Title III demand for the complete, unredacted QVF should be denied because the demand did not state "the basis and the purpose therefor."  52 U.S.C. § 20703; *see also* Mich. Br. at 15-19, ECF No. 39.  Title III requires candor between federal officials and state and local election administrators who safeguard voters' sensitive personal information.  *See* 52 U.S.C. § 20703; *see also CFPB v. Accrediting Council for Independent Colleges & Secondary Schs. (ACICS)*, 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigating demand "is measured by the stated purpose," making notification of purpose "an important

5

statutory requirement").  Yet DOJ has provided Michigan and its citizens less than a half-truth.

DOJ told Secretary Benson that the "purpose of the request is to ascertain Michigan's compliance

with the list maintenance requirements of the NVRA and HAVA."  Aug. 14 Let. at 2.  However,

DOJ has publicly confirmed that it is sharing voter files with DHS, and reporting indicates that

DOJ is compiling a national voter file for its own use.  *See DOJ Is Sharing State Voter Roll Lists*

*with Homeland Security*, *supra*; *Trump Administration Quietly Seeks to Build National Voter*

*Rolls*, *supra*.  As explained below, neither action is related to NVRA and HAVA enforcement.[2]

Title III demands a statement of "*the* basis and *the* purpose" for the demand, not merely *a*

basis and *a* purpose.  52 U.S.C. § 20703 (emphasis added).  By twice using the definite article,

Title III requires the Attorney General to offer "a discrete thing": the complete basis and purpose

of the request and not merely one basis and purpose among many.  *Niz-Chavez v. Garland*, 593

U.S. 155, 166 (2021); *see also, e.g.*, *Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,

603 U.S. 799, 817 (2024) (emphasizing distinction between definite and indefinite article).

Without a complete statement of the basis and the purpose of the demand, state officials and

reviewing courts "cannot accurately determine whether the inquiry is within the authority of the

[Justice Department] and whether the information sought is reasonably relevant."  *ACICS*, 854

F.3d at 691; *see also In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (indicating that Title

III requests cannot be "used without restraint").  Ultimately, "half-truths—representations that

state the truth only so far as it goes, while omitting critical qualifying information—can be

actionable misrepresentations."  *Universal Health Servs. v. United States ex. rel. Escobar*, 579

---

[2] DOJ similarly invoked the NVRA and HAVA when requesting records from Fulton County, Georgia related to the 2020 Presidential election, even while claiming its actual interest was "transparency."  Oct. 30 Let., https://perma.cc/WCM3-FVTW.  Repeat demands for records based on pretextual invocation of the NVRA and HAVA further undercut purported reliance on those statutes here.

U.S. 176, 188 (2016); *cf. Dep't of Commerce v. New York*, 588 U.S. 752, 781-85 (2019) (setting aside agency action due to pretextual invocation of the Voting Rights Act).  Thus, DOJ's refusal to be forthright with state officials and registered voters about the intended use of sensitive personal information is fatal to the demand.

DHS has broad authority over counterterrorism, emergency management, immigration, and border protection, but its powers do not extend to NVRA and HAVA enforcement.  *See* 6 U.S.C. § 111(b); *cf.* 52 U.S.C. §§ 20510(a), 21111 (DOJ authority).  Even if DOJ were only interested in comparing the Michigan QVF with DHS data—which would not require transferring the QVF to DHS custody—such database matching would not advance NVRA and HAVA enforcement.  The NVRA's affirmative list maintenance mandate concerns only deceased registrants and those who have moved outside the jurisdiction of a local registrar.  *See* 52 U.S.C. § 20507(a)(4).  HAVA specifies that appropriate officials must remove voters from statewide voter registration lists using a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters . . . consistent with the [NVRA]," *id.* § 21083(a)(4)(A), and this provision does not "broaden[] the scope of the NVRA's list-maintenance obligations."  *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019); *see also Am. Civ. Rights Union v. Phila. City Comm'rs*, 872 F.3d 175, 184-85 (3d Cir. 2017) (rejecting contention that HAVA "augment[s]" NVRA list maintenance requirements); 52 U.S.C. § 21083(a)(2)(B) (guidelines for list maintenance); 52 U.S.C. § 21145(a)(4) (directing that nothing in HAVA supersedes the NVRA).  Federal data concerning deaths and changes of address are held by the Social Security Administration and the U.S. Postal Service respectively, not DHS.  *See* 42 U.S.C. § 1306c(d) (defining the Social Security Death Master File); 52 U.S.C. § 20507(c)(1) (describing use of Postal Service address information by election officials); *see also* 39 C.F.R. §

