UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JOCELYN BENSON, et al.,

    Defendants.
_____/

Case No. 1:25-cv-1148

Hon. Hala Y. Jarbou

## **OPINION**

The United States brings this lawsuit against the State of Michigan and its Secretary of State, seeking the disclosure of voting records under Title II of the Civil Rights Act of 1960 (the "CRA"), 52 U.S.C. § 20703, the National Voter Registration Act (NVRA), 52 U.S.C. § 20507(i), and the Help America Vote Act (HAVA), 52 U.S.C. § 21083. Before the Court are two motions to intervene as defendants: one filed by the Michigan Alliance for Retired Americans ("MARA"), Donald Duquette, and Keely Crimando (ECF No. 5), and the other filed by the League of Women Voters of Michigan (the "LWVM") (ECF No. 17). The United States opposes both motions; Michigan takes no position on the motions.

As explained below, the Court finds that MARA, Duquette, and Crimando are entitled to intervention as of right, and will grant their motion. However, because MARA will adequately represent the interests of the LWVM, the Court will deny the LWVM's motion.

### **I. BACKGROUND**

This case arises out of the United States' July 21, 2025, request for voter records from the State of Michigan. (Compl. ¶ 35, ECF No. 1.) The United States sought, among other things, "a list of the election officials who are responsible for implementing Michigan's general program of

voter registration list maintenance," "a description of the steps that Michigan has taken in furtherance of [voter registration list maintenance]," and "a current electronic copy of [Michigan's] computerized [statewide voter registration list]." (*Id.*) The United States indicated that this information was necessary to determine whether Michigan was complying with its obligations under the NVRA and HAVA. (*Id.* ¶ 43.) As to the voter registration list, the United States specifically requested the following information about voters: their "full name, date of birth, residential address, and either their state driver's license number or the last four digits of their Social Security number." (*See id.* ¶ 66.) On September 9, 2025, Michigan informed the United States that it would only provide the public statewide voter registration list, which does not include full dates of birth, driver's license numbers, or social security numbers. (*Id.* ¶ 46.) Michigan claimed that this personal information was exempt from disclosure under Michigan law, *see* Mich. Comp. Laws §§ 15.243, 168.509gg, as well as under the federal Privacy Act, 5 U.S.C. § 552a, and the federal Driver Privacy Protection Act, 18 U.S.C. § 2721 *et seq*. (Compl. ¶ 48; 9/9/2025 Letter, ECF No. 39-6.) In response, the United States brought this lawsuit seeking a declaratory judgment and an injunction requiring Michigan to disclose the unredacted voter registration list.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide two bases for intervention. *United States v. Michigan*, 424 F.3d 438, 443 (6th Cir. 2005). Under Rule 24(a), a movant may intervene as of right if it

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). "[T]o intervene as of right under Rule 24(a)(2), a proposed intervenor must establish the following four elements: (1) the motion to intervene is timely; (2) the proposed

intervenor has a substantial legal interest in the subject matter of the case; (3) the proposed intervenor's ability to protect that interest may be impaired in the absence of intervention; and (4) the parties already before the court may not adequately represent the proposed intervenor's interest." *Michigan*, 424 F.3d at 443.

Alternatively, Rule 24(b) allows for permissive intervention when a movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). If a motion for permissive intervention is timely and there is a common question of law or fact, "the district court must . . . balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion, intervention should be allowed." *Michigan*, 424 F.3d at 445.

### III. ANALYSIS

#### 1. Michigan Alliance of Retired Americans

#### (a) Interest in the Litigation

MARA, Duquette, and Crimando filed a timely motion to intervene under Rule 24(a) or, in the alternative, Rule 24(b). MARA argues that it has an interest in this litigation because its members are registered voters whose personal information will be disclosed to the Department of Justice (DOJ) if the United States succeeds in this case. MARA also contends that the possibility of disclosure will hinder its voter registration activities by deterring people from registering to vote. Duquette and Crimando argue that the DOJ's access to their personal information could chill their speech due to fear of government retaliation.

