# Exhibit C



**STATE OF MICHIGAN**
**JOCELYN BENSON, SECRETARY OF STATE**
**DEPARTMENT OF STATE**
LANSING

September 9, 2025

Michael E. Gates
Deputy Assistant Attorney General
U.S. Department of Justice
Civil Rights Division- Voting Section
950 Pennsylvania Ave, NW – 4CON
Washington, DC 20530

Dear Mr. Gates:

I am writing in response to the United States Department of Justice's ("Department") July 21, 2025, letter requesting information regarding Michigan's procedures for complying with the statewide voter registration list maintenance provisions of the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, and the voter verification requirements of the Help America Vote Act of 2002 ("HAVA"), 52 U.S.C. § 20901, *et seq*. This is a follow up to our September 2, 2025 letter.

To reiterate our responses to your initial question from your July 21, 2025 letter, Michigan's Secretary of State Jocelyn Benson, Chief Election Officer and Jonathan Brater, Director of Elections are primarily responsible for the voter list maintenance program. Since Michigan's elections are administered by 1,604 county and local election officials—83 county clerks and 1,521 city and township clerks, have a role in the program as well. See Michigan Compiled Laws (MCL) 168.21 and 168.32.

Additionally, the Department requested a current electronic copy of Michigan's computerized statewide voter registration list, including all fields with confidential, personally identifying information about the registrant. Michigan's computerized statewide voter registration list, called the Qualified Voter File (QVF), can typically be obtained under the Michigan Freedom of Information Act (FOIA) by submitting a Qualified Voter File Data Request Form.[1] While Michigan will provide QVF voter data, some specific data you request is exempt from disclosure under Michigan Election Law, MCL 168.509gg. Additionally, FOIA exempts information of a personal nature, MCL 15.243(1)(d) and any information that would disclose cybersecurity plans, procedures, methods, infrastructure, hardware, or software under MCL 15.243(1)(y)-(z).

The Department submitted a supplemental letter dated August 14, 2025 arguing for the release of all fields within the QVF, and stating that the federal Privacy Act, 5 U.S.C § 552a, and the federal Driver Privacy Protection Act, 18 U.S.C § 2721, et. seq. (DPPA) do not prevent Michigan from disclosing all fields.

---

[1] https://www.michigan.gov/-/media/Project/Websites/sos/02lehman/FOIA_FORM.pdf?rev=a5b56f6719104f9ebebb784888335a2d

Letter to Mr. Michael Gates, U.S. Department of Justice
September 9, 2025
Page 2

The law does not support this assertion. In its amendment to the Privacy Act of 1974, Congress clarified that the collection, use, and dissemination of private information should be for a *necessary* and lawful purpose. Public Law 93-579 Section 2 (b)(5) (emphasis added). The Department alleges that its request for our computerized voter registration list is in furtherance of its legal obligation to ensure Michigan's compliance with the NVRA and the HAVA. Section 7 of the Privacy Act speaks to whether *individuals* must disclose personal information to a State or federal agency, not whether the social security number is exempt from protection or can be disclosed by the State.

Federal Courts have also held that confidential personally identifiable information is exempt from disclosure. In recent years, courts have repeatedly stated that the disclosure of sensitive, private information contained within a voter registration list is not required to comply with the public review provisions of the NVRA. Pub. Int. Legal Found., Inc. v. N. Carolina State Bd. of Elections, 996 F.3d 257, 268 (4th Cir. 2021) (holding "We therefore agree with the [North Carolina Board of Elections] that the Privacy Act, the Driver Protection Act, and any other statutory restrictions placed on the release of documents obtained through the SAVE system, may *preclude* the disclosure of documents obtained by the Board from the DMV and USCIS."). See also True the Vote v. Hosemann, 43 F. Supp. 3d 693, 739 (S.D. Miss. 2014) ("[T]he NVRA Public Disclosure Provision does not require the disclosure of unredacted voter registration documents, including voter registrant birthdates.").[2]

Therefore, for the reasons listed above, in conformity with federal and Michigan law, we are only providing the public version of our statewide voter registration list. Over the past three weeks, our office has worked in good faith to provide this statewide voter registration list, but the DOJ's system has not permitted the upload.

Please see our additional responses to your list of numbered questions.

1. Question: Please explain what actions the State is taking to ensure that voters who should not be on the statewide voter registration list are being removed.

    **Response:** Michigan's list of registered voters is maintained in the QVF, a database developed by the State of Michigan and maintained by municipal and county clerks and the State's Bureau of Elections. The QVF is constantly updated whenever a new voter registers, a voter updates their registration information (such as an address), the State or local clerk's office obtains information of a voter's death, or a voter's registration is cancelled.

