UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

       Plaintiff,

     v.

JOCELYN BENSON in her official
capacity as Secretary of the State of
MICHIGAN and the STATE OF
MICHIGAN.


       Defendants.

_____

Case No. 1:25-cv-01148-HYJ-PJG

Hon. Hala Jarbou

## United States' Memorandum of Law in Opposition to Defendants' Motion to Dismiss

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND ....................................................................................... 5

II.   LEGAL STANDARDS ............................................................................. 5

III.  ARGUMENT ........................................................................................... 6

  A.    The United States has a valid legal claim under the Civil Rights Act of
  1960. .......................................................................................................... 7

    1.    The language of the Civil Rights Act of 1960 unambiguously permits the
    requests. ................................................................................................. 7

    2.    The United States has sufficiently pled a claim for relief under Title III of
    the Civil Rights Act. ............................................................................. 9

    3.    The United States is entitled to unredacted "copying" and "reproduction" of
    Defendants' electronic federal election records. .................................. 11

  B.    The United States has a valid legal claim under HAVA. ........................... 14

    1.    Defendant's refusal to provide complete information is sufficient for a
    HAVA claim. ......................................................................................... 14

  C.    The United States has a valid legal claim under the NVRA. ................... 166

  D.    The United States is complying with applicable privacy laws. ................ 166

  E.    The E-Government Act and Driver's Privacy Protection Act do not apply.
        199

IV.   CONCLUSION ...................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960) ...................... 8

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)............................... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)................................................................... 5

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) ..................... 6

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................... 5

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) ............................................ 15

*Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025), appeal docketed, No. 25-1585 (1st Cir. June 17, 2025) ................ 13

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ............................................. 8, 12

*Colón-Marrero v. Vélez*, 813 F.3d 1 (1st Cir. 2016)................................................... 14

*Ebert v. Poston*, 266 U.S. 548 (1925)................................................................... 8, 9

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Elec. Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017)................................................................................ 19

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ............................................ 7, 8, 9, 11

*United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846 (W.D. La. 1960) ................................................................................................................................. 15

*United States v. Great N. Ry. Co.* 343 U.S. 562 (1952)............................................. 9

*United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269 (1929)........................................... 8

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025)................................................................................................. 13, 18

**Statutes**

18 U.S.C. § 2721 ..................................................................................................... 20

18 U.S.C. § 2725 ..................................................................................................... 20

44 U.S.C. § 3101 ..................................................................................................... 17

5 U.S.C. § 552a ...................................................................................................... 18

52 U.S.C. § 20507 ............................................................................................. 12, 16

52 U.S.C. § 20701 ................................................................................ 5, 7, 11, 13

52 U.S.C. § 20702 ............................................................................................... 7

52 U.S.C. § 20703 ...................................................................................... *passim*

52 U.S.C. § 20704 ............................................................................................... 7

52 U.S.C. § 20705 ............................................................................................... 7

52 U.S.C. § 20706 ............................................................................................... 7

52 U.S.C. § 21083 ................................................................................... 12, 13, 14

52 U.S.C. § 21111 ............................................................................................. 15

Civil Rights Act of 1960, Pub. L. No. 86-449, 74 Stat. 86 (1960) ................................ 7

Pub. L. No. 107–347, 116 Stat. 2899 (2002) ............................................................ 19

Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974) ..................................................... 18

## Regulations

28 CFR § 0.51 ................................................................................................... 17

28 CFR § 0.50 ................................................................................................... 17

64 Fed. Reg. 73585-02 (Dec. 30, 1999) ................................................................. 17

66 Fed. Reg. 8425-02 (Jan. 31, 2001) ................................................................... 17

68 Fed. Reg. 47610-01 (Aug. 11, 2003) ................................................................. 17

70 Fed. Reg. 43904-01 (July 29, 2005) .................................................................. 17

74 Fed. Reg. 57194 (Nov. 4, 2009) ....................................................................... 17

82 Fed. Reg. 24147-01 (May 25, 2017) .................................................................. 17

## Legislative Materials

106 Cong. Rec. 7767 ............................................................................................ 8

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002) ..................................................... 15

