# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CIVIL ACTION |
| *Plaintiff*, | |
| v. | Case No. 1:25-cv-1148-HYJ-PJG |
| JOCELYN BENSON, in her official capacity as Michigan Secretary of State; and the STATE OF MICHIGAN, | Hon. Hala Y. Jarbou |
| *Defendants*, | ORAL ARGUMENT REQUESTED |
| and | |
| MICHIGAN ALLIANCE FOR RETIRED AMERICANS, DONALD DUQETTE, and KEELY CRIMANDO, | |
| *Intervenor-Defendants*. | |

**INTERVENORS' REPLY IN SUPPORT OF MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

I.      DOJ fails to state a claim under the NVRA. ....................................................... 2

II.     DOJ fails to state a claim under HAVA............................................................... 4

III.    DOJ fails to state a claim under the Civil Rights Act of 1960............................. 5

        A.    DOJ's demand failed to state a proper basis and purpose. ...................... 5

        B.    Title III permits redacting sensitive voter information. ......................... 10

IV.    DOJ concedes it has not stated any other claim for relief................................. 12

CONCLUSION................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agility Network Servs., Inc. v. United States*,
    848 F.3d 790 (6th Cir. 2017) ........................................................................................ 6

*Alabama ex rel. Gallion v. Rogers*,
    187 F. Supp. 848 (M.D. Ala. 1960) ......................................................................... 7, 10

*Am. C.R. Union v. Phila. City Comm'rs*,
    872 F.3d 175 (3d Cir. 2017)....................................................................................... 11

*Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*,
    235 F.R.D. 435 (N.D. Ill. 2006).................................................................................... 5

*CFPB v. Accrediting Council for Indep. Colls. & Schs.*,
    854 F.3d 683 (D.C. Cir. 2017) ..................................................................................... 9

*CFPB v. Source for Pub. Data, L.P.*,
    903 F.3d 456 (5th Cir. 2018) .................................................................................... 6, 8

*Coalition for Open Democracy v. Scanlan*,
    No. 24-cv-312-SE, 2025 WL 1503937 (2025) ............................................................ 3

*Home Depot U.S.A., Inc. v. Jackson*,
    587 U.S. 435 (2019)..................................................................................................... 9

*In re Admin. Subpoena No. 25-1431-019*,
    No. 1:25-MC-91324-MJJ, 2025 WL 2607784 (D. Mass. Sep. 9, 2025) ...................... 9

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962).......................................................................... 6, 7

*In re Subpoena No. 25-1431-014*,
    No. MC 25-39, 2025 WL 3252648 (E.D. Pa. Nov. 21, 2025).......................................9

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009) ........................................................................................ 4

*Kennedy v. Bruce*,
    298 F.2d 860 (5th Cir. 1962) ........................................................................................ 6

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962) .............................................................................. 6, 7, 10

*Kloss v. RBS Citizens, N.A.*,
    996 F. Supp. 2d 574 (E.D. Mich. 2014) .................................................................................. 4

*OfficeMax, Inc. v. United States*,
    428 F.3d 583 (6th Cir. 2005) ................................................................................................. 6

*Pub. Int. Legal Found. v. Benson*,
    136 F.4th 613 (6th Cir. 2025) ......................................................................................... 7, 11

*Pub. Int. Legal Found. v. Benson*,
    721 F. Supp. 3d 580 (W.D. Mich. 2024) ............................................................................ 12

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) .................................................................................................. 10

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ............................................................................................................. 10

*United States v. Ass'n of Citizens Councils of La.*,
    187 F. Supp. 846 (W.D. La. 1960) ........................................................................................ 8

*United States v. Powell*,
    379 U.S. 48 (1964) ................................................................................................................. 8

*Util. Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014) ............................................................................................................. 10

*Voter Reference Found., LLC v. Torrez*,
    160 F.4th 1068 (10th Cir. 2025) ......................................................................................... 11

*Warren v. Prison Health Servs., Inc.*,
    No. 2:12-CV-13, 2012 WL 4923812 (W.D. Mich. Oct. 16, 2012) .................................... 4

*Yates v. United States*,
    574 U.S. 528 (2015) ............................................................................................................... 9

