UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v

JOCELYN BENSON, in her official capacity
as Secretary of State of Michigan and the
STATE OF MICHIGAN,

      Defendants,
and

MICHIGAN ALLIANCE FOR RETIRED
AMERICANS, DONALD DUQUETTE, and
KEELY CRIMANDO,

      Intervenors-Defendants.

_____

No. 1:25-cv-01148

HON. HALA Y. JARBOU

MAGISTRATE JUDGE PHILLIP J.
GREEN

**DEFENDANTS MICHIGAN SECRETARY OF STATE JOCELYN BENSON'S
AND STATE OF MICHIGAN'S REPLY BRIEF IN SUPPORT OF MOTION
TO DISMISS**

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
P55439

Dated:  January 9, 2025

# TABLE OF CONTENTS

<u>Page</u>

Table of Contents...................................................................................................i

Index of Authorities.............................................................................................ii

Concise Statement of Issue Presented.........................................................iv

Introduction ........................................................................................................1

Argument .............................................................................................................1

I.      The United States fails to state a claim under Title III of the CRA.................1

    A.      This Court can determine whether DOJ's demand is enforceable.........1

    B.      DOJ's demand is unenforceable.................................................................3

        1.      The demand does not satisfy the CRA........................................3

        2.      Sensitive voter information is not relevant................................7

        3.      DOJ already possesses information...............................................9

        4.      Enforcing the demand may constitute an abuse of process.........9

II.     DOJ fails to state a claim under the NVRA......................................................10

III.    DOJ fails to state a claim under the HAVA......................................................11

IV.     DOJ has not sufficiently alleged compliance with federal privacy laws. .......12

    A.      DOJ's request violates the Privacy Act. .................................................12

    B.      DOJ's request violates the E-Government Act. ....................................13

    C.      DOJ's demand violates the DPPA. ..........................................................13

Conclusion and Relief Requested...................................................................14

# INDEX OF AUTHORITIES

Page

**Cases**

*Allen v. Milligan,* 599 U.S. 1 (2023) ............................................................... 5

*Bellitto v. Snipes*, 935 F.3d 1192 (11th Cir. 2019) ........................................ 9

*CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.*, 854 F.3d 683 (D.C. Cir. 2017) ......................................................................... 4

*CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456 (5th Cir. 2018) ............... 4

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ...................................... 5

*Doe v. United States*, 253 F.3d 256 (6th Cir. 2001) .............................. 3, 8, 9

*EEOC v. Ford Motor Credit Co.,* 26 F.3d 44 (6th Cir.1994) ........................... 8

*Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920 (6th Cir. 2013) ................ 12

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963) ........................................ 7

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) ...................................... 1, 5, 7

*Ohio Telecom Assoc. v. Federal Communications Comm.,* 150 F.4th 694 (6th Cir. 2025) .............................................................................................. 6

*Pub. Int. Legal Found. v. Benson*, 136 F.4th 613 (6th Cir. 2025) ................. 9

*United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995) ......................... 2, 3

*United States v. Powell*, 379 U.S. 48 (1964) ............................................. 2, 9

**Statutes**

5 U.S.C. § 552a(e)(4) .................................................................................. 12

18 U.S.C. § 2721(a) .................................................................................... 14

18 U.S.C. § 2721(b)(1) ............................................................................... 14

26 U.S.C. § 7604(a) ...................................................................................... 2

52 U.S.C. § 20501 ...................................................................................... 10

52 U.S.C. § 20507 ............................................................................. 5, 8, 10

52 U.S.C. § 20507(a)(4) ........................................................................ 8

52 U.S.C. § 20507(i) ......................................................................... 5, 10

52 U.S.C. § 20510(a) ........................................................................ 6, 10

52 U.S.C. § 20705 ................................................................................ 2

52 U.S.C. § 21083(a)(4) ...................................................................... 11

52 U.S.C. § 21111 ........................................................................... 6, 11

**Rules**

Fed. R. Civ. P. 81(a)(5) ........................................................................ 2

## CONCISE STATEMENT OF ISSUE PRESENTED

1. Should Defendants' motion to dismiss be granted where the United States fails to state plausible claims under the Civil Rights Act of 1960, the National Voter Registration Act, and the Help America Vote Act that the State of Michigan must provide the Department of Justice with sensitive personal information of Michigan voters?