122.2(b) (providing for prompt transmission of change-of-address information to election officials); Exec. Order. No. 14,248, § 3(a), 90 Fed. Reg. 14005, 14007 (Mar. 25, 2025) (ensuring that the Social Security Administration allows election officials to access the Death Master File). Thus, DHS data is not relevant to NVRA and HAVA enforcement.

Adding the complete, unredacted Michigan QVF to a DOJ national voter database also does not advance the stated purpose of investigating Michigan's NVRA and HAVA compliance. The NVRA requires that states conduct only a "reasonable effort to remove the names of ineligible voters by reason of the death of the registrant[] or a change in the residence of the registrant." 52 U.S.C. § 20507(a)(4). With respect to movers, the "reasonable effort" requirement can be met using Postal Service data alone. *See id.* § 20507(c)(1). In any case, joining the Michigan QVF to another state's voter file—a file Michigan does not possess and is not legally required to obtain— does not help DOJ determine whether Michigan has met the "reasonable effort" requirement. *Cf. id.* § 21083(a)(2)(A)(ii) (requiring voter file coordination with in-state databases on felony status and records of death).[3] HAVA merely reiterates the NVRA's list maintenance requirements, *see, e.g.*, *Bellitto*, 935 F.3d at 1202; *Am. Civ. Rights Union*, 872 F.3d at 184-85, and comparison to another state's database has no bearing on database design mandates, such as consolidation of duplicate registration records, *see id.* § 21083(a)(2)(B)(iii).

Even if Title III required the Attorney General's representative to provide only "a purpose" and not "the purpose" of a demand—and it does not—DOJ's demand for the complete, unredacted

---

[3] Through the Electronic Registration Information Center—a membership organization made up of 24 states and the District of Columbia—Michigan obtains cross-state mover reports based on voter registration and motor vehicle data. *See* Electronic Registration Information Center, *FAQ's*, https://perma.cc/AY53-TF3Z; *see also* Electronic Registration Information Center, *Technology & Security Overview*, https://perma.cc/CY4E-85VL. However, 25 states that register voters do not participate in this exchange, and federal law does not mandate interstate comparison of voter registration records.

Michigan QVF is unrelated to "Michigan's compliance with the list maintenance requirements of the NVRA and HAVA." Aug. 14 Let. at 2.[4] For nearly two decades, DOJ has neither demanded nor required a complete, unredacted voter file to investigate NVRA violations or oversee compliance with a remedy. *See, e.g.*, Press Release, U.S. Dep't of Justice, *United States Announces Settlement with Kentucky Ensuring Compliance with Voter Registration List Maintenance Requirements*, July 5, 2018, https://perma.cc/G2EZ-UUA5 (describing 2017 letters to all 44 states covered by the NVRA requesting list maintenance information but not demanding voter files). And with good reason. As noted above, the NVRA's affirmative list maintenance mandate requires only a "reasonable effort" to remove deceased registrants and movers. *See* 52 U.S.C. § 20507(a)(4); *see also id.* § 20507(c)(1) (allowing the requirement concerning movers to be met as a matter of law using safe harbor procedures). DOJ has recognized this flexible standard since the Act's passage. *See, e.g.*, U.S. Dep't of Justice, *The National Voter Registration Act of 1993* (last updated Nov. 1, 2024), https://perma.cc/D8YZ-F9AM; U.S. Dep't of Justice, *NVRA List Maintenance Guidance* (Sept. 2024), https://perma.cc/J3C2-WSSE. Thus, state and local procedures establish compliance; voter files that result from those procedures do not. *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624-26 (6th Cir. 2025), *petition for cert. pending*, No. 25-437 (filed Oct. 7, 2025) (defining "reasonable effort" as "a serious attempt that is rational and