The Court agrees that these proposed intervenors have a sufficiently substantial interest in this case. The Sixth Circuit "has opted for a rather expansive notion of the interest sufficient to

3

invoke intervention of right." *Coal. to Def. Affirmative Action v. Granholm*, 501 F.3d 775, 780 (6th Cir. 2007) (quoting *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997)). The Sixth Circuit has "cited with approval decisions of other courts 'reject[ing] the notion that Rule 24(a)(2) requires a specific legal or equitable interest.'" *Miller*, 103 F.3d at 1245 (alteration in original) (quoting *Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1991)); *see also Hatton v. Cnty. Bd. of Ed.*, 422 F.2d 457, 461 (6th Cir. 1970) ("Although the interest claimed is of a general and indefinite character, it would seem to the Court to be sufficient to permit intervention [as of right]."). Here, the proposed intervenors have a privacy interest in preventing the disclosure of their personal information to the federal government. This suffices for purposes of Rule 24(a). *Cf. Kalbers v. DOJ*, 22 F.4th 816, 827 (9th Cir. 2021) (proposed intervenor had "interest in the non-disclosure of its documents" that were potentially protected by FOIA exemption, "[a]nd there is a direct, antagonistic relationship between [the proposed intervenor]'s interest in confidentiality and [plaintiffs'] interest in obtaining the documents at issue"); *In re Sealed Case*, 237 F.3d 657, 664 (D.C. Cir. 2001) (proposed intervenors had interest in non-disclosure of their information); *Tarazi v. Oshry*, No. 2:10-CV-793, 2011 WL 1326271, at *4 (S.D. Ohio Apr. 4, 2011) (same).

The United States makes several arguments as to why the intervenors lack an interest in the case, but none are persuasive. First, it argues that intervention is inappropriate because HAVA and the CRA do not create a private right of action.[1] But the absence of a right of action is irrelevant given that the movants are seeking to intervene as defendants rather than plaintiffs. The United States does not explain why an intervenor-defendant would need a right of action, and the Court sees no reason why that would be the case. *See Johnson & Johnson Health Care Sys. Inc.*

---

[1] Although not relevant here, HAVA does create a private right that can be enforced under 42 U.S.C. § 1983. *Sandusky Cnty. Democratic Party v. Blackwell*, 387 F.3d 565, 572–73 (6th Cir. 2004).

*v. Kennedy*, No. CV 24-3188 (RC), 2025 WL 1411076, at *3 (D.D.C. May 15, 2025) ("[T]he standards for whether a party has a cause of action as a plaintiff and whether a party can intervene, here as a defendant, are different: as Rule 24's plain text indicates, intervenors of right need only an 'interest' in the litigation—not a cause of action or permission to sue." (cleaned up)).  The only authority the United States cites for its position is *United States v. Alabama*, No. 2:06-CV-392-WKW, 2006 WL 2290726 (M.D. Ala. Aug. 8, 2006).  But contrary to the United States' characterization, the court in *Alabama* did not hold that the absence of a private right of action under HAVA precludes proposed intervenor-defendants from having an interest in the case.  Rather, the court concluded that the proposed intervenors lacked an interest because, among other things, they asserted only general policy concerns.  *Id.* at *4.  It noted the absence of a right of action, but recognized that this was a tangential point rather than a dispositive one.  *See id.* at *4 n.6 ("Because the proposed intervenors move for intervention as defendants to this action, it is unlikely that they are claiming to be plaintiffs with a private right of action under HAVA.  Nonetheless, in the interest of clarity, and because such possibility was raised by the United States, the Court addresses this possibility.").  At most, the court implied that the *presence* of a right of action might entitle a party to intervention; it did not imply that the absence of a right of action necessarily bars intervention.

The United States also argues that HAVA and the CRA only allow suit against specific election officials in relation to the voter information provisions, and thus the movants could not be properly sued under these statutes.  But this too is irrelevant.  The United States cites no authority indicating that a movant can only intervene as a defendant if the plaintiff has a cause of action against it—i.e., if the movant could have been named as a defendant in the complaint.  And case law suggests the opposite.  For example, the Administrative Procedure Act only authorizes suit

5

against the federal government or its agents, *see* 5 U.S.C.A. § 702, but private parties can intervene as defendants to argue on behalf of the agency action at issue. *See, e.g.*, *Ohio v. EPA*, No. 2:15-CV-2467, 2019 WL 417297, at *2–3 (S.D. Ohio Feb. 1, 2019); *Farmer v. EPA*, 759 F. Supp. 3d 101, 111 (D.D.C. 2024). Private parties can also intervene as defendants in cases alleging constitutional violations by government actors, even though a plaintiff could not bring such a suit against a private party. *See, e.g.*, *Grutter v. Bollinger*, 188 F.3d 394, 399 (6th Cir. 1999); *Coal. to Def. Affirmative Action v. Granholm*, 240 F.R.D. 368, 375–77 (E.D. Mich. 2006). Thus, the fact that HAVA and the CRA do not authorize suit against the movants does not affect their ability to intervene.