    Under the Michigan Election Law, registrations are cancelled for one of four reasons:

    - A voter moves away from their voting jurisdiction. MCL 168.509aa.
    - A voter dies. MCL 168.510.
    - A voter registration is identified as a duplicate. MCL 168.509m(1)(d).

---

[2] See also Pub. Int. Legal Found., Inc. v. Bellows, 92 F.4th 36, 56 (1st Cir. 2024); Project Vote, Inc. v. Kemp, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) ("Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns."); Project Vote, 752 F. Supp. 2d at 711-12 (finding that the NVRA does not preclude redaction of Social Security Numbers in voter registration applications before public disclosure of such applications).

- A voter requests that his or her registration be cancelled. MCL 168.511.

Since 2019, the Michigan Department of State has cancelled more than 1.4 million registrations under state and federal law, including the NVRA. More than 250,000 others are slated for cancellation in 2027 and 2029. In 2024, a federal judge dismissed a lawsuit filed by the Public Interest Legal Foundation (PILF) against Michigan regarding our voter list maintenance. In the Court's dismissal of that case, the judge cited federal data from the Election Assistance and Voting Survey (EAVS) - the same report you cite in your letter - that shows Michigan is one of the most active states in removing the registrations of voters who have died.

On May 6, 2025, the U.S. Court of Appeals for the Sixth Circuit upheld the federal district court's dismissal of the lawsuit filed by PILF, and stated in its ruling that, "Michigan's multi-layered efforts are more than reasonable."[3] In its ruling, the Sixth Circuit describes how Michigan goes above and beyond the legal standard for maintaining the state's voter file, "A state that actively makes efforts to remove dead registrants based on state and federal death records is engaging in an inherently rational, sensible attempt at maintaining accurate voter registration lists. Michigan not only undertakes the kind of effort described . . . but it also adopts additional standards as well."[4] The Court continued, "Michigan goes further by also actively employing a third party, [the Electronic Registration Information Center (ERIC)], to assist in identifying deceased registrants. This additional effort only further enhances the reasonableness of Michigan's efforts to maintain accurate voter rolls."[5]

More information regarding Michigan's voter list maintenance procedures can be found in the publicly available Election Officials Manual, Chapter 2, Addendum: Voter Registration Cancellation, Challenge, Correction policy.[6]

2. Question: Please explain Michigan's process for determining when to send a confirmation notice to an active registered voter?

    **Response:** In compliance with the NVRA, Michigan Election Law provides that "[o]n receipt of reliable information that a registered elector has moved…" a clerk may send a confirmation notice and initiate the notice and cancellation process. MCL 168.509aa. Reliable information of a voter move can come in various forms:

    - A voter updates their driver's license or state ID address with the Secretary of State. (voter registration address is automatically updated).
    - A voter surrenders their Michigan driver's license to a different state.

---

[3] *PILF v. Benson*, 136 F.4th 613, 628 (6th Cir. 2025).
[4] See *Id.*
[5] See *Id.*
[6] Michigan Department of State Election Officials' Manual Chapter 2, available at https://www.michigan.gov/sos/-/media/Project/Websites/sos/01mcalpine/Addendum-Voter-Registration-Cancellation-Challenge-Correction.pdf?rev=4fa742fa058a47f98eff106f35a058bf&hash=540182F5AA27EF1B852094D2367FE4D9 (last accessed August 29, 2025)

Letter to Mr. Michael Gates, U.S. Department of Justice
September 9, 2025
Page 4

- Election mail is returned by the U.S. Postal Service as "undeliverable", or an election official receives other information from the U.S. Postal Service indicating a change of address.
- An election official receives notice that a voter is registered to vote in another state.

And as noted previously, Michigan also receives information from ERIC, a bipartisan group of states and Washington, DC, who share voter registration data with each other for the purpose of keeping voter rolls complete, up to date, and accurate. When Michigan receives information through the ERIC program that a voter has registered in another state more recently than their activity in Michigan, the Bureau of Elections uses this as initial information that the voter may have moved and will send a confirmation notice to begin the notice and cancellation process.

More information regarding Michigan's procedures related to the confirmation notice process can be found in the publicly available Election Officials Manual, Chapter 2, Addendum: Voter Registration Cancellation, Challenge, Correction policy.[7]

3. Question: Please explain what actions the State is taking to remove ineligible voters from its statewide voter registration list.

    **Response:** See response to Question 1.

4. Question: Please explain how Michigan uses the confirmation notice process to remove voters from the statewide voter registration list.

    **Response:** See response to Question 2.

5. Question: Please explain why duplicate registrations comprise such a high number of all registration transactions in Michigan.