H.R. Rep. 107-329(I) (2001) ................................................................................. 14

# I.   BACKGROUND

The Attorney General of the United States brought this straightforward case to enforce the requirements of three complimentary federal statutes. Those laws, the Civil Rights Act of 1960[1] ("CRA"), the Help America Vote Act ("HAVA"), and the National Voter Registration Act ("NVRA"), govern voter registration and voting records pertaining to federal elections.

Defendants move to dismiss the United States' Complaint on several grounds, none of which has merit. *See* Defs.' Mot. to Dismiss & Mem. Law in Supp., ECF No. 39. In sum, Defendants ask the Court to decide this case on the merits at the pleading stage after rewriting the CRA to encompass requirements omitted by Congress. The United States respectfully submits that the Court should decline Defendants' invitation and deny their motion to dismiss.

# II.   LEGAL STANDARDS

A motion to dismiss must be denied if the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

---

[1] As applicable here, the CRA requires (1) election officials or a designated custodian to (2) retain and preserve, (3) "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election," (4) for a period of twenty-two months from the date of "any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives." 52 U.S.C. § 20701. The State does not challenge its obligations under these provisions, though third-party intervenors do, as addressed below.

*Twombly*, 550 U.S. 544, 570 (2007)). In other words, dismissal under Rule 12(b)(6) is proper only when the complaint either: (1) lacks a cognizable legal theory; or (2) fails to allege sufficient facts to support a cognizable legal theory. *Iqbal*, 556 U.S. at 678. A court must take a plaintiff's well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in its favor. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.  <u>ARGUMENT</u>

The three claims brought by the United States each offer overlapping and complimentary statutory authority for obtaining federal election records from the Defendants to enforce federal voter list maintenance requirements. Defendants seek dismissal of these claims because, they argue, none of them has a plausible basis. To arrive at that conclusion, Defendants ask the Court to: (1) disregard the plain language of the statutes by injecting ambiguities that do not exist and thereby allow the Court to legislate from the bench to rewrite the provisions in a manner that suits them; (2) selectively ignore relief specified in the statutes that foreclose their defenses; and (3) make merits findings that are not only inappropriate at a motion to dismiss stage, but are barred altogether by one of the statutes. The clear text of the CRA, HAVA, and NVRA, and interpretative case law require that accepting all the allegations in the Complaint as true, the United States asserts both a cognizable legal theory and has pled sufficient facts to support that theory. Finally, the privacy arguments are also not grounds on which to dismiss the Complaint.  Accordingly, Defendants' Motion to Dismiss should be denied.

**A.  The United States has a valid legal claim under the Civil Rights Act of 1960.**

1. <u>The language of the Civil Rights Act of 1960 unambiguously permits the requests.</u>

Title III of the Civil Rights Act of 1960 is entitled "Federal Election Records." CRA § 301, Pub. L. No. 86-449, 74 Stat. 86 (1960). It imposes a "sweeping" obligation on election officials to preserve and on request to produce registration records pertaining to federal elections. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). Section 301 provides, in pertinent part, "[e]very officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election[.]" 52 U.S.C. § 20701 (emphasis added). Section 303 authorizes the Attorney General of the United States to compel any person "having custody, possession, or control of such record or paper" to make "available for inspection, reproduction, and copying… by the Attorney General or [her] representative." 52 U.S.C. § 20703.