**Statutes**

52 U.S.C. § 20507(a) .................................................................................................................. 11

52 U.S.C. § 20507(i) .............................................................................................................. 3, 11

52 U.S.C. § 20703 .................................................................................................................... 5, 7

Mich. Comp. § Laws 168.50gg ................................................................................................. 10

iii

**Other Authorities**

Antonin Scalia & Brian A. Garner, *Reading Law*  (2012) ............................................................ 6, 9

H.R. Rep. No. 86-956 (1959) ................................................................................................... 10

Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*,
        No. 24-cv-312-SE (D.N.H. June 18, 2025), ECF Nos. 87 & 87-1. .................................... 3

Reply Br. in Supp. of Mot. to Intervene, *United States v. Scanlan*, No. 1:25-cv-371
        (D.N.H. Dec. 16, 2025), ECF No. 22 ................................................................................. 3

Reply Br. in Supp. of Mot. to Intervene, *United States v. Weber*, No. 2:25-cv-9149
        (C.D. Cal. Nov. 3, 2025), ECF No. 31 ............................................................................... 3

**INTRODUCTION**

DOJ fails to identify a single instance in the history of the NVRA, HAVA, or the Civil Rights Act of 1960 ("CRA") in which a court found that *any* of those statutes could require a state to turn over its full, *unredacted* voter list—*including* sensitive data protected by state law—in response to demands from the federal government. Simply put, those statutes do not authorize the relief DOJ seeks. Indeed, since filing this suit, DOJ appears to have realized that the NVRA and HAVA offer it no support. In its most recent (otherwise virtually identical) lawsuits seeking the same relief against other states, DOJ has jettisoned those claims and pinned its hopes solely on Title III of the CRA.[1] That strategic decision reflects the reality that the NVRA and HAVA cannot support DOJ's demand, and DOJ offers nothing here that provides reason to find otherwise. Its suggestion that it has special inspection rights under the NVRA is wrong—the statute has a single disclosure provision, which applies equally to DOJ and the general public. And DOJ does not dispute that courts uniformly have held that those inspection rights do not extend to sensitive information such as social security information and other personal data that DOJ demands. As to

---

[1] DOJ has sued 23 states plus D.C. In its first eight suits, including this one, DOJ brought claims under the NVRA, HAVA, and the CRA. In the most recent 16 suits, it proceeds under the CRA only. *See* Compl., *United States v. Albence*, No. 1:25-cv-01453 (D. Del. Dec. 2, 2025); Compl., *United States v. DeMarinis*, No. 1:25-cv-03934 (D. Md. Dec. 1, 2025); Compl., *United States v. Oliver*, No. 1:25-cv-01193 (D.N.M. Dec. 2, 2025); Compl., *United States v. Amore*, No. 1:25-cv-00639 (D.R.I. Dec. 2, 2025); Compl., *United States v. Hanzas*, No. 2:25-cv-00903 (D. Vt. Dec. 1, 2025); Compl., *United States v. Hobbs*, No. 3:25-cv-06078 (W.D. Wash. Dec. 2, 2025); Compl., *United States v. Griswold*, No. 1:25-cv-03967 (D. Colo. Dec. 11, 2025); Compl., *United States v. Nago*, No. 1:25-cv-00522 (D. Haw. Dec. 11, 2025); Compl., *United States v. Aguilar*, No. 3:25-cv-00728 (D. Nev. Dec. 11, 2025); Compl., *United States v. Galvin*, No. 1:25-cv-13816 (D. Mass. Dec. 11, 2025); Compl., *United States v. Raffensperger*, No. 5:25-cv-0548 (M.D. Ga. Dec. 18, 2025); Compl., *United States v. Wis. Elections Comm'n*, No. 3:25-cv-1036 (W.D. Wis. Dec. 18, 2025); Compl., *United States v. Matthews*, No. 3:25-cv-3398 (C.D. Ill. Dec. 18, 2025); Compl., *United States v. Evans*, No. 1:25-cv-4403 (D.D.C. Dec. 18, 2025); Compl., *United States v. Fontes*, No. 2:26-cv-66 (D. Ariz. Jan. 6, 2026); Compl., *United States v. Thomas*, No. 3:26-cv-21 (D. Conn. Jan. 6, 2026).