## INTRODUCTION

The Department of Justice demands the disclosure of sensitive personal information of Michigan's nearly 8 million active and inactive voters.  But DOJ's reliance on the Civil Rights Act of 1960 (CRA), the National Voter Registration Act (NVRA), and the Help America Vote Act (HAVA), is misplaced.  These laws do not compel the production of this highly sensitive information, especially where DOJ has not provided any plausible explanation or reason to support its demand.  The Court should grant the State's motion to dismiss.

## ARGUMENT

### I.    The United States fails to state a claim under Title III of the CRA.

The State argued DOJ's CRA claim fails where it has not articulated a proper basis and purpose for demanding voter records, and that even if it had, the CRA does not require production of sensitive voter information.  (PageID.464-471.)

### A.    This Court can determine whether DOJ's demand is enforceable.

DOJ argues this Court has no authority to review its compliance with the CRA.  Citing a Fifth Circuit case DOJ likens this action to a "'traditional order to show cause, or to produce in aid of an order of an administrative agency,'" and not a "'traditional civil action with all its trappings.'"  (PageID.672) (quoting *Kennedy v. Lynd*, 306 F.2d 222, 225 (5th Cir. 1962)).  So, its filing need not meet pleading requirements, and there is no place for this Court to assess the factual support or sufficiency of DOJ's statement of the basis and purpose of its demand, or to question

why DOJ has requested the records. (PageID.672.)  "Rather, if the [DOJ] has stated in writing the basis and the purpose of the demand, [the CRA] is satisfied, and the records must be produced."  (PageID.672-673.)

But the text of the CRA provides only that a district court "shall have jurisdiction by *appropriate process* to compel the production of such record or paper."  52 U.S.C. § 20705 (emphasis added).  Nothing in the statute suggests this Court's authority is reduced to "rubber stamping" a demand.  Further, two years after the *Lynd* decision on which DOJ relies, the Supreme Court held in a similar context that the IRS Commissioner bore the burden of establishing statutory requirements before a tax subpoena could be enforced.  *United States v. Powell*, 379 U.S. 48, 57–58 (1964) (citing 26 U.S.C. § 7604(a)).

The circuits, including the Sixth Circuit, have applied *Powell* to federal agency demands for records.  *See United States v. Markwood*, 48 F.3d 969 (6th Cir. 1995).  At a minimum,[1] DOJ's demand under the CRA should satisfy what DOJ must generally show to obtain records in the administrative context.  *See*, *e.g*, *Markwood*, 48 F.3d at 975-76 (analyzing enforceability of "civil investigative demand" under federal False Claims Act).

A demand for records "is properly enforced if 1) it satisfies the terms of its authorizing statute, 2) the documents requested were relevant to the [agency's]

---

[1] The State believes an action under the CRA is subject to the same processes the Federal Rules of Civil Procedure afford in any civil action.  But even assuming the action is summary in nature, the federal rules still apply.  *See* Fed. R. Civ. P. 81(a)(5).

investigation, 3) the information sought is not already in the [agency's] possession, and 4) enforcing the [demand] will not constitute an abuse of the court's process." *Doe v. United States*, 253 F.3d 256, 265 (6th Cir. 2001) (citing *Markwood*, 48 F.3d at 980).  Because DOJ has not plausibly alleged it can meet these criteria it is not entitled to enforcement of its demand and Count I should be dismissed.

### B.    DOJ's demand is unenforceable.

#### 1.    The demand does not satisfy the CRA.

First, the demand does not satisfy the terms of the CRA, where, despite the statute's mandatory "shall," the demand did not "contain a statement of the *basis* and the *purpose* therefor."  52 U.S.C. § 20703 (emphasis added).