---

[4] In other states, DOJ asserted that the purpose of obtaining the unredacted voter file is to ascertain compliance only with the NVRA or only with HAVA. *See, e.g.*, Aug. 18 Let., *United States v. Scanlan*, 1:25-cv-371 (D.N.H. Sept. 30, 2025), ECF No. 6-9 (HAVA only); Aug. 21 Let., *United States v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Nov. 7, 2025), ECF No. 37-2, at 24 (NVRA only). DOJ has also incorporated a demand for the unredacted voter file as a purported oversight measure in a recent consent decree. *See* Consent Decree ¶ 11, *United States v. N.C. State Bd. of Elections*, No. 5:25-cv-283 (E.D.N.C. Sept. 8, 2025), ECF No. 72. The Attorney General's assertion of varying purposes for identical voter file demands suggests that the claimed enforcement aim here is mere pretext. *Cf. Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 478 U.S. 252, 267 (1977) (deeming departures from substantive and procedural norms to be evidence of pretext).

sensible" and rejecting any "quantifiable, objective standard"); *Bellitto*, 935 F.3d at 1205 (finding a "reasonable effort" based on safe harbor procedures alone).  Even if DOJ could identify movers and deceased voters on the registration rolls, this would not indicate that actions to remove such voters did not meet the "reasonable effort" requirement. *See Benson*, 136 F.4th at 626-27 (rejecting identification of "27,000 'potentially deceased' voters on Michigan's registration rolls" as evidence of an NVRA violation); *Republican Nat'l Comm. v. Benson*, No. 24-1985, 2025 WL 2731704 (6th Cir. Sept. 25, 2025) (per curiam) (acknowledging that some movers remain on the rolls temporarily due to the NVRA's "procedural restraints"); *see also* 52 U.S.C. § 20507(d)(1) (limiting removal of movers).  Ultimately, the NVRA places responsibility for voter registration list maintenance with the States and does not authorize the Justice Department to search for individual registrants that federal officials suspect may not meet state eligibility requirements.[5]

HAVA enforcement also does not require or use complete, unredacted voter files. Although HAVA requires that statewide voter registration databases have specific list maintenance capabilities, *see* 52 U.S.C. § 21083(a)(2), (a)(4), these requirements are implemented pursuant to state discretion, *id.* § 21085.  DOJ previously recognized as much when it entered a consent decree requiring "reasonable steps" to identify possible duplicate registrations and movers and "review" of registrants previously identified "as potentially deceased"—not perfect removal of ineligible registrants and consolidation of duplicate records.  Consent Decree ¶¶ 4, 8-9, *United States v. State of New Jersey*, No. 06-4889 (D.N.J. Oct. 12, 2006), https://perma.cc/TF6V-NUY4; *see also* U.S.

---

[5] In 2006, DOJ sought and obtained a state voter registration file, including Social Security numbers, for the ostensible purpose of assessing NVRA compliance. *See* Compl. ¶ 9, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 12, 2006); *see also* Consent Decree, *United States v. Georgia*, No. 1:06-cv-2442 (N.D. Ga. Oct. 30, 2006).  DOJ did not pursue an enforcement action based on the file, *see* U.S. Dep't of Justice, *Cases Raising Claims under the National Voter Registration Act*, https://perma.cc/A3JG-CNZA, and for the next 19 years abandoned attempts to use voter files to assess NVRA compliance.