Next, the United States contends that the movants' asserted interests are based on mere speculation that disclosure of their information to the DOJ will cause harm. It asserts that the DOJ will protect voter information from unauthorized disclosure. But this argument also misses the mark. The movants have an interest in keeping their information private from the DOJ, whether or not disclosure to the DOJ produces any additional harm. The law generally recognizes a privacy interest implicated by unauthorized disclosure of personal information, even absent any downstream effects of that disclosure. *See, e.g.*, *Patel v. Facebook, Inc.*, 932 F.3d 1264, 1274 (9th Cir. 2019) ("Under the common law, an intrusion into privacy rights by itself makes a defendant subject to liability."); *United States v. Miami Univ.*, 294 F.3d 797, 818 (6th Cir. 2002) (recognizing "the inherent privacy interest" protected by the Family Educational Rights and Privacy Act); *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 410 (6th Cir. 2019) (alleged testing of blood samples constituted injury to privacy interest for standing purposes); *DOJ v. Reps. Comm. For Freedom of the Press*, 489 U.S. 749, 763 (1989) ("[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his

6

or her person."); *Coulter-Owens v. Time Inc.*, 695 F. App'x 117, 121 (6th Cir. 2017) ("[T]he disclosure of [personal] information is a cognizable injury in fact for purposes of Article III standing."); *Moeller v. Am. Media, Inc.*, 235 F. Supp. 3d 868, 873 (E.D. Mich. 2017) ("[T]he common law has long recognized a right to personal privacy[.]" (cleaned up)). Movants thus have a stake in this case because their inherent privacy interest is implicated by the disclosures at issue here.

The United States also argues that the movants' privacy interests are not implicated by disclosures of their information to the DOJ because other federal agencies already possess that information. However, specific government entities possess private information for specific purposes, and there are regulations and statutes governing how that information may be transferred between agencies. *See, e.g.*, 5 U.S.C.A. § 552a(b) (limiting inter-agency disclosure of personal information). It is evident that the voter information here is not already available to the DOJ, or else they would not have requested it from Michigan or brought this lawsuit. Even if other agencies possess the movants' personal information, the movants still have an interest in preventing further disclosure. *Cf. Reps. Comm.*, 489 U.S. at 764 (even where information has already been disclosed in "scattered" form to the public, release of compilations of that information implicated privacy interests because it made the information more accessible).

The United States also cites the consent judgment and order in *United States v. North Carolina Board of Elections*, No. 5:25-cv-00283-M-RJ (E.D.N.C. Sep. 8, 2025) (*see* Consent J., ECF No. 26-2), contending that the court there denied similar motions to intervene in a HAVA enforcement suit because privacy arguments against disclosure "objectively proved to be unfounded." (Gov't's Mot. in Opp'n 17, ECF No. 26.) However, that court denied the motions to intervene as moot because the United States and North Carolina reached a consent judgment.

7

(Consent J. 12.) The court did not rule on whether the prospective intervenors had a privacy interest in non-disclosure. And although the United States argues that the Court here can impose limits on the DOJ's use of voter information—as the court did in *North Carolina Board of Elections*—such limits do not ameliorate the harm when the privacy violation complained of is the disclosure *to the DOJ itself*.

The United States also contends that the potential injury to the movants is a generalized injury that affects all Michigan voters, rather than a particularized injury that can support intervention. As an initial matter, the requirement of a particularized injury is drawn from the Article III standing context; here, because the movants seek to intervene as defendants, they are not required to demonstrate standing. *See Va. House of Delegates v. Bethune-Hill*, 587 U.S. 658, 663 (2019) (defendant-intervenor need not demonstrate standing because intervening as defendant does not "entail[] invoking a court's jurisdiction"); *Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 488 (6th Cir. 2014) (intervention does not require Article III standing). The United States does not cite any binding precedent requiring proposed intervenors to show a particularized injury. While some courts have indicated as much—*see, e.g.*, *Chiles v. Thornburgh*, 865 F.2d 1197, 1212 (11th Cir. 1989); *Wis. Educ. Ass'n Council v. Walker*, 705 F.3d 640, 658 (7th Cir. 2013)—the Sixth Circuit's broad definition of "interest" arguably encompasses injuries that do not qualify as particularized under Article III.