    **Response:** This question mistakenly conflates two separate data points—voter registration *records* and voter registration *transactions*. EAVS Question A3d seeks information about registration **transactions**, not registration **records**. As noted in the Election Administration and Voting Survey 2024 Comprehensive report, the vast majority of duplicate *transactions* are motor vehicle transactions in which the voter is already registered at the current address, but a transaction occurs to update the digital signature image on file with a newer version of the signature if one is provided during the transaction.[8]

    Importantly, a duplicate registration *transaction* for a voter registration record, does not create a duplicate voter registration *record* – quite the opposite, as the transaction being

---

[7] See *Id.*
[8] See Election Administration and Voting Survey 2024 Comprehensive Report, available at Footnote 8 on pg. 177.

    identified as a duplicate prevents a new registration record from being created, while allowing the record to be updated as needed.

6. Question: Please explain the State's process for determining whether a record is a duplicate registration and how often the State and counties search for duplicate registrations on the voter registration list.

    **Response:** Voter registrations are cancelled when more than one record exists for the same voter through the merger of the voter registration records. MCL 168.509m(1)(d). When voters register, the QVF is designed to identify and update existing registrations, so that a duplicate is not created. If an election official identifies a duplicate registration, the records are merged into one record, with the other record being cancelled.

In an additional, unnumbered request, your letter asserts that the U.S. Department of Justice received a complaint that alleges that Michigan is not compliant with HAVA's unique voter identification requirement and asks for an explanation of Michigan's practice for assigning an identifier/requiring a driver's license number under 52 U.S.C. § 21083(a).

    **Response:** The Michigan Department of State's Bureau of Elections has a long-standing HAVA complaint process.  A person who believes that an election authority has violated or will violate a provision of Title III of HAVA that concerns an election for federal office may file a complaint with the Bureau of Elections.  The Bureau of Elections has not received the complaint referenced in your letter.  Please forward the complaint to our office so we can review and respond to it in full.  In Michigan, voters are assigned a voter identification number as required by HAVA.

Your final, unnumbered request again asks to clarify our voter list maintenance program. Specifically, this request asks the number of registered voters identified as ineligible to vote for the time period of the close of registration for the November 2022 general election through present for each of the following reasons:

    1. Non-citizen
    2. Adjudicated incompetent
    3. Felony conviction

    **Response:** At the outset, HAVA requires the State to maintain records for a two-year period, which would be July 22, 2023 through July 21, 2025 (the date of the Department's initial letter). The bulk of Michigan's responses to this question can be found in our responses to questions 1 and 2. To reiterate, more than one million people have been removed from our voter registration list since 2019, with *another* 250,000 slated to be removed in 2027 and 2029.

    Moreover, Michigan Election Law does not require the cancellation of a voter's registration on the basis of the voter being adjudicated incompetent or having a felony conviction.

The NVRA requires a general voter list maintenance program that is non-discriminatory and in compliance with the Voting Rights Act. 52 U.S.C. § 20507(b)(1). As stated above, the Michigan Election Law expressly provides for cancellation if a voter desired to be cancelled, moved voting jurisdictions, passed away, or is identified as a duplicate. (See question 1).

In order to register to vote in Michigan, an individual must be a U.S. citizen. Voters register in a variety of ways, and each method includes multiple citizenship assessments. In 2012, Michigan's Legislature passed, and Governor Rick Snyder signed into law Public Act 523 of 2012. This law requires an *affirmation* of citizenship to register to vote—not a validated document proving such. Although the Michigan Election Law (and the NVRA) do not specifically expressly describe a program for cancellation of registrations of non-citizens, a voter registration is cancelled when it is determined that a registered voter appears to be a non-citizen based on the most recent available state and federal records, when an individual appears to have been registered in error because they did not indicate U.S. citizenship on a registration form, or when an individual has not sufficiently confirmed their citizenship status. When registration records are cancelled on this basis, the registration may belong to a non-U.S. citizen, or it may belong to a U.S. citizen who did not properly or sufficiently confirm their registration status.

As publicly reported, the Bureau of Elections referred 15 cases of potential non-citizens who registered and voted in an election to the Michigan Department of Attorney General for review and potential prosecution. These individuals' voter registration records have been cancelled. As there is an on-going criminal investigation, we cannot release those names or other personally identifying information at this time. See *Pub. Int. Legal Found., Inc. v. N. Carolina State Bd. of Elections*, 996 F.3d 257, 267 (4th Cir. 2021).

Secretary Benson and the Michigan Department of State are grateful that federal courts have repeatedly recognized our strong work in maintaining an accurate, up-to-date voter list and our list maintenance program. Since 2020, the Department has successfully fought against a record number of false and meritless claims meant to undermine people's faith in Michigan's elections. Voters should know the Michigan Department of State continues to respond to those attacks with truth, facts, and data to give all citizens confidence that every valid vote will be counted in every election.

Sincerely,

/s/ Khyla D. Craine

Khyla D. Craine
Chief Legal Director
Michigan Department of State