Notwithstanding the CRA's plain language, Defendants argue that the Court must go outside the text of the statute to find that Title III only allows the Attorney General "to investigate and remediate racially discriminatory voting practices, namely, efforts to prevent eligible minority voters from voting or registering to vote." Defs.' Mot. to Dismiss, ECF No. 39 at 17-18. No such language appears anywhere in the statutory text. *See* 52 U.S.C. §§ 20701-20706. Moreover, in a decision cited by Defendants, the court concluded "that the prescribed standard of Section 301 is *clear*

*and unambiguous*[.]" *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) (emphasis added). Specifically, Title III functions as "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd*, 306 F.2d at 225. The only language that is required in the Attorney General's demand is that it "was made for the purpose of investigating possible violations of a Federal statute." *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting "Senator Keating, one of the principal spokesmen for the bill in the Senate," at 106 Cong. Rec. 7767).

Requiring more by engrafting a requirement of racial discrimination that does not exist in the statute would violate the clear congressional mandate. Well-established principles of statutory construction foreclose federal courts from rewriting a statute in a manner that better suits a litigant. As the Supreme Court explained, "[t]he judicial function to be exercised in construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A casus omissus does not justify judicial legislation." *Ebert v. Poston*, 266 U.S. 548, 554-55 (1925). "[W]here the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278-79 (1929) (citations omitted).

As a result, the United States respectfully submits that the Court must decline Defendants' invitation to rewrite the statute to add a requirement of racial

discrimination. *See Ebert*, 266 U.S. at 554; *see also United States v. Great N. Ry. Co.* 343 U.S. 562, 575 (1952) ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written.").

2. <u>The United States has sufficiently pled a claim for relief under Title III of the Civil Rights Act.</u>

The filing of a request for federal election records under Title III by the Attorney General "is not the commencement of an ordinary, traditional civil action with all its trappings." *Lynd*, 306 F.2d at 225. Instead, "it is… comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.* The Fifth Circuit has described in detail what the Attorney General must allege to satisfy the statute:

> Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure. All that is required is a simple statement by the Attorney General that after a [Section 303] written demand for inspection of records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, reproduction, and copying….'

*Id.* at 225-26 (quoting 52 U.S.C. § 20703). Under the plain language of the statute, "[t]here is no place for any other procedural device or maneuver – either before or during any hearing of the application – to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* at 226. Likewise, there is no basis in the proceedings to challenge "the reasons why the Attorney General considers the records essential…." *Id.* Rather, if the Attorney General has stated in writing the basis and

the purpose of the demand, Title III is satisfied, and the records must be produced. 52 U.S.C. § 20703.

The United States has met those requirements. On August 14, 2025, the United States sent a letter under the CRA to Secretary Benson demanding the full electronic voter registration list for the state used in federal elections including either the last four digits of the registrant's social security number or the registrant's driver's license number. Compl. ¶¶ 42-44. The letter stated the purpose of the demand was to determine Michigan's compliance with both the NVRA and the HAVA voter list maintenance requirements for the administration of federal elections. *Id.* Defendants tacitly acknowledge as much, while attempting to dismiss the purpose as a "bootstrap." Defs.' Mot. to Dismiss, ECF No. 39 at 17. As explained above, there is no proceeding to challenge the Attorney General's basis under the CRA's procedures.

Though nothing more would be required under the CRA, the United States exceeded its legal obligations in this case. On July 21, 2025, the Attorney General included specific concerns the United States had with the vote maintenance data that Defendants reported to the Election Assistance Commission, including that Michigan's confirmation notice percentage and registered voter removal percentage were far below the national average. Compl. ¶ 39.

Conversely, Defendants argue that the United States failed to describe the basis for its request. Defs.' Mot. to Dismiss, ECF No. 39 at 18-19. To arrive at that conclusion, Defendants erroneously employ a hyper-technical reading of Section 303. In doing so, they deliberately ignore the detailed basis the United States provided in

writing to them in its August 14 and July 21 letters. In *Lynd*, the Fifth Circuit explained, "[o]n the filing of this simple statement by the Attorney General, the Court is required to treat it as a summary proceeding." 306 F.2d at 226. Under the language of the statute, "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand, [Section 303], *is not open to judicial review or ascertainment*." *Id.* (emphasis added).