HAVA, DOJ *admits* that it does not contain any disclosure provision. Instead, DOJ claims that it is entitled to seek Michigan's voter list in *discovery* to *determine if* it has a viable HAVA claim. But that gets things backwards: litigants cannot skip the motion-to-dismiss stage to get discovery in the hopes of then finding facts to support a claim. Lastly, DOJ's claim under the CRA fails as well. DOJ's demand lacked a valid statement of basis and purpose, as that law requires. Moreover, as is true of the NVRA, nothing in Title III prohibits states from redacting sensitive, personal voter information—even if the demand itself were proper (which it is plainly not).

In sum, because none of the laws upon which DOJ relies authorize its demand to intrude on the privacy rights of Michigan voters, the Court should dismiss DOJ's complaint for failure to state a claim.

## ARGUMENT

I.  **DOJ fails to state a claim under the NVRA.**

DOJ's NVRA claim conflicts with the plain language of the statute and caselaw interpreting the same. It should thus come as no surprise that DOJ has abandoned this claim in its recent nearly-identical lawsuits seeking the same data from 16 other states, *see supra* n.1, and offers only a half-hearted defense of its NVRA claim here, *see* Opp. to Mot. to Dismiss ("Opp.") at 16, PageID.679.

DOJ does not dispute that courts to have considered the question have repeatedly found that the NVRA *permits* states to redact sensitive voter information before producing it under that law's disclosure provisions. *See* Intervenors' Mot. to Dismiss ("Mot.") at 10-12, PageID.581-583 (citing cases). Instead, DOJ claims that it has "special standing" to inspect records under federal law beyond what is permitted for the public as set forth in the NVRA. *See* Opp. at 16, PageID.679. But DOJ points to *no* authority—either in the NVRA or caselaw—to support that conclusion. That is because there is none. The NVRA contains a single disclosure provision, which requires states

2

to "make available for public inspection" certain records related to voter registration. 52 U.S.C. §20507(i). There is no special carve-out for DOJ; under the NVRA's plain text, whatever inspection rights anyone has—including DOJ—are asserted in that disclosure provision. Indeed, there is no other basis whatsoever that would require states to disclose any of this information in any other part of the NVRA.[2]

Although it is not clear how it matters for DOJ's NVRA claim—which seeks to compel the production of sensitive voter information under the NVRA, not to obtain relief for any NVRA violation by the state—DOJ also asserts that it "properly alleged" that Michigan "failed to engage in reasonable list maintenance efforts." Opp. at 16, PageID.679. Not only is that assertion beside the point for these proceedings, it is flatly incorrect. DOJ does not allege any substantive list maintenance claim in its complaint—under the NVRA *or* HAVA. Quite the opposite: it asserts that Michigan failed to provide information that is "necessary for the Attorney General *to determine* if Michigan is conducting" sufficient list maintenance. Compl. at PageID.17, ¶60 (emphasis added); *id.* at PageID.18, ¶66 (alleging Michigan's refusal to produce unredacted statewide voter registration list "*prevents* the Attorney General from determining Michigan's compliance with the list maintenance requirements of HAVA") (emphasis added). The Court cannot now read those allegations to support a claim that Michigan *violated* the NVRA's list

---

[2] DOJ's claim that "private parties have been granted access to even more detailed voter data than what the United States has requested," Opp. at 13, PageID.676, in *Coalition for Open Democracy v. Scanlan*, No. 24-cv-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025), is wrong. In that case, the court *excluded* social security numbers and other confidential information, and the protective order strictly limits who can view the limited information that was produced, how they can view it, and for what purposes. *See* Protective Order & Schedule A, *Coal. for Open Democracy v. Formella*, No. 24-cv-312-SE (D.N.H. June 18, 2025), ECF Nos. 87 & 87-1. DOJ has been told this in other cases, *see* Reply Br. in Supp. of Mot. to Intervene, *United States v. Weber*, No. 2:25-cv-9149 (C.D. Cal. Nov. 3, 2025), ECF No. 31; Reply Br. in Supp. of Mot. to Intervene, *United States v. Scanlan*, No. 1:25-cv-371 (D.N.H. Dec. 16, 2025), ECF No. 22, yet it persists in repeating this false claim.