DOJ's demand was contained in its August 14 letter: "Pursuant to the foregoing authorities [the NVRA and HAVA], including the CRA, the Attorney General is demanding an electronic copy of Michigan's complete and current VRL. The *purpose* of the request is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA."  (PageID.501, PageID.673) (emphasis added).  DOJ asserts this was sufficient to comply with the CRA. (PageID.673.)  It shrugs off its duty to articulate a "basis" for its demand as a "hyper-technical reading" of the CRA.  (*Id.*)[2]

---

[2] DOJ points to its earlier July 21 letter identifying two issues with Michigan's "EAVS" data but does not posit these as a "basis" for its demand.  (PageID.493, PageID.673.)  Regardless, the CRA plainly contemplates that the "basis" and "purpose" are contained in the "written demand"—not in separate writings, and certainly not where the other writing contains no reference to the CRA and pre-dates the demand.  52 U.S.C. § 20703.

But the CRA plainly mandates a statement of both "the basis and the purpose" for the demand, and neither DOJ nor this Court can read the requirement out of the statute.  Here, DOJ's stated "purpose"—reviewing Michigan's list maintenance under NVRA and HAVA—was perfunctory at best.  *See CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (rejecting "perfunctory" statement of purpose in issuing civil investigative demand, reasoning agencies are "not afforded unfettered authority to cast about for potential wrongdoing" (cleaned up)).  And without a stated "basis," DOJ's demand "does not identify what conduct, it believes, constitutes an alleged violation."  *CFPB v. Source for Pub. Data, L.P.*, 903 F.3d 456, 458 (5th Cir. 2018). In other words, DOJ has not identified why or how it believes Michigan is violating NVRA or HAVA.

The basis and purpose requirements are plainly intended to provide notice and to safeguard against improper fishing expeditions.  Thus, it should not be left to the demand's recipient, here the State, to piece together DOJ's "basis" and "purpose" for requesting records.  *See, e.g., CFPB v. Accrediting Council for Independent Colleges & Secondary Schs.*, 854 F.3d 683, 690 (D.C. Cir. 2017) (emphasizing that the validity of a civil investigating demand "is measured by the stated purpose," making notification of purpose "an important statutory requirement").  Because the DOJ failed to articulate its "basis" the demand does not satisfy the terms of the CRA and cannot be enforced.

DOJ's demand is also deficient because ensuring Michigan's compliance with

NVRA's and HAVA's list maintenance requirements is not a proper purpose under the CRA. Rather, the "purpose" and "basis" for a demand under the CRA must pertain to investigating the infringement of voting rights. (*See* PageID.466-467; PageID.585-586, 590-591.) *See also Allen v. Milligan,* 599 U.S. 1, 47 (2023) (The Civil Rights Act of 1960 was "designed to protect access to the ballot in jurisdictions with patterns or practices of denying [voting] access based on race."); *Lynd*, 306 F.2d at 228 ("one of the clearest purposes of the Title III proceeding is to enable the Attorney General to assemble all of the voter record information . . . relating to all persons as to whom there is a question concerning infringement or denial of their constitutional voting rights.") DOJ argues the text of the CRA is not so limited. (PageID.670-672.) It states, "the only language that is required in the Attorney General's demand is that it 'was made for the purpose of investigating possible violations of a Federal statute.'" (PageID.671) (quoting *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting "Senator Keating, one of the principal spokesmen for the bill in the Senate," at 106 Cong. Rec. 7767).) But that statement does not preclude interpretation of the CRA as targeting practices that infringe on voting rights in violation of federal law.

Even if the scope of the CRA were unclear, demanding records under the CRA simply for assessing a state's list maintenance practices under NVRA and HAVA is not a proper purpose. The NVRA provides a mechanism for obtaining appropriate records, 52 U.S.C. § 20507(i), including the records sought here, and both statutes provide enforcement mechanisms by authorizing DOJ to bring civil

actions for declaratory and injunctive relief to contest a state's list maintenance practices. *See* 52 U.S.C. § 20510(a), 52 U.S.C. § 21111. And as DOJ recognizes (PageID.678), ordinary discovery rules will apply in such cases with respect to document requests. Congress plainly contemplated that DOJ would pursue enforcement of NVRA and HAVA through those specific acts, not the CRA. *See, e.g., Ohio Telecom Assoc. v. Federal Communications Comm.,* 150 F.4th 694, 715-716 (6th Cir. 2025) (discussing application of "general/specific canon" of statutory construction).