Election Assist. Comm'n, *Voluntary Guidance on Implementation of Statewide Voter Registration Lists* 11-14 (July 2005), https://perma.cc/KJX9-ZZ3W ("recogniz[ing] the fallibility of databases" and prioritizing "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters"). And once a HAVA-compliant system was in place, the decree required reporting of list maintenance statistics but did not demand copies of complete, unredacted voter files. *See* N.J. Consent Decree ¶ 11. Ultimately, HAVA list maintenance requirements are no more prescriptive than the NVRA, *see Bellitto*, 935 F.3d at 1202; *Am. Civ. Rights Union*, 872 F.3d at 185, and complete, unredacted voter files do not assist HAVA enforcement.

DOJ cannot avoid scrutiny of the basis and purpose for its Title III demand by claiming that the Civil Rights Act of 1960 authorizes a "special statutory proceeding," as it recently has in other voter file litigation. *See, e.g.*, DOJ Mot. 8, *United States v. Bellows*, No. 1:25-cv-468 (D. Me. Sept. 18, 2025), ECF No. 5-1 (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)). In the six decades since DOJ last litigated a contested Title III action, the Supreme Court has confirmed that "the Federal Rules apply to proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an officer or agency of the United States under any statute of the United States except as otherwise provided by statute or by rules of the district court or by order of the court in the proceedings." *Becker v. United States*, 451 U.S. 1306, 1308 (1981) (internal citation and quotation marks omitted); *see also* Fed. R. Civ. P. 81(a)(5) (contemporary restatement). Indeed, just two years after *Kennedy v. Lynd*, on which DOJ recently relied, the Supreme Court held that the IRS Commissioner bears the burden to establish statutory requirements before a tax subpoena may be enforced. *See United States v. Powell*, 379 U.S. 48, 57-58 (1964); *see also, e.g.*, *United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (allowing summons recipient opportunity to rebut government's prima facie case). Nothing in the

11

text of Title III insulates the sufficiency of the requisite "statement of the basis and the purpose" of a demand from judicial review.  52 U.S.C. § 20703.[6]  Rather, Title III's jurisdictional provision authorizes only "appropriate process to compel the production" of documents.  *Id.* § 20705; *see also Lynd*, 306 F.2d at 230 (anticipating that "'appropriate process' . . . will include the power and duty to issue protective orders" (quoting former 42 U.S.C. § 1974d)).  It is possible that an "assertion that the demand was made for the purpose of investigating possible violations of a Federal statute" could meet the basis and purpose requirement, *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963), but only when the assertion is both complete and accurate.  And while DOJ might ordinarily be presumed to be acting in good faith, "appropriate process" requires an opportunity to prove otherwise.  *See In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (ascribing good faith to Title III request "unless otherwise shown"); *see also, e.g.*, *LULAC v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 187 n.29 (D.D.C. 2025) (describing misrepresentation in recent election litigation).[7]  Applying appropriate process, this Court should conclude that Title III provides no basis for DOJ's request for the unredacted Michigan QVF.

---

[6] Facing resistance from district judges in the Jim Crow South, the Fifth Circuit indicated in 1962 that "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand is not open to judicial review or ascertainment."  *Lynd*, 306 F.2d at 226 (quoting former 42 U.S.C. § 1974b); *see also, e.g.*, *Kennedy v. Bruce*, 298 F.2d 860, 862 (5th Cir. 1962) (reversing district court dismissal in conflict with controlling precedent).  Although racist mass disenfranchisement may have warranted truncating proceedings in the early 1960s, the Supreme Court's 1964 decision in *Powell* makes clear that even in exigency, the government must establish requirements that Congress has set to issue a valid document request.  *See* 379 U.S. at 57-58.