Regardless, even if Rule 24(a) does require the kind of particularized injury that would support Article III standing, that requirement is satisfied here because the disclosure of one's private information is a particularized injury. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992) (particularized injury is one that "affect[s] the [movants] in a personal and individual way"). "The fact that an injury may be suffered by a large number of people does not of itself make that

injury a nonjusticiable generalized grievance." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.7 (2016), as revised (May 24, 2016); *cf. Pub. Citizen v. DOJ*, 491 U.S. 440, 449–50 (1989) ("The fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure under FACA does not lessen appellants' asserted injury, any more than the fact that numerous citizens might request the same information under the Freedom of Information Act entails that those who have been denied access do not possess a sufficient basis to sue."); *FEC v. Akins*, 524 U.S. 11, 24 (1998) ("widely shared" injury can still establish standing, such as when "large numbers of individuals suffer the same common-law injury (say, a widespread mass tort), or where large numbers of voters suffer interference with voting rights conferred by law"); *see also id.* at 35 (Scalia, J., dissenting) (agreeing with majority that a "widely shared" injury can establish standing where "each individual suffers a particularized and differentiated harm"). Here, the movants are not "raising only a generally available grievance about government—claiming only harm to [their] and every citizen's interest in proper application of the Constitution and laws and seeking relief that no more directly and tangibly benefits [them] than it does the public at large." *Lance v. Coffman*, 549 U.S. 437, 439 (2007) (per curiam). Rather, the movants are raising a grievance that is specific to them—the disclosure of their personal information—even if it is a grievance that many people could raise. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 n.10 (3d Cir. 2017) ("There is no doubt that the Plaintiffs complain of a particularized injury—the disclosure of their own private information.").

In sum, the movants have established that they have an interest in the non-disclosure of their personal information, and thus in the outcome of this lawsuit.

### (b) Impairment of Interest

As discussed above, the movants have an interest in preventing the DOJ from acquiring their personal information. Because this case could result in an order allowing the DOJ to acquire

9

that information, the outcome of this lawsuit may impair the movants' interests. The United States attempts to avoid this conclusion by noting that the movants have already provided the information at issue here to the state of Michigan for voter registration purposes, and that Michigan has disclosed the information to the Electronic Registration Information Center, an organization that helps states maintain their voter rolls. But the United States provides no authority for the principle that disclosing one's personal information to a specific entity for a specific purpose eliminates one's interest in keeping that information private from other entities that may use it for other purposes. Such a principle contradicts common sense: everyone's personal information is known by some entity or another, but that does not extinguish all privacy interests in relation to other entities (government or otherwise). For example, as noted above, Congress has recognized that people have a privacy interest in preventing certain federal agencies from acquiring information already known to other agencies. *See* 5 U.S.C.A. § 552a(b) (limiting inter-agency disclosure of personal information). Similarly, movants have a privacy interest in preventing the federal government from acquiring information already known to Michigan.

In sum, the movants have sufficiently established that the outcome of this lawsuit could impair their privacy interests.

### (c) Inadequate Representation

The United States also argues that intervention is unwarranted because the movants' interests will be adequately represented by Michigan in this lawsuit. The adequacy requirement "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). "Nevertheless, applicants for intervention must overcome the presumption of adequate representation that arises when they share the same ultimate objective as a party to the suit." *Michigan*, 424 F.3d at 443–44. "An applicant for intervention fails to meet

his burden of demonstrating inadequate representation 'when no collusion is shown between the representatives and an opposing party, when the representative does not have or represent an interest adverse to the proposed intervenor, and when the representative has not failed in its fulfillment of his duty.'" *Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987). However, "Rule 24 is to be construed liberally, and doubt resolved in favor of the proposed intervenor." *Kasprzak v. Allstate Ins. Co.*, No. 12-CV-12140, 2013 WL 1632542, at *3 (E.D. Mich. Apr. 16, 2013) (quoting *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999)).