3.  <u>The United States is entitled to unredacted "copying" and "reproduction" of Defendants' electronic federal election records.</u>

Section 303's language provides that "[a]ny record or paper required by Section 301 to be retained and preserved shall" upon written demand by the Attorney General or her representative stating the basis and purpose, "be made available for "inspection, reproduction, and copying…" 52 U.S.C. § 20703. Records that must be produced to the United States pursuant to this demand cannot be contested as long as the records fall within Section 301's broad definition: "all records and papers which come into [the officer of election's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting" in a federal election "for a period of twenty-two months from the date of any general, special or primary election" for federal office. 52 U.S.C. § 20701. The State does not contest that electronic voter rolls are included as part of federal election records that come into the possession of the officer of elections, though Intervenors do. As the Fifth Circuit explained in *Lynd*, "the scope of the order to produce" is "not open to judicial review or ascertainment." 306 F.2d at 226. "This is so because the papers and records subject to inspection and

demand have been specifically identified by Congress," as set out in Section 301. *Id.* "The incorporated standard of [Section 301] is sweeping." *Id.* (emphasis added). The question is only "open for determination" by the Court if "a genuine dispute… arises as to whether or not any specified particular paper or record comes within this broad statutory classification of 'all records and papers… relating to any… act requisite to voting'…." *Id.*

The Defendants' argument that this Court must read each election statute in isolation rather than in conjunction, were it to be adopted, would eviscerate Title III. The Attorney General can only meaningfully investigate and enforce federal election laws, including the list maintenance requirements of HAVA and the NVRA, by having access to the voter identification numbers required by those statutes, in an electronic form readily suitable for the purposes of voter roll maintenance. For each voter, that includes their driver's license number, last four digits of their social security number, or other identifying number. *See* 52 U.S.C. § 21083(a)(5)(A). That information is necessary to identify duplicate registration records, registrants who have moved, and registrants who have died or otherwise are no longer eligible to vote in federal elections. *See* 52 U.S.C. § 20507(a)(4). There is no question that enforcement of the list maintenance requirements of HAVA and the NVRA are for "the purpose of investigating possible violations of a Federal statute." *Coleman*, 313 F.2d at 868.

Indeed, the data the United States has requested under the CRA is the same that twenty-five states, including Michigan, routinely share through the Electronic

Registration Information Center, ("ERIC"), to facilitate their compliance with federal list-maintenance requirements.  Similarly, private parties have been granted access to even more detailed voter data than what the United States has requested where necessary to bring actions to enforce federal rights. *See Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937, at *2 (D.N.H. May 27, 2025) (ACLU compelled production of "[a] copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation."), appeal docketed, No. 25-1585 (1st Cir. June 17, 2025).

A South Carolina court recently confronted the same arguments espoused by Defendants from an individual voter seeking to enjoin state officials from cooperating with the Department. As it pertains to voter registration rolls, the court reasoned:

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id.* § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id.*

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached as Ex. 1, at 11.

Consequently, United States is entitled to copying and production of

Michigan's unredacted SVRL under the plain language of Section 303 of the CRA. *See* 52 U.S.C. § 20703.

**B. The United States has a valid legal claim under HAVA.**

1.  <u>Defendant's refusal to provide complete information is sufficient for a HAVA claim.</u>

Congress enacted HAVA "to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). The Act recognizes that "the federal government can play a valuable [role]" in assisting states in modernizing their elections systems. *Id.* at 32. HAVA requires states to implement a computerized SVRL that is coordinated with other state agency databases. *See* 52 U.S.C. § 21083(a)(1)(A). It also establishes "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. § 21083(a)(4). Under HAVA Section 303, a state's "election system shall include provisions that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* HAVA's list maintenance requirements apply to all states, including Michigan. *See Colón-Marrero v. Vélez*, 813 F.3d 1, 14 (1st Cir. 2016) (collecting citations).