3

maintenance requirements, when on its face it plainly asserts that DOJ is *unable* to make any such claims. Nor should the Court countenance DOJ's attempt to rewrite its claim in its opposition brief. *See Kloss v. RBS Citizens, N.A.*, 996 F.Supp.2d 574, 584 n.2 (E.D. Mich. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

## II.    DOJ fails to state a claim under HAVA.

DOJ concedes that "HAVA has no disclosure provisions." Opp. at 14, PageID.677. That dooms its HAVA claim, which alleges Michigan violated the statute by "fail[ing] to provide sufficient information" to DOJ. Compl. at PageID.17, ¶64; *see id.* at PageID.18-19, ¶¶65-66. DOJ fails to explain how Michigan could have violated a law by failing to provide it information if that law does not require Michigan to disclose any information to anyone in the first place.

Nevertheless, DOJ claims that it should be permitted to advance to discovery on its HAVA claim, which DOJ now re-imagines as a claim that "Defendants are violating the list maintenance requirements in Section 303(a)(4) of [HAVA]." Opp. at 15-16, PageID.678-679. This argument fails several times over. First, this is not the claim that DOJ pleads in its complaint. The complaint alleges *no* facts showing that Michigan failed to comply with HAVA's substantive requirements; instead, DOJ alleged *that it could not* "evaluat[e]" or "determin[e]" Michigan's compliance without the statewide voter registration list. *See* Compl. at PageID.10-18.

Second, DOJ misunderstands basic civil procedure. It suggests it will seek Michigan's voter list in discovery so that it can *then* determine whether "Defendants are violating the list maintenance requirements" of HAVA. Opp. at 15-16, PageID.678-679. But to survive a motion to dismiss and get to discovery, DOJ must *first* "allege sufficient facts plausibly suggesting" a legal violation. *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 908 (6th Cir. 2009). Since "[a] lawsuit is not a fishing expedition for a plaintiff to discover a claim against the defendant," DOJ cannot allege a claim "hoping that discovery will reveal facts to support the claim." *Warren*

4

*v. Prison Health Servs., Inc.*, No. 2:12-CV-13, 2012 WL 4923812, at *4 (W.D. Mich. Oct. 16, 2012) (internal quotation and citation omitted).

Finally, "[d]iscovery is not intended to be used to acquire indirectly the very relief that is supposed to await the determination of the action on the merits." *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 446 (N.D. Ill. 2006). Whether DOJ is entitled to Michigan's statewide voter list is the ultimate question on the merits in this case—DOJ cannot use the discovery process to prevent Defendants from obtaining a final judgment on that question.

**III.     DOJ fails to state a claim under the Civil Rights Act of 1960.**

Finally, DOJ's claim under the CRA also fails. First, it does not state a proper basis and purpose—as required under the plain language of the statute. Second, even if the demand were proper, *nothing* in the CRA prohibits the redaction of the sensitive information that is the subject of this dispute. Thus, this claim, too, must be dismissed.

**A.     DOJ's demand failed to state a proper basis and purpose.**

As set forth in its plain text, to invoke Title III of the CRA, DOJ is *required* to provide "the basis and the purpose" of its demand to election officials. 52 U.S.C. §20703. DOJ's demand fails on both fronts. First, DOJ alleges that its *purpose* was "to determine Michigan's compliance" with the NVRA and HAVA, Compl. at PageID.13, ¶43, but it fails entirely to allege any *basis* for its demand. *See* Mot. at 19, PageID.590. Because both are required, that alone is reason to dismiss DOJ's claim. But in addition, DOJ's stated purpose of assessing whether Michigan is complying with the list maintenance obligations of the NVRA and HAVA—*not* investigating the suppression or infringement of voting rights, *which is what Title III is for*—cannot support its claim under that provision either.

5

That distinguishes this case from the authorities DOJ cites—in each, DOJ provided an explicit statement of "basis" *and* "purpose," as required by Title III. In *Kennedy v. Lynd*, for instance, DOJ's demand letter to election officials said:

> This demand is *based* upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction. The *purpose* of this demand is to examine the aforesaid records in order to ascertain whether or not violations of Federal law in regard to registration and voting have occurred.