Finally, while the purpose identified in DOJ's demand is to assess Michigan's compliance with NVRA and HAVA, it is unclear to the State Defendants whether that it is a complete statement of its purpose. As the Intervenors and proposed amici have noted, DOJ has made similar demands in nearly all states and filed similar lawsuits in numerous states. (Intervenors, PageID.575, 578-579; DNC, PageID.528; LWV, PageID.637 & n 5.)[3]  Further, DOJ has publicly stated that it is seeking Michigan's and the other states' voter data to perform its own list maintenance activities by sharing the data with other agencies, like the Department of Homeland Security, and to create a national voter file. (Intervenors, PageID.575; DNC, PageID.528-529, 531-533; LWV, PageID.628-629, 637-638.) *See also* Jonathan Shorman*, DOJ Is Sharing State Voter Roll Lists with Homeland Security,* Stateline, Sept. 12, 2025, https://perma.cc/C6RQ-6ATP (quoting DOJ and

---

[3] *See also* Tracker of Justice Department Requests for Voter Information | Brennan Center for Justice (accessed January 9, 2026).

DHS statements); Devlin Barrett and Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times, Sept. 9, 2025, https://perma.cc/9PM4-2A6R.

Collecting Michigan's and other states' voter data to conduct DOJ's own list maintenance program and create a national voter file is not encompassed within the purpose stated in DOJ's demand, which "is to ascertain Michigan's compliance with the list maintenance requirements of the NVRA and HAVA." (PageID.501, PageID.673).[4] If that is, in fact, what DOJ intends to do with Michigan's data, DOJ has not fully stated its "purpose" for obtaining Michigan's unredacted voter data (let alone its "basis" for doing so).[5] As a result, DOJ's demand would fail to meet the requirements of the CRA for this reason as well.

### 2. Sensitive voter information is not relevant.

Second, driver's license numbers, personal identification numbers, or partial social security numbers along with full dates of birth for every Michigan voter, are irrelevant to reviewing Michigan's compliance with list maintenance requirements. (*See* PageID.478-482, 484.)[6] In assessing this factor, the Court should "'weigh the

---

[4] Creating a national voter file is likely beyond any purpose contemplated by the CRA. *See, e.g., In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) ("[T]his Act merely provides for a limited exploration and discovery as to the validity of the election processes employed and pursued in such Federal elections after May 6, 1960.")

[5] DOJ admits it intends to conduct its own list maintenance activities using Michigan's data. (*See* PageID.675.)

[6] The text of the CRA does not mandate the disclosure of all information in a record or otherwise prohibit appropriate redactions to protect privacy interests. (PageID.468-471.) *See Lynd*, 306 F.2d at 231 (CRA is intended to reach only "public

likely relevance of the requested material to the investigation against the burden . . . of producing the material.'" *Doe*, 253 F.3d at 267 (quoting *EEOC v. Ford Motor Credit Co.,* 26 F.3d 44, 47 (6th Cir.1994)).  DOJ argues it "can only meaningfully investigate and enforce federal election laws[7], including the list maintenance requirements of HAVA and the NVRA" if it has access to this personal voter information, and the "information is necessary to identify duplicate registration records, registrants who have moved, and registrants who have died or otherwise are no longer eligible to vote in federal elections."  (PageID.675.)

It is unclear how DOJ could perform any "meaningful" review of individual voters.  DOJ does not explain how or to what lists or databases it would attempt to make eligibility comparisons of Michigan's voters.  Moreover, Michigan's voter registration list is updated daily, making individual comparisons of voters based on a snapshot in time prone to error.  That is why line-by-line voter information contained in Michigan's voter list does not bear on whether Michigan "conduct[s] a *general* program that makes a *reasonable* effort to remove the names of ineligible voters from the official lists of eligible voters by reason of" death or a change in residence. 52 U.S.C. § 20507(a)(4) (emphasis added).  Rather, compliance with NVRA and HAVA is principally assessed by evaluating a state's *procedures*, not

---

records which ought ordinarily to be open to legitimate reasonable inspection," but not "confidential, private papers and effects").