[7] The presumption of regularity articulated in *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 15 (1926), does not shield official actions "from a thorough, probing, in-depth review."  *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also, e.g.*, *McCreary Cnty. v. ACLU*, 545 U.S. 844, 862 (2005).  In recent months, district courts have repeatedly "identified serious defects in the government's explanations and representations . . . prompting judges to discount government submissions, compel expedited discovery, and withhold the presumption."  Ryan Goodman et al., *The "Presumption of Regularity" in Trump Administration Litigation* (Oct. 15, 2025), https://perma.cc/VMA2-YJDQ

**B.      The NVRA Does Not Require Public Disclosure of Unredacted Voter Files.**

The United States' request for the unredacted Michigan QVF under Section 8(i) of the NVRA fares no better.  Section 8(i) requires public disclosure of voter registration rolls, but "nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."  *Bellows*, 92 F.4th at 56; *see also* Mich. Br. at 22-29. Moreover, the NVRA does not "prohibit the redaction of personal information that can be particularly sensitive in certain circumstances, including those circumstances explicitly recognized by federal courts."  *Id.*; *see also, e.g.*, *Pub. Interest Legal Found, Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 268 (4th Cir. 2021) (remanding for redactions).  DOJ has historically agreed, recognizing that "the NVRA does not prohibit States from redacting 'uniquely sensitive information' like voters' Social Security Numbers before disclosing records" under Section 8(i). DOJ Amicus Br. at 27, *Pub. Interest Legal Found. v. Bellows*, No. 23-1361 (1st Cir. July 23, 2023) (quoting *Project Vote*, 682 F.3d at 339), https://perma.cc/ML4S-5V4S; *see also* DOJ Amicus Br. at 28-29, *Public Interest Legal Found. v. Schmidt*, No. 23-1590 (3d Cir. Nov. 6, 2023), https://perma.cc/3BQ9-36UJ ("States may redact certain information before disclosing Section 8(i) records."); DOJ Amicus Br. at 24-26, *Project Vote/Voting for America, Inc. v. Long*, No. 11-1809 (4th Cir. Oct. 18, 2011), https://perma.cc/HSM3-U964.

Because Section 8(i) is a public records provision, redactions are necessary to avoid widespread risk of identity theft and voter intimidation.  Social Security numbers are "are uniquely sensitive and vulnerable to abuse," and "a statute that conditions voting on public release of a voter's Social Security number creates an intolerable burden on that right as protected by the First and Fourteenth Amendments."  *Project Vote*, 682 F.3d at 339 (internal citations and quotation marks omitted); *see also* Liz Landers and Doug Adams, *How the Trump Administration Is Trying to Change the Way People Vote*, PBS News Hour, Sept. 26, 2025, https://perma.cc/7V2J-QY9V

(describing Social Security number, driver's license number, and date of birth as "the holy trinity of identity theft"); *cf.* 5 U.S.C. § 552(b)(6) (allowing redactions from publicly available information if disclosure "would constitute a clearly unwarranted invasion of personal privacy"). Once again, DOJ has historically agreed, arguing under Section 8(i) that a litigant was "wrong to claim that disclosures of personally identifiable information are 'imaginary monsters.'"  U.S. Amicus Br. at 29, *Pub. Interest Legal Found. v. Bellows*, *supra* (internal citation omitted).  And Section 8(i) does not distinguish between categories of requestors when making information available, which might allow election officials to provide unredacted information only to favored individuals, groups, or entities.  *See* 52 U.S.C. § 20507(*i*); *cf.* 11 C.F.R. § 9428.7 (requiring biennial state production of NVRA-related information only to the U.S. Election Assistance Commission).[8]  Perhaps for that reason, DOJ has not historically invoked the NVRA's public records provision when seeking election records, relying instead on its Title III authority.  *See, e.g.*, Let. from Michael L. Jones, Off. Ala. Sec'y of State, to DOJ (Sept. 19, 2024), https://perma.cc/LN4M-HH9E (producing records "in compliance with Title III of the Civil Rights Act of 1960").  Thus, the NVRA also provides no basis for DOJ's request for the unredacted Michigan QVF.