The Court agrees with MARA that Michigan is not an adequate representative of its interests. It is true that Michigan appears to have the same objectives as MARA, in that the state has so far refused to provide the DOJ with the requested information. But as MARA argues, Michigan has other countervailing incentives—for example, to maintain an election system, comply with federal law, and preserve comity with the federal government—that may ultimately induce it to stop defending the lawsuit or give up the information at issue. Of course, inadequacy cannot be shown based on mere "speculation" about an existing party's future actions. *Mich. State AFL-CIO v. Callaghan*, No. 13-CV-10557, 2013 WL 12621889, at *2 (E.D. Mich. Dec. 9, 2013). But a movant can establish inadequacy with "a prediction" as to how a party may act given its "institutional interests." *Id.* For example, the Sixth Circuit has held that a township did not adequately represent a movant's interests where the township appeared to be defending the lawsuit as the movant would, but its behavior could change in the future: "when the specter of monetary damages looms large, even stout resistance might wither over time." *Wineries of the Old Mission Peninsula Ass'n v. Township of Peninsula*, 41 F.4th 767, 776 (6th Cir. 2022). Although monetary damages are not at issue here, *Wineries* indicates that MARA can establish inadequacy based on the possibility that Michigan's litigation position will become adverse to MARA's interests in the

11

future. *See id.* ("What keeps the Township in the litigation today could change tomorrow, dampening the allure of continued legal battle along the way."). For the moment, Michigan's interest in compliance with federal government requests is outweighed by other considerations, but the balance could shift at any time. That possibility sufficiently establishes the inadequacy of Michigan's representation. *Cf. Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799 (E.D. Mich. 2020) (noting that, in the permissive intervention context, "[t]he Sixth Circuit has recognized that the interests of election officials in voting roll maintenance are sufficiently distinct from those of elected officials and their constituents to warrant intervention by those who could be impacted by the results of the maintenance process.").

### (d) Conclusion

In sum, MARA and the individual proposed intervenors (Duquette and Crimando) have established their entitlement to intervene as of right. In the alternative, the Court would grant them permissive intervention under Rule 24(b). A common question of law exists, as the movants seek to challenge the DOJ's ability to obtain their personal information and Michigan's ability to disclose it—both of which are legal arguments that Michigan has raised too. Moreover, the substantiality of the movants' interests and the potential divergence between their interests and Michigan's also weigh in favor of allowing intervention. *See Coal. to Def. Affirmative Action*, 501 F.3d at 784 (court can consider substantial interest and adequacy in Rule 24(b) analysis). Finally, there is minimal prejudice to the United States because it is still early in the case and there is no reason to think that additional defendants will unduly delay or complicate the proceedings. Thus, the Rule 24(b) factors support permissive intervention here.

### 2. League of Women Voters of Michigan

The LWVM's asserted interests in this lawsuit are similar to MARA's: the confidentiality of its members' personal information, the potential deterrence effects on voter registration, its goal

of ensuring that election information is appropriately handled, and the potential resources it may have to expend educating voters about the DOJ's use of their information. For the reasons discussed above, the LWVM has established that it has a substantial interest that could be impaired by this lawsuit. However, because the Court will grant MARA's motion to intervene, MARA is considered an "existing party" for purposes of the adequacy analysis. In other words, to establish its right to intervene, the LWVM has to show not only that *Michigan* inadequately represents its interests but that *MARA* does as well. *See Wineries*, 41 F.4th at 777 (adequate representation analysis changes with each successive intervenor, and "it may be that the interests of existing parties will come to overlap fully with the interests of any remaining proposed intervenor" (quoting *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 199 (2022)). The LWVM's interests in the case are essentially identical to MARA's, and the LWVM provides no reason to think MARA cannot adequately represent those interests. Thus, the LWVM is not entitled to intervention as of right. For the same reason, the Court declines to allow permissive intervention. *See Coal. to Def. Affirmative Action*, 501 F.3d at 784 (adequacy is factor in Rule 24(b) analysis).[2]

## IV. CONCLUSION

For the reasons discussed above, the Court will grant MARA, Duquette, and Crimando's motion to intervene, and deny the LWVM's motion to intervene. An order will issue in accordance with this Opinion.

Dated: December 9, 2025

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE

---

[2] For the same reason that the Court is granting MARA's motion and denying the LWVM's motion, it could instead grant the LWVM's motion and deny MARA's. But the Court is addressing the motions in the order they were filed.