Defendants further argue that the HAVA claim must be dismissed because HAVA has no disclosure provisions. Defs.' Mot. to Dismiss, ECF No. 39 at 33-34. That is true, and it explains why the United States is entitled to the federal election records

it has demanded through its HAVA claim. The only enforcement provision in HAVA authorizing a cause of action in federal court is found at Section 401, which provides that enforcement of the Act is vested solely in the Attorney General. *See* 52 U.S.C. § 21111. Senator Dodd of Connecticut, a HAVA conferee and sponsor, recognized that the Act did not have a private right of action. *See* 148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002). As a result, the Supreme Court has held that private parties may not enforce Section 303, including requests for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curiam) ("Respondents, however, are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 in an action brought by a private litigant to justify the issuance of a TRO."). Congress unsurprisingly did not include a public disclosure requirement, such as the one included in Section 8(i) of the NVRA, because unlike the NVRA, private parties cannot enforce HAVA.

At the same time, however, that does not leave the United States without recourse to seek list maintenance records under HAVA. Rather, it may do so through the ordinary discovery process necessary to prosecute its Section 303 claim. Here, the CRA cases are instructive. Under the CRA, election officials are required to preserve and produce federal election records "to facilitate the investigation… before suit is filed." *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam). By comparison, the demand for records that the United States has made under HAVA falls into the conventional realm of discovery: "The chief purpose of [Federal] Rule [of Civil Procedure] 34… is to give a party litigant the right

15

to have records produced after suit has been filed." *Id.* That is all the United States is doing in this case. It seeks records necessary to establish its claim under HAVA that Defendants are violating the list maintenance requirements in Section 303(a)(4) of the Act. Accordingly, Defendants' motion to dismiss the HAVA claim should be denied.

## C. The United States has a valid legal claim under the NVRA.

For similar reasons, Defendants' motion to dismiss the NVRA claim must be denied. The plain text of Section 8(i) of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1). That includes the voter registration list, which necessarily must be used to ensure the accuracy of the official list of eligible voters, and provides some of the best evidence of a state's voter list maintenance efforts. The United States, which has special standing under federal election statutes to conduct list maintenance, has properly alleged in its Complaint that Defendants have failed to engage in reasonable list maintenance efforts and have refused to produce records associated with those efforts. For the same reasons described in the preceding discussion, all the well-pled allegations in the Complaint must be accepted as true.

## D. The United States is complying with applicable privacy laws.

Defendants argue that the United States must comply with the Privacy Act, and the United States is doing that. However, there is no requirement that the United States needs to plead its compliance with the Privacy Act in every complaint for federal oversight that may contain personally identifiable information.

16

The voter information that the Department is collecting is maintained consistent with Privacy Act protections as explained at Civil Rights Division – Department of Justice – Privacy Policy.[2] The full list of routine uses for this collection of information can be found in the systems of records notices ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records", 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017). It should be noted that the statutes cited for routine use include the NVRA, HAVA, and the Civil Rights Act of 1960, and the United States made its requests pursuant to those statutes. The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 CFR §§ 0.50, 0.51.

Similarly, to the extent that Defendants are concerned about the transport of such data to the United States, the Department uses a secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). That system implements strict access controls to ensure that each user can only access their own files and is also covered by SORNs.[3]

---

[2] *See* https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

[3] *See* JUSTICE/DOJ-014, Department of Justice Employee Directory Systems, last published in full at 74 Fed. Reg. 57194 (Nov. 4, 2009), and modified at 82 Fed. Reg. 24151, 24153 (May 25, 2017); JUSTICE/DOJ-002, Department of Justice Computer Systems Activity and Access Records, last published in full at 64 Fed. Reg. 73585-02 (Dec. 30, 1999), and modified at 66 Fed. Reg. 8425-02 (Jan. 31, 2001) and 82 Fed. Reg. 24147-01 (May 25, 2017).