306 F.2d 222, 229 n.6 (5th Cir. 1962) (emphases added) (internal quotation marks omitted); *see Kennedy v. Bruce*, 298 F.2d 860, 861 (5th Cir. 1962) (same); *In re Coleman*, 208 F.Supp. 199, 199-200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). In contrast, here, DOJ failed entirely to plead that it stated any basis for its demand to Michigan officials. That is fatal to its claim.

Far from a "hyper-technical" reading of the statute, *see* Opp. at 10, PageID.673, these requirements are mandated by the plain language in 52 U.S.C. §20703, and Sixth Circuit precedent, which applies a "presumption that Congress uses 'and' conjunctively," "requiring all items" in a list to be met. *OfficeMax, Inc. v. United States*, 428 F.3d 583, 584, 588 (6th Cir. 2005); *see* Antonin Scalia & Brian A. Garner, *Reading Law* 116-25 (2012) (Conjunctive Canon) ("Scalia & Garner"). Further, "courts must avoid interpretations that render statutory language superfluous." *Agility Network Servs., Inc. v. United States*, 848 F.3d 790, 795 (6th Cir. 2017). Thus, DOJ cannot avoid the requirement that—to properly invoke Title III—it must provide both the basis *and* the purpose of its demand to election officials. *See CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458-60 (5th Cir. 2018) (declining to enforce civil investigative demand when agency did not "comply with statutory requirements" by failing to "identify what conduct, it believes, constitutes an alleged violation.").

6

DOJ failed to do so. Its claim that it provided a "detailed basis . . . in its August 14 and July 21 letters," Opp. at 10-11, PageID.673-674, cannot save it, for several reasons. First, there can be *no* such basis for this claim in the July 21 letter, because DOJ did not make any demand under the CRA until its August 14 letter. Compl. at PageID.12-13, ¶¶38-43; *see* 52 U.S.C. §20703 ("*This demand* shall contain a statement of the basis and purpose therefor." (emphasis added)). Second, DOJ never quotes any portion of its complaint to support its argument that it sufficiently supported the basis for its demand in either of these letters, for good reason: the complaint alleges that DOJ had asked *questions* about Michigan's response to survey questions regarding voter removal and stated the *purpose* for its demand for the voter list, but nowhere did DOJ allege that the letters stated the *basis* for that demand. *See* Compl. at PageID.12, ¶¶38-39; *id.* at PageID.13, ¶42. Indeed, DOJ would be hard-pressed to allege any basis that Michigan has not engaged in proper list maintenance considering the Sixth Circuit recently held that Michigan has "taken rational, sensible steps to maintain accurate voter rolls" and that its "multi-layered efforts are more than reasonable." *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 628 (6th Cir. 2025) (affirming grant of summary judgment against NVRA challenge to Michigan's list maintenance efforts). Because Title III requires DOJ to state the "basis" for its demand, that failure alone is sufficient to dismiss the CRA claim.

Second, DOJ also failed to provide a proper "purpose" for its demand. It asserts that its purpose is to determine Michigan's compliance with its voter list maintenance obligations under the NVRA and HAVA. Opp. at 10, PageID.673. That separately dooms DOJ's Title III claim. As DOJ's cited cases show, Title III authorizes investigations into *the denial of the right to vote*. *See Lynd*, 306 F.2d at 228; *Coleman*, 313 F.2d at 868; *Alabama ex rel. Gallion v. Rogers*, 187 F.Supp. 848, 851-53 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir.

1961); *United States v. Ass'n of Citizens Councils of La.*, 187 F.Supp. 846, 847 (W.D. La. 1960) (per curiam). DOJ does not cite any authority supporting its attempt to use Title III for different purposes entirely.[3]

Instead, DOJ essentially argues that it does not matter if its purpose is proper—it can demand these records for whatever reason it wants. In support, DOJ points to an out-of-circuit opinion that arose out of voter suppression in Mississippi and Louisiana in 1962 to claim that this question is "not open to judicial review," no matter how implausible or how disconnected DOJ's acknowledge purpose in making the demand may be from the statute it invokes to make the demand. Opp. at 11, PageID.674 (quoting *Lynd*, 306 F.2d at 226). DOJ is wrong. Just two years after *Lynd*, the Supreme Court rejected the Fifth Circuit's reasoning in *United States v. Powell*, which concerned a government request for a district court to enforce an agency's subpoena. 379 U.S. 48, 57-58 (1964). The Supreme Court held that, to invoke the powers of a federal court to enforce the subpoena, the government *must* show that its investigation (1) "will be conducted pursuant to a legitimate purpose" and (2) "may be relevant" to that purpose. *See id.* The Court came to this conclusion, moreover, notwithstanding broad statutory language underlying the subpoena in that case. As the Court explained, "[i]t is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." *Id.* at 58 ("[A]n abuse would take place if the summons had been issued for an improper purpose[.]").

Applying *Powell*, courts now routinely subject government document requests to judicial review, including by probing the basis and purpose for the requests. *E.g.*, *Source for Pub. Data*, 903 F.3d at 458-60 (reversing order to enforce civil investigative demand after inquiry into

---

[3] Moreover, the NVRA contains its own carefully calibrated disclosure provision, further undermining DOJ's claim that a proper "purpose" under the *CRA* is to evaluate compliance with the *NVRA's* list maintenance requirement.

8

sufficiency of the basis and purpose of demand); *CFPB v. Accrediting Council for Indep. Colls. & Schs.*, 854 F.3d 683, 689-90 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose for civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing") (cleaned up). Just in the past few months, multiple district courts have quashed records demands when DOJ sought to assert statutory authority for investigations "far removed from those claimed purposes granted by Congress." *In re Subpoena No. 25-1431-014*, No. MC 25-39, 2025 WL 3252648, at *12, *17 (E.D. Pa. Nov. 21, 2025) (striking subpoena demands for records when DOJ "invoke[d] sweeping needs" for the information, which had "no relevance to the investigation Congress permitted or to the investigation the Department of Justice tells the world it is pursuing"); *see In re Admin. Subpoena No. 25-1431-019*, No. 1:25-MC-91324-MJJ, 2025 WL 2607784, at *5 (D. Mass. Sep. 9, 2025) (quashing subpoena for records when DOJ "failed to show proper purpose" and rejecting notion that "the Government's self-proclaimed say-so" is sufficient to "preclude any form of judicial review"). This Court should do the same here.

DOJ's attempt to read "purpose" in a vacuum to mean *any conceivable purpose* also fails as a matter of statutory interpretation. "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)); *see* Scalia & Garner at 167 (Whole-Text Canon: "Context is a primary determinant of meaning."). Accordingly, "the meaning of a word cannot be determined in isolation." *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion) (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). And even where a statutory term "standing alone[] is broad," it "cannot be construed in a vacuum." *Home Depot U.S.A.*, 587 U.S. at 441 (quoting *Davis*, 489 U.S. at 809). Rather, "reasonable statutory interpretation must account

9

for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (alteration in original) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)).

These principles require reading the term "purpose" in the specific context of the CRA—a law Congress enacted "to secure a more effective protection of the right to vote." *Gallion*, 187 F.Supp. at 853; *see* H.R. Rep. No. 86-956, at 7 (1959) (explaining Congress enacted Title III to aid DOJ "during any investigation it may conduct on complaints of a denial to vote because of race"). DOJ's reading eschews this essential statutory context, ripping the term "purpose" from its statutory mooring, all in an unfounded effort to claim that Title III permits blanket inspection of state voter files for *any conceivable purpose*. The Court should reject this unprecedented effort.

  **B.**  **Title III permits redacting sensitive voter information.**

But even if DOJ could use the CRA to demand materials for *any* basis and *any* purpose, its claim here would still fail because, just as "nothing in the text of the NVRA prohibits" redacting sensitive voter information before disclosure, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024), the same is true of the text of the CRA. Quite the opposite: Title III is intended to reach only "*public* records which ought ordinarily to be open to legitimate reasonable inspection," *not* "confidential, private papers and effects." *Lynd*, 306 F.2d at 231 (emphasis added). DOJ here is unsatisfied with Michigan's production of its *public* voter list and instead demands confidential, *private* information on all voters in the state, which Michigan—like most states—protects from disclosure. *See* Mich. Comp. Laws §168.509gg(1)-(2).

DOJ responds that permitting redactions would "eviscerate Title III" because it claims that it needs sensitive voter information to "meaningfully investigate" Michigan's compliance with the NVRA and HAVA. Opp. at 12, PageID.675. But even putting aside for the moment that Title III is not meant to investigate violations of list maintenance obligations under the NVRA and HAVA,

10

DOJ fails to explain *why* sensitive voter information is necessary for this purpose—or why the Court should override Congress's judgment on what is necessary for this purpose. Congress *created* a mechanism meant to ascertain states' compliance with list maintenance obligations: the NVRA inspection provision, 52 U.S.C. §20507(i). Congress "envisioned" this inspection provision allowing for "critical scrutiny and public audits of voter data"—but nonetheless permitted the redaction of sensitive voter data. *Voter Reference Found., LLC v. Torrez*, 160 F.4th 1068, 1082 (10th Cir. 2025); *see id.* at 1083 n.14 (holding the NVRA permits redactions for voters' "personal information"). Indeed, Congress specified that records subject to inspection under that provision must include the "names and addresses" of certain voters, 52 U.S.C. §20507(i)(2)—but stopped short of requiring states to go beyond that and disclose sensitive voter information. *See* Mot. at 11, PageID.582 (citing cases). That reflects Congress's judgment that such data is simply not necessary to evaluate a state's compliance with its obligations under the NVRA.

That judgment makes sense in light of the NVRA's modest list maintenance requirements. Michigan need only make "reasonable effort[s]" to remove ineligible voters from its rolls." 52 U.S.C. §20507(a)(4). As the Sixth Circuit recently held, Michigan's list maintenance efforts "need not be perfect, or even optimal, so long as it remains within the bounds of rationality." *Benson*, 136 F.4th at 625. And even that requirement only applies to two categories of registrants: those who are no longer eligible due to death or change in residence. 52 U.S.C. §20507(a)(4); *see Am. C.R. Union v. Phila. City Comm'rs*, 872 F.3d 175, 184 (3d Cir. 2017) (holding that only removals under subsection (a)(4) are mandatory). Further, since the "NVRA does not require states to immediately remove every voter who may have become ineligible," even if DOJ were able to use sensitive voter data to determine that individual registrants on Michigan's voter list are in fact ineligible due to death or change in residence, it would shed little light on whether Michigan made

11

"reasonable efforts" to remove such voters. *Pub. Int. Legal Found. v. Benson*, 721 F.Supp.3d 580, 596 (W.D. Mich. 2024), *aff'd*, 136 F.4th 613 (6th Cir. 2025). Given this modest requirement that Michigan make only "reasonable efforts" to remove voters who died or moved, there is no need for DOJ to access sensitive voter information, DOJ provides no reason for finding otherwise, and Title III does not prohibit redacting such information.

### IV.    DOJ concedes it has not stated any other claim for relief.

Intervenors explained in their motion to dismiss that DOJ's only clear request for relief was its demand for Michigan's statewide voter registration list, and that any fleeting references in the complaint to other purported deficiencies in Michigan's response to DOJ's demands for information did not set out a claim for relief. Mot. at 22-24, PageID.593-595. DOJ nowhere addresses or disputes this analysis and therefore concedes the issue.

### CONCLUSION

The Court should dismiss the complaint for failure to state a claim.

January 9, 2026                                          Respectfully submitted,

/s/ *Aria C. Branch*
Aria C. Branch
Joshua C. Abbuhl
Branden D. Lewiston
Derek A. Zeigler
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: (202) 968-4490
abranch@elias.law
jabbuhl@elias.law
blewiston@elias.law
dzeigler@elias.law

Sarah Prescott
**SALVATORE PRESCOTT PORTER & PORTER**

12

>105 E. Main St.
>Northville, MI 48167
>Telephone: 248-679-8711
>prescott@spplawyers.com
>
>*Counsel for Intervenors the Michigan Alliance for Retired Americans, Donald Duquette, and Keely Crimando*

## CERTIFICATE OF SERVICE

      I certify that on this 9th day of January 2026, I caused to be served a copy of the above document on all counsel of record and parties via the ECF system.

*/s/ Aria C. Branch*
Aria C. Branch