7 It is unclear to which other "federal election laws" DOJ may be referring. The demand's "purpose" is to determine Michigan's compliance with NVRA and HAVA.

8

each individual voter's data.  *See Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–25 (6th Cir. 2025); *Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019).

The sensitive personal information of Michigan's voters is thus not relevant to DOJ's purpose in reviewing whether Michigan has a reasonable program to remove ineligible voters from its voter roll in compliance with NVRA and HAVA. Further, it would be a burden for Michigan to produce this sensitive information, not in the sense that it would be difficult, but because of the potential harm to voters in releasing their personal information.  (PageID.470-471, 473-477.)

### 3.    DOJ already possesses information.

Third, DOJ already possesses the information it is entitled to—the public version of Michigan's voter list.

### 4.    Enforcing the demand may constitute an abuse of process.

Fourth, enforcing DOJ's demand may constitute an abuse of the Court's process.  A "court's process is abused where the [demand] is 'issued for an improper purpose, such as to harass the [investigation's target] . . . *or for any other purpose reflecting on the good faith of the particular investigation*." *Doe*, 253 F.3d at 271-72 (quoting *Powell,* 379 U.S. at 58) (emphasis added).  As noted above, there is a discrepancy between DOJ's stated purpose and its public statements.  *See* I.B.1., pp 6-7.  The Court need not reach this issue since DOJ's demand already fails for lack of a proper "basis" and "purpose."  But if the DOJ gets past those arguments, the

State submits the demand should not be enforced without resolving the ambiguity as to DOJ's purpose in obtaining Michigan's unredacted voter list.

## II.    DOJ fails to state a claim under the NVRA.

The State argued DOJ was not entitled to receive sensitive voter information under the NVRA based on well-established case law, and that the sensitive information was not relevant to assessing Michigan's compliance with the NVRA's list maintenance requirements.  (PageID.471-482.)

The DOJ offers only a passing response, asserting that it has "special standing under federal election statutes *to conduct list maintenance*," which apparently means it is entitled to the personal information of Michigan's voters under NVRA.  (PageID.679) (emphasis added).  But NVRA authorizes DOJ to "bring a civil action . . . for such declaratory or injunctive relief as is necessary to carry out" Chapter 205 of the NVRA, 52 U.S.C. §§ 20501 *et seq.*  52 U.S.C. § 20510(a). Chapter 205 does not charge the DOJ with conducting list maintenance, rather states are charged with doing so.  52 U.S.C. § 20507.  Further, § 20510 does not give DOJ any specific or enhanced right to request records under the NVRA.  DOJ is limited to requesting records under the public disclosure provision, 52 U.S.C. § 20507(i), like any other entity, and is thus subject to the same limitations courts have imposed on disclosing the personal information of voters.  Consistent with Michigan law, Mich. Comp. Laws § 168.509gg, the State provided DOJ with its public voter registration list, which is all it was required to do under NVRA's disclosure provision and prevailing case law.  Count II should be dismissed.

10

## III.    DOJ fails to state a claim under the HAVA.

The State argued HAVA has no public disclosure provision and so Michigan's refusal to provide unredacted voter information does not support a violation of the act, and that DOJ otherwise failed to plausibly allege a violation of the HAVA. (PageID.482-484.)

DOJ concedes HAVA has no disclosure provision.  (PageID.677.)  Rather, it argues it is entitled to obtain Michigan's unredacted voter list through discovery pursuant to its HAVA claim.  (PageID.678-679.)  But DOJ is only entitled to discovery if it avoids dismissal of its alleged HAVA claim.  HAVA authorizes DOJ to bring an action to enforce the "uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083, and 21083a[.]"  52 U.S.C. § 21111.  DOJ claims Michigan is "violating the list maintenance requirements in Section 303(a)(4) of the Act."  (PageID.679.)  Section 303(a)(4) is HAVA's parallel list maintenance requirement to NVRA.  52 U.S.C. § 21083(a)(4).  Consistent with NVRA, HAVA simply requires a state to have a *system* of list maintenance procedures, which Michigan does.  (*See* PageID.452-460.)

The State argued DOJ has not plausibly alleged Michigan has violated any provision of HAVA or NVRA related to list maintenance.  (PageID.478-484.)  And DOJ offers no argument to the contrary in its response.  (PageID.677-679.)  Count III should be dismissed.

11

## IV.    DOJ has not sufficiently alleged compliance with federal privacy laws.

The State argued DOJ has not alleged or shown compliance with applicable federal privacy laws.  (PageID.484-489.)  DOJ argues it does not need to plead compliance with these acts to proceed with its complaint.  But the failure to comply with these laws is an affirmative defense the State may raise on a motion to dismiss.  *Estate of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 925 (6th Cir. 2013) ("[A] district court may base a motion to dismiss on an affirmative defense.')

### A.    DOJ's request violates the Privacy Act.

The State argued the Privacy Act, 5 U.S.C. § 552a(e)(7), bars agencies like DOJ from collecting or maintaining records connected to First Amendment activities, which includes Michigan's voter registration list, and that no exception applied.  (PageID.484-486.)  DOJ does not address this argument. (PageID.679-681.)

The State also argued that the Privacy Act requires DOJ to publish a System of Records Notice, or SORN, in the Federal Register before "establish[ing] or revis[ing]" a "system of records," 5 U.S.C. § 552a(e)(4), and that the SORNs DOJ cited as covering Michigan's voter list complete with personal voter information did not apply.  (PageID.486-487.)  DOJ does not address this argument either. (PageID.679-681.)

Because DOJ's demand for unredacted voting records seeks records relating to protected First Amendment activities, and these records are not subject to an existing SORN, DOJ's efforts to collect the personal information of Michigan voters violate the Privacy Act.

12

### B.    DOJ's request violates the E-Government Act.

The State argued DOJ's request for voter records violated the E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002), because it had not conducted a privacy impact statement (PIA) before initiating its new effort to collect the personal information of millions of voters.  (PageID.487-488.)  DOJ responds the act does not apply because it is not initiating a new process "whereby it is contacting individuals for information as contemplated" by the act.  (PageID.682.)  It further argues that applying the act would be an absurd result because it would have to do thousands of PIAs whenever it gathered any voter data to enforce election laws, like NVRA and HAVA.  (*Id*.)  But the act applies because DOJ's proposed collection of the sensitive personal information of Michigan's millions of voters is a new collection of information that would permit contacting a specific individual, regardless of DOJ's intent. § 208(b)(1)(A)(ii).  Further, OMB Guidance also makes clear that PIAs must be "updated" where agencies obtain qualifying information "from public sources" and incorporate it "into existing information systems." OMB Guidance, M-03-22 (Sept. 26, 2003), https://perma.cc/E6PW-YQTP, Att. A § II(B)(b)(6).  And while DOJ claims (without authority) that the act is inapplicable to NVRA and HAVA enforcement, the act does not otherwise exempt voter data and instead protects personal information "as agencies implement citizen-centered electronic Government."  § 208(a).

### C.    DOJ's demand violates the DPPA.

Last, the State argued DOJ's demand violates the Driver's Privacy Protection Act (DPPA) because it would require Michigan agencies to disclose personal

information obtained through a driver transaction.  18 U.S.C. § 2721(a), 2721(1), (3) & (4), 18 U.S.C. §§ 2721(b)(1), (c).  (PageID.488-489.)  DOJ responds that the DPPA excepts disclosure "'for use by any government agency . . . in carrying out its functions,' including law enforcement or other regulatory enforcement purposes." (PageID.683; PageID.13, ¶ 44.)  But as explained above and in the State's principal brief, there is no plausible governmental use for the DLNs of millions of Michigan voters to assess Michigan's compliance with NVRA or HAVA.

## CONCLUSION AND RELIEF REQUESTED

For these reasons and those stated in their principal brief, Defendants Secretary of State Jocelyn Benson and the State of Michigan respectfully request that this Honorable Court enter an Order dismissing the complaint in its entirety, together with any other relief that the Court determines to be appropriate under the circumstances.

Respectfully submitted,

s/Heather S. Meingast
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Attorneys for Defendants
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
Email: meingasth@michigan.gov
(P55439)

Dated:   January 9, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing of the foregoing document as well as via US Mail to all non-ECF participants.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