### C.    HAVA Does Not Provide DOJ with Subpoena Authority.

The United States' invocation of HAVA as a third basis for its demand is at best puzzling, as HAVA contains neither subpoena authority nor a public records provision.  *See* 52 U.S.C. §§ 20901–21145; *cf. id* § 21003(b) (requiring states to submit HAVA compliance plans to the U.S. Election Assistance Commission as a condition for federal funding); *see also* Mich. Br. at 33-34.

---

[8] In recent months, the federal government has not shown itself to be a uniquely dependable custodian of sensitive data. *See, e.g.*, Fatima Hussein, *After Trump's DOGE Action, 300 Million People's Social Security Data Is at Risk, Whistleblower Says*, AP, Aug. 26, 2025, https://perma.cc/G77Z-K7Y5.

Although DOJ claims that HAVA "provides authority for the Justice Department to seek the State's [voter file] via Section 401," Aug. 14 Let. at 1, that provision merely authorizes the Attorney General to enforce four sections of the Act, *see* 52 U.S.C. § 21111. The "authority of an administrative agency to issue subpoenas for investigatory purposes is created solely by statute." *Peters v. United States*, 853 F.2d 692, 696 (9th Cir. 1988); *see also id.* (noting that courts do not "assume the existence of the power to [issue subpoenas] where Congress has not provided for them specifically, nor provided procedural safeguards"). Thus, the mere fact that a statute contains enforcement provisions does not grant subpoena authority to the enforcement agency. *See, e.g.*, *Iannone*, 610 F.2d at 945-46; *Bobreski v. EPA*, 284 F. Supp. 2d 67, 75-78 (D.D.C. 2003); *see also Cuahy Packing Co. v. Holland*, 315 U.S. 357, 364-66 (1942) (rejecting implied subpoena delegation authority). Moreover, enforcement authority does not mandate direct oversight of state election authorities, which would impose substantial federalism costs. *See, e.g.*, *Shelby Cnty. v. Holder*, 570 U.S. 529, 549 (2013); *see also* 52 U.S.C. § 21085 (codifying state discretion). Ultimately, the United States may demand records relevant to HAVA compliance under Title III, but it must follow the requirements of that law.

If enforcement authority were always accompanied by the authority to demand relevant documents, express subpoena provisions throughout the United States Code would be meaningless surplusage. *See, e.g.*, *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 476 (2019) (recognizing that courts "generally presum[e] that statutes do not contain surplusage" (internal citation and quotation marks omitted)). Were it otherwise, Title III itself would not have been needed to ensure that DOJ could effectively enforce the Civil Rights Act of 1957. *See* S. Rep. No. 86-1205 (1960). These arguments do not bear scrutiny. Therefore, HAVA provides no basis for DOJ's request for the unredacted Michigan QVF.

15

## V.    CONCLUSION

For the reasons set out above, this Court should grant Defendants' motion to dismiss.

Respectfully submitted,

/s/ *Scott R. Eldridge*
Scott R. Eldridge (P66452)
Miller Canfield PLC
123 West Allegan Street, Suite 200
Lansing, MI 48933
(517) 487-2070
eldridge@millercanfield.com

/s/ *Daniel J. Freeman*
Daniel J. Freeman
Democratic National Committee
430 South Capitol Street SE
Washington, DC 20003
(202) 863-8000
freemand@dnc.org

Dated: December 1, 2025

## <u>CERTIFICATE OF COMPLIANCE</u>

As required under Local Civil Rule 7.2(b)(i), I hereby certify that this brief includes 4,428 words including headings, footnotes, citations, and quotations, and not including the case caption, cover sheets, any table of contents, any table of authorities, the signature block, attachments, exhibits, and affidavits.  This word count was generated by Microsoft Word, the processing software used to draft the brief.

*/s/ Scott R. Eldridge*
Scott R. Eldridge (P66452)