Moreover, the Privacy Act does not bar the disclosure of Michigan's SVRL to the United States. The Privacy Act regulates federal agencies' collection, maintenance, and disclosure of information within their own systems of records—it does not restrict the ability of state actors to share information with federal agencies. The statute's plain language confirms that it applies only to federal "agencies" as defined in 5 U.S.C. § 552a(a)(1), meaning "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government." State and local entities fall outside that definition. The Privacy Act erects "certain safeguards for an individual against an invasion of personal privacy," Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974), only within the scope of federal agency record systems. It is not a basis to frustrate federal oversight of election procedures. Federal election statutes are enacted pursuant to the Elections Clause and have broad mandates. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 7-9, n. 1 (2013) (discussing broad scope of Elections Clause).

As discussed earlier, a South Carolina court was confronted with similar issues by opposing parties. Addressing federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), Ex.1 at 10.

18

**E. The E-Government Act and Driver's Privacy Protection Act do not
    apply.**

The E-Government Act neither authorizes dismissal of this case nor limits the
United States' ability to bring suit. The E-Government Act is not applicable to the
United States' enforcement of NVRA and HAVA.  The United States is not initiating
a new process whereby it is contacting individuals for information as contemplated
by Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II), which "includes any information in an
identifiable form permitting the physical or online contacting of a specific individual,
if identical questions have been posed to, or identical reporting requirements imposed
on, 10 or more persons, other than agencies, instrumentalities, or employees of the
Federal Government."

Applying the E-Government Act to enforcement of voting statutes would lead
to an absurd result whereby the Department of Justice would need to do thousands
of Privacy Impact Assessments whenever the Section gathered any voter data to
enforce the Voting Rights Act, NVRA, HAVA, or the Uniform and Overseas Citizens
Voting Act (UOCAVA). Nor does the purpose of the privacy provision in the E-
Government Act suggest it was meant to encompass the enforcement provisions of all
voting laws where voter data is examined. *See* Pub. L. No. 107–347, § 208 (a).

Even if the Court found the E-Government Act applied here—and it should
not—Defendants' reliance on *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n
on Elec. Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017) ("*EPIC*"), does not support
dismissal of a complaint based on an alleged failure to conduct a PIA.  The plaintiff
sought to enjoin a federal commission's collection of state voter information, claiming

the commission had failed to prepare a PIA under § 208 of the E-Government Act. The D.C. Circuit affirmed dismissal of the claim on standing grounds, finding that "As we read it, the provision is intended to protect individuals—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information. EPIC is not a voter and is therefore not the type of plaintiff the Congress had in mind." *Id.* at 378.

Furthermore, The Driver's Privacy Protection Act (DPPA) generally prohibits the disclosure of "personal information" obtained by a state Department of Motor Vehicles in connection with a motor vehicle record. 18 U.S.C. §§ 2721(a), 2725(1), (3), (4). The statute explicitly contains exceptions that permit certain governmental uses. Under 18 U.S.C. § 2721(b)(1), disclosure is allowed "for use by any government agency… in carrying out its functions," including law enforcement or other regulatory enforcement purposes. This statutory language demonstrates that the DPPA was not intended to block all government access to DMV records.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the United States respectfully requests that the Court deny the Motion to Dismiss by Defendants.

Dated: December 26, 2025                    Respectfully submitted,

                                            HARMEET K. DHILLON
                                            Assistant Attorney General
                                            Civil Rights Division

/s/ Eric Neff
ERIC V. NEFF
Acting Chief, Voting Section
Civil Rights Division
150 M St. NE, Ste 8-139
Washington, DC 20009
Eric.Neff@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 26, 2025, a true and correct copy of the

foregoing document was served via the Court's ECF system to all counsel of record.


<u>/s/ Eric Neff</u>
ERIC V. NEFF
Acting Chief, Voting Section
Civil Rights Division
150 M St. NE, Ste 8-139
Washington, DC 20009
Eric.Neff@usdoj.gov
Tel. (202) 307-2767
Attorneys for